1  DANIEL M. ORTNER (California State Bar No. 329866)
2  daniel.ortner@thefire.org
   FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
3  510 Walnut Street, Suite 1250
   Philadelphia, PA 19106
4  Telephone: (215) 717-3473
   *Counsel for Plaintiffs*
5

6              **IN THE UNITED STATES DISTRICT COURT**
               **FOR THE EASTERN DISTRICT OF CALIFORNIA**
7                          **FRESNO DIVISION**

8  LOREN PALSGAARD; JAMES DRULEY;
   MICHAEL STANNARD; DAVID
9  RICHARDSON; BILL BLANKEN; and LINDA
   DE MORALES;
10

11              *Plaintiffs*,                       Civil Action No.: _____

12         v.

13 SONYA CHRISTIAN, in her official capacity as
   the State Chancellor of California Community       **VERIFIED COMPLAINT**
14 Colleges; AMY M. COSTA, HILDEGARDE B.              **FOR DECLARATORY AND**
   AGUINALDO, DARIUS W. ANDERSON,                     **INJUNCTIVE RELIEF**
15 ADRIENNE C. BROWN, TOM EPSTEIN,
   FELICIA ESCOBAR CARRILLO, JOLENA M.
16 GRANDE, PAMELA HAYNES, ELENI                       Date: T.B.D.
   KOUNALAKIS, HARRY LE GRANDE, PAUL
17 MEDINA, JENNIFER L. PERRY, BILL                    Time: T.B.D.
   RAWLINGS, MARY H. SALAS, BLAS
18 VILLALOBOS, and JOSEPH R. WILLIAMS, in             Judge: T.B.D.
   their official capacities as members of the Board
19 of Governors of the California Community
   Colleges; CAROLE GOLDSMITH, in her official
20 capacity as the Chancellor of State Center
   Community College District; and NASREEN
21 JOHNSON, MAGDALENA GOMEZ,
   DANIELLE PARRA, RICHARD M. CAGLIA,
22 ROBERT A. FUENTES, DEBORAH J. IKEDA,
   DESTINY RODRIGUEZ, and GERARDO
23 REYES, in their official capacities as members of
   the Board of Trustees of the State Center
24 Community College District,
25
              *Defendants*.
26

27

28 VERIFIED COMPLAINT FOR                 1
   DECLARATORY AND INJUNCTIVE
   RELIEF

**INTRODUCTION**

1.    America's colleges and universities exist to advance knowledge through critical thinking and academic experimentation, not indoctrinate students with the government's preferred viewpoints. The First Amendment therefore "does not tolerate laws that cast a pall of orthodoxy over the classroom." *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967) (cleaned up). Knowledge is discovered not by "authoritative selection," but "out of a multitude of tongues." *Id.*

2.    But California Community Colleges' new diversity, equity, inclusion and accessibility rules (DEIA Rules) force professors to endorse the government's view on politically charged questions regarding diversity, equity, inclusion, and accessibility (DEIA).

3.    The DEIA Rules mandate viewpoint conformity, compel professors to teach and preach the State's perspective on DEIA, impose a prior restraint on the sharing of contrary views, and subject professors to an array of overbroad, vague, and arbitrary requirements.

4.    The DEIA Rules affect the faculty of each of California's 73 community college districts and 116 community colleges, impacting the education of more than 1.8 million students.

5.    Plaintiffs are six professors in the State Center Community College District. State Center imposes the DEIA Rules on faculty through its contract with the faculty union. ("Faculty Contract").

6.     Questions surrounding DEIA lie at the heart of our nation's most challenging and contested conversations. From the board room to the Capitol, politicians, scholars, and everyday Americans are debating the best way to overcome racial inequity in a manner consistent with our nation's ideal of equality under the law.

7.    College classrooms are home to "a tradition of thought and experiment that is at the center of our intellectual and philosophic tradition" and are perfectly suited for debate and discussion on these pressing questions. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

2

U.S. 819, 835 (1995). Professors and students must therefore have the academic freedom to vigorously discuss different perspectives and to share their own. Indeed, "[t]o impose any strait jacket upon the intellectual leaders in our colleges and universities would imperil the future of our Nation." *Sweezy v. New Hampshire*, 354 U.S. 234, 250 (1957).

8.    But the DEIA Rules forsake debate for top-down conformity, *requiring* faculty to *endorse* contested concepts such as "anti-racism," the view that individuals must advocate for race-conscious remedies in order to overcome systemic racism, or "intersectionality," the view that human beings are primarily defined by overlapping group identities like race and sex. California Community Colleges' new rules use the heavy hand of the government not to encourage debate about diversity, equity, inclusion, and accessibility policies, but end it.

9.    For instance, the DEIA Rules require faculty members to teach in a manner reflecting "DEIA and anti-racist principles" and "promote[] a race-conscious and intersectional lens." Professors must also employ a "social justice lens" and a "collectivism perspective," rather than an "individualist perspective." The government warns professors not to "weaponize academic freedom and academic integrity as tools to impede equity" or "inflict curricular trauma on our students."

10.    Each of California's community college districts must now evaluate faculty performance based on faculty members' compliance with these DEIA Rules. If professors want to keep their jobs, each of California's community colleges require that faculty incorporate the requirements into lesson plans and lectures.

11.    The Faculty Contract imposes additional viewpoint requirements on professors, like employing "learning practices that reflect DEIA and anti-racist principles" and showing "knowledge of the intersectionality of social identities."

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

3

12.     Plaintiffs are opposed to the DEIA Rules and Faculty Contract because they require them to endorse DEIA concepts such as "anti-racism" and "intersectionality" that they strongly oppose. Each instead supports race-neutral policies and perspectives that treat all students equally.

13.     Plaintiffs Druley, Palsgaard, Stannard, and Richardson teach in the humanities or social sciences where DEIA topics frequently come up. Each presents students course materials spanning diverse viewpoints to teach students to think critically about these difficult issues. But under the DEIA Rules, they must enforce the State's perspective on DEIA. And if they present a counterpoint, they may be accused of "weaponiz[ing] academic freedom" or "inflict[ing] curricular trauma." *See infra* ¶¶ 98-149.

14.     Plaintiffs Blanken and de Morales teach chemistry and believe forced endorsement of DEIA principles has no room in their classroom or laboratory. They refuse to incorporate DEIA principles because doing so will detract from their students' education and interfere with their ability to teach the subject by taking away precious classroom instruction time in a difficult subject that students often struggle to grasp. *See infra* ¶¶ 150-173.

15.     Plaintiffs risk termination if they fail to embrace the new DEIA Rules. But if Plaintiffs attempt to comply with the DEIA Rules, they will be forced to alter their curriculum and teaching methods, parrot the government's views, and abandon their academic freedom.

16.     Under the First Amendment, public colleges and universities can no more mandate conformity on DEIA than on foreign policy or free market economics. California's professors must remain free to study, teach, debate, and write about all sides of all issues. Protecting academic freedom is "'a special concern of the First Amendment.'" *Demers v. Austin,* 746 F.3d 402, 411 (9th Cir. 2014) (quoting *Keyishian*, 385 U.S. at 603).

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

4

17.    Students, too, benefit from hearing a wide variety of views on DEIA. Engaging with competing opinions prepares students to be citizens in a diverse and pluralistic nation. Indeed, the Supreme Court explained that the "Nation's future depends upon leaders trained through wide exposure" to diverse ideas and a "robust exchange of ideas." *Regents of Univ. of California v. Bakke*, 438 U.S. 265, 312 (1978).

18.    But by dictating to faculty and students which ideas are true and which are false, Defendants run headlong into the First Amendment. Their DEIA Rules unlawfully impose the "pall of orthodoxy" the Supreme Court warned about more than 50 years ago. Plaintiffs file this suit to restore the marketplace of ideas and the protection of the First Amendment to California's community colleges.

## JURISDICTION AND VENUE

19.    This action arises under the First and Fourteenth Amendments to the United States Constitution; the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988; and the Declaratory Judgement Act, 28 U.S.C. §§ 2201–2202.

20.    Plaintiffs seek a declaration that the DEIA Rules and the portions of the Faculty Contract that require Plaintiffs to be evaluated for their commitment to "DEIA principles" are unconstitutional under the First and Fourteenth Amendments as well as preliminary and permanent injunctions against their enforcement.

21.    This Court has original jurisdiction over these federal claims under 28 U.S.C. §§ 1331 and 1343.

22.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because at least one Defendant is located within the Fresno Division of the Eastern District of California and all Defendants reside in the state of California.

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

5

23.     Venue is also proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred within the Fresno Division of the Eastern District of California.

## THE PARTIES

**Plaintiffs**

24.     Plaintiffs are six full-time, tenured faculty members at colleges in the State Center Community College District. Each is opposed to the ideas and viewpoints the DEIA Rules require them to endorse such as "anti-racism" and "intersectionality." Because the DEIA Rules and Faculty Contract are already in effect at State Center, Plaintiffs must immediately alter their teaching or risk negative job evaluations and termination.

25.     Plaintiff James Druley is a philosophy instructor at Madera Community College. Due to the DEIA Rules and Faculty Contract, Druley must rewrite the course outlines for all of Madera's philosophy courses during the Spring 2024 semester to incorporate "DEIA principles" with which he strongly disagrees. He has also stopped assigning course material which generate debate on race and DEIA questions because he is afraid of violating the DEIA Rules and the Faculty Contract.

26.     Plaintiff Loren Palsgaard is an English instructor at Madera Community College. He has stopped assigning course material which generate debate on race and DEIA questions because he is afraid of violating the DEIA Rules and the Faculty Contract.

27.     Plaintiff Michael Stannard is a philosophy instructor at Clovis Community College. Stannard is an outspoken critic of "DEIA principles" like "anti-racism" and "intersectionality" and shares his criticism with his students. Because he wishes to teach according to his principles, he fears that he will be disciplined or fired for "persistent" or "willful violation" of the new DEIA Rules and the Faculty Contract.

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

6

28.     Plaintiff David Richardson, a history instructor at Madera Community College, teaches challenging subjects like discrimination, slavery, and the Civil Rights movement in his classes on Early and Modern American history and Western Civilization. Although Richardson has encouraged his students to debate controversial ideas in class, he now fears he will be disciplined or fired for violating the new DEIA Rules if he encourages students to consider different viewpoints on DEIA issues.

29.     Plaintiff Bill Blanken is a chemistry instructor at Reedley College who does not believe that "DEIA principles" like intersectionality and anti-racism have any place in the chemistry classroom or laboratory. Blanken believes incorporating "DEIA principles" in chemistry curriculum would be pedagogically unsound and disruptive. Blanken fears he will be disciplined or fired because he will not incorporate the state-defined "DEIA principles" into his lessons.

30.     Plaintiff Linda de Morales is a chemistry instructor at Madera Community College. De Morales strongly believes in the need to treat everyone equally in a color-blind manner and objects to being required to embrace and endorse the government's race-conscious "DEIA principles." She also believes incorporating "DEIA principles" in chemistry curriculum would be pedagogically unsound and disruptive. De Morales fears she will be disciplined or fired because she will not incorporate Defendants' "DEIA principles" into her lessons.

**Defendants**

31.     Defendant Sonya Christian is the Chancellor of the California Community Colleges system and the CEO of the Board of Governors ("State Chancellor").

32.     Defendants Amy M. Costa, Hildegarde B. Aguinaldo, Darius W. Anderson, Adrienne C. Brown, Tom Epstein, Felicia Escobar Carrillo, Jolena M. Grande, Pamela Haynes, Eleni Kounalakis, Harry Le Grande, Paul Medina, Jennifer L. Perry, Bill Rawlings, Mary H.

Salas, Blas Villalobos, and Joseph R. Williams are members of the Board of Governors of California Community Colleges.

33.     The State Chancellor and the members of the Board of Governors (State Defendants) were responsible for the adoption of the DEIA Rules and remain responsible for ensuring that each of the 73 California's Community College Districts, including State Center Community College District, and 116 Community Colleges comply with the DEIA Rules.

34.     Defendant Carole Goldsmith is the Chancellor of the State Center Community College District.

35.     Defendants Nasreen Johnson, Magdalena Gomez, Danielle Parra, Richard M. Caglia, Robert A. Fuentes, Deborah J. Ikeda, Destiny Rodriguez, and Gerardo Reyes are members of the Board of Trustees of the State Center Community College District.

36.     The District Chancellor and the State Center Board of Trustees (District Defendants) were responsible for the adoption of the Faculty Contract and are responsible for its implementation and enforcement at each of the community colleges in State Center.

37.     At all times, all Defendants were acting under color of law.

38.     All Defendants are sued only in their official capacity for declaratory and injunctive relief.

## FACTUAL ALLEGATIONS

**I.      The Chancellor proposes new DEIA Rules.**

39.     On March 11, 2022, the California Community Colleges Chancellor's Office released for public comment proposed amendments to Title 5 of the California Code of Regulations.

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

8

40.     The proposed amendment would require community colleges to evaluate faculty for their commitment to and faithfulness to "DEIA Principles" as part of their performance evaluation and tenure review process.

41.     The proposed amendments were developed as part of the Chancellor's "Diversity, Equity and Inclusion Integration Plan" undertaken in 2019 to incorporate DEIA principles into the California Community College system's curriculum and practices.

42.     On April 22, 2022, Counsel for Plaintiffs, the Foundation for Individual Rights and Expression (FIRE) submitted a public comment to the Chancellor's Office outlining its concerns with the ways that the proposed DEIA rules would infringe upon the First Amendment rights of faculty members. FIRE raised its concern that the proposed rules would violate the First Amendment by requiring "faculty members to affirm certain perspectives on disputed political and ideological issues and to embed those perspectives in their academic activities." Other public interest organizations and faculty members raised similar concerns.

43.     After receiving public comments on the proposed regulation, the Chancellor's Office issued revised regulatory language on May 5, 2022, with minor changes that failed to address the First Amendment concerns raised by FIRE.

44.     FIRE once again submitted a comment voicing its concern that the revised regulation continued to violate the First Amendment.

45.     On May 23, 2022, the California Community Colleges Board of Governors voted to officially adopt the revised regulation (the DEIA Rules).

46.     The State Chancellor filed the adopted DEIA Rules with the Secretary of State on March 17, 2023. The DEIA Rules took effect thirty days later on April 16, 2023. A true and correct copy of the final version of the DEIA Rules is attached as Exhibit A.

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

9

47.     The districts in the community college system have 180 days from the date the DEIA Rules took effect (that is, until October 13, 2023) to conform their policies and procedures to the requirements in the rules. However, some districts, like State Center, have already implemented the rules before the allotted 180 days. *See infra* ¶¶ 81-95.[1]

**II.    The DEIA Rules require faculty to espouse the State's view on DEIA.**

48.     Under the DEIA Rules, all California Community College Faculty must embrace contested viewpoints, including specific views about the concepts of "intersectionality" and "anti-racism," as a condition for teaching and must be evaluated regularly to ensure that they have conformed to these DIEA viewpoints.

49.     The DEIA Rules require all employees in the community college districts, including faculty, to "have or establish proficiency in DEIA-related performance to teach, work, or lead within California community colleges." Cal. Code Regs. tit. 5, § 53602(b).

50.     Under the DEIA Rules, each community college district must adopt policies requiring faculty and staff to demonstrate "proficiency" in "DEIA competencies" in performance evaluations and tenure reviews. *Id.*, § 53601(a)–(b).

51.     The DEIA Rules authorize the Chancellor to "adopt and publish guidance describing DEIA competencies and criteria." These criteria "shall" be used by District in developing their minimum standards and conducting performance evaluations. *Id.*

52.     Each district must "set clear expectations regarding employee performance related to DEIA principles, appropriately tailored to the employee's classification." *Id.*, § 53602(c).

---

[1]     There is some discrepancy as to the date when the rules took effect. While the final rule was enrolled on March 17, 2023 and therefore should have taken effect 30 days later on April 16, 2023, the Chancellor's office lists the rule's effective date as April 26, 2023. If that is the effective date, then 180 days later would be October 23, 2023. This discrepancy has no impact on Plaintiffs' claims since State Center adopted the DEIA Rules into its Faculty Contract well before the expiration of either 180-day deadline.

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

10

53.     Each district must also "place significant emphasis on DEIA competencies in employee evaluation and tenure review processes to support employee growth, development, and career advancement." *Id.*

54.     The DEIA Rules do not define "DEIA principles."

55.     Several of the provisions of the DEIA Rules force faculty to embrace contested ideological viewpoints.

56.     For instance, all employees, including faculty, must demonstrate "cultural competency," defined as "the practice of acquiring and utilizing knowledge of the intersectionality of social identities and the multiple axes of oppression that people from different racial, ethnic, and other minoritized groups face." *Id.*, § 52510(h).

57.     Similarly, faculty must "employ teaching, learning, and professional practices that reflect DEIA and anti-racist principles." "Anti-racist" is defined, without further clarification, as those "policies and actions that lead to racial equity." *Id.*, § 52510(d). The DEIA Rules do not explain how a professor can tell if a teaching practice is "anti-racist" or leads to "racial equity," nor do the DEIA Rules explain what a professor is to do when a good-faith debate exists as to whether a policy "lead[s] to racial equity."

**III.    The Chancellor's Office issues Implementation Guidelines for the districts.**

58.     The Chancellor's Office developed and published three guidance documents local districts and colleges must use when implementing the DEIA Rules. The first is a list of the competencies and criteria that are expected of all California Community College employees moving forward. The second is a set of model principles that explain what integrating "DEIA Principles" into the classroom should look like. The third is a glossary that defines key DEIA terms. The Chancellor's office also sent out a memorandum to all the districts explaining the DEIA Rules. Collectively, these are referred to as the Implementation Guidelines.

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

11

59.     The following graphic shows the relationship between the DEIA Rules, the Implementation Guidelines, and the Faculty Contract:



### A.     Competencies and Criteria

60.     In 2021, the Chancellor's Office issued the *Diversity, Equity and Inclusion Competencies and Criteria Recommendations*. The *Competencies and Criteria* "define the skills, knowledge, and behaviors that all [CCC] employees must demonstrate." A true and correct copy of the *Competencies and Criteria* is attached as Exhibit B.

61.     In a May 5, 2023 memorandum, the Chancellor explained that DEIA Rules makes these "DEIA-focused competencies and criteria a minimum standard and a system-wide requirement" for community college faculty and staff. This memorandum is attached as Exhibit C.

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

12

62.    The *Competencies and Criteria* mandate that professors not only teach Defendants' contested viewpoint on DEIA, but actively promote and advocate for that viewpoint both inside and outside of the classroom. Per the *Competencies and Criteria*, faculty must endorse the State's DEIA viewpoint in a variety of respects. They must "[a]cknowledge" the "diverse, fluid, and intersectional nature" of identity. They must "[d]emonstrate their "ongoing awareness and recognition" of "structures of oppression and marginalization." And they must "[s]eek DEI and anti-racist perspectives" and continually improve their "own commitment to DEI and internal biases."

63.    The *Competencies and Criteria* mandate what California Community Colleges professors may teach in the classroom, requiring professors "[p]romote" and "incorporate[]" a "DEI and anti-racist pedagogy." The pedagogy must "promote[] a race-conscious and intersectional lens" and be "culturally affirming."

64.    The requirements of the *Competencies and Criteria* do not end when faculty leave the classroom. A professor must "advocate for and advance DEI and anti-racist goals and initiatives" outside of class, too, by "participating in DEI groups, committees, or community activities that promote systemic and cultural change to close equity gaps and support minoritized groups."

**B.    Model Principles**

65.    In June 2022, shortly after the Board of Governors adopted the DEIA Rules, the Chancellor's Office released *Model Principles and Practices for DEI in Curriculum*, setting out its recommended priorities for local districts and schools to use to effectively implement DEIA principles in the classroom. The *Model Principles* are a set of model principles that explain what integrating "DEIA Principles" into the classroom should look like. The *Model Principles* are listed on the Chancellors' website as a "guidance memo" setting out curricular priorities that

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

13

districts are encouraged to incorporate. A true and correct copy of the *Model Principles* are attached as Exhibit D.

66.    The *Model Principles* impact many aspects of the teaching experience, from the selection of curriculum and reading assignments to the language professors are expected to use, requiring absolute conformity with Defendants' DEIA viewpoints.

67.    Under the *Model Principles*, faculty should supplement their course material with additional materials integrating DEIA principles to ensure that "equity frameworks and principles in decision-making are prioritized and addressed."

68.    The *Model Principles* ask faculty to change not just what they teach, but how they teach it. The *Model Principles* demand faculty "[r]eword language from a colonized mindset to an equity mindset"—for example, by using the term "enslaved" rather than "slaves."

69.    The *Model Principles* even tell faculty how they should think, directing them to "[s]hift to a collectivism perspective" rather than an "individualist perspective," and to "[w]eave DEI and culturally responsive practice into every course." Every discipline and subject must "[u]se culturally responsive practices and a social justice lens."

70.    Furthermore, the *Model Principles* also tell Faculty what they are *not* allowed to say. Faculty are warned not to "weaponize academic freedom and academic integrity as tools to impede equity" or "inflict curricular trauma on our students" by selecting material that would run contrary to the prevailing DEIA viewpoint.

71.    The *Model Principles* urge enforcement of these recommendations through "curriculum committees" that will evaluate all course outlines through a "diversity, equity, inclusion, and antiracist lens."

72.    The requirements will also be integrated into collective bargaining agreements and performance evaluations.

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

14

73.     State Center has integrated the *Model Principles* into faculty performance evaluations through its Faculty Contract. *See infra* ¶¶ 81-95.

**C.     Glossary**

74.     The State Chancellor's Office published a *Diversity, Equity, and Inclusion, and Accessibility Glossary of Terms* which defines key terms in the DEIA Rules to create a "shared understanding" of DEIA concepts. A true and correct copy of the *Glossary* is attached as Exhibit E.

75.     The State Chancellor included a link to the *Glossary* in her May 2023 memorandum to districts in which she urged the districts to refer to the *Glossary* to understand the DEIA Rules. *See* Exhibit C (explaining that the Glossary is intended to "assist with increasing awareness and understanding of DEIA efforts").

76.     The definitions and concepts included in the *Glossary* to assist districts with "understanding" the DEIA Rules further demonstrate that the DEIA Rules are viewpoint-based and mandate ideological conformity on matters of significant public debate.

77.     For instance, the *Glossary* defines "color-blindness" as a "racial ideology" which "perpetuates racial inequalities and denies systematic racism." But many, including Plaintiffs, see color-blind policies as the best way to resolve racial inequalities. *See, e.g.*, Oriane Georgeac and Aneeta Rattan, *The business case for diversity backfires: Detrimental effects of organizations' instrumental diversity rhetoric for underrepresented group members' sense of belonging.* J Pers Soc Psychol. 2023 Jan;124(1):69-108.

78.     Likewise, the *Glossary* declares that to be "equity-minded" requires being "race-conscious," a controversial concept that many, including Plaintiffs, reject as racist. *See e.g.,* Robert D. Alt, *Toward Equal Protection: A Review of Affirmative Action*, 36 Washburn L.J. 179 (1996–97) ("To pursue the concept of racial entitlement—for even the most admirable and benign

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

15

of purposes—is to reinforce and preserve for future mischief the way of thinking that produced race slavery, race privilege, and race hatred.").

79.    The *Glossary* denounces the concept of "merit" as "protect[ing] White Privilege under the guise of standards," whereas many, including Plaintiffs, see the concept of merit as crucial to an upwardly mobile society that can overcome legacies of racism. *See e.g.,* Suzanna Sherry and Daniel A. Farber, *Is the Radical Critique of Merit Anti-Semitic?* 83 Cal. L. Rev. 853 (1995).

80.    These expansive definitions show the breadth of the DEIA Rules and illustrate how Plaintiffs and other community college professors will be required to endorse the State's preferred viewpoint or be accused of "protect[ing] White Privilege" or "perpetuat[ing] racial inequalities and den[ying] systematic racism."

**IV.    State Center incorporated the DEIA Rules into its Faculty Contract.**

81.    The Faculty Contract requires faculty members to demonstrate their allegiance to Defendants' DEIA viewpoints in order to earn a positive evaluation and avoid discipline.

82.    On January 27, 2023, State Center Community College District adopted a Full-time Faculty Agreement with the State Center Federation of Teachers, the labor union that represents State Center faculty. A true and correct copy of the Faculty Contract is attached as Exhibit F.

83.    The Faculty Contract contains DEIA obligations implementing the State Chancellor's DEIA Rules, including the Implementation Guidelines.

84.    Under the previous faculty contract, faculty were evaluated for their "demonstrated ability to successfully teach students from cultures other than one's own."

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

16

85.    Under the DEIA Rules, however, they are now evaluated on their "demonstration of, or progress toward, diversity, equity, inclusion, and accessibility (DEIA) related competencies and teaching and learning practices that reflect DEIA and anti-racist principles."

86.    Faculty must now also "reflect knowledge of the intersectionality of social identities" and "recognize the myriad of ways in which people differ, including the psychological, physical, cognitive, and social difference that occur among individuals."

87.    Tenured faculty members are evaluated once every 3 years under the Faculty Contract.

88.    As part of their review, each faculty member must submit "a written evaluation of their job performance" in which the member must "demonstrate an understanding of diversity, equity, inclusion and accessibility (DEIA) competencies and anti-racist principles, and how they have put those principles into practice to improve equitable student outcomes and course completion."

89.    The Faculty Contract does not define operative terms like "equity," "intersectionality," and "anti-racism."

90.    Tenured faculty members whose DEIA performance is inadequate may be placed on a "plan for improvement" by their supervisor and given a limited time to correct the perceived deficiency.

91.    A supervisor dissatisfied with a professor's performance on DEIA competencies may recommend against that professor moving to a new salary class and receiving a raise. Administrators at State Center including the Vice Chancellor or members of the Human Resources department may also reject a professor's request for advancement to a new salary class.

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

17

92.    Under the State Center Community College District Employee Handbook, tenured faculty may be penalized or dismissed for the "[p]ersistent violation of or refusal to obey school laws of the state or reasonable regulations," including persistent violations of the DEIA Rules as incorporated into the Faculty Contract.

93.    According to State Center's Administrative Regulation 7123, a State Center employee may be disciplined for "[w]illful violation of any policy and regulations of the District or any lawful administrative directive," including willful violations of the DEIA Rules or the DEIA requirements of the Faculty Contract.

94.    According to Administrative Regulation 7360, an academic employee may be disciplined or dismissed for "[u]nsatisfactory performance" or the "[p]ersistent violation of, or refusal to obey, the school laws of the state or reasonable regulations prescribed for the government of the community colleges by the Board of Governors or by the Governing Board of the District." This would include unsatisfactory performance in DEIA competencies or the persistent violation of the DEIA Rules or the DEIA requirements of the Faculty Contract.

95.    An employee disciplined or dismissed for a "persistent violation" need not be given notice in advance of the filing of a charge. AR 7360.

**V.    Plaintiffs' First Amendment rights are being impaired by the DEIA Rules and Faculty Contract.**

96.    Plaintiffs are tenured faculty members at community colleges in State Center who are governed by the Faculty Contract which implements the DEIA Rules (including the Implementation Guidelines).

97.    Plaintiffs object to the viewpoint requirements in the DEIA Rules and the Faculty Contract and would not, but for these requirements, espouse them in the classroom.

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

18

1

### A.    Plaintiff James Druley, Philosophy Professor

2    98.    Professor Druley has been a full-time faculty member at Madera for the past 24

3    years. Druley is currently the only full-time philosophy professor at Madera. Druley specializes in

4    teaching logic and ethics.

5

6    99.    Druley is responsible for writing the course outlines of record on which course

7    syllabi are based—for all eight of the philosophy courses offered at Madera.

8    100.    During the Spring 2024 semester, Druley will be required to rewrite his course

9    outlines to explain how each course will implement DEIA in its curriculum. To write these

10    outlines consistently with the DEIA Rules' requirements, Druley will have to include and endorse

11    DEIA viewpoints that he considers deeply flawed and problematic and to exclude and disclaim

12    materials that may run afoul of the DEIA Rules.

13

14    101.    Druley currently teaches or has taught Introduction to Philosophy; Ethics; World

15    Religions; Critical Reasoning and Analytical Writing; Traditional Logic; Contemporary Symbolic

16    Logic; History of Modern Philosophy; and History of Ancient Philosophy. Druley discusses race

17    and racism in several of his classes, including Introduction to Philosophy and Critical Reasoning

18    and Analytical Writing.

19    102.    Many of the methods of critical reasoning and traditional logic that Druley teaches

20    in his classroom run counter to DEIA viewpoints. For instance, the method of using

21    counterexamples to challenge a claim may be seen as failing to adopt "culturally responsive

22    practices and a social justice lens" if it is used to critically challenge and demand evidence to

23    support DEIA principles.

24

25    103.    Druley believes that it is impossible to teach ethics without talking about "merit"

26    as a positive moral concept. It is also important to recognize meritorious work on the part of

27    students, and so Druley also objects to any efforts to eliminate merit in assigning grades or to take

28

equity into account in assigning grades because he believes it is important to recognize his student's meritorious work. But if he continues to demand and teach the virtues of "merit" he risks being accused of "protect[ing] White Privilege under the guise of standards" in violation of the DEIA rules.

104.    Druley believes that the best remedy to racism is to not consider race at all. He therefore rejects the type of "anti-racism" that the DEIA Rules require him to endorse, teach, and demonstrate.

105.    Druley has signed a "Pro-Human Pledge" sponsored by the Foundation Against Intolerance and Racism and has committed to "treat everyone equally without regard to skin color or immutable characteristic." This contradicts the DEIA Rules requirement that Druley adopt a "race-conscious" viewpoint.

106.    In addition, by signing a pledge organized by FAIR, an organization dedicated to color-blindness and the equal treatment of all human beings, Druley may be punished for going against the requirement that he "advocate for and advance DEI and anti-racist goals and initiatives" including "participating in DEI groups, committees, or community activities that promote systemic and cultural change to close equity gaps and support minoritized groups."

107.    Druley wants to teach his students to critically consider controversial DEIA topics. For instance, he wants his students to be able to contrast the ideas of Malcom X and Martin Luther King, Jr., or Frederick Douglass and W.E.B. DuBois on race and racism.

108.    Because of the DEIA Rules and the Faculty Contract, Druley will avoid voicing his opinions on controversial DEIA topics, use vague and indeterminate language, walk on eggshells when discussing race, and may feel compelled to avoid assigning controversial or challenging readings about race.

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

20

109.    Druley, through his lectures and curriculum, wants to encourage students to think for themselves. But he fears that he will be accused of being insufficiently "anti-racist" or of "weaponiz[ing] academic freedom" and "inflict[ing] curricular trauma" on his students if he proceeds with his preferred lesson plans.

110.    As of the current semester which began on August 7, 2023, Druley is already being evaluated for how effectively he has integrated DEIA principles into his philosophy classroom.

111.    Druley's next performance evaluation is in Spring 2026 and will be governed by DEIA Rules and the Faculty Contract.

112.    As part of the evaluation process, Druley will be required to write a self-evaluation about his efforts to promote DEIA.

113.    Druley is worried that his self-evaluation will not satisfy the DEIA Rules because he will express his criticism of DEIA principles such as "equity," "intersectionality" and "anti-racism." He risks negative professional repercussions if his viewpoint is labeled a "racial ideology" that "perpetuates racial inequalities and denies systematic racism." Exhibit E.

114.    Druley fears he will be disciplined or fired for "unsatisfactory performance" or a "persistent" or "willful violation" of the DEIA Rules and the DEIA requirements of the Faculty Contract if he continues to share his criticism of DEIA and "anti-racism" principles and does not affirmatively teach and preach those principles in his classroom.

**B.    Plaintiff Loren Palsgaard, English Professor**

115.    Palsgaard has taught English at Madera for 25 years

116.    Palsgaard teaches Freshman Composition, Critical Thinking, Intro to Literature, and Creative Nonfiction Writing.

117.    As an English instructor, Palsgaard wants his students to explore topics of public concern from multiple perspectives while observing a code of mutual respect. Palsgaard has concluded that if he discusses controversial issues in DEIA matters or presents competing views on those issues, he will be deemed insufficiently "anti-racist" or accused of "weaponiz[ing] academic freedom" and "inflict[ing] curricular trauma" on his students.

118.    For instance, Palsgaard used to assign students Martin Luther King Jr.'s *Letter from Birmingham Jail* and Victor Davis Hanson's *Mexifornia*. But he will no longer assign these books as a result of the DEIA Rules, because King's letter includes a racial slur and both King and Hanson offer perspectives that are different from the "anti-racism" and "intersectionality" perspective mandated by the DEIA Rules. Palsgaard similarly used to assign pieces by William Faulkner or Flannery O'Connor but no longer assigns them because their books contain racial slurs.

119.    Palsgaard fears that if he assigns authors like King, Hanson, Faulkner, and O'Connor to students, he will be accused of "weaponiz[ing] academic freedom" and "inflict[ing] curricular trauma."

120.    Palsgaard has also had his students watch and discuss recorded debates on controversial topics as part of his Critical Thinking class. In the past, he has shown students a debate on the death penalty that discusses whether the criminal justice system is systemically racist and a debate on the legalization of drugs that discusses whether the war on drugs resulted in racially inequitable outcomes. Palsgaard believes these videos are incredibly valuable because they encourage critical thinking and the consideration of multiple viewpoints about difficult and contentious issues. But by showing his students debates that present both the arguments in favor of the death penalty and against drug legalization, Palsgaard may be accused of failing to "promote[] a race-conscious and intersectional lens" and not being adequately "culturally

VERIFIED COMPLAINT FOR                22
DECLARATORY AND INJUNCTIVE
RELIEF

affirming." Palsgaard will therefore need to reconsider whether he can show these videos and encourage his students to engage in a discussion about them.

121.    As of the current semester which began on August 7, 2023, Palsgaard is already being evaluated for how effectively he has integrated DEIA principles into his English classroom.

122.    Palsgaard's next performance evaluation will be in Spring 2026 and will be governed by DEIA Rules and Faculty Contract.

123.    During his last tenure evaluation, Palsgaard responded to a question about DEIA by talking about the need for greater charity towards those who see the world differently and for more exposure to different viewpoints. If he answers in the same way under the new DEIA Rules and Faculty Contract, as he will have to because these are his deeply held beliefs, he fears his views will be deemed unacceptable and he will be denied a merit increase and disciplined or fired.

124.    Palsgaard fears he will be disciplined or dismissed from employment for "unsatisfactory performance" or a "persistent" or "willful violation" of the DEIA Rules and the DEIA requirements of the Faculty Contract if he continues to share his criticism of DEIA and anti-racism principles and not affirmatively teach and preach those principles in his classroom.

### C. Plaintiff Michael Stannard, Philosophy Professor

125.    Stannard has been a full-time professor at Clovis Community College since 2007 and a tenured professor since 2011.

126.    Stannard teaches Introduction to Philosophy, Ethics, Logic, World Religions, and Critical Thinking and Writing.

127.    Stannard discusses controversial topics implicating the DEIA Rules in his Introduction to Philosophy course, such as race, abortion, and gay marriage.

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

23

128.     Stannard tells students they can speak freely in his classes as long as they are making an argument and do not resort to name-calling. He encourages his students to engage in vigorous discussion about the topics they discuss and the assigned materials that they read.

129.     Stannard believes that the use of "culturally affirming language" that speaks to people differently based on their race or ethnicity is patronizing, offensive, and isolates students based on race or ethnicity. He will not use it.

130.     Stannard is unwilling to change his teaching approach because of the DEIA Rules and Faculty Contract.

131.     In his Logic class, Stannard has students read a *New York Times* op-ed by Abigail Thernstrom titled "Testing the Easy Target," which argues against efforts to eliminate standardized testing to eliminate racial disparities. Stannard asks his students to identify the author's thesis and discuss the structure of her argument. But Stannard fears that if he continues to share this article with students, he will be accused of contradicting the "race-conscious and intersectional" viewpoints that the DEIA Rules demand and "inflicting curricular trauma" on his students.

132.     Stannard assigns students Martin Luther King Jr.'s *Letter from Birmingham Jail* because it connects the pursuit of social justice to natural law and faith. But he is reconsidering whether he can assign this letter because it includes a racial slur and offers a different perspective from the "anti-racism" and "intersectionality" perspective mandated by the DEIA Rules.

133.     Stannard is known to District Defendants and Clovis administrators for his criticism of DEIA and anti-racism. On July 31, 2023, he received permission from District Chancellor Goldsmith and Clovis President Kim Armstrong to distribute to roughly 30 colleagues a newsletter he wrote criticizing Ibram X. Kendi's *How to Be An Antiracist* and critiquing the DEIA Rules.

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

24

134.    As of the current semester which began on August 7, 2023, Stannard is already being evaluated for how effectively he has integrated DEIA principles into his Philosophy classroom.

135.    Stannard's next performance evaluation will be in Spring 2024 and will be governed by the DEIA Rules and the Faculty Contract.

136.    As part of the evaluation process, Stannard will be required to write a self-evaluation about his efforts to promote DEIA.

137.    Stannard is worried that his self-evaluation will not satisfy the DEIA Rules because he will criticize "equity," "intersectionality" and "anti-racism." He risks negative professional repercussions if his viewpoint is labeled a "racial ideology" that "perpetuates racial inequalities and denies systematic racism," as specified by the *Glossary*. Exhibit F.

138.    Stannard fears he will be disciplined or fired for "unsatisfactory performance" or a "persistent" or "willful violation" of the DEIA Rules and the DEIA requirements of the Faculty Contract if he continues to teach his courses in a manner contrary to the requirements of the DEIA Rules.

### D. Plaintiff David Richardson, History Professor

139.    Richardson has taught History at Madera Community College full-time for 26 years.

140.    He teaches courses on American history, including Early and Modern American History as well as Early and Modern Western Civilization. He has also taught several other courses in the history department. His area of expertise is in the late Roman Republic.

141.    Richardson's classes necessarily involve discussion of topics like discrimination, the Civil Rights Movement, and slavery.

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

25

1    142.   For 26 years, Richardson has encouraged debates about controversial ideas, but he

2   is now afraid to do so due to the new DEIA Rules.

3    143.   He has discussed race and racism in his classes by examining the contrasting views

4   of Booker T. Washington and W.E.B. Dubois, and Martin Luther King Jr. and Malcolm X. But

5   Richardson fears that, under the DEIA Rules, he would be accused of "weaponiz[ing] academic

6
7   freedom" and "inflict[ing] curricular trauma" if he assigns those materials.

8    144.   Because of the DEIA Rules, Richardson is likewise afraid to teach controversial

9   facts, such as the existence of black plantation owners and slaveholders in the American

10   Antebellum South, because such facts run contrary to the mandated "race-conscious and

11   intersectional lens," and may not be seen as "culturally affirming."

12
13    145.   As of the current semester which began on August 7, 2023, Richardson is already

14   being evaluated for how effectively he has integrated DEIA principles into his classroom.

15    146.   Richardson's next performance evaluation is in 2026 and will be governed by the

16   DEIA Rules and the Faculty Contract.

17    147.   As part of the evaluation process, Richardson will be required to write a self-

18   evaluation about his efforts to promote DEIA.

19
20    148.   Richardson is worried that his self-evaluation will not satisfy the DEIA Rules

21   because he will criticize "equity," "intersectionality" and "anti-racism." He risks negative

22   professional repercussions if his viewpoint is labeled a "racial ideology" that "perpetuates racial

23   inequalities and denies systematic racism," as specified by the *Glossary*. Exhibit F.

24    149.   Richardson fears he will be disciplined or fired for "unsatisfactory performance"

25   or a "persistent" or "willful violation" of the DEIA Rules and the Faculty Contract if he continues

26   to share his criticism of DEIA principles and not affirmatively teach and preach those principles

27   in his classroom.

28   VERIFIED COMPLAINT FOR          26
     DECLARATORY AND INJUNCTIVE
     RELIEF

### E. Plaintiff Bill Blanken, Chemistry Professor

150.    Bill Blanken has been teaching chemistry at Reedley College full-time for 15 years. Blanken teaches Introduction to Chemistry and Freshman Chemistry for Science Majors.

151.    Blanken emphasizes to his students he will treat them equally and will reward those who work hard regardless of their skin color.

152.    In Blanken's pedagogical and professional judgment, DEIA principles do not have a place in the Chemistry curriculum. There is little opportunity to discuss DEIA principles in the ordinary course of teaching Chemistry and Blanken does not want to include DEIA material unrelated to Chemistry because it would necessarily take up time otherwise spent on chemistry.

153.    When Blanken teaches about the history of chemistry he discusses well-known chemists such as Marie Curie and Robert Boyle without mentioning the chemist's race. Because he focuses on the scientists that have made the greatest impact on the study of Chemistry regardless of ethnicity or country of origin, he fears that if he continues to teach an accurate history, he will be accused of failing to adopt "culturally responsive practices and a social justice lens."

154.    As of the current semester which began on August 7, 2023, Blanken is already being evaluated for how effectively he has integrated DEIA principles into his Chemistry classroom.

155.    Blanken's next performance evaluation will be in Spring 2024 and will be governed by DEIA Rules and the Faculty Contract.

156.    But Blanken does not believe that incorporating DEIA-related material is pedagogically relevant or appropriate and refuses to do so.

157.    As part of the evaluation process, Blanken is required to write a self-evaluation about his efforts to promote DEIA.

158.    Blanken is worried that his self-evaluation will not satisfy the DEIA Rules because he will say that he believes that everyone must be treated equally and in a color-blind manner regardless of race rather than adopting and promoting the race-conscious equity and "anti-racism" approach required under the DEIA Rules and the Faculty Contract. Indeed, he may face negative professional repercussions if evaluators view his ideas as a "racial ideology" that "perpetuates racial inequalities and denies systematic racism."

159.    Blanken fears he will face negative professional repercussions under the DEIA Rules and Faculty Contract if he continues to share his criticism of DEIA and "anti-racism" principles and does not integrate DEIA principles into his Chemistry classroom in a pedagogically unsound and disruptive manner.

160.    Blanken fears he will be disciplined or fired for "unsatisfactory performance" or a "persistent" or "willful violation" of the DEIA Rules and the DEIA requirements of the Faculty Contract if he continues to share his criticism of DEIA and anti-racism principles, does not integrate DEIA principles into his Chemistry classroom, and does not affirmatively teach and preach those principles in his classroom.

### F. Plaintiff Linda de Morales, Chemistry Professor

161.    De Morales has taught Chemistry at Madera Community College for 8 years. She teaches General Chemistry (for science majors) and Organic Chemistry, instructing students in the lecture hall and the laboratory.

162.    De Morales, like Blanken, does not want to include DEIA material in her chemistry courses. And she does not plan to alter the teaching of the history of chemistry to focus on the race or ethnicity of scientists.

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

163.    De Morales tells her students that if they want to earn a good grade they need to earn it. But de Morales is now concerned that if she emphasizes the importance of "merit" that she will be accused of protect[ing] White Privilege under the guise of standards."

164.    For the last few years, de Morales showed her students the film "Hidden Figures," a movie about three African-American female scientists at NASA who helped to pave the way for the successful launch of astronaut John Glenn into orbit. She shows this film to inspire her students to believe that they can achieve anything they put their minds to.

165.    However, some accuse "Hidden Figures" of "white-washing" history by including a "white savior" figure.[2] De Morales is therefore worried that showing the film would violate the DEIA Rules because it might be viewed as inflicting "curricular trauma" on her students.

166.    The principles of anti-racism embedded in the DEIA Rules violate de Morales's deeply held moral and religious beliefs regarding the need to treat everyone equally in a color-blind manner. The DEIA Rules instead require de Morales to adopt the frameworks of "anti-racism" and "intersectionality" which require express race-consciousness.

167.    De Morales worries that her endorsement of color-blindness will be considered a "racial ideology" that "perpetuates racial inequalities and denies systematic racism," as it would be according to the *Glossary* the State Chancellor adopted. Exhibit F.

168.    As of the current semester which began on August 7, 2023, de Morales is already being evaluated for how effectively she has integrated DEIA principles into her Chemistry classroom.

---

[2] *See* Dexter Thomas, *Oscar Nominated Film 'Hidden Figures' was Whitewashed – but it didn't have to be*, VICE (Jan. 25, 2017), https://www.vice.com/en/article/d3xmja/oscar-nominated-hidden-figures-was-whitewashed-but-it-didnt-have-to-be.

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

29

169.    De Morales's next performance evaluation is in the Fall of 2025 and will be governed by the DEIA Rules and the Faculty Contract.

170.    But de Morales does not believe that incorporating DEIA-related material is pedagogically relevant or appropriate.

171.    As part of the evaluation process, de Morales is required to write a self-evaluation about her efforts to promote DEIA.

172.    De Morales is worried that her self-evaluation will not satisfy the DEIA Rules because she will say that she believes that everyone must be treated equally and in a color-blind manner regardless of race rather than adopting the race-conscious equity and anti-racism approach required under the DEIA Rules and the Faculty Contract. She is likewise worried she will face negative professional repercussions if her viewpoint is labeled a "racial ideology" that "perpetuates racial inequalities and denies systematic racism."

173.    De Morales fears she will be disciplined or fired for "unsatisfactory performance" or a "persistent" or "willful violation" of the DEIA Rules and the DEIA requirements of the Faculty Contract if she continues to share her criticism of DEIA and "anti-racism" principles, does not integrate DEIA principles into her Chemistry classroom, and does not affirmatively teach and preach those principles in her classroom.

**INJURY TO PLAINTIFFS**

174.    The DEIA Rules and Faculty Contract injure Plaintiffs by compelling them to endorse and advance Defendants' DEIA viewpoints on topics like "anti-racism" and "intersectionality" in the classroom.

175.    Plaintiffs will also be forbidden from offering contrary viewpoints on DEIA concepts to their students.

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

30

176.    Plaintiffs will be required to alter their course material in order to avoid sharing viewpoints or perspectives inconsistent with Defendants' mandatory DEIA viewpoint.

177.    Plaintiffs Blanken and de Morales will be required to introduce DEIA viewpoints into the classroom in a pedagogically inappropriate manner.

178.    Plaintiffs will be required to comply with the vague and ambiguous terms and face discipline if State Center officials conclude they have not complied.

179.    Plaintiffs must immediately begin to comply with the DEIA Rules and Faculty Contract because they could face discipline or termination if they are not in compliance.

180.    Plaintiffs will be formally evaluated based on their compliance with the DEIA Rules and Faculty Contract when they are next up for review. For Plaintiffs Stannard and Blanken that will be as soon as early next year.

## FIRST CAUSE OF ACTION
## FACIAL FIRST AMENDMENT CHALLENGE TO DEIA RULES
## (AGAINST THE STATE DEFENDANTS)

181.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs in this Complaint.

182.    The Supreme Court has explained that the "vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools." *Keyishian*, 385 U.S. at 603 (1967) (quoting *Shelton v. Tucker*, 364 U.S. 479, 487 (1960)). Indeed, "safeguarding academic freedom . . . is of transcendent value." *Id.*

183.    College students must have "wide exposure to that robust exchange of ideas which discovers truth 'out of a multitude of tongues, (rather) than through any kind of authoritative selection.'" *Id.* For this reason, the First Amendment "does not tolerate laws that cast a pall of orthodoxy over the classroom." *Id.*

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

31

184.    The First Amendment protects the academic freedom right of faculty members to present and teach diverse viewpoints in the classroom and of students to be exposed to diverse opinions. *See generally Demers*, 746 F.3d 402. Public colleges and universities "do not have a license to act as classroom thought police." *Meriwether v. Hartop*, 992 F.3d 492, 507 (6th Cir. 2021).  They may not "force professors to avoid controversial viewpoints," *id.*, nor "impose [their] own orthodoxy of viewpoint about the content … allowed within university classrooms." *Pernell v. Fla. Bd. of Governors of State Univ. Sys.*, No. 4:22CV304-MW/MAF, 2022 WL 16985720, at *37 (N.D. Fla. Nov. 17, 2022).

185.    Rules that discriminate between viewpoints are a "poison to a free society." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2302 (2019) (Alito, J., concurring). Viewpoint discrimination is an "egregious form of content discrimination" that is a particularly "blatant" First Amendment violation. *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995). Rules discriminating between viewpoints are presumptively unconstitutional. *Id.* at 828.

186.    The DEIA Rules discriminate based on viewpoint by requiring faculty to "employ teaching, learning, and professional practices that reflect DEIA and anti-racist principles." "DEIA" and "anti-racist principles" as defined and used by the DEIA Rules and the associated Guidelines reflect a specific "race-conscious and intersectional" view that differs from the values of colorblindness and equality embraced by some faculty members, including Plaintiffs.

187.    Faculty members must affirm this "race-conscious and intersectional" viewpoint in much of what they do from the textbooks and course materials they select to the very language they can utilize in the classroom.

188.    The DEIA Rules cannot satisfy strict scrutiny because the government lacks a legitimate, much less compelling, state interest in shutting down debate on important matters of public concern in public college classrooms.

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

32

189.    The DEIA Rules are not narrowly tailored because they are not the least restrictive means of satisfying any state interest in the inclusion and fair treatment of students. The State can further its interest in diversity and inclusion in ways that do not intrude on the academic freedom of professors and students in the classroom.

190.    The State Defendants are responsible for enforcing the DEIA Rules on California's community college districts, including State Center.

191.    As a direct and proximate result of the DEIA Rules and their enforcement on the districts, Plaintiffs will suffer irreparable injury from the violation of their constitutional rights.

192.    Plaintiffs are entitled to preliminary and permanent injunctive relief, including but not limited to, an order enjoining the Defendants from enforcing the DEIA Rules on State Center and the other community college districts.

193.    Plaintiffs have no other adequate remedy by which to prevent or minimize the continuing irreparable harm to their rights under the First Amendment.

194.    Plaintiffs are also entitled to declaratory relief. An actual controversy has arisen and now exists between Plaintiffs and State Defendants concerning their rights under the United States Constitution.

195.    Plaintiffs seek a judicial determination of their First Amendment rights and legal relations against State Defendants as they pertain to their right to speak in and outside the classroom unfettered by the "pall of orthodoxy" imposed by the State.

196.    Without declaratory and injunctive relief from this Court, State Defendants' unconstitutional actions will continue, and Plaintiffs will suffer irreparable harm indefinitely.

**SECOND CAUSE OF ACTION**
**FACIAL FIRST AMENDMENT CHALLENGE TO THE**
**FACULTY CONTRACT**
**(AGAINST THE DISTRICT DEFENDANTS)**

197.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs in this Complaint.

198.    The Faculty Contract imposes the DEIA Rules on State Center faculty and therefore enforcement of those rules through the Faculty Contract is unconstitutional for the reasons stated in Claim I. *See supra* ¶¶ 181-96.

199.    The Faculty Contract contains the additional requirement[s] that faculty members adopt the mandated DEIA viewpoint such as requiring them to include "teaching and learning practices that reflect DEIA and anti-racist principles and reflect knowledge of the intersectionality of social identities." Additionally, faculty members must "demonstrate an understanding of [DEIA] competencies and anti-racist principles."

200.    Faculty members must affirm this "DEIA and anti-racist" viewpoint in many aspects of their teaching from the textbooks and course materials they select to the very language they can utilize in the classroom.

201.    The Faculty Contract cannot satisfy strict scrutiny for the same reasons the DEIA Rules cannot satisfy strict scrutiny. *See supra* ¶¶ 188-89.

202.    The District Defendants are responsible for enforcing the DEIA Rules and the portions of the Faculty Contract dealing with DEIA requirements against Plaintiffs and other State Center faculty.

203.    As a direct and proximate result of the enforcement of the DEIA rules and the portions of the Faculty Contract dealing with DEIA requirements, Plaintiffs will suffer irreparable injury from the violation of their constitutional rights.

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

34

204.    Plaintiffs have no other adequate remedy by which to prevent or minimize the continuing irreparable harm to their rights under the First Amendment.

205.    Plaintiffs are therefore entitled to preliminary and permanent injunctive relief to enjoin the District Defendants from enforcing the DEIA Rules and the portions of the Faculty Contract dealing with DEIA requirements.

206.    Plaintiffs are also entitled to declaratory relief. An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their rights under the United States Constitution.

207.    Plaintiffs seek a judicial determination of their First Amendment rights and legal relations against the District Defendants as they pertain to their right to speak in and outside the classroom unfettered by the "pall of orthodoxy" imposed by the District.

208.    Without declaratory and injunctive relief from this Court, the District Defendants' unconstitutional actions will continue, and Plaintiffs will suffer irreparable harm indefinitely.

### THIRD CAUSE OF ACTION
### FACIAL FIRST AMENDMENT CHALLENGE (COMPELLED SPEECH)
### TO THE DEIA RULES
### (AGAINST THE STATE DEFENDANTS)

209.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs in this Complaint.

210.    "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *W. Va. St. Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). The First Amendment prohibits laws compelling speech. Generally, laws that compel speech are subject to strict scrutiny because they "plainly

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

35

alter [] the content of . . . speech." *Nat'l Ins. of Family and Life Advocates v. Beccera*, 138 S. Ct. 2361, 2371 (2018).

211.    The DEIA Rules require Plaintiffs to espouse the state's message in order to teach at State Center and condition Plaintiffs' performance evaluation, at least in part, on their fealty to the government's preferred message on concepts such as "equity," "intersectionality," and "anti-racism."

212.    Plaintiffs disagree with and do not want to endorse the state's perspective regarding DEIA against their own deeply held philosophical, moral, and religious views.

213.    The DEIA Rules dictate not only what Plaintiffs may say, but how they must say it. For instance, their language must be consistent with "an equity mindset" and a "collectivism perspective."

214.    By barring faculty from presenting alternative viewpoints while requiring the inclusion of the state-accepted view on DEIA, the DEIA Rules require Plaintiffs to endorse the state's message.

215.    The Faculty Contract cannot satisfy strict scrutiny for the same reasons the DEIA Rules cannot satisfy strict scrutiny. *See supra* ¶¶ 188-89.

216.    The State Defendants are responsible for enforcing the DEIA Rules on California's community college districts, including State Center.

217.    As a direct and proximate result of the DEIA Rules and their enforcement on the districts, Plaintiffs will suffer irreparable injury from the violation of their constitutional rights by being compelled to express the state-mandated viewpoint on matters of public concern.

218.    Plaintiffs are entitled to preliminary and permanent injunctive relief, including but not limited to, an order enjoining the Defendants from enforcing the DEIA Rules on State Center and the other community college districts.

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

36

219.    Plaintiffs have no other adequate remedy by which to prevent or minimize the continuing irreparable harm to their rights under the First Amendment.

220.    Plaintiffs are also entitled to declaratory relief. An actual controversy has arisen and now exists between Plaintiffs and State Defendants concerning their rights under the United States Constitution.

221.    Plaintiffs desire a judicial determination of their First Amendment rights and legal relations against State Defendants as they pertain to their right to not be compelled to endorse the state's mandated viewpoint on DEIA.

222.    Without declaratory and injunctive relief from this Court, State Defendants' unconstitutional actions will continue, and Plaintiffs will suffer irreparable harm indefinitely.

**FOURTH CAUSE OF ACTION**
**FACIAL FIRST AMENDMENT CHALLENGE (COMPELLED SPEECH)**
**TO THE FACULTY CONTRACT**
**(AGAINST THE DISTRICT DEFENDANTS)**

223.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs in this Complaint.

224.    The Faculty Contract imposes the DEIA Rules on State Center faculty and therefore enforcement of those rules through the Faculty Contract unconstitutionally compels speech for the reasons stated in Claim III. *See supra* ¶¶ 209-22.

225.    The Faculty Contract contains the additional requirements that Plaintiffs espouse the District's message in order to be allowed to teach at State Center and to avoid negative evaluations and job consequences.

226.    In particular, Plaintiffs must endorse the District's views on DEIA by utilizing "teaching and learning practices that reflect DEIA and anti-racist principles and reflect

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

37

1    knowledge of the intersectionality of social identities" and by "demonstrat[ing] an understanding

2    of [DEIA] competencies and anti-racist principles."

3    227.    Plaintiffs disagree with and do not want to endorse the District and the State's

4    perspective regarding DEIA against their own deeply held philosophical, moral, and religious

5    views.

6

7    228.    The DEIA Rules cannot satisfy strict scrutiny for the reasons stated in Claim I. *See*

8    *supra* ¶¶ 188-89.

9    229.    The District Defendants are responsible for enforcing the DEIA Rules and the

10    portions of the Faculty Contract dealing with DEIA requirements against Plaintiffs and other

11    State Center faculty.

12

13    230.    As a direct and proximate result of the enforcement of the DEIA rules and the

14    portions of the Faculty Contract dealing with DEIA requirements, Plaintiffs will suffer irreparable

15    injury from the violation of their constitutional rights by being compelled to express the state-

16    mandated viewpoint on matters of public concern.

17    231.    Plaintiffs have no other adequate remedy by which to prevent or minimize the

18    continuing irreparable harm to their rights under the First Amendment.

19

20    232.    Plaintiffs are therefore entitled to preliminary and permanent injunctive relief to

21    enjoin the District Defendants from enforcing the DEIA Rules and the portions of the Faculty

22    Contract dealing with DEIA requirements.

23    233.    Plaintiffs are also entitled to declaratory relief. An actual controversy has arisen

24    and now exists between Plaintiffs and Defendants concerning their rights under the United States

25    Constitution.

26

27

28    VERIFIED COMPLAINT FOR
      DECLARATORY AND INJUNCTIVE
      RELIEF

38

234.    Plaintiffs desire a judicial determination of their First Amendment rights and legal relations against the District Defendants as they pertain to their right to not be compelled to endorse the District Defendants' mandated viewpoint on DEIA.

235.    Without declaratory and injunctive relief from this Court, the District Defendants' unconstitutional actions will continue, and Plaintiffs will suffer irreparable harm indefinitely.

### FIFTH CAUSE OF ACTION
### FACIAL FIRST AMENDMENT CHALLENGE (PRIOR RESTRAINT)
### TO THE DEIA RULES
### (AGAINST THE STATE DEFENDANTS)

236.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs in this Complaint.

237.    At public colleges and universities, faculty speech related to scholarship or teaching, or classroom speech on matters of public concern, is protected by the First Amendment. *See generally, e.g.*, *Demers*, 746 F.3d 402; *Meriweather*, 992 F.3d 492.

238.    The DEIA Rules are an unconstitutional blanket restriction on college faculty's speech on matters of public concern. *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454 (1995).

239.    Prior restraints on speech are "the most serious and the least tolerable infringement on" First Amendment rights. *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).

240.    The DEIA Rules regulate speech related to scholarship and teaching by requiring faculty members to "employ teaching, learning, and professional practices that reflect DEIA and anti-racist principles."

241.    By requiring faculty to employ "DEIA and anti-racist principles," the DEIA Rules thereby restrict faculty expression that does not reflect those principles or reflects contrary

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

39

principles, forbidding them from presenting arguments and viewpoints exploring concepts like "color-blindness" that run contrary to "DEIA and anti-racist principles."

242.    Colleges must evaluate course outlines under a "diversity, equity, inclusion, and antiracist lens" and "[u]s[ing] culturally responsive practices and a social justice lens." Likewise, professors must adopt a curriculum "that promotes a race-conscious and intersectional lens" and "fosters an anti-racist and inclusive environment for minoritized students." Professors must also select textbooks and course materials with "diverse representation from varied racial, ethnic, sex, gender, sexuality, socioeconomic status, religion, age, and abilities perspectives," and, to avoid "curricular trauma," must adjust their language "from a colonized mindset to an equity mindset"; "shift to a collectivism perspective" rather than an "individualist perspective"; and embed "DEI and culturally responsive practice into every course."

243.    By requiring faculty to "promote[] a race-conscious and intersectional lens" and "foster[] an anti-racist and inclusive environment for minoritized students" in their curriculum, faculty are restricted from promoting a contrary "lens" in their class curriculum.

244.    By requiring faculty to choose books and course material that satisfy the state's "diverse representation" standard and to use language reflecting "an equity mindset" and "a collectivism perspective," faculty are restricted from choosing course materials or using language reflecting contrary principles.

245.    Because the DEIA Rules apply broadly, compelling and prohibiting the constitutionally protected speech of all faculty members working for State Center regardless of academic discipline, the rules impose an unconstitutional prior restraint on employee speech. *See generally Nat'l Treasury Emps Union*, 513 U.S. 454.

246.    A blanket prior restraint on faculty speech on matters of public concern is only justified when "the interests of both potential audiences and a vast group of present and future

1    employees in a broad range of present and future expression are outweighed" by the effect of the

2    speech on the government's operations. *Progressive Democrats for Soc. Justice v. Bonta*, 73

3    F.4th 1118, 1123 (9th Cir. 2023) (quoting *Nat'l Treasury Emps Union*, 513 U.S. at 468). The

4    harm to the state must be "real, not merely conjectural" and shown to "alleviate these harms in a

5    direct and material way." Id. (quoting *Nat'l Treasury Emps Union*, 513 U.S. at 475).

6    247.    The interests of current and future faculty and students in free inquiry and debate

7    on campus outweigh any purported effect of the prohibited speech on the state. See *id.*

8

9    248.    Defendants also cannot show that the prohibited faculty speech either harms vital

10   government interests or that this prior restraint on speech effectively alleviates the effect of the

11   prohibited speech in a direct and material way. *See id.*

12

13   249.    The State Defendants are responsible for enforcing the DEIA Rules on California's

14   community college districts, including State Center.

15   250.    As a direct and proximate result of the DEIA Rules and their enforcement on the

16   districts, Plaintiffs will suffer irreparable injury from the violation of their constitutional rights by

17   being restricted from expressing views contrary to the state-mandated viewpoint on matters of

18   public concern.

19

20   251.    Plaintiffs are entitled to preliminary and permanent injunctive relief, including but

21   not limited to, an order enjoining the State Defendants from enforcing the DEIA Rules on State

22   Center and the other community college districts.

23   252.    Plaintiffs have no other adequate remedy by which to prevent or minimize the

24   continuing irreparable harm to their rights under the First Amendment.

25   253.    Plaintiffs are also entitled to declaratory relief. An actual controversy has arisen

26   and now exists between Plaintiffs and State Defendants concerning their rights under the United

27   States Constitution.

28   VERIFIED COMPLAINT FOR                          41
     DECLARATORY AND INJUNCTIVE
     RELIEF

254. Plaintiffs desire a judicial determination of their First Amendment rights and legal relations against State Defendants as they pertain to their right to speak in and outside the classroom unfettered by prior restraint.

255. Without declaratory and injunctive relief from this Court, State Defendants' unconstitutional actions will continue, and Plaintiffs will suffer irreparable harm indefinitely.

**SIXTH CAUSE OF ACTION**
**PRIOR RESTRAINT**
**TO THE FACULTY CONTRACT**
**(AGAINST THE DISTRICT DEFENDANTS)**

256. Plaintiffs re-allege and incorporate by reference the preceding paragraphs in this Complaint.

257. The Faculty Contract imposes the DEIA Rules on State Center faculty and therefore enforcement of those rules through the Faculty Contract is an unconstitutional prior restraint on speech for the reasons stated in Claim V. *See supra* ¶¶ 236-55.

258. The Faculty Contract contains the additional requirement[s] that impose a prior restraint on Plaintiffs' speech including the requirement that teaching must "demonstrate an understanding of [DEIA] competencies and anti-racist principles" or "reflect knowledge of the intersectionality of social identities." This requirement will result in the prior restraint of views that run contrary to DEIA or anti-racist principles or reject concepts like the "intersectionality of social identities."

259. The Faculty Contract applies broadly, compelling and prohibiting the constitutionally protected speech of all faculty members working for State Center regardless of academic discipline. The Faculty Contract therefore imposes an unconstitutional prior restraint on employee speech. *See generally United States v. National Treasury Emps Union*, 513 U.S. 454 (1995).

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

260. The District Defendants cannot justify this prior restraint on employee speech as it is not the least restrictive way of meeting a vital government end in a direct and material way.

261. The District Defendants are responsible for enforcing the DEIA Rules and the portions of the Faculty Contract dealing with DEIA requirements against Plaintiffs and other State Center faculty.

262. As a direct and proximate result of the enforcement of the DEIA rules and the portions of the Faculty Contract dealing with DEIA requirements, Plaintiffs will suffer irreparable injury from the violation of their constitutional rights by being restricted from expressing views contrary to the District-mandated viewpoint on matters of public concern.

263. Plaintiffs have no other adequate remedy by which to prevent or minimize the continuing irreparable harm to their rights under the First Amendment.

264. Plaintiffs are therefore entitled to preliminary and permanent injunctive relief to enjoin the District Defendants from enforcing the DEIA Rules and the portions of the Faculty Contract dealing with DEIA requirements.

265. Plaintiffs are also entitled to declaratory relief. An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their rights under the United States Constitution.

266. Plaintiffs desire a judicial determination of their First Amendment rights and legal relations against the District Defendants as they pertain to their right to speak in and outside the classroom unfettered by prior restraint.

267. Without declaratory and injunctive relief from this Court, the District Defendants' unconstitutional actions will continue, and Plaintiffs will suffer irreparable harm indefinitely.

**SEVENTH CAUSE OF ACTION**
**FACIAL FIRST AMENDMENT CHALLENGE (OVERBREADTH)**
**TO THE DEIA RULES**
**(AGAINST THE STATE DEFENDANTS)**

268.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs in this Complaint.

269.    A rule violates the First Amendment for overbreadth if "a substantial number of its applications are unconstitutional, judged in relation to [its] plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Wash. St. Grange v. Wash. St. Republican Party*, 552 U.S. 442, 449 n.6 (2008)).

270.    The DEIA Rules are unconstitutional on their face because they restrict a substantial amount of protected speech relative to their negligible if not nonexistent, legitimate sweep.

271.    For instance, the number of books, articles, or other course material that can be said to inflict "curricular trauma" is nearly endless.  Virtually any book that challenges the reader's engrained perspective or worldview can be censored under this open-ended mandate for censorship.

272.    The First Amendment protects speeches, books, films, and plays, regardless of whether they might cause "trauma" to a reader or viewer. The First Amendment's protections do not evaporate when someone is traumatized or offended. *Matal v. Tam*, 582 U.S. 218 (2017).

273.    Other aspects of the DEIA Rules are similarly substantially overbroad. For example, the DEIA Rules require professors to embrace a "collectivism perspective" and avoid an "individualist perspective." But many great works of American literature, philosophy, law, or politics can be said to embody an "individualist perspective." For instance, Martin Luther King Jr.'s *Letter from Birmingham Jail* has a highly "individualist perspective" because it focuses on individual civil liberties.

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

44

274. Likewise, a wide variety of protected expression could be labelled as insufficiently "anti-racist" or contrary to "racial equity" especially since these concepts are highly debated and subjective.

275. The DEIA Rules contain no limiting principles to constrain the broad application of its terms to restrict a substantial amount of protected faculty expression.

276. As a direct and proximate result of the DEIA Rules and their enforcement on the districts, Plaintiffs will suffer irreparable injury from the violation of their constitutional rights because the DEIA Rules are overbroad and chill a substantial amount of protected speech.

277. Plaintiffs are entitled to preliminary and permanent injunctive relief, including but not limited to, an order enjoining the Defendants from enforcing the DEIA Rules on State Center and the other community college districts.

278. Plaintiffs have no other adequate remedy by which to prevent or minimize the continuing irreparable harm to their rights under the First Amendment.

279. Plaintiffs are also entitled to declaratory relief. An actual controversy has arisen and now exists between Plaintiffs and State Defendants concerning their rights under the United States Constitution.

280. Plaintiffs desire a judicial determination of their First Amendment rights and legal relations against State Defendants as they pertain to their right to speak in and outside the classroom without being subject to overbroad speech restrictions.

281. Without declaratory and injunctive relief from this Court, State Defendants' unconstitutional actions will continue, and Plaintiffs will suffer irreparable harm indefinitely.

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

45

1

2

3

**EIGHTH CAUSE OF ACTION**
**FACIAL FIRST AMENDMENT CHALLENGE (OVERBREADTH)**
**TO THE FACULTY CONTRACT**
**(AGAINST THE DISTRICT DEFENDANTS)**

4      282.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs in this

5    Complaint.

6      283.    The Faculty Contract imposes the DEIA Rules on State Center faculty and

7    therefore enforcement of the overbroad rules through the Faculty Contract is unconstitutional for

8
     the reasons stated in Claim VII. *See supra* ¶¶ 268-81.
9

10     284.    The Faculty Contract contains additional requirements that are also

11   unconstitutionally overbroad and result in a substantial number of unconstitutional applications.

12     285.    For instance, the Faculty Contract would prohibit professors from including course

13   material that does not "reflect DEIA and anti-racist principles" or "knowledge of the

14   intersectionality of social identities." This could include a nearly endless array of constitutionally

15   protected speech such as discussing an article advancing the arguments against affirmative action

16
     that prevailed before the Supreme Court in recent cases invalidating affirmative action programs
17

18   at Harvard and UNC. *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,

19   143 S. Ct. 2141 (2023).

20     286.    The Faculty Contract contains no effective limiting principles to constrain the

21   overbroad application of its terms.

22     287.    The District Defendants are responsible for enforcing the DEIA Rules and the

23   portions of the Faculty Contract dealing with DEIA requirements against Plaintiffs and other

24
     State Center faculty.
25

26     288.    As a direct and proximate result of the enforcement of the DEIA rules and the

27   portions of the Faculty Contract dealing with DEIA requirements, Plaintiffs will suffer irreparable

28   VERIFIED COMPLAINT FOR              46
     DECLARATORY AND INJUNCTIVE
     RELIEF

injury from the violation of their constitutional rights because they are overbroad and chill a

substantial amount of protected speech.

289.    Plaintiffs have no other adequate remedy by which to prevent or minimize the

continuing irreparable harm to their rights under the First Amendment.

290.    Plaintiffs are therefore entitled to preliminary and permanent injunctive relief to

enjoin the District Defendants from enforcing the DEIA Rules and the portions of the Faculty

Contract dealing with DEIA requirements.

291.    Plaintiffs are also entitled to declaratory relief. An actual controversy has arisen

and now exists between Plaintiffs and Defendants concerning their rights under the United States

Constitution.

292.    Plaintiffs desire a judicial determination of their First Amendment rights and legal

relations against the District Defendants as they pertain to their right to speak in and outside the

classroom without being subject to overbroad speech restrictions.

293.    Without declaratory and injunctive relief from this Court, the District Defendants'

unconstitutional actions will continue, and Plaintiffs will suffer irreparable harm indefinitely.

**NINTH CAUSE OF ACTION**
**FACIAL FIRST AND FOURTEENTH AMENDMENT**
**VAGUENESS CHALLENGE**
**TO THE DEIA RULES**
**(AGAINST THE STATE DEFENDANTS)**

294.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs in this

Complaint.

295.    A restriction on speech violates the First and Fourteenth Amendments if a person

of ordinary intelligence cannot distinguish between permissible and prohibited conduct, and when

there are insufficient standards to prevent arbitrary application. *Grayned v. City of Rockford*, 408

U.S. 104, 108 (1972).

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

47

296.    A restriction on speech is void for vagueness if it fails to give "the person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Id.* This is because "fair notice" is a "fundamental principle" of our legal system. *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).

297.    Vagueness is especially problematic in laws affecting speech due to the "obvious" potential for a "chilling effect on free speech." *Reno v. ACLU*, 521 U.S. 844, 871–72 (1997).

298.    The DEIA Rules are unconstitutionally vague because they infringe on Plaintiffs' First Amendment rights and provide inadequate notice of the conduct prohibited, giving professors no reasonable opportunity to know whether their instruction and pedagogy will satisfy the DEIA Rules' arbitrary requirements.

299.    Many terms in the DEIA Rules do not carry any reasonably objective plain meaning, are inherently vague, and may be interpreted differently by different audiences. A few examples illustrate the point: "reflect DEIA and anti-racist principles," "a race-conscious and intersectional lens," "an anti-racist and inclusive environment," "colonized mindset," "equity mindset," collectivism perspective," "individualist perspective" and "curricular trauma".

300.    Although the *Glossary* defines some of these terms, these definitions are frequently confusing, circular, or unclear and therefore fail to provide fair notice and adequate guidance to Plaintiffs.  For instance, the *Glossary* defines "equity minded" as "being (1) race conscious, (2) institutionally focused, (3) evidence based, (4) systematically aware, and (5) action oriented." But this definition just introduces several more highly ambiguous and subjective terms that do not provide fair notice and adequate guidance.

301.    Plaintiffs have not received guidance from either the State or the District on the meaning of any of the terms used in the DEIA Rule or Faculty Contract.

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

48

302.    A restriction on speech is also void for vagueness when it fails to provide "explicit standards" to prevent "arbitrary and discriminatory enforcement" by administrators. *Grayned,* 408 U.S. at 108.

303.    The DEIA Rules lack any standards to guide Defendants' application and therefore invite arbitrary and discriminatory enforcement in determining whether a professor's instruction and pedagogy satisfy the rule's arbitrary requirements. They are therefore unconstitutional.

304.    The State Defendants are responsible for enforcing the DEIA Rules on California's community college districts, including State Center.

305.    As a direct and proximate result of the DEIA Rules and their enforcement on the districts, Plaintiffs will suffer irreparable injury from the violation of their constitutional rights.

306.    Plaintiffs are entitled to preliminary and permanent injunctive relief, including but not limited to, an order enjoining the Defendants from enforcing the DEIA Rules on State Center and the other community college districts.

307.    Plaintiffs have no other adequate remedy by which to prevent or minimize the continuing irreparable harm to their rights under the First and Fourteenth Amendments.

308.    Plaintiffs are also entitled to declaratory relief. An actual controversy has arisen and now exists between Plaintiffs and State Defendants concerning their rights under the United States Constitution.

309.    Plaintiffs desire a judicial determination of their First and Fourteenth Amendment rights and legal relations against State Defendants as they pertain to their right to speak in and outside the classroom without being subject to vague speech restrictions.

310.    Without declaratory and injunctive relief from this Court, State Defendants' unconstitutional actions will continue, and Plaintiffs will suffer irreparable harm indefinitely.

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

49

1

2

3

# TENTH CAUSE OF ACTION
## VAGUENESS CHALLENGE
## TO THE FACULTY CONTRACT
## (AGAINST THE DISTRICT DEFENDANTS)

4

5

311.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs in this Complaint.

6

7

8

9

312.    The Faculty Contract imposes the DEIA Rules on State Center faculty and therefore enforcement of the DEIA Rules through the Faculty Contract is unconstitutional for the reasons stated in Claim IX. *See supra* ¶¶ 294-310.

10

11

12

13

313.    In addition to the terms already included in the DEIA Rules such as "(DEIA) related competencies" and "DEIA and anti-racist principles," the Faculty Contract contains additional terms that do not have a reasonably objective plain meaning, such as "the intersectionality of social identities."

14

15

16

17

18

314.    The Faculty Contract provides no definitions for these terms and therefore does not provide fair notice as to what speech is prohibited and gives professors of ordinary intelligence no reasonable opportunity to know whether their instruction and pedagogy will satisfy the Faculty Contract's arbitrary requirements.

19

20

21

22

23

24

315.    Additionally, the Faculty Contract provides no standards to guide the District Defendants' application and enforcement of the Faculty Contract and therefore invites arbitrary and discriminatory enforcement by administrators tasked with determining whether a professor's instruction and pedagogy satisfy the rule's abstract and undefined requirements. It is therefore unconstitutional.

25

26

27

316.    The District Defendants are responsible for enforcing the DEIA Rules and the portions of the Faculty Contract dealing with DEIA requirements against Plaintiffs and other State Center faculty.

28

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

50

317.    As a direct and proximate result of the enforcement of the DEIA rules and the portions of the Faculty Contract dealing with DEIA requirements, Plaintiffs will suffer irreparable injury from the violation of their constitutional rights

318.    Plaintiffs have no other adequate remedy by which to prevent or minimize the continuing irreparable harm to their rights under the First and Fourteenth Amendment.

319.    Plaintiffs are therefore entitled to preliminary and permanent injunctive relief to enjoin the District Defendants from enforcing the DEIA Rules and the portions of the Faculty Contract dealing with DEIA requirements.

320.    Plaintiffs are also entitled to declaratory relief. An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their rights under the United States Constitution.

321.    Plaintiffs desire a judicial determination of their First and Fourteenth Amendment rights and legal relations against the District Defendants as they pertain to their right to speak in and outside the classroom without being subject to vague speech restrictions.

322.    Without declaratory and injunctive relief from this Court, the District Defendants' unconstitutional actions will continue, and Plaintiffs will suffer irreparable harm indefinitely.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court provide the following relief:

(a) Declare that the provisions of Title 5 of the California Code of Regulations added or amended by the DEIA Rules are facially unconstitutional under the First and Fourteenth Amendments;

(b) Declare that the provisions of the Faculty Contract implementing the DEIA Rules are facially unconstitutional under the First and Fourteenth Amendments;

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

51

(c) Preliminarily and permanently enjoin the State Defendants their employees, agents, and successors in office from enforcing the DEIA Rules against Plaintiffs, other community college faculty, or the community college districts;

(d) Preliminarily and permanently enjoin the District Defendants their employees, agents, and successors in office from enforcing the DEIA Rules through the faculty collective bargaining agreement against Plaintiffs or other State Center faculty;

(e) Award Plaintiffs costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

(f) Grant such other relief as this Court deems just and appropriate.

Dated: August 17, 2023

Respectfully submitted,

/s/ Daniel M. Ortner
DANIEL M. ORTNER (California State Bar No. 329866)
daniel.ortner@thefire.org
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Telephone: (215) 717-3473
*Counsel for Plaintiffs*

VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

52

**VERIFICATION OF COMPLAINT**

Pursuant to 28 U.S.C. § 1746, I, LOREN PALSGAARD, declare as follows:

      1.    I am a Plaintiff in the present case and a citizen of the United States of America and California.

      2.    I have read the foregoing complaint for declaratory and injunctive relief.

      3.    I have personal knowledge of the factual allegations in paragraphs 5, 8, 9-13, 15, 20, 24-25, 58-75, 76-97, 115-124, 174-180 of the Verified Complaint and know them to be true.

4.    I verify under penalty of perjury that the foregoing is true and correct.

Executed this 1 7 day of August, 2023.

Loren Palsgaard, Plaintiff

1

**VERIFICATION OF COMPLAINT**

2

3    Pursuant to 28 U.S.C. § 1746, I, JAMES DRULEY, declare as follows:

4        1.    I am a Plaintiff in the present case and a citizen of the United States of America

5  and California.

6        2.    I have read the foregoing complaint for declaratory and injunctive relief.

7        3.    I have personal knowledge of the factual allegations in paragraphs 5, 8, 9-13, 15,

8  20, 24-25, 58-75, 76-114, 174-180 of the Verified Complaint and know them to be true.

9    4.    I verify under penalty of perjury that the foregoing is true and correct.

10  Executed this $\underline{17}$ day of August, 2023.

11

12                            _____

13  James Druley, Plaintiff

14

15

16

17

18

19

20

21

23

24

25

26

27

28

**VERIFICATION OF COMPLAINT**

Pursuant to 28 U.S.C. § 1746, I, MICHAEL STANNARD, declare as follows:

1.       I am a Plaintiff in the present case and a citizen of the United States of America and California.

2.       I have read the foregoing complaint for declaratory and injunctive relief.

3.       I have personal knowledge of the factual allegations in paragraphs 5, 8, 9-13, 15, 20, 24, 27, 58-75, 76-97, 125-138, 174-180 of the Verified Complaint and know them to be true. 4.       I verify under penalty of perjury that the foregoing is true and correct. Executed this _16th___ day of August, 2023.

_____

Michael Stannard, Plaintiff

**VERIFICATION OF COMPLAINT**

Pursuant to 28 U.S.C. § 1746, I, DAVID RICHARDSON, declare as follows:

      1.    I am a Plaintiff in the present case and a citizen of the United States of America and California.

      2.    I have read the foregoing complaint for declaratory and injunctive relief.

      3.    I have personal knowledge of the factual allegations in paragraphs 5, 8, 9-13, 15, 20, 24, 28, 58-75, 76-97, 139-149, 174-180 of the Verified Complaint and know them to be true. 4.    I verify under penalty of perjury that the foregoing is true and correct.

Executed this __15__ day of August, 2023.

David Richardson, Plaintiff

**VERIFICATION OF COMPLAINT**

Pursuant to 28 U.S.C. § 1746, I, BILL BLANKEN, declare as follows:

1.    I am a Plaintiff in the present case and a citizen of the United States of America and California.

2.    I have read the foregoing complaint for declaratory and injunctive relief.

3.    I have personal knowledge of the factual allegations in paragraphs 5, 8, 9-12, 14-15, 20, 24, 29, 58-75, 76-97, 150-160, 174-180 of the Verified Complaint and know them to be true.

4.    I verify under penalty of perjury that the foregoing is true and correct.

Executed this 16th day of August, 2023.

Bill Blanken, Plaintiff

1        **VERIFICATION OF COMPLAINT**

2

3    Pursuant to 28 U.S.C. § 1746, I, LINDA DE MORALES, declare as follows:

4        1.      I am a Plaintiff in the present case and a citizen of the United States of America

5    and California.

6        2.      I have read the foregoing complaint for declaratory and injunctive relief.

7        3.      I have personal knowledge of the factual allegations in paragraphs 5, 8, 9-12, 14-

8    15, 20, 24, 29, 58-75, 76-97, 161-173, 174-180 of the Verified Complaint and know them to

9    be true.

10   4.      I verify under penalty of perjury that the foregoing is true and correct.

11   Executed this ___16___ day of August, 2023.

12

13   _____

14       Linda de Morales, Plaintiff

15

16

17

18

19

20

21

23

24

25

26

27

28