1  Rob Bonta, State Bar No. 202668
   Attorney General of California
2  Anya M. Binsacca, State Bar No. 189613
   Supervising Deputy Attorney General
3  Jay C. Russell, State Bar No. 122626
   Jane E. Reilley, State Bar No. 314766
4  Deputy Attorneys General
     455 Golden Gate Avenue, Suite 11000
5    San Francisco, CA  94102-7004
     Telephone:  (415) 510-3617
6    Fax:  (415) 703-5843
     E-mail:  Jay.Russell@doj.ca.gov
7  *Attorneys for Defendants*
   *Sonya Christian, in her official capacity as*
8  *Chancellor of the California Community Colleges;*
   *Amy M. Costa, Hildegarde B. Aguinaldo, Darius W.*
9  *Anderson, Adrienne C. Brown, Tom Epstein, Felicia*
   *Escobar Carrillo, Jolena M. Grande, Pamela*
10 *Haynes, Eleni Kounalakis, Harry Le Grande, Paul*
   *Medina, Jennifer L. Perry, Bill Rawlings, Mary H.*
11 *Salas, Blas Villalobos, and Joseph R. Williams, in*
   *their official capacities as members of the Board of*
12 *Governors of the California Community Colleges*

13

14                    IN THE UNITED STATES DISTRICT COURT

15                    FOR THE EASTERN DISTRICT OF CALIFORNIA

16

17 **LOREN PALSGAARD, et al.,**                    1:23-cv-01228-ADA-CDB

18                              Plaintiffs,

19            v.                                  **DEFENDANTS' MEMORANDUM OF**
                                                 **POINTS AND AUTHORITIES IN**
20 **SONYA CHRISTIAN, et al.,**                   **OPPOSITION TO PLAINTIFFS'**
                                                 **MOTION FOR PRELIMINARY**
21                              Defendants.       **INJUNCTION**

22                                               Date:        October 2, 2023
                                                 Time:        1:30 pm PDT
23                                               Dept:        Courtroom 1, 8th Floor
                                                 Judge:       The Honorable Ana de Alba
24                                               Trial Date:  Not Scheduled
                                                 Action Filed: August 17, 2023
25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction .................................................................................................................... 1

Background ..................................................................................................................... 2

      A.     California Community Colleges ..................................................... 2

      B.     The Challenged Regulations ........................................................ 5

      C.     The Implementation Guidelines ................................................... 5

      D.     Plaintiffs' Claims ........................................................................ 6

Standard of Review ........................................................................................................ 6

Argument ........................................................................................................................ 8

   I.     Plaintiffs Lack Standing to Seek Extraordinary Relief. ........................................ 8

      A.     The Challenged Regulations Apply to California's Community College Districts, Not Plaintiffs. ..................................................... 9

      B.     Plaintiffs Do Not Face an "Imminent Risk" of Harm Under the Regulations. ................................................................................ 10

   II.     Plaintiffs Have Not Shown a Likelihood of Success on the Merits that the Regulations Are Unconstitutional. ......................................................... 12

      A.     The Board Is Entitled to Express Its Ideals Regarding Diversity, Equity, Inclusion, and Accessibility, and the Challenged Regulations Serve This Purpose. ......................................... 13

      B.     The Regulations Are Constitutionally Permissible Non-Discrimination Policies. ......................................................... 15

      C.     Plaintiffs' Overbreadth and Vagueness Challenges to the Regulations Are Not Likely to Succeed on the Merits. .......................... 17

   III.    Plaintiffs Cannot Show that the Balance of Harms and the Public Interest Support an Injunction. ................................................................... 18

Conclusion ..................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page**

CASES

*Alpha Delta Chi-Delta Chapter v. Reed*
  648 F.3d 790 (9th Cir. 2011) .................................................................13, 15, 16

*Babbitt v. United Farm Workers Nat'l Union*
  442 U.S. 289 (1979)................................................................................. 10

*Bair v. Shippensburg Univ.*
  280 F. Supp. 2d 357 (M.D. Pa. 2003) ......................................................... 14

*Barke v. Banks*
  25 F.4th 714 (9th Cir. 2022).........................................................................9

*Bible Club v. Placentia-Yorba Linda Sch. Dist.*
  573 F. Supp. 2d 1291 (C.D. Cal. 2008) ...................................................... 20

*Broadrick v. Oklahoma*
  413 U.S. 601 (1973)..................................................................................... 17

*Brown v. Board of Education*
  347 U.S. 483 (1954)..................................................................................... 19

*Caribbean Marine Servs. Co., Inc. v. Baldrige*
  844 F.2d 668 (9th Cir. 1988) ................................................................. 7, 10

*Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*
  561 U.S. 661 (2010)..................................................................................... 16

*College Republicans at San Francisco State Univ. v. Reed*
  523 F. Supp. 2d 1005 (N.D. Cal. 2007) ...................................................... 18

*D.T. v. Sumner Cnty. Schs.*
  942 F.3d 324 (6th Cir. 2019) ....................................................................... 10

*Dahl v. HEM Pharms. Corp.*
  7 F.3d 1399 (9th Cir. 1993) ...........................................................................7

*Dahlia v. Rodriguez*
  735 F.3d 1060 (9th Cir. 2013)  ..................................................................... 15

*DISH Network Corp. v. FCC*
  653 F.3d 771 (9th Cir. 2011)...........................................................................7

# TABLE OF AUTHORITIES
### (continued)

Page

*Downs v. Los Angeles Unified Sch. Dist.*
  228 F.3d 1003 (9th Cir. 2000) ......................................................................... 13

*Drakes Bay Oyster Co. v. Jewell*
  747 F.3d 1073 (9th Cir. 2014) .................................................................. 7, 19

*Eng v. Cooley*
  552 F.3d 1062 (9th Cir. 2009) ......................................................................... 15

*Fed. Trade Comm'n. v. Affordable Media*
  179 F.3d 1228 (9th Cir. 1999) ......................................................................... 20

*First Interstate Bank of California v. State of California*
  197 Cal. App. 3d 627 (1987) ........................................................................... 11

*Garcia v. Google, Inc.*
  786 F.3d 733 (9th Cir. 2015) ............................................................................. 7

*Goldie's Bookstore, Inc. v. Superior Court*
  739 F.2d 466 (9th Cir. 1984) ........................................................................... 18

*Hazelwood Sch. Dist. v. Kuhlmeier*
  484 U.S. 260 (1988) ......................................................................................... 19

*Hernandez v. City of Phoenix*
  43 F.4th 966 (9th Cir. 2022) ............................................................................ 17

*Hill v. Colorado*
  530 U.S. 703 (2000) ......................................................................................... 17

*Hurley v. Irish–Am. Gay, Lesbian & Bisexual Grp. of Boston*
  515 U.S. 557 (1995) .................................................................................. 15, 16

*Italian Colors Rest. v. Becerra*
  878 F.3d 1165 (9th Cir. 2018) ........................................................................... 8

*Johnson v. San Diego Unified Sch. Dist.*
  217 Cal. App. 3d 692 (1990) ........................................................................... 11

*Leonard v. Clark*
  12 F.3d 885 (9th Cir. 1993) ............................................................................... 9

*Lopez v. Candaele*
  630 F.3d 775 (9th Cir. 2010) .......................................................................... 8, 9

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Lujan v Defenders of Wildlife*
  504 U.S. 555 (1992)..................................................................................... 8

*Maryland v. King*
  567 U.S. 1301 (2013)................................................................................. 20

*Mazurek v. Armstrong*
  520 U.S. 968 (1997)..................................................................................... 6

*Regents of Univ. of Mich. v. Ewing*
  474 U.S. 214 (1985)................................................................................... 13

*Roberts v. U.S. Jaycees*
  468 U.S. 609 (1984)............................................................................. 19, 20

*Rosenberger v. Rector & Visitors of the Univ. of Virginia*
  515 U.S. 819 (1995)................................................................................... 13

*Screws v. United States*
  325 U.S. 91 (1945)..................................................................................... 17

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*
  739 F.2d 1415 (9th Cir. 1984) .................................................................... 7

*Stormans, Inc. v. Selecky*
  586 F.3d 1109 (9th Cir. 2009) .................................................................... 7

*Thomas v. Anchorage Equal Rts. Comm'n*
  220 F.3d 1134 (9th Cir. 2000) .................................................................. 10

*TransUnion LLC v. Ramirez*
  —— U.S. ——, 141 S. Ct. 2190 (2021)..................................................... 8

*Unified Data Servs., LLC v. Fed. Trade Comm'n*
  39 F.4th 1200 (9th Cir. 2022) ..................................................................... 8

*Waters v. Churchill*
  511 U.S. 661 (1994) ................................................................................. 17

*Weinberger v. Romero-Barcelo*
  456 U.S. 305 (1982)..................................................................................... 7

*Wells Fargo Bank, N.A. v. Mahogany Meadows Ave. Tr.*
  979 F.3d 1209 (9th Cir. 2020) .................................................................. 20

iv

# TABLE OF AUTHORITIES
### (continued)

Page

*Winter v. Natural Res. Def. Council, Inc.*
    555 U.S. 7 (2008)................................................................6, 7, 15, 19

*Younger v. Harris*
    401 U.S. 37 (1971)........................................................................ 8

STATUTES

California Education Code
    §§ 66250 et seq. ........................................................................ 3
    § 66251 ................................................................................... 3
    § 66261.5 ................................................................................. 3
    § 66270 ............................................................................... 1, 19
    § 70900 ................................................................................... 3
    § 70901(a) ............................................................................ 4, 9
    § 70901(b)(1)(B) ....................................................................... 12
    § 70902 .................................................................................. 10
    § 70902(a)(1) ........................................................................... 4
    § 70902(b)(4) ..................................................................... 4, 5, 11
    §§ 71090-71906 ......................................................................... 4
    § 71090(b) ............................................................................... 4
    § 72000(a) .............................................................................. 10

California Government Code
    § 3550 .................................................................................... 9
    § 11135(a) .............................................................................. 19

CONSTITUTIONAL PROVISIONS

United States Constitution
    First Amendment ................................................................. *passim*
    Fourteenth Amendment ........................................................... 2, 20

OTHER AUTHORITIES

Cal. Cmty. Colls., *About Us,* https://www.cccco.edu/About-Us/Key-Facts (last
    visited Aug. 18, 2023) ................................................................ 3

Cal. Cmty. Colls., *Procedures and Standing Orders of the Board of Governors*
    (Dec. 2022) ch. 2, § 200, https://www.cccco.edu/-/media/CCCCO-
    Website/docs/procedures-standing-orders/december-2022-procedures-
    standing-ordersv2-
    a11y.pdf?la=en&hash=FF692A0AE8ACC8FE6BB2A4D75018302005A8A4D
    6 ......................................................................................... 5

# TABLE OF AUTHORITIES
## (continued)

**Page**

Cal. Cmty. Colls., *Students*, https://www.cccco.edu/Students (last visited Aug. 18, 2023) ................................................................................................... 2

Cal. Cmty. Colls., *Vision for Success* 10 (July 2021) (last visited Sept. 13, 2023) ....................... 3

California Code of Regulations, Title 5
    § 35605 ........................................................................................2, 5, 6, 21
    § 51200 ......................................................................................... 1, 4, 14
    § 51201 ................................................................................................ *passim*
    § 52510 ........................................................................................2, 5, 6, 21
    § 53000 .................................................................................................... 3, 4
    § 53400 ........................................................................................2, 5, 6, 21
    § 53401 ........................................................................................2, 5, 6, 21
    § 53403 ........................................................................................2, 5, 6, 21
    § 53425 ................................................................................................ *passim*
    § 53601 ................................................................................................ *passim*
    § 53602 ................................................................................................ *passim*
    § 53603 .................................................................................................... 14

Resolution of the Board of Governors No. 2017-01 (January 17, 2017), *https://tinyurl.com/yc8bw6z9* (last visited Aug. 18, 2023)........................................................... 3

1

**INTRODUCTION**

2       The California Community Colleges Board of Governors has adopted regulations that

3   require community college districts to include in their evaluation policies consideration of faculty

4   proficiency in principles of diversity, equity, inclusion, and accessibility (DEIA).  The regulations

5   are not disciplinary in nature, and accordingly include no employee discipline elements.  The

6   regulations advance Board policy favoring the diffusion of knowledge, and the application of

7   DEIA principles on California community college campuses—fully consistent with law, and the

8   authority of the Board to set and advance its policy perspectives.  The regulations are intended to

9   support the professional development of faculty who teach in the largest and most diverse system

10   of higher education in the nation, help create truly inclusive campus environments, and reduce the

11   administrative burden of incidents of campus social conflict.  The regulations do not require any

12   form of ideological adherence, do not compel speech, and do not impinge upon the customary

13   bounds of academic freedom.

14       The California Education Code provides that "[n]o person shall be subjected to

15   discrimination on the basis of disability, gender, gender identity, gender expression, nationality,

16   race or ethnicity, religion, sexual orientation, or any [other constitutionally protected]

17   characteristic" in California's community colleges.  Cal. Educ. Code § 66270.  Consistent with

18   this law, in 2020 the Board of Governors of the California Community Colleges adopted

19   regulations expressing "their commitment to diversity and equity in fulfilling the [community

20   college] system's educational mission," and that this commitment "should guide the

21   administration of all programs in the California Community Colleges, consistent with all

22   applicable state and federal laws and regulations."  Cal. Code Regs. tit. 5, § 51200.  In doing so,

23   the Board's goal was "ensuring the equal educational opportunity of all students."  *Id.* § 51201.

24   To promote that goal, "the California Community Colleges embrace diversity among students,

25   faculty, staff and the communities we serve as an integral part of our history, a recognition of the

26   complexity of our present state, and a call to action for a better future."  *Id.*

27       Plaintiffs Loren Palsgaard, James Druley, Michael Stannard, David Richardson, Bill

28   Blanken, and Linda de Morales (Plaintiffs)—all of whom are employees of the State Center

1

1  Community College District—challenge the constitutionality of California regulations that

2  became effective in April of this year that promote knowledge of and proficiency in DEIA

3  principles within the California Community Colleges.  Plaintiffs' claims do not support an order

4  enjoining these regulations.

5      Plaintiffs have not—and cannot—present evidence to show that the regulations in any way

6  pose an immediate threat of harm to them or have directly impaired their ability to express

7  themselves freely.  Nor is there any showing that either the Chancellor of the California

8  Community Colleges or any member of the Board of Governors of the California Community

9  Colleges has the authority to undertake any action to restrain Plaintiffs' First Amendment rights.

10  And Plaintiffs' motion fails to present any argument or evidence that justifies the extraordinary

11  remedy of finding state law and regulations duly promulgated to promote Fourteenth Amendment

12  concepts of equity and inclusion for the benefit of the nearly two million students of California's

13  community colleges to be unconstitutional.

14      For these reasons, Chancellor Sonya Christian and Board members Amy M. Costa,

15  Hildegarde B. Aguinaldo, Darius W. Anderson, Adrienne C. Brown, Tom Epstein, Felicia

16  Escobar Carrillo, Jolena M. Grande, Pamela Haynes, Eleni Kounalakis, Harry Le Grande, Paul

17  Medina, Jennifer L. Perry, Bill Rawlings, Mary H. Salas, Blas Villalobos, and Joseph R. Williams

18  (the State Defendants) respectfully request that this Court deny Plaintiffs' motion to enjoin

19  enforcement of California Code of Regulations, title 5, sections 52510, 53400, 53401, 53403,

20  53425, 53601, 53602, and 35605.

21                          **BACKGROUND**

22      **A.    California Community Colleges**

23      The California Community Colleges is the largest postsecondary system of higher

24  education in the United States, with more than 1.8 million students attending one of 116 college

25  campuses annually.  Cal. Cmty. Colls., *Students*, https://www.cccco.edu/Students (last visited

26  Aug. 18, 2023).  With low tuition and a longstanding policy of full and open access, California's

27  community colleges were established under the principle that higher education should be

28  available to everyone.  *See id.*, *About Us,* https://www.cccco.edu/About-Us/Key-Facts (last

2

1    visited Aug. 18, 2023).  As "the backbone of higher education in the state and the leading

2    provider of career and workforce training in the country," the community colleges are the most

3    common entry point into collegiate degree programs in California; the primary system for

4    delivering career technical education and workforce training; a major provider of adult education,

5    apprenticeship, and English as a Second Language courses; and a source of lifelong learning

6    opportunities for California's diverse communities.  *Id.*  The California Equity in Higher

7    Education Act (Cal. Educ. Code §§ 66250 et seq.) establishes California's policy of affording all

8    persons equal rights and opportunities in postsecondary educational institutions, including the

9    California Community Colleges.  *Id.* §§ 66251, 66261.5.

10        The Board of Governors of the California Community Colleges (the Board) sets policy and

11    provides guidance for the 73 districts that constitute the postsecondary education system of

12    community colleges.  Cal. Educ. Code § 70900.  The Legislature has granted the Board authority

13    to develop and implement standards for classes, student academic requirements, and employment

14    of academic and administrative staff.  *Id.* §§ 70900; 70901(b).  The Board's strategic mission

15    states that "[a]ll people have the opportunity to reach their full educational potential . . . .  The

16    Colleges embrace diversity in all its forms . . . .  All people have the right to access quality higher

17    education."  Resolution of the Board of Governors No. 2017-01 (January 17,

18    2017), *https://tinyurl.com/yc8bw6z9* (last visited Aug. 18, 2023).  To further those goals, the

19    California Community Colleges are unequivocally committed "to diversity, equity, and inclusion

20    that is serving as a model to other systems in California and nationally."  Cal. Cmty. Colls.,

21    *Vision for Success* 10 (July 2021), /https://www.cccco.edu/-/media/CCCCO-

22    Website/Reports/vision-for-success-update-2021-a11y.pdf (last visited Sept. 13, 2023).

23        Under its authority from the Legislature, and consistent with its role of providing

24    "leadership and direction" to the California Community Colleges, the Board has promulgated

25    regulations to implement "aspects of state and federal anti-discrimination laws intended to

26    prevent unlawful discrimination in employment."  Cal. Code Regs. tit. 5, § 53000.  The

27    regulations "provide[] direction to community college districts related to the incorporation of

28    evidence-based and equity-minded practices into existing recruitment, hiring, retention, and

3

1   promotion activities to promote equal employment opportunities." *Id.*  As part of providing that

2   direction, and furthering its "goal of ensuring the equal educational opportunity of all students,

3   the California Community Colleges embrace diversity among students, faculty, staff and the

4   communities we serve as an integral part of our history, a recognition of the complexity of our

5   present state, and a call to action for a better future." *Id.* § 51201(a).  This goal is intended to

6   "guide the administration of all programs in the California Community Colleges, consistent with

7   all applicable state and federal laws and regulations."  *Id.* § 51200.

8          The Board appoints a chief executive officer—the Chancellor—who exercises the duties

9   and responsibilities delegated to her by the Board.  Cal. Educ. Code § 71090(b).  Defendant

10  Sonya Christian has served as Chancellor since June 2023.  The Chancellor's Office is

11  responsible for carrying out the policies of the Board, including the development of fiscal plans, a

12  legislative agenda, a budget for the community college system, and the execution of grants to

13  community college districts to carry out statewide programs in furtherance of the Board's

14  policies.  *See, generally, id.* §§ 71090-71906.  But neither the Chancellor nor the Board has any

15  role in hiring, disciplining, or terminating district staff, or in establishing "employment practices"

16  for community college professors.  *Id.* § 70902(a)(1) ("Every community college district shall be

17  under the control of a board of trustees," and this "governing board of each community college

18  district" shall "maintain, operate, and govern" community colleges under their jurisdiction.); *see*

19  *also id.* §70902(b)(4) (local districts shall "[e]stablish employment practices, salaries, and

20  benefits for all employees not inconsistent with the laws of this state.").

21          Neither the Board nor the Chancellor has the authority to administer local community

22  college campuses; that authority lies with the community college districts governed by locally

23  elected boards of trustees.  Specifically, the Board's primary purpose is to provide "leadership

24  and direction" while maintaining, "to the maximum degree permissible, local authority and

25  control in the administration" of local community colleges by their districts.  Cal. Educ. Code §

26  70901(a).  Consistent with that "local authority and control," community college districts are

27  responsible for "employ[ing] and assign[ing] all personnel not inconsistent with the minimum

28

standards adopted by the board of governors and establish[ing] employment practices, salaries and benefits for all employees not inconsistent with the laws of this state." *Id.* § 70902(b)(4).

**B.    The Challenged Regulations**

In April 2023, the Board adopted California Code of Regulations, title 5, sections 52510, 53400, 53401, 53403, 53425, 53601, 53602, and 35605. *See* Verif. Compl. Ex. A, ECF No. 1.  As detailed below, these regulations do not apply directly to individual community college employees, such as Plaintiffs.  Rather, the regulations set forth the Board's policy objective that district evaluation policies and practices reflect its ideals and principles regarding diversity, equity, inclusion, and accessibility.  By their motion, Plaintiffs ask the Court to enjoin these regulations and muzzle the Board's expression of its policy objective.  *See* Proposed Order, ECF No. 13-3.

**C.    The Implementation Guidelines**

Separate and apart from the challenged regulations, the Chancellor's Office published four advisory documents to provide guidance to the districts as they implement their diversity, equity, inclusion and accessibility policies: (1) a memorandum entitled "Diversity, Equity and Inclusion Competencies and Criteria Recommendations" (*see* Verif. Compl. Ex. B, ECF No. 1); (2) a memorandum entitled "Guidance on Implementation of DEIA Evaluation and Tenure Review Regulations" (*Id*. Ex. C); (3) a pamphlet entitled "DEI in Curriculum: Model Principles and Practices" (*Id*. Ex. D); and (4) a "Diversity, Equity, Inclusion, and Accessibility Glossary of Terms" (*Id*. Ex. E).

These implementation guidelines are not regulations adopted through the formal regulatory process and thus are not binding on the districts.[1]  The plain language of the implementation guidelines reinforces that their purpose is to provide recommendations and assistance—rather than mandates—to the districts as they create their diversity, equity, inclusion, and accessibility

---

[1] *See* Cal. Cmty. Colls., *Procedures and Standing Orders of the Board of Governors* (Dec. 2022) ch. 2, § 200, https://www.ccccco.edu/-/media/CCCCO-Website/docs/procedures-standing-orders/december-2022-procedures-standing-ordersv2-a11y.pdf?la=en&hash=FF692A0AE8ACC8FE6BB2A4D75018302005A8A4D6 ("Neither the Board nor the Chancellor may administer or enforce any regulation, as defined by section 202, paragraph (d), unless that regulation is adopted in accordance with the provisions of this Chapter").

5

1   policies.  (*Id.* Ex. B ("[T]his sample is a starting point, and is meant to serve as a reference for

2   districts/colleges as they engage in their own local process to develop and adopt a personalized

3   set of DEIA competencies and criteria…"); *Id.* Ex. C ("The purpose of this memorandum is to

4   provide information regarding the evaluation and tenure review of district employees and the

5   resources that are available to support districts and colleges with local implementation of these

6   regulations."); *Id.* Ex. D ("The chart is not exhaustive and is not intended to be a mandate, but

7   rather a model and tool of transformative principles to frame curriculum development and

8   classroom practices at local levels."); *Id.* Ex. E ("The purpose of the…Glossary of Terms is to

9   serve as a reference guide of DEI terms…")).

10      Because the implementation guidelines are merely advisory and do not bind either the

11  community college districts or individual community college employees (including Plaintiffs),

12  they are not subject to enjoinment.  Recognizing this, Plaintiffs do not seek an order enjoining the

13  implementation guidelines.  *See* Proposed Order, ECF No. 13-3.

14      **D.**   **Plaintiffs' Claims**

15      Plaintiffs allege that they "fear[]" and "worry[]" they will be disciplined or terminated if

16  they continue to use the same methodologies and course materials they have utilized in the past,

17  because they are concerned these methodologies and course materials may not comply with the

18  State Center Community College District's diversity, equity, inclusion, and accessibility policy.

19  (Verif. Compl. 98-173).  By their First, Third, Fifth, Seventh, and Ninth causes of action against

20  the State Defendants, Plaintiffs seek to enjoin California Code of Regulations, title 5, sections

21  52510, 53400, 53401, 53403, 53425, 53601, 53602, and 35605, alleging that the regulations are

22  facially unconstitutional.

23                        **STANDARD OF REVIEW**

24      "A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v.*

25  *Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Mazurek v. Armstrong*, 520 U.S.

26  968, 972 (1997) (a preliminary injunction "is an extraordinary and drastic remedy, one that

27  should not be granted unless the movant, by a clear showing, carries the burden of persuasion.").

28  "A preliminary injunction . . . is not a preliminary adjudication on the merits but rather a device

for preserving the status quo." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). The purpose of a preliminary injunction is to protect the moving party from a likely "irreparable loss of rights" until the court may render its final decision on the merits. *Id.* "At a minimum, a plaintiff seeking preliminary injunctive relief must demonstrate that it will be exposed to irreparable harm," and "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citations omitted). Accordingly, when—like here— the moving party seeks "mandatory preliminary relief"—that is, relief that changes the status quo as it existed before the conflict giving rise to the case—such relief "is subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party." *Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993).

"[T]he basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). A plaintiff seeking a preliminary injunction must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "The first factor under *Winter* is the most important," and a court need not consider the remaining three elements where the plaintiff fails to show a likelihood of success on the merits. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). And when "the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009). Where the government is a party, the balance of equities factor merges with the public interest factor. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). But a plaintiff must still satisfy all four elements, and the *Winter* test does not "collapse into the merits" of a First Amendment claim. *See DISH Network Corp. v. FCC,* 653 F.3d 771, 776 (9th Cir. 2011).

**ARGUMENT**

I.   **PLAINTIFFS LACK STANDING TO SEEK EXTRAORDINARY RELIEF.**

As a threshold matter, Plaintiffs lack standing to bring their claims against the State Defendants because the regulations Plaintiffs seek to have enjoined neither apply directly to them nor create any imminent risk that they will be harmed by the State Defendants.

To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, ⸺ U.S. ⸺, 141 S. Ct. 2190, 2203 (2021); *see also Lujan v Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992) (holding that an "invasion of a legally protected interest" that is "conjectural or hypothetical" is not sufficient to establish an "injury in fact").

Establishing the "injury in fact" element of standing is a "rigid constitutional requirement" that a plaintiff must meet "to invoke a federal court's jurisdiction," even when, as in the present case, the plaintiff brings a "pre-enforcement" First Amendment challenge. *Lopez v. Candaele*, 630 F.3d 775, 786 (9th Cir. 2010).  In such pre-enforcement cases, to determine if a plaintiff faces a credible threat of enforcement—and has thus suffered an "actual injury"—courts examine "1) the likelihood that the law will be enforced against the plaintiff; 2) whether the plaintiff has shown, 'with some degree of concrete detail,' that she intends to violate the challenged law; and 3) whether the law even applies to the plaintiff." *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1172 (9th Cir. 2018) (quoting *Lopez v. Candaele*, 630 F.3d at 786).  In that regard, "there must be a genuine threat of imminent prosecution" to establish standing. *Unified Data Servs., LLC v. Fed. Trade Comm'n*, 39 F.4th 1200, 1210 (9th Cir. 2022); *see also Younger v. Harris*, 401 U.S. 37, 42 (1971) ("[P]ersons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs.").

Plaintiffs cannot make the requisite "clear showing" of an injury in fact and thus lack standing to challenge the regulations on two separate, yet related, bases: 1) the regulations do not apply directly to Plaintiffs; and 2) Plaintiffs have not—and cannot—show that they face an imminent risk of any harm at the hands of the State Defendants as a result of the regulations.

8

### A. The Challenged Regulations Apply to California's Community College Districts, Not Plaintiffs.

The regulations do not apply to Plaintiffs directly.  Rather, they direct community college districts to consider proficiency in diversity, equity, inclusion, and accessibility concepts in employment processes, as implemented through district policy and collective bargaining.  A plaintiff's "claims of future harm lack credibility when the challenged speech restriction by its terms is not applicable to the plaintiff[]." *Lopez v. Candaele,* 630 F.3d at 788; *Barke v. Banks,* 25 F.4th 714, 719-20 (9th Cir. 2022), *see also Leonard v. Clark,* 12 F.3d 885, 888-89 (9th Cir. 1993).

The Ninth Circuit's decision in *Barke* is instructive.  There, the plaintiffs—who were "elected members of local California government bodies, including city councils, school boards, and community college and special purpose districts"—challenged California Government Code section 3550.  *Barke v. Banks,* 25 F.4th at 716-17.  Section 3550 provides that "[a] public employer shall not deter or discourage public employees . . . from becoming or remaining members of an employee organization."  The plaintiffs alleged that the law violated their First Amendment rights and chilled their speech based on a fear that the California Public Employment Relations Board would "erroneously attribute" their personal statements concerning union membership to their governmental employers, "thereby causing their employers to be sanctioned and damaging [the plaintiffs'] reputations as a result."  *Id.* at 717-18.  Affirming the district court's order dismissing the case, the Ninth Circuit held that because section 3550 did not apply to the plaintiffs or "the speech Plaintiffs allege they want to engage in," they "failed to demonstrate that they ha[d] suffered an injury in fact sufficient to establish their standing to pursue their pre-enforcement challenge."  *Id.* at 720-21.

Here, as in *Barke*, the challenged regulations do not apply directly to Plaintiffs.  As discussed above, the California Community Colleges Board provides "leadership and direction" to community college districts, while allowing those districts to maintain "to the maximum degree permissible, [their] local authority and control in the administration" of institutions within their district.  Cal. Educ. Code § 70901(a).  Consistent with this principle, the regulations at issue

9

1    operate upon the community college districts, not upon individual district employees who remain

2    under the supervision of their employer-districts.

3         Because the regulations do not apply directly to Plaintiffs, any claim by Plaintiffs that they

4    will suffer future harm as a result of the regulations fails.

5    **B.    Plaintiffs Do Not Face an "Imminent Risk" of Harm Under the
     Regulations.**

6

7         Plaintiffs cannot show that they are likely to suffer irreparable harm absent a preliminary

8    injunction because they face no "imminent" risk of any action by the State Defendants for

9    expressing their alleged viewpoints concerning diversity, equity, inclusion, and accessibility, even

10   viewpoints that potentially conflict with those of the California Community Colleges.  To

11   challenge the prospective enforcement of a law or regulation, a plaintiff must establish "a realistic

12   danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt*

13   *v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, (1979).  "Irreparable" injury is an

14   "indispensable" requirement for a preliminary injunction.  *D.T. v. Sumner Cnty. Schs.*, 942 F.3d

15   324, 326 (6th Cir. 2019).  "A plaintiff must do more than merely allege imminent harm sufficient

16   to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to

17   preliminary injunctive relief." *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d at 674

18   (citation omitted) (emphasis in original).  When determining whether the "irreparable injury"

19   requirement is met, the Ninth Circuit considers, among other things, "whether the prosecuting

20   authorities have communicated a specific warning or threat to initiate proceedings." *Thomas v.*

21   *Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc).

22        The State Defendants are not prosecuting authorities. The State's community college

23   districts are legally distinct entities from both the State and the Board.  Community college

24   districts are independent local government entities controlled by a locally elected board of

25   trustees, each with the power to sue and be sued. Cal. Educ. Code § 72000(a) ("The district and

26   its governing board may sue and be sued, and shall act in accordance with Section 70902.").

27   Education Code section 70902 enumerates the authorities and duties of local districts and their

28   governing board of trustees, and specifically requires that "the governing board of *each*

10

*community college district shall . . . employ* and assign all personnel not inconsistent with the minimum standards adopted by the board of governors and establish employment practices, salaries and benefits for all employees not inconsistent with the laws of this state." *Id.* § 70902(b)(4) (emphasis added).  And it is each district that is responsible for "adopt[ing] policies for the evaluation of employee performance, including tenure reviews, that requires demonstrated, or progress toward, proficiency in the locally-developed [diversity, equity, inclusion, and accessibility] competencies or those published by the Chancellor pursuant to section 53601."  Cal. Code Regs. tit. 5, § 53602.

The distinct roles and different duties of the Board and local districts were examined in *First Interstate Bank of California v. State of California,* 197 Cal. App. 3d 627 (1987).  There, First Interstate Bank attempted to hold the State and the Board of Governors responsible when a community college district failed to make lease payments in connection with a lease-purchase agreement.  First Interstate contended that the construction and maintenance of school buildings is a sovereign and nondelegable duty of the Board, and that the district was acting merely in an agency capacity on the project.

The California Court of Appeal held that the district was a separate entity, and neither the State nor the Board could be held liable for any acts undertaken by a community college district, the community college, or the college's employees.  *First Interstate Bank,* 197 Cal. App. 3d at 633.  The court further noted that neither the state Constitution nor any statute provides that a district can undertake any action at the State or Board's behest.  "[T]he fact that a state agency is created by statute to discharge a duty constitutionally imposed on the state does not transmute the agency into 'the state,' nor render the state liable for its acts under a general theory of respondeat superior."  *Id.*  Recognizing that "liability is fixed on the public entity whose employee causes the injury," the court found the State and the Board were not liable.  *Id.*, at 634; *see also Johnson v. San Diego Unified Sch. Dist.*, 217 Cal. App. 3d 692, 699 (1990) (confirming the "separate distinct character of the school district as distinguished from the state educational entities").

The State Defendants do not employ, evaluate, promote, or discipline district staff or college professors, including Plaintiffs.  Instead, the Board sets minimum hiring standards for

11

1   personnel hired by each district.  Cal. Educ. Code § 70901(b)(1)(B).  All decisions regarding

2   employee hiring, employment practices, performance evaluation, and potential termination are the

3   responsibility of the district.  *Id.*  Thus, Chancellor Christian and the Board cannot and will not

4   take any action against Plaintiffs concerning their speech.

5        Even if Plaintiffs could show that the State Defendants had the authority to take adverse

6   action against Plaintiffs under the regulations (which they cannot), Plaintiffs still would fail to

7   establish an imminent risk of harm, because they have not alleged that the specific actions

8   Plaintiffs purportedly intend to take violate the regulations.  As written, the regulations do not

9   preclude Plaintiffs from, for example, assigning students Martin Luther King Jr.'s *Letters from*

10  *Birmingham Jail* (Verif. Compl. ¶¶ 118, 132, 273, ECF No. 1) or from discussing Marie Curie's

11  contributions to the field of chemistry (*Id.* ¶ 153).  Nor do Plaintiffs allege that they have been

12  informed by any source (including the State Defendants) that the methodologies and course

13  materials they have previously used conflict with the regulations.  Plaintiffs' allegations that they

14  "fear" and "worry" that their methodologies and course materials may violate the regulations are

15  conjectural and hypothetical and, thus, do not constitute the injury in fact necessary to establish

16  standing.

17       Plaintiffs face no "imminent threat" of action by any of the State Defendants, nor do they

18  face any "actual injury" resulting from the regulations.  Because Plaintiffs' allegations lack this

19  essential element allowing them to seek injunctive relief, their motion should be denied.

20  **II.   PLAINTIFFS HAVE NOT SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS THAT**
    **THE REGULATIONS ARE UNCONSTITUTIONAL.**

21

22       Plaintiffs' request that the Court preliminarily enjoin the regulations further fails because

23  they have not shown a likelihood of success in establishing that the regulations are

24  unconstitutional.  The challenged regulations do not violate Plaintiffs' First Amendment rights for

25  at least two reasons: (1) the regulations do not restrict Plaintiffs' speech, but rather express the

26  Board's own principles regarding diversity, equity, inclusion, and accessibility; and (2) the

27  regulations are constitutionally permissible non-discrimination policies that "do[] not target

28  speech or discriminate on the basis of its content, but instead serve to remove access barriers

12

1   imposed against groups that have historically been excluded." *Alpha Delta Chi-Delta Chapter v.*

2   *Reed,* 648 F.3d 790, 801 (9th Cir. 2011).

3       **A.  The Board Is Entitled to Express Its Ideals Regarding Diversity, Equity,
            Inclusion, and Accessibility, and the Challenged Regulations Serve This
4           Purpose.**

5       By their plain language, the regulations do not restrict the free speech of any employee in

6   their individual capacity, or infringe upon any faculty member's—including Plaintiffs'—

7   academic freedom.  Rather, the regulations set forth the Board's policy objective that district

8   evaluation policies and practices reflect its ideals and principles regarding diversity, equity,

9   inclusion, and accessibility.  Accordingly, the regulations Plaintiffs challenge do not implicate the

10  First Amendment.

11      The California Community Colleges Board is entitled to express its ideals and principles

12  concerning diversity, equity, inclusion, and accessibility, particularly when that expression does

13  not regulate another person's speech. *Rosenberger v. Rector & Visitors of the Univ. of Virginia,*

14  515 U.S. 819, 828, 833 (1995) (although "the government may not regulate speech based on its

15  substantive content . . . when the State is the speaker, it may make content-based choices").  As

16  the Supreme Court has long recognized, the "academic freedom" of "state and local educational

17  institutions" is "a special concern of the First Amendment." *Regents of Univ. of Mich. v. Ewing,*

18  474 U.S. 214, 226 (1985) (quoting *Keyishian v. Board of Regents,* 385 U.S. 589, 603 (1967)).

19      In *Downs v. Los Angeles Unified Sch. Dist*., 228 F.3d 1003, 1013 (9th Cir. 2000)*,* the school

20  district issued "policies and practices" that supported "Educating for Diversity," and provided

21  posters and materials supporting Gay and Lesbian Awareness Month to be posted on school

22  bulletin boards. *Downs,* 228 F.3d at 1005-06.  The district court rejected the plaintiff teacher's

23  claim that the district violated his First Amendment rights when it refused to allow him to post

24  contrary messages on the bulletin boards. *Id.* at 1008.  In affirming that ruling, the Ninth Circuit

25  held that governmental entities "may decide not only to talk about gay and lesbian awareness and

26  tolerance in general, but also to advocate such tolerance if it so decides." *Id*. at 1014, citing *Rust*

27  *v. Sullivan,* 500 U.S. 173, 194 (1991).

28

*Bair v. Shippensburg Univ.,* 280 F. Supp. 2d 357 (M.D. Pa. 2003), illustrates the California Community Colleges' right to express guiding principles concerning diversity and equity.  In *Bair*, university students sought to preliminarily enjoin enforcement of the following policies, on the ground that they violated the students' First Amendment rights: (1) a portion of the Preamble to the University Catalog which stated that "[t]he university will strive to protect [the freedoms necessary for the pursuit of truth and knowledge] if they are not inflammatory or harmful towards others," and (2) a portion of the University's Racism and Cultural Diversity Statement which provided, "[i]t is the unequivocal position of Shippensburg University to prohibit racism/ethnic intimidation and harassment; and to affirm cultural diversity, social justice and equality." *Id.* at 362-363.  The *Bair* court denied the students' motion for preliminary injunction as to both of these policies on the ground that neither policy implicated First Amendment concerns, as "the cited language seeks to advise the student body of the University's ideals and is therefore aspirational rather than restrictive." *Id.* at 370-71.

As in *Bair*, the challenged regulations do not implicate Plaintiffs' First Amendment rights. Taken together, the regulations affirm the Board's "official position" to "embrace diversity among students, faculty, staff and the communities we serve" (Cal. Code Regs. tit. 5, §§ 51200 and 51201), and direct the State's community college districts to create their own employment policies consistent with this goal.  *Id.* §§ 53425, 53601, 53602, and 53603.  Critically, none of the challenged regulations include any enforcement mechanisms by which any employee of a community college district (including Plaintiffs) can be punished by any State Defendant for engaging in speech contrary to the ideals set forth in the regulations, further bolstering the conclusion that the regulations are an expression of the Board's own principles, rather than mechanisms by which the Board or the Chancellor can or will restrict Plaintiffs' individual speech.

Plaintiffs contend that the challenged regulations restrict their speech by requiring them to "affirm a 'race-conscious and intersectional' viewpoint," "adjust their language 'from a colonized mindset to an equity mindset,'" and "'shift from a collectivism perspective' instead of an 'individualist perspective.'"  Motion, 12:7-14, ECF No. 13-1.  However, the regulations

14

1   themselves do not contain any of the language that Plaintiffs cite.  Instead, Plaintiffs' argument

2   conflates the regulations with the non-binding, advisory implementation guidelines.  *See* Verif.

3   Compl. Exs. B and D, ECF No. 1.  Because the implementation guidelines are not enforceable

4   against either the districts or individual community college employees, Plaintiffs cannot credibly

5   claim that the statements contained in the implementation guidelines restrict their speech.

6          To maintain their action, Plaintiffs are required to show that their expression of allegedly

7   protected speech will be a substantial or motivating factor in an adverse employment action.  *Eng*

8   *v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009) ("[T]he plaintiff bears the burden of showing the

9   state took adverse employment action . . . [and that] speech was a substantial or motivating

10  factor in the adverse action" (internal quotation marks omitted)).  Because the regulations do not

11  proscribe speech, Plaintiffs' action against the State Defendants necessarily fails.  *Dahlia v.*

12  *Rodriguez*, 735 F.3d 1060, 1067 n.4 (9th Cir. 2013) (en banc) ("[F]ailure to meet any one of [the

13  *Eng* factors] is fatal to the plaintiff's case.").

14         Because Plaintiffs cannot establish that their First Amendment rights are or will be

15  infringed by the Board's regulations, they are not "likely to succeed on the merits" of their claim

16  that the regulations are unconstitutional, as required under *Winter*, 555 U.S. at 20.  Accordingly,

17  Plaintiffs are not entitled to an order enjoining the challenged regulations.

18      **B.    The Regulations Are Constitutionally Permissible Non-Discrimination**
            **Policies.**
19

20         Plaintiffs also fail to establish a likelihood of success on the merits because the challenged

21  regulations aim to "eliminate . . . barriers to equity" in community colleges (Cal. Code Regs. tit.

22  5, § 51201(c)), rather than to suppress any individual's speech.  "As the Supreme Court has made

23  clear, antidiscrimination laws intended to ensure equal access to the benefits of society serve

24  goals 'unrelated to the suppression of expression' and are neutral as to both content and

25  viewpoint." *Alpha Delta Chi-Delta Chapter v. Reed*, 648 F.3d at 801 (quoting *Roberts v. U.S.*

26  *Jaycees*, 468 U.S. 609, 623–24 (1984)); *see also Hurley v. Irish–Am. Gay, Lesbian & Bisexual*

27  *Grp. of Boston*, 515 U.S. 557, 572 (1995) (public accommodations law forbidding discrimination

28  based on sexual orientation and other grounds did not, "on its face, target speech or discriminate

15

on the basis of its content, the focal point of its prohibition being rather on the act of

discriminating against individuals in the provision of publicly available goods, privileges, and

services on the proscribed grounds.").

In *Alpha Delta Chi,* the Ninth Circuit upheld the constitutionality of San Diego State

University's nondiscrimination policy, which stated that "[u]nderlying San Diego State's

educational goals are basic values that include . . . freedom from discrimination" and affirmed its

"positive commitment toward diversity." *Alpha Delta Chi,* 648 F.3d at 799. The policy

encouraged student organizations "to make a conscious effort to undertake recruitment efforts to

ensure diversity [and] take steps to reach populations currently underrepresented." *Id.* The

policy further "challenged" the organizations "to express yourself in a manner that promotes and

maintains the ideals of respect, equality, diversity, and freedom from harassment." *Id.* This

nondiscrimination policy was challenged by Christian student groups that were denied official

recognition in San Diego State's student organization program because of their exclusionary

practices. *Id.* 795-96. Citing *Roberts*, 468 U.S. at 623–24, and *Hurley*, 515 U.S. at 572, the

Ninth Circuit rejected these claims, holding that the nondiscrimination policy did not "target

speech or discriminate on the basis of its content, but instead serve[d] to remove access barriers

imposed against groups that have historically been excluded." *Id.* at 801.

Similar to the nondiscrimination policy in *Alpha Delta Chi,* the regulations Plaintiffs

challenge do not "target speech or discriminate on the basis of its content," but instead seek to

"remove access barriers imposed against groups that have historically been excluded." *Alpha

Delta Chi,* 648 F.3d at 801. The regulations promote the Board's "commitment to diversity,"

which "requires that we strive to eliminate those barriers to equity and that we act deliberately to

create a safe, inclusive, and anti-racist environment" that "offers equal opportunity for all." Cal.

Code Regs. tit. 5, § 51201(c) and (d).

"Cognizant that judges lack the on-the-ground expertise and experience of school

administrators, . . . we have cautioned courts in various contexts to resist 'substitut[ing] their own

notions of sound educational policy for those of the school authorities which they review.'"

*Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S.

16

661, 686 (2010) (quoting *Bd. of Ed. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982)).  Here, the Board has adopted regulations to guide districts in creating "sound educational policies" for professors to be proficient in principles of diversity, equity, inclusion, and accessibility.  Because the Supreme Court and Ninth Circuit caution against second-guessing such policies, and indeed have held that similar policies do not violate the First Amendment, Plaintiffs' motion to enjoin the challenged regulations should be denied.

### C.   Plaintiffs' Overbreadth and Vagueness Challenges to the Regulations Are Not Likely to Succeed on the Merits.

Plaintiffs further fail to establish that they are likely to succeed on the merits of their claims that the regulations are overbroad and vague.  To establish that the regulations are overbroad, Plaintiffs must show that "a substantial number of [the regulations'] applications are unconstitutional, judged in relation to the provision's plainly legitimate sweep." *Hernandez v. City of Phoenix*, 43 F.4th 966, 980 (9th Cir. 2022).  To prevail on their vagueness challenge, Plaintiffs must demonstrate that the challenged provisions fail to afford the districts "a reasonable opportunity to understand what conduct [the regulations] prohibit []," or that the provisions permit "arbitrary and discriminatory enforcement." *Hill v. Colorado,* 530 U.S. 703, 732 (2000).  If it is clear what a regulation proscribes "in the vast majority of its intended applications," then the regulation is not unconstitutionally vague. *Id.* at 733; *see also Waters v. Churchill,* 511 U.S. 661, 673 (1994) (plurality opinion) (acknowledging that policies applicable to government employees may be framed in language that might be deemed impermissibly vague to the public at large); *see also Hernandez,* 43 F.4th at 981-83 (rejecting vagueness challenge to police department social media policy prohibiting speech that was "detrimental to the mission and functions of the Department," would "undermine the goals and mission of the Department or City," or would "undermine respect or public confidence in the Department").  Moreover, "the elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *Broadrick v. Oklahoma*, 413 U.S. 601, 617, n.16 (1973); *see also Screws v. United States*, 325 U.S. 91, 98 (1945).  Stated another way, "courts will not use the overbreadth doctrine to completely remove a law from the legal landscape if they can identify a

17

1  construction of the law that would narrow its reach so that it would pass constitutional muster."

2  *College Republicans at San Francisco State Univ. v. Reed*, 523 F. Supp. 2d 1005, 1013 (N.D.

3  Cal. 2007).

4      The challenged regulations are not overbroad because their only application is to direct

5  California's local community college districts to establish policies that promote proficiency in

6  diversity, equity, inclusion, and accessibility concepts.  As discussed above, this application is a

7  constitutional exercise of the Board's academic freedom to promote its ideals of diversity, equity,

8  inclusion, and accessibility throughout the California Community Colleges.  Similarly, Plaintiffs'

9  vagueness challenge fails, because the regulations make clear to the community college districts

10  (the only parties to whom these regulations directly apply) that they are required to implement

11  diversity, equity, inclusion, and accessibility policies in the community colleges that they

12  govern.[2]

13      In their motion, Plaintiffs cite excerpts of the implementation guidelines to support their

14  argument that the regulations are vague and overbroad.  *See* Pls.' Mot. for Prelim Inj., 20:27-21:6,

15  22:3-24, ECF No. 13-1.  Again, Plaintiffs conflate the implementation guidelines and the

16  regulations.  Because the implementation guidelines are separate and distinct from the regulations

17  and are not binding on either the districts or Plaintiffs, their contents cannot be imputed into the

18  regulations for purposes of determining whether the regulations are overbroad or vague.

19  **III.   PLAINTIFFS CANNOT SHOW THAT THE BALANCE OF HARMS AND THE PUBLIC
          INTEREST SUPPORT AN INJUNCTION.**

20

21      Plaintiffs' claims of injury from the Board's promulgation of its aspirational regulations are

22  based on an alleged denial of their First Amendment rights.  Because their constitutional

23  challenge to the regulations fails, Plaintiffs cannot demonstrate that they will be injured, let alone

24  irreparably so, in the absence of an injunction against the regulations.  *See Goldie's Bookstore,*

25  *Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984).  But even if Plaintiffs could state a

26  constitutional claim challenging the regulations—which they cannot—their motion should still be

27  _____

28  [2] Because the regulations do not apply to Plaintiffs, they also lack standing to challenge
    any alleged overbreadth or vagueness.  Any such challenge would be within a district's purview.

18

1    denied, as the crucial public interest served by the challenged regulations (namely, ensuring equal

2    access to the California Community Colleges for nearly two million students) outweighs any

3    nominal infringement of speech Plaintiffs allege they may experience as a result of the

4    regulations.

5        When the government is the opposing party, the last two factors of the preliminary

6    injunction analysis—the balance of equities and public interest—merge. *Drakes Bay Oyster Co.*

7    *v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). To analyze these factors, a court must "balance

8    the competing claims of injury and must consider the effect on each party of the granting or

9    withholding of the requested relief," paying "particular regard for the public consequences in

10   employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (citation omitted).

11       "A State enjoys broad authority to create rights of public access on behalf of its citizens,"

12   and has the constitutional authority to enact legislation prohibiting invidious discrimination.

13   *Roberts v. United States Jaycees*, 468 U.S. 609, 624–26 (1984). Specifically regarding education,

14   the Supreme Court has held educational policies instilling "shared values of a civilized social

15   order," even in instances in which they could restrict speech that "advocates" contrary positions,

16   are constitutionally sound and do not run afoul of the First Amendment. *Hazelwood Sch. Dist. v.*

17   *Kuhlmeier*, 484 U.S. 260, 272 (1988). Doing otherwise would constrain schools "from fulfilling

18   their role 'as a principal instrument in awakening the child to cultural values, in preparing him for

19   later professional training, and in helping him to adjust normally to his environment.'" *Id.*

20   (quoting *Brown v. Board of Education*, 347 U.S. 483, 493 (1954)).

21       California has a strong interest in ensuring students have equal educational opportunities

22   and ensuring that concepts of diversity, equity, inclusion, and accessibility are promoted in all

23   community colleges. *See Brown v. Board of Ed. of Topeka,* 347 U.S. at 493 (educational

24   "opportunity, where the state has undertaken to provide it, is a right which must be made

25   available to all on equal terms."). California law declares that no person shall be subjected to

26   discrimination in "any program or activity conducted by any postsecondary educational

27   institution" receiving any financial assistance from the State. Cal. Educ. Code §66270; *see also*

28   Cal. Gov. Code §11135(a). The State has a strong interest in the continued viability of

1    regulations that promote its laws and policies endorsing diversity, equity, inclusion, and

2    accessibility, and would suffer irreparable harm if the Court were to enjoin them. *Maryland v.*

3    *King*, 567 U.S. 1301, 1303 (2013) ("[A]nytime a State is enjoined by a court from effectuating

4    statutes enacted by representatives of its people, it suffers a form of irreparable injury" (internal

5    quotation marks omitted)).  That is particularly true because the regulations are constitutional as

6    written. *See Roberts,* 468 U.S. at 624-26.[3]

7         On the other hand, Plaintiffs allege a deprivation of constitutional rights, but any actual

8    burden on those rights that might exist (and the State Defendants submit there is none) is

9    incidental and exceedingly minimal.  The Fourteenth Amendment and the California Constitution

10   guarantee all citizens equal rights and equal protection under the law.  All the regulations in

11   question do is articulate the aspirational goal of enhancing diversity, equity, inclusion, and

12   accessibility in community colleges.  Any purported impact on speech—particularly speech that

13   comes in the form of statements that are counter to these goals—is far outweighed by the State's

14   interest in ensuring that community colleges promote diversity, equity, inclusion, and

15   accessibility.  And as discussed above, the regulations do not impose any penalty on Plaintiffs if

16   they choose to express a viewpoint counter to them.

17        Finally, the denial of Plaintiffs' preliminary injunction motion best serves the public

18   interest.  "[W]hen a district court balances the hardships of the public interest against a private

19   interest, the public interest should receive greater weight." *Fed. Trade Comm'n. v. Affordable*

20   *Media*, 179 F.3d 1228, 1236 (9th Cir. 1999) (citation omitted).  Here, the regulations serve the

21   important public interest of promoting rights that are embodied in the United States and

22   California Constitutions and the Americans with Disabilities Act.  *See Bible Club v. Placentia-*

23   *Yorba Linda Sch. Dist.*, 573 F. Supp. 2d 1291, 1300 (C.D. Cal. 2008) (stating that "[t]he public

24   interest is clearly implicated" in a case involving the exercise of constitutional rights).  There are

25   no grounds to enjoin regulations promoting the First and Fourteenth Amendment rights of almost

26

27   [3] As discussed above (*supra* at I.A.), Plaintiffs cannot make an "as applied" challenge to
     the regulations since the regulations do not apply to them. *See Wells Fargo Bank, N.A. v.*
     *Mahogany Meadows Ave. Tr.*, 979 F.3d 1209, 1217 (9th Cir. 2020) ("An as-applied challenge, by

28   contrast, focuses on the statute's application to the plaintiff.")

                                                    20

two million California community college students, particularly when that injunction would unnecessarily require the State to tacitly accept that equity and accessibility do not apply to California's community colleges.

An injunction is unwarranted, particularly when balanced against the alleged potential—but unrealized and speculative—harm that Plaintiffs allege may arise if the regulations promoting the aspirational goals of diversity, equity, inclusion, and accessibility are allowed to stand.  Plaintiffs' motion should be denied.

## CONCLUSION

For the foregoing reasons, the State Defendants respectfully request that the Court deny Plaintiffs' Motion for Preliminary Injunction seeking to enjoin enforcement of California Code of Regulations, title 5, sections 52510, 53400, 53401, 53403, 53425, 53601, 53602, and 35605.

Dated:  September 13, 2023

Respectfully submitted,

ROB BONTA
Attorney General of California
ANYA M. BINSACCA
Supervising Deputy Attorney General

 */s/ Jay C. Russell*
JAY C. RUSSELL
JANE E. REILLEY
DEPUTY ATTORNEYS GENERAL
*Attorneys for Defendants Sonya Christian, in her official capacity as the Chancellor of the California Community Colleges; Amy M. Costa, Hildegarde B. Aguinaldo, Darius W. Anderson, Adrienne C. Brown, Tom Epstein, Felicia Escobar Carrillo, Jolena M. Grande, Pamela Haynes, Eleni Kounalakis, Harry Le Grande, Paul Medina, Jennifer L. Perry, Bill Rawlings, Mary H. Salas, Blas Villalobos, and Joseph R. Williams, in their official capacities as members of the Board of Governors of the California Community Colleges*

21

1
2

**INFORMATION REQUIRED UNDER**
**EASTERN DISTRICT LOCAL RULE OF COURT 231(D)(3)**

3          Defendant Sonya Christian, in her official capacity as the Chancellor of the California

4    Community Colleges, and Defendants Amy M. Costa, Hildegarde B. Aguinaldo, Darius W.

5    Anderson, Adrienne C. Brown, Tom Epstein, Felicia Escobar Carrillo, Jolena M. Grande, Pamela

6    Haynes, Eleni Kounalakis, Harry Le Grande, Paul Medina, Jennifer L. Perry, Bill Rawlings, Mary

7    H. Salas, Blas Villalobos, and Joseph R. Williams, in their official capacities as members of the

8    Board of Governors of the California Community Colleges, do not intend to present oral

9    testimony at the hearing.  Defendants estimate that each side should have approximately 15

10   minutes to present their arguments.

11

12   Dated:  September 13, 2023                            Respectfully submitted,

13                                                         ROB BONTA
                                                           Attorney General of California
14                                                         ANYA M. BINSACCA
                                                           Supervising Deputy Attorney General
15

16
                                                           */s/ Jay C. Russell*
17                                                         JAY C. RUSSELL
                                                           JANE E. REILLEY
18                                                         Deputy Attorneys General
                                                           *Attorneys for Sonya Christian, in her official*
19                                                         *capacity as Chancellor of the California*
                                                           *Community Colleges*
20

21

22

23

24

25

26

27

28

Defendants' Opposition to Motion for Preliminary Injunction (1:23-cv-01228-ADA-CDB)

# CERTIFICATE OF SERVICE

Case Name:   **_Palsgaard, Loren, et al. v. Sonya_**        Case No.   **1:23-cv-01228-ADA-CDB**
**_Christian, et al._**

I hereby certify that on <u>September 13, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>September 13, 2023</u>, at San Francisco, California.

M. Mendiola
Declarant

Signature

SA2023304307
43878310.docx