ROB BONTA, State Bar No. 202668
Attorney General of California
ANYA M. BINSACCA, State Bar No. 189613
Supervising Deputy Attorney General
JAY C. RUSSELL, State Bar No. 122626
JANE REILLEY, State Bar No. 314766
Deputy Attorney General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-3879
  Fax:  (415) 703-5480
  E-mail:  Jay.Russell@doj.ca.gov
*Attorneys for Defendants*
*Sonya Christian, in her official capacity as*
*Chancellor of the California Community Colleges;*
*Amy M. Costa, Hildegarde B. Aguinaldo, Darius W.*
*Anderson, Adrienne C. Brown, Tom Epstein, Felicia*
*Escobar Carrillo, Jolena M. Grande, Pamela*
*Haynes, Eleni Kounalakis, Harry Le Grande, Paul*
*Medina, Jennifer L. Perry, Bill Rawlings, Mary H.*
*Salas, Blas Villalobos, and Joseph R. Williams, in*
*their official capacities as members of the Board of*
*Governors of the California Community Colleges*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LOREN PALSGAARD, et al.,** | 1:23-cv-01228-NODJ-CDB |
| Plaintiffs, | **STATE DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |
| v. | |
| **SONYA CHRISTIAN, et al.,** | |
| Defendants. | Date:          February 28, 2024<br>Time:          9:00 AM<br>Dept:          Courtroom 5<br>Judge:        No District Court Judge<br>Trial Date:  Not Scheduled<br>Action Filed:  August 17, 2023 |

1

**TABLE OF CONTENTS**

2

**Page**

3

Introduction ...................................................................................................................... 1

4

Background ....................................................................................................................... 2

    I.       California Community Colleges............................................................................ 2

5

    II.     The Challenged Regulations ................................................................................ 4

6

    III.    The Implementation Guidelines .......................................................................... 5

7

    IV.    Plaintiffs' Claims ................................................................................................. 6

Standard of review ........................................................................................................... 7

8

Argument .......................................................................................................................... 8

9

    I.       Plaintiffs Lack Standing to Bring Their Claims Against the State
           Defendants ............................................................................................................ 8

10

          A.     The Challenged Regulations Apply to California's Community
                College Districts, Not Plaintiffs........................................................... 9

11

          B.     Plaintiffs Do Not Face an "Imminent Risk" of Harm Under the
                Regulations ......................................................................................... 10

12

    II.     Plaintiffs Fail to State a Claim for Relief Against the State Defendants.............. 13

13

          A.     The Board Is Entitled to Express Its Ideals Regarding Diversity,
                Equity, Inclusion, and Accessibility, and the Challenged
                Regulations Serve This Purpose .......................................................... 13

14

          B.     The Complaint Fails to Allege that the State Defendants Have or
                 Will Discriminate Against Plaintiffs Based on Their Viewpoints........... 16

15

          C.     Plaintiffs Fail to Allege a Plausible Claim that the State Defendants
                Have or Will Compel Them to Engage in Any Particular Speech .......... 17

16

          D.     Plaintiffs Do Not State a Cognizable Prior Restraint Claim Against
                the State Defendants............................................................................ 18

17

           E.     Plaintiffs' Overbreadth and Vagueness Challenges to the
                Regulations Are Subject to Dismissal................................................... 19

Conclusion...................................................................................................................... 20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

CASES

*Alexander v. United States*
    509 U.S. 544 (1993)............................................................................ 18

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)............................................................................ 7

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*
    459 U.S. 519 (1983)............................................................................ 7

*Babbitt v. United Farm Workers Nat'l Union*
    442 U.S. 289 (1979)............................................................................ 10

*Bair v. Shippensburg Univ.*
    280 F. Supp. 2d 357 (M.D. Pa. 2003) ............................................ 14, 15

*Barke v. Banks*
    25 F.4th 714 (9th Cir. 2022)............................................................... 9

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007)............................................................................ 7

*Broadrick v. Oklahoma*
    413 U.S. 601 (1973)............................................................................ 19

*Chapman v. Pier 1 Imports (U.S.) Inc.*
    631 F.3d 939 (9th Cir. 2011) ............................................................. 7

*City of Lakewood v. Plain Dealer Pub. Co.*
    486 U.S. 750 (1988)............................................................................ 18

*Clark v. Cmty. for Creative Non-Violence*
    468 U.S. 288 (1984)............................................................................ 13

*College Republicans at San Francisco State Univ. v. Reed*
    523 F. Supp. 2d 1005 (N.D. Cal. 2007) ........................................... 19

*Cousins v. Lockyer*
    568 F.3d 1063 (9th Cir. 2009)...................................................7, 16, 18

*Dahlia v. Rodriguez*
    735 F.3d 1060 (9th Cir. 2013) .......................................................... 15

ii

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*DaimlerChrystler Corp. v. Cuno*
    547 U.S. 332 (2008)............................................................................................ 7

4

*Downs v. Los Angeles Unified Sch. Dist.*
    228 F.3d 1003 (9th Cir. 2000) ......................................................................... 14

5

6

*Eng v. Cooley*
    552 F.3d 1062 (9th Cir. 2009) ......................................................................... 15

7

*First Interstate Bank of California v. State of California*
    197 Cal. App. 3d 627 (1987)...................................................................... 11, 12

8

9

*Hernandez v. City of Phoenix*
    43 F.4th 966 (9th Cir. 2022)............................................................................ 19

10

*Hill v. Colorado*
    530 U.S. 703 (2000).......................................................................................... 19

11

12

*In re Zappos.com, Inc.*
    888 F.3d 1020 (9th Cir. 2018) ......................................................................... 10

13

14

*Italian Colors Rest. v. Becerra*
    878 F.3d 1165 (9th Cir. 2018) ........................................................................... 8

15

*Johnson v. Riverside Healthcare System, LP*
    534 F.3d 1116 (9th Cir. 2008) ........................................................................... 7

16

17

*Johnson v. San Diego Unified Sch. Dist.*
    217 Cal. App. 3d 692 (1990)............................................................................ 12

18

19

*Leonard v. Clark*
    12 F.3d 885 (9th Cir. 1993).............................................................................. 9

20

*Lopez v. Candaele*
    630 F.3d 775 (9th Cir. 2010)......................................................................... 8, 9

21

22

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992)............................................................................................ 8

23

24

*Maya v. Centex Corp.*
    658 F.3d 1060 (9th Cir. 2011) ........................................................................... 7

25

*Moss v. U.S. Secret Service*
    572 F.3d 962 (9th Cir. 2018) ...................................................................... 7, 16

26

27

28

iii

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3
*Rosenberger v. Rector & Visitors of the Univ. of Virginia*
    515 U.S. 819 (1995)......................................................................................................... 14
4

5
*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*
    547 U.S. 47 (2006).......................................................................................................... 17
6

*Screws v. United States*
7    325 U.S. 91 (1945).......................................................................................................... 19

8
*Shurtleff v. City of Boston, Massachusetts*
    596 U.S. 243 (2022) ....................................................................................................... 14
9

10
*Speech First, Inc. v. Sands*
    69 F.4th 184 (4th Cir. 2023)........................................................................................... 15
11

*Texas v. Johnson*
12    491 U.S. 397 (1989)........................................................................................................ 13

13
*Thomas v. Anchorage Equal Rts. Comm'n*
    220 F.3d 1134 (9th Cir. 2000) ........................................................................................ 10
14

15
*TransUnion LLC v. Ramirez*
    594 U.S. ——, 141 S. Ct. 2190 (2021).............................................................................. 8
16

17
*Unified Data Servs., LLC v. Fed. Trade Comm'n*
    39 F.4th 1200 (9th Cir. 2022) ........................................................................................... 8

18
*Waters v. Churchill*
    511 U.S. 661 (1994) ....................................................................................................... 19
19

20
*Younger v. Harris*
    401 U.S. 37 (1971)............................................................................................................ 8

21

22

23

24

25

26

27

28

Mem. P. & A. Supp. State Defendants' Mot. to Dismiss Complaint (1:23-cv-01228-NODJ-CDB)

### TABLE OF AUTHORITIES
#### (continued)

**Page**

**STATUTES**

California Education Code
    § 66251 ...................................................................................................... 2
    § 66270 ...................................................................................................... 4
    § 70900 ...................................................................................................... 2
    § 70901(a) .............................................................................................. 4, 10
    § 70901(b)(1)(B) ........................................................................................ 12
    § 70902 .................................................................................................... 11
    § 70902(a)(1) ............................................................................................... 3
    §70902(b)(4) ...................................................................................... 3, 4, 11
    §§ 71090-71906 .......................................................................................... 3
    § 71090(b) ................................................................................................... 3
    § 72000(a) ................................................................................................. 11

California Equity in Higher Education Act (California Education Code §§ 66250 et
    seq.) ........................................................................................................... 2

California Government Code
    § 3540 ........................................................................................................ 4
    § 3540.1(k) ................................................................................................. 4
    § 3550 ........................................................................................................ 9

Educational Employment Relations Act .......................................................... 4

**CONSTITUTIONAL PROVISIONS**

United States Constitution
    First Amendment ................................................................................ *passim*
    Article III ........................................................................................... 7, 8, 13

**COURT RULES**

Federal Rules of Civil Procedure
    Rule 12(b)(1) ....................................................................... 2, 7, 8, 13
    Rule 12(b)(6) ....................................................................... 2, 7, 13, 16

**OTHER AUTHORITIES**

Cal. Cmty. Colls., *About Us*, https://www.cccco.edu/About-Us/Key-Facts (last
    visited Dec. 14, 2023) ................................................................................. 2

Mem. P. & A. Supp. State Defendants' Mot. to Dismiss Complaint (1:23-cv-01228-NODJ-CDB)

# TABLE OF AUTHORITIES
## (continued)

**Page**

Cal. Cmty. Colls., *Procedures and Standing Orders of the Board of Governors*
    (Dec. 2022) ch. 2, § 200, https://www.cccco.edu/-/media/CCCCO-
    Website/docs/procedures-standing-orders/december-2022-procedures-
    standing-ordersv2-
    a11y.pdf?la=en&hash=FF692A0AE8ACC8FE6BB2A4D75018302005A8A4D
    6 ................................................................................................................... 5

Cal. Cmty. Colls., *Students*, https://www.cccco.edu/Students (last visited Dec. 14,
    2023) .................................................................................................................. 2

California Code of Regulations, Title 5
    § 51200.......................................................................................................... 3, 15
    § 51201.......................................................................................................... 3, 15
    § 52510 ...................................................................................................4, 5, 6, 13
    § 52510(l) ........................................................................................................ 4, 12
    § 53000................................................................................................................. 3
    § 53400 ...................................................................................................4, 5, 6, 13
    § 53401 ...................................................................................................4, 5, 6, 13
    § 53403 ...................................................................................................4, 5, 6, 13
    § 53425 ...................................................................................................4, 5, 13, 15
    § 53426 ................................................................................................................. 6
    § 53601 ...............................................................................................4, 6, 11, 15
    § 53602 ......................................................................................................... *passim*
    § 53603 ............................................................................................................... 15
    § 53605 ...................................................................................................4, 5, 6, 13

California Code of Regulations, Title 8
    § 32001(c).............................................................................................................. 4

Resolution of the Board of Governors No. 2017-01 (January 17, 2017),
    *https://tinyurl.com/yc8bw6z9* (last visited Dec. 14, 2023) ..................................... 3

**INTRODUCTION**

The California Community Colleges Board of Governors has adopted regulations that require community college districts to include in their evaluation policies consideration of faculty proficiency in principles of diversity, equity, inclusion, and accessibility (DEIA). The regulations are not disciplinary in nature, and accordingly include no employee-discipline elements. The regulations advance Board policy favoring the diffusion of knowledge, and the application of DEIA principles on California community college campuses—fully consistent with law, and the authority of the Board to set and advance its policy perspectives. The regulations support the professional development of faculty who teach in the largest and most diverse system of higher education in the nation, help create truly inclusive campus environments, and reduce the administrative burden of incidents of campus social conflict. The regulations do not require any form of ideological adherence, do not compel speech, and do not impinge upon the customary bounds of academic freedom.

Plaintiffs Loren Palsgaard, James Druley, Michael Stannard, David Richardson, Bill Blanken, and Linda de Morales (Plaintiffs)—all of whom are employees of the State Center Community College District—nevertheless bring a First Amendment challenge against the Board's DEIA regulations. However, Plaintiffs have failed to meet their burden of establishing their standing to assert these claims, and their Complaint does not allege a credible claim for relief under any theory.

Plaintiffs have not, and cannot, plead the factual allegations necessary to establish that the regulations in any way pose an immediate threat of harm to them or directly impair their ability to express themselves freely. Nor is there any showing that either the Chancellor of the California Community Colleges or any member of the Board of Governors of the California Community Colleges has the authority to undertake any action to restrain Plaintiffs' First Amendment rights. Moreover, the Complaint lacks the factual allegations required to state a cognizable claim that the regulations compel Plaintiffs to accommodate any particular message in their own speech.

For these reasons, Chancellor Sonya Christian and Board members Amy M. Costa, Hildegarde B. Aguinaldo, Darius W. Anderson, Adrienne C. Brown, Tom Epstein, Felicia

1

1  Escobar Carrillo, Jolena M. Grande, Pamela Haynes, Lieutenant Governor Eleni Kounalakis,

2  Harry Le Grande, Paul Medina, Jennifer L. Perry, Bill Rawlings, Mary H. Salas, Blas Villalobos,

3  and Joseph R. Williams (the State Defendants) respectfully request that this Court dismiss

4  Plaintiffs' Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

5                                                    **BACKGROUND**

6  **I.     CALIFORNIA COMMUNITY COLLEGES**

7          The California Community Colleges is the largest postsecondary system of higher

8  education in the United States, with more than 1.8 million students attending one of 116 college

9  campuses annually.  Cal. Cmty. Colls., *Students*, https://www.ccco.edu/Students (last visited

10  Dec. 14, 2023).  With low tuition and a longstanding policy of full and open access, California's

11  community colleges were established under the principle that higher education should be

12  available to everyone.  *See id.*, *About Us*, https://www.ccco.edu/About-Us/Key-Facts (last

13  visited Dec. 14, 2023).  As "the backbone of higher education in the state and the leading

14  provider of career and workforce training in the country," the community colleges are the most

15  common entry point into collegiate degree programs in California; the primary system for

16  delivering career technical education and workforce training; a major provider of adult education,

17  apprenticeship, and English as a Second Language courses; and a source of lifelong learning

18  opportunities for California's diverse communities.  *Id.*  The California Equity in Higher

19  Education Act (Cal. Educ. Code §§ 66250 et seq.) establishes California's policy of affording all

20  persons equal rights and opportunities in postsecondary educational institutions, including the

21  California Community Colleges.  *Id.* §§ 66251, 66261.5.

22          The Board of Governors of the California Community Colleges (the Board) sets policy and

23  provides guidance for the 73 districts that constitute the postsecondary education system of

24  community colleges.  Cal. Educ. Code § 70900.  The Legislature has granted the Board authority

25  to develop and implement standards for classes, student academic requirements, and employment

26  of academic and administrative staff.  *Id.* §§ 70900; 70901(b).  The Board's strategic mission

27  states that "[a]ll people have the opportunity to reach their full educational potential . . . .  The

28  Colleges embrace diversity in all its forms . . . .  All people have the right to access quality higher

                                                              2

education."  Resolution of the Board of Governors No. 2017-01 (January 17, 2017),
*https://tinyurl.com/yc8bw6z9* (last visited Dec. 14, 2023).

Under its authority from the Legislature, and consistent with its role of providing
"leadership and direction" to the California Community Colleges, the Board has promulgated
regulations to implement "aspects of state and federal anti-discrimination laws intended to
prevent unlawful discrimination in employment."  Cal. Code Regs. tit. 5, § 53000.  The
regulations "provide[] direction to community college districts related to the incorporation of
evidence-based and equity-minded practices into existing recruitment, hiring, retention, and
promotion activities to promote equal employment opportunities."  *Id.*  As part of providing that
direction, and furthering its "goal of ensuring the equal educational opportunity of all students,
the California Community Colleges embrace diversity among students, faculty, staff and the
communities we serve as an integral part of our history, a recognition of the complexity of our
present state, and a call to action for a better future."  *Id.* § 51201(a).  This goal is intended to
"guide the administration of all programs in the California Community Colleges, consistent with
all applicable state and federal laws and regulations."  *Id.* § 51200.

The Board appoints a chief executive officer—the Chancellor—who exercises the duties
and responsibilities delegated to her by the Board.  Cal. Educ. Code § 71090(b).  Defendant
Sonya Christian has served as Chancellor since June 2023.  The Chancellor's Office is
responsible for carrying out the policies of the Board, including the development of fiscal plans, a
legislative agenda, a budget for the community college system, and the execution of grants to
community college districts to carry out statewide programs in furtherance of the Board's
policies.  *See, generally, id*. §§ 71090-71906.  But neither the Chancellor nor the Board has any
role in hiring, disciplining, or terminating district staff, or in establishing "employment practices"
for community college professors.  *Id.* § 70902(a)(1) ("Every community college district shall be
under the control of a board of trustees," and this "governing board of each community college
district" shall "maintain, operate, and govern" community colleges under their jurisdiction); *see
also id.* §70902(b)(4) (local districts shall "[e]stablish employment practices, salaries, and
benefits for all employees not inconsistent with the laws of this state.").

3

1    Neither the Board nor the Chancellor has the authority to administer local community

2    college campuses; that authority lies with the community college districts governed by locally

3    elected boards of trustees.  Specifically, the Board's primary purpose is to provide "leadership

4    and direction" while maintaining, "to the maximum degree permissible, local authority and

5    control in the administration" of local community colleges by their districts.  Cal. Educ. Code §

6    70901(a).  Consistent with that "local authority and control," community college districts are

7    responsible for "employ[ing] and assign[ing] all personnel not inconsistent with the minimum

8    standards adopted by the board of governors and establish[ing] employment practices, salaries

9    and benefits for all employees not inconsistent with the laws of this state."  *Id.* § 70902(b)(4).

10   Moreover, in assigning employees and establishing employment practices for its employees, the

11   Educational Employment Relations Act (EERA) recognizes that each community college district

12   is a separate and distinct "public school employer" with its own bargaining obligations vis-à-vis

13   its employee unions.  Cal. Gov. Code, §§ 3540, 3540.1(k); Cal. Code Regs. tit 8, § 32001(c).

14   **II.    THE CHALLENGED REGULATIONS**

15       The California Education Code provides that "[n]o person shall be subjected to

16   discrimination on the basis of disability, gender, gender identity, gender expression, nationality,

17   race or ethnicity, religion, sexual orientation, or any [other constitutionally protected]

18   characteristic" in California's community colleges.  Cal. Educ. Code § 66270.  Consistent with

19   this law, in April of 2023, the Board adopted regulations that direct the State's community college

20   districts to create their own evaluation policies and practices that reflect these ideals and

21   principles regarding diversity, equity, inclusion, and accessibility.  Cal. Code Regs. tit. 5, §§

22   52510, 53400, 53401, 53403, 53425, 53601, 53602, and 53605, *see* Verif. Compl. Ex 1, ECF No.

23   1-1.  Notably, the term "evaluation"—as defined in the Code of Regulations and used in the

24   challenged regulations—is not a disciplinary action; rather, an "evaluation" is "a tool to provide

25   and receive constructive feedback to promote professional growth and development."  Cal. Code

26   Regs. tit. 5, § 52510(l).  Similarly, "tenure reviews" are non-disciplinary assessments that

27   consider several aspects of a faculty member's performance, including but not limited to

28   "demonstrated, or progress toward, proficiency in the locally-developed DEIA competencies."

4

1   *Id.*, § 53602(a) ("District governing boards shall adopt policies for the evaluation of employee

2   performance, including tenure reviews…").

3       As detailed below, these regulations do not apply directly to individual community college

4   employees, such as Plaintiffs. *See* Cal. Code Regs. tit. 5, §§ 52510, 53400, 53401, 53403, 53425,

5   53602, and 53605. Rather, they set forth in the Board's policy objective that district evaluation

6   policies and practices reflect its ideals and principles regarding diversity, equity, inclusion, and

7   accessibility. Nothing in the regulations restricts any individual's speech or compels any person

8   to engage in any particular speech. *Id.* And the regulations do not include any enforcement

9   mechanism by which any individual can be disciplined by Chancellor Christian or the Board for

10   expressing any particular viewpoint—even a viewpoint that is contrary to the ideals set forth in

11   the regulations. *Id.*

12   **III.   THE IMPLEMENTATION GUIDELINES**

13       Separate and apart from the challenged regulations, the Chancellor's Office published four

14   advisory documents to provide guidance to the districts as they create their own diversity, equity,

15   inclusion, and accessibility policies: (1) a memorandum entitled "Diversity, Equity and Inclusion

16   Competencies and Criteria Recommendations" (*see* Verif. Compl. Ex. B, ECF No. 1-2); (2) a

17   memorandum entitled "Guidance of Implementation of DEIA Evaluation and Tenure Review

18   Regulations" (*id.* Ex. C, ECF No. 1-3); (3) a pamphlet entitled "DEI in Curriculum: Model

19   Principles and Practices (*id.* Ex. D, ECF No. 1-4); and (4) a "Diversity, Equity, Inclusion, and

20   Accessibility Glossary of Terms" (*id.* Ex. E, ECF No. 1-5).

21       These implementation guidelines are not regulations adopted through the formal regulatory

22   process and thus are not binding on the districts.[1] And the challenged regulations do not mandate

23   that the districts incorporate any (much less all) of the specific language contained in the

24   implementation guidelines into their own local policies. Instead, the regulations state only that

---

[1] *See* Cal. Cmty. Colls., *Procedures and Standing Orders of the Board of Governors* (Dec. 2022) ch. 2, § 200, https://www.cccco.edu/-/media/CCCCO-Website/docs/procedures-standing-orders/december-2022-procedures-standing-ordersv2-a11y.pdf?la=en&hash=FF692A0AE8ACC8FE6BB2A4D75018302005A8A4D6 ("Neither the Board nor the Chancellor may administer or enforce any regulation, as defined by section 202, paragraph (d), unless that regulation is adopted in accordance with the provisions of this Chapter").

1  the "DEIA competencies and criteria identified by the Chancellor shall be used as a reference for

2  locally developed minimum standards in community college district performance evaluations of

3  employees and faculty tenure reviews."  Cal. Code Regs. tit. 5, § 53601 (emphasis added).

4         The plain language of the implementation guidelines reinforces that their purpose is to

5  provide recommendations and assistance—rather than mandates—to the districts as they create

6  their diversity, equity, inclusion, and accessibility policies.  (*Id.* Ex. B ("[T]his sample set of

7  criteria is not exhaustive nor truly 'final' …[T]his sample is a starting point, and is meant to serve

8  as a reference for districts/colleges as they engage in their own local process to develop and adopt

9  a personalized set of DEIA competencies and criteria…"); *id.* Ex. C ("The purpose of this

10  memorandum is to provide information regarding the evaluation and tenure review of district

11  employees and the resources that are available to support districts and colleges with local

12  implementation of these regulations."); *id.* Ex. D ("The chart is not exhaustive and is not intended

13  to be a mandate, but rather a model and tool of transformative principles to frame curriculum

14  development and classroom practices at local levels."); *id.* Ex. E ("The purpose of the …Glossary

15  of Terms is to serve as a reference guide of DEI terms…")).

16         Because the implementation guidelines are merely advisory and do not bind either the

17  community college districts or individual community college employees (including Plaintiffs),

18  they cannot infringe Plaintiffs First Amendment rights, and thus cannot serve as a factual basis

19  for Plaintiffs' claims against the State Defendants.

20  **IV.    PLAINTIFFS' CLAIMS**

21         Plaintiffs allege that they "fear[]" and "worry[]" they will be disciplined or terminated if

22  they continue to use the same methodologies and course materials they have utilized in the past,

23  because they are concerned these methodologies and course materials may not comply with the

24  State Center Community College District's DEIA policy.  (Verif. Compl. 98-173, ECF No. 1).

25  By their First, Third, Fifth, Seventh, and Ninth causes of action against the State Defendants,

26  Plaintiffs challenge California Code of Regulations, title 5, sections 52510, 53400, 53401, 53403,

27  53426, 53601, 53602, and 53605, alleging that each of these regulations is facially

28  unconstitutional.

**STANDARD OF REVIEW**

1
2     To survive a motion to dismiss, "a plaintiff must demonstrate standing for each claim he

3     seeks to press [and] 'for each form of relief' that is sought." *DaimlerChrystler Corp. v. Cuno*,

4     547 U.S. 332, 352 (2008) (quoting *Friends of Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528

5     U.S. 167, 185 (2000). "[L]ack of Article III standing requires dismissal for lack of subject matter

6     jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d

7     1060, 1067-68 (9th Cir. 2011).  A plaintiff must "sufficiently allege the essential elements of

8     Article III standing" (*Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954 (9th Cir. 2011))

9     and may not "rely on a bare legal conclusion to assert injury-in-fact" to satisfy this requirement

10    (*Maya*, 658 F.3d at 1068).

11    Even if a plaintiff meets his burden of establishing standing, his complaint nonetheless must

12    be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it fails to state a claim upon which

13    relief can be granted.  "A Rule 12(b)(6) dismissal may be based on either a 'lack of cognizable

14    legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'"

15    *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting

16    *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  To avoid a

17    Rule (12)(b)(6) dismissal, the complaint must plead "enough facts to state a claim that is plausible

18    on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  "'[C]onclusory

19    allegations of law and unwarranted inferences are insufficient' to avoid a Rule 12(b)(6)

20    dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1068-69 (9th Cir. 2009) (citations omitted); *see*

21    *also Ashcroft v. Iqbal*, 556 U.S. 662, 663 ("[T]he tenet that a court must accept a complaint's

22    allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported

23    by mere conclusory statements.").  Further, it is not proper for a court "to assume that the

24    [plaintiff] can prove facts that [he] has not alleged." *Associated Gen. Contractors of Cal., Inc. v.*

25    *Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  Thus, "for a complaint to survive a

26    motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that

27    content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S.*

28    *Secret Service*, 572 F.3d 962, 969 (9th Cir. 2018).

7

Mem. P. & A. Supp. State Defendants' Mot. to Dismiss Complaint (1:23-cv-01228-NODJ-CDB)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ARGUMENT**

**I.   PLAINTIFFS LACK STANDING TO BRING THEIR CLAIMS AGAINST THE STATE DEFENDANTS**

As a threshold matter, Plaintiffs lack standing to bring their claims against the State Defendants because the regulations Plaintiffs challenge neither apply directly to them nor create any imminent risk that the State Defendants will harm Plaintiffs.  Accordingly, the Complaint is subject to dismissal under Federal Rule of Civil Procedure 12(b)(1).

To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. ––, 141 S. Ct. 2190, 2203 (2021); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (holding that an "invasion of a legally protected interest" that is "conjectural or hypothetical" is not sufficient to establish an "injury in fact").

Establishing the "injury in fact" element of standing is a "rigid constitutional requirement" that a plaintiff must meet "to invoke a federal court's jurisdiction," even where, as in the present case, the plaintiff brings a "pre-enforcement" First Amendment challenge.  *Lopez v. Candaele*, 630 F.3d 775, 786 (9th Cir. 2010).  In such pre-enforcement cases, to determine if a plaintiff faces a credible threat of enforcement—and has thus suffered an "actual injury"—courts examine "1) the likelihood that the law will be enforced against the plaintiff; 2) whether the plaintiff has shown, 'with some degree of concrete detail,' that she intends to violate the challenged law; and 3) whether the law even applies to the plaintiff." *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1172 (9th Cir. 2018) (quoting *Lopez v. Candaele*, 630 F.3d at 786).  In that regard, "there must be a genuine threat of imminent prosecution" to establish standing.  *Unified Data Servs., LLC v. Fed. Trade Comm'n*, 39 F.4th 1200, 1210 (9th Cir. 2022); *see also Younger v. Harris*, 401 U.S. 37, 42 (1971) ("[P]ersons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs.").

Plaintiffs have not and cannot allege the requisite "clear showing" of an injury in fact and thus fail to plead Article III standing to challenge the regulations on two separate, yet related,

8

Mem. P. & A. Supp. State Defendants' Mot. to Dismiss Complaint (1:23-cv-01228-NODJ-CDB)

1    bases: 1) the regulations do not apply directly to Plaintiffs; and 2) Plaintiffs have not—and

2    cannot—show that they face an imminent risk of any harm at the hands of the State Defendants as

3    a result of the regulations.

4        **A.    The Challenged Regulations Apply to California's Community College
              Districts, Not Plaintiffs**

5

6        The regulations at issue do not apply to Plaintiffs directly.  Rather, they direct community

7    college districts to consider DEIA principles in employment processes, as implemented through

8    district policy and collective bargaining.  A plaintiff's "claims of future harm lack credibility

9    when the challenged speech restriction by its terms is not applicable to the plaintiff[]."  *Lopez v.*

10   *Candaele*, 630 F.3d at 788; *see also Leonard v. Clark*, 12 F.3d 885, 888-89 (9th Cir. 1993);

11   *Barke v. Banks,* 25 F.4th 714, 719-20 (9th Cir. 2022).

12       The Ninth Circuit's decision in *Barke* is instructive.  There, the plaintiffs—who were

13   "elected members of local California government bodies, including city councils, school boards,

14   and community college and special purpose districts"—challenged California Government Code

15   section 3550.  *Barke v. Banks*, 25 F.4th at 716-17.  Section 3550 provides that "[a] public

16   employer shall not deter or discourage public employees . . . from becoming or remaining

17   members of an employee organization."  The plaintiffs alleged that the law violated their First

18   Amendment rights and chilled their speech based on a fear that the California Public Employment

19   Relations Board would "erroneously attribute" their personal statements concerning union

20   membership to their governmental employers, "thereby causing their employers to be sanctioned

21   and damaging [the plaintiffs'] reputations as a result."  *Id.* at 717-18.  Affirming the district

22   court's order dismissing the case, the Ninth Circuit held that because section 3550 did not apply

23   to the plaintiffs or "the speech Plaintiffs allege they want to engage in," they "failed to

24   demonstrate that they ha[d] suffered an injury in fact sufficient to establish their standing to

25   pursue their pre-enforcement challenge."  *Id.* at 720-21.

26       Here, as in *Barke*, the regulations in question do not apply directly to Plaintiffs.  As

27   discussed above, the California Community Colleges Board provides "leadership and direction"

28   to community college districts, while allowing those districts to maintain "to the maximum

                                    9

1  degree permissible, [their] local authority and control in the administration" of institutions within

2  their district.  Cal. Educ. Code § 70901(a).  Consistent with this principle, the regulations at issue

3  operate upon community college districts, not upon individual district employees who remain

4  under the supervision of their employer-districts.

5  Because the regulations do not apply directly to Plaintiffs, any claim by Plaintiffs that he

6  will suffer future harm as a result of the regulations fails.

7  **B.    Plaintiffs Do Not Face an "Imminent Risk" of Harm Under the Regulations**

8

9  Moreover, Plaintiffs have not and cannot plead a cognizable claim that they are likely to

10  suffer irreparable harm due to the regulations because they face no "imminent" risk of any action

11  by the State Defendants for expressing their alleged viewpoints concerning DEIA, even

12  viewpoints that are potentially in conflict with the California Community Colleges' goals.

13  "[N]either the mere existence of a proscriptive statute nor a generalized threat of prosecution

14  satisfies the 'case or controversy' requirement."  *Thomas v. Anchorage Equal Rts. Comm'n*, 220

15  F.3d 1134, 1139 (9th Cir. 2000) (en banc).  Rather, to challenge the prospective enforcement of a

16  law or regulation, a plaintiff must show "a realistic danger of sustaining a direct injury as a result

17  of the statute's operation or enforcement."  *Babbitt v. United Farm Workers Nat'l Union*, 442

18  U.S. 289, 298, (1979).  A plaintiff who claims that he is threatened with future injury must

19  sufficiently plead "the threatened injury is 'certainly impending,' or there is a 'substantial risk

20  that the harm will occur,'" to meet his burden of establishing standing.  *In re Zappos.com, Inc.*,

21  888 F.3d 1020, 1024 (9th Cir. 2018).  When determining whether a genuine "case or controversy"

22  exists for federal jurisdiction, the Ninth Circuit considers, among other things, "whether the

23  prosecuting authorities have communicated a specific warning or threat to initiate proceedings."

24  *Thomas*, 220 F.3d at 1139 (dismissing First Amendment claims where "the record [was] devoid

25  of any threat [of enforcement]—generalized or specific—directed against [the plaintiffs]").

26  Here, as in *Thomas*, the Complaint is "devoid of any threat" directed against Plaintiffs by

27  the State Defendants under the challenged regulations.  The State Defendants are not prosecuting

28  authorities.  The State's community college districts are legally distinct entities from both the

10

State and Board.  Community college districts are independent local government entities controlled by a locally elected board of trustees, each with the power to sue and be sued.  Cal. Educ. Code § 72000(a) ("The district and its governing board may sue and be sued, and shall act in accordance with Section 70902.").  Education Code section 70902 enumerates the authorities and duties of local districts and their governing boards of trustees, and specifically requires that "the governing board of each community college district shall . . . employ and assign all personnel not inconsistent with the minimum standards adopted by the board of governors and establish employment practices, salaries and benefits for all employees not inconsistent with the laws of this state."  Id. § 70902(b)(4) (emphasis added).  And it is each district that is responsible for "adopt[ing] policies for the evaluation of employee performance, including tenure reviews, that requires demonstrated, or progress toward, proficiency in the locally-developed [diversity, equity, inclusion, and accessibility] competencies or those published by the Chancellor pursuant to section 53601."  Cal. Code Regs. tit. 5, § 53602.

The distinct roles and different duties of the Board and local districts were examined in *First Interstate Bank of California v. State of California*, 197 Cal. App. 3d 627 (1987).  There, First Interstate Bank attempted to hold the State and the Board of Governors responsible when a community college district failed to make lease payments in connection with a lease-purchase agreement.  First Interstate contended that the construction and maintenance of school buildings is a sovereign and nondelegable duty of the Board, and that the district was acting merely in an agency capacity on the project.

The California Court of Appeal held that the district was a separate entity, and neither the State nor the Board could be held liable for any acts undertaken by a community college district, the community college, or the college's employees.  *First Interstate Bank*, 197 Cal. App. 3d at 633.  The court further noted that neither the state Constitution nor any statute provides that a district can undertake any action at the State or Board's behest.  "[T]he fact that a state agency is created by statute to discharge a duty constitutionally imposed on the state does not transmute the agency into 'the state,' nor render the state liable for its acts under a general theory of respondeat superior."  *Id.*  Recognizing that "liability is fixed on the public entity whose employee causes the

11

1    injury," the court found the State and the Board were not liable.  *Id.*, at 634; *see also Johnson v.*

2    *San Diego Unified Sch. Dist.*, 217 Cal. App. 3d 692, 699 (1990) (confirming the "separate distinct

3    character of the school district as distinguished from the state educational entities").

4        Here, the State Defendants do not employ, evaluate, promote, or discipline district staff or

5    college professors, including Plaintiffs.  Instead, the Board merely sets minimum hiring standards

6    for personnel hired by each district.  Cal. Educ. Code § 70901(b)(1)(B).  All decisions regarding

7    employee hiring, employment practices, performance evaluation, and potential termination are the

8    responsibility of the district.  *Id*.  Thus, the State Defendants cannot and will not take any action

9    against Plaintiffs concerning their speech.  Moreover, the regulations do not direct the district to

10   take any disciplinary action against Plaintiffs, under any circumstances; instead, they instruct the

11   districts to perform "evaluations" of Plaintiffs, which are non-disciplinary in nature and simply

12   are "tool[s] to provide and receive constructive feedback to promote professional growth and

13   development."  Cal. Code Regs. tit. 5, § 52510(l).  Thus, Plaintiffs face no "imminent threat" of

14   action by the State Defendants, nor do they face any "actual injury" resulting from the

15   regulations.

16       Even if Plaintiffs could show that the State Defendants had the authority to take adverse

17   action against them under the regulations (which they cannot), Plaintiffs still would fail to

18   establish an imminent risk of harm, because they cannot credibly allege that the specific actions

19   Plaintiffs purportedly intend to take violate the regulations.  As written, the regulations do not

20   preclude Plaintiffs from, for example, assigning students Martin Luther King Jr.'s *Letters from*

21   *Birmingham Jail* (Verif. Compl. ¶¶ 118, 132, 273, ECF No. 1) or from discussing Marie Curie's

22   contributions to the field of chemistry (*Id.* ¶ 153).  Nor do Plaintiffs allege they have been

23   informed by any source (including the State Defendants) that the methodologies and course

24   materials they have previously used conflict with the regulations.  Plaintiffs' allegations that they

25   "fear" and "worry" that their methodologies and course materials may violate the regulations are

26   conjectural and hypothetical and, thus, do not constitute the injury in fact necessary to establish

27   standing.

28

1    In sum, Plaintiffs face no "imminent threat" of action by any of the State Defendants, nor

2    do they face any "actual injury" resulting from the regulations.  Because Plaintiffs' allegations

3    lack this essential element of Article III standing, the Complaint against the State Defendants

4    should be dismissed under Rule 12(b)(1).

5    **II.    PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF AGAINST THE STATE
       DEFENDANTS**

6

7    Plaintiffs' Complaint further fails to state a plausible claim for relief against the State

8    Defendants, and thus should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

9    A challenged statute implicates the First Amendment only if it regulates speech or expressive

10   conduct, which is conduct undertaken with an "'intent to convey a particularized message'" when

11   the "'likelihood was great that the message would be understood by those who viewed it.'" *Texas*

12   *v. Johnson*, 491 U.S. 397, 404 (1989) (citation omitted).  When challenging alleged

13   "impingements on First Amendment interests," it is plaintiff's burden to "demonstrate that the

14   First Amendment even applies." *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293

15   n.5 (1984).

16   Plaintiffs' first, third, and fifth causes of action raise facial First Amendment challenges

17   against California Code of Regulations, title 5, sections 52510, 53400, 53401, 53403, 53425,

18   53602, and 53605 (Verif. Compl. ¶¶ 181-196, 209-222, 236-255, ECF No. 1-1), and their seventh

19   and ninth causes of action bring overbreadth and vagueness challenges against these same

20   regulations.  (*Id.* ¶¶ 268-281, 294-310).  As set forth below, the Complaint does not state a viable

21   claim against the State Defendants under any theory.

22       **A.    The Board Is Entitled to Express Its Ideals Regarding Diversity, Equity,
           Inclusion, and Accessibility, and the Challenged Regulations Serve This
           Purpose**

23

24   First, Plaintiffs have failed to meet their burden of demonstrating that the challenged

25   regulations implicate their First Amendment rights.  By their plain language, the regulations do

26   not restrict the free speech or expressive conduct of any employee in their individual capacity,

27   including Plaintiffs.  Rather, the regulations set forth the Board's policy objective that district

28

13

Mem. P. & A. Supp. State Defendants' Mot. to Dismiss Complaint (1:23-cv-01228-NODJ-CDB)

1   evaluation policies and practices reflect its ideals and principles regarding diversity, equity,

2   inclusion, and accessibility.

3        The California Community Colleges Board is entitled to express its ideals and principles

4   concerning diversity, equity, inclusion, and accessibility, particularly when that expression does

5   not regulate another person's speech.  *Rosenberger v. Rector & Visitors of the Univ. of Virginia,*

6   515 U.S. 819, 828, 833 (1995) (although "the government may not regulate speech based on its

7   substantive content . . . when the State is the speaker, it may make content-based choices");

8   *Shurtleff v. City of Boston, Massachusetts* (2022) 596 U.S. 243, 248 ("[T]he government must be

9   able to 'promote a program' or 'espouse a policy' in order to function" (citations omitted); *see*

10  *also Downs v. Los Angeles Unified Sch. Dist.,* 228 F.3d 1003, 1013 (9th Cir. 2000).  In *Downs,*

11  the school district issued "policies and practices" that supported "Educating for Diversity," and

12  provided posters and materials supporting Gay and Lesbian Awareness Month to be posted on

13  school bulletin boards.  *Downs,* 228 F.3d at 1005-06.  The district court rejected the plaintiff

14  teacher's claim that the district violated his First Amendment rights when it refused to allow him

15  to post contrary messages on the bulletin boards.  *Id.* at 1008.  In affirming that ruling, the Ninth

16  Circuit held that governmental entities "may decide not only to talk about gay and lesbian

17  awareness and tolerance in general, but also to advocate such tolerance if it so decides…."  *Id.* at

18  1014, citing *Rust v. Sullivan,* 500 U.S. 173, 194 (1991).

19       *Bair v. Shippensburg Univ.,* 280 F. Supp. 2d 357 (M.D. Pa. 2003), illustrates the California

20  Community Colleges' right to express guiding principles concerning diversity and equity.  In

21  *Bair*, university students sought to preliminarily enjoin enforcement of the following policies, on

22  the ground that they violated the students' First Amendment rights: (1) a portion of the Preamble

23  to the University Catalog which stated that "[t]he university will strive to protect [the freedoms

24  necessary for the pursuit of truth and knowledge] if they are not inflammatory or harmful towards

25  others," and (2) a portion of the University's Racism and Cultural Diversity Statement which

26  provided, "[i]t is the unequivocal position of Shippensburg University to prohibit racism/ethnic

27  intimidation and harassment; and to affirm cultural diversity, social justice and equality."  *Id.* at

28  362-363.  The *Bair* court denied the students' motion for preliminary injunction as to both of

14

1    these policies on the ground that neither policy implicated First Amendment concerns, as "the

2    cited language seeks to advise the student body of the University's ideals and is therefore

3    aspirational rather than restrictive." *Id.* at 370-371; *see also Speech First, Inc. v. Sands*, 69 F.4th

4    184 (4th Cir. 2023) (university's bias policy, which defined bias and allowed members of

5    university community to report incidents of bias that were then reviewed by bias intervention and

6    response team, constituted permissible government speech).

7           As in *Bair*, the challenged regulations do not implicate Plaintiffs' First Amendment rights.

8    Taken together, the regulations affirm the Board's "official position" to "embrace diversity

9    among students, faculty, staff and the communities we serve" (Cal. Code Regs. tit. 5, §§ 51200

10   and 51201), and direct the State's community college districts to create their own employment

11   policies consistent with this goal (*id.* §§ 53425, 53601, 53602, and 53603).  Critically, none of the

12   challenged regulations includes any enforcement mechanism by which the Board or the

13   chancellor can punish any employee of a community college district (including Plaintiffs) for

14   engaging in speech contrary to the ideals set forth in the regulations; instead, as discussed above,

15   the regulations only contemplate "evaluations," which are non-disciplinary assessment tools

16   primarily aimed at promoting professional growth and development.  This lack of enforcement

17   mechanism further bolsters the conclusion that the regulations are an expression of the Board's

18   own principles, rather than devices by which the Board or the Chancellor can or will restrict

19   Plaintiffs' individual speech.

20          To maintain their action, Plaintiffs are required to show that their expression of allegedly

21   protected speech will be a substantial or motivating factor in an adverse employment action.  *Eng

22   v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009) ("[T]he plaintiff bears the burden of showing the

23   state took adverse employment action . . . [and that the] speech was a substantial or motivating

24   factor in the adverse action.") (internal quotation marks omitted).  Because the regulations do not

25   proscribe speech or expressive conduct, Plaintiffs' First Amendment claims against the State

26   Defendants necessarily fail.  *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 n.4 (9th Cir. 2013) (en

27   banc) ("[F]ailure to meet any one of [the *Eng* factors] is fatal to the plaintiff's case.").

28

15

Mem. P. & A. Supp. State Defendants' Mot. to Dismiss Complaint (1:23-cv-01228-NODJ-CDB)

1  Because Plaintiff cannot establish that their First Amendment rights are or will be infringed by

2  the regulations at issue, they cannot plead a cognizable First Amendment claim against the State

3  Defendants.

4        **B.**     **The Complaint Fails to Allege that the State Defendants Have or Will**
                     **Discriminate Against Plaintiffs Based on Their Viewpoints**

5

6        Plaintiffs also have not, and cannot, set forth sufficient factual allegations to support their

7  viewpoint discrimination allegations against the State Defendants.  "'Viewpoint discrimination'

8  occurs when the government prohibits 'speech by particular speakers,' thereby suppressing a

9  particular view about a subject." *Moss,* 572 F.3d at 970 (citations omitted).  Thus, to state a

10  viewpoint discrimination claim, a complaint must plausibly allege that the government took

11  action to suppress the plaintiff's speech "*because of* not merely in spite of" the plaintiff's

12  message.  *Id.* (emphasis in original).

13        The Complaint is devoid of any factual allegations that the State Defendants have taken any

14  action to suppress Plaintiffs' speech, much less action that was motivated by Plaintiffs'

15  viewpoints.  Nor can Plaintiffs present any such factual allegations, because—as discussed

16  above—the challenged regulations do not apply directly to Plaintiffs, do not regulate their speech

17  or expressive activity, and do not contain any mechanism by which the State Defendants may

18  take any adverse action against Plaintiffs if they express their viewpoints on diversity, equity,

19  inclusion, and accessibility.  Instead of alleging facts to support their viewpoint discrimination

20  claim, Plaintiffs impermissibly rely upon unsubstantiated assertions that "[f]aculty members must

21  affirm [a] 'race-conscious and intersectional'[2] viewpoint in much of what they do from the

22  textbooks and course materials they select to the very language they can utilize in the classroom."

23  (Verif. Compl. ¶ 187, ECF No. 1).   Such "conclusory allegations of law and unwarranted

24  inferences are insufficient' to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d

25  1063, 1068-69 (9th Cir. 2009).

26          [2] Although Plaintiffs quote this language as though it appears in the challenged
regulations, it does not.  Rather, the only documents that contain the terms "race-conscious" and

27  "intersectional" are the implementation guidelines (Verif. Compl. Exs. B, C, D, and E, ECF Nos.
1-2, 1-3, 1-4, 1-5)—which, as noted above, are advisory documents that are not binding or

28  enforceable against anyone, including Plaintiffs.

16

Mem. P. & A. Supp. State Defendants' Mot. to Dismiss Complaint (1:23-cv-01228-NODJ-CDB)

1

2

**C.    Plaintiffs Fail to Allege a Plausible Claim that the State Defendants Have
or Will Compel Them to Engage in Any Particular Speech**

3    Plaintiffs' compelled speech claim against the State Defendants fares no better.  To state a

4    valid compelled speech claim, a complaint must plausibly allege that "the complaining speaker's

5    own message [is] affected by the speech [he is] forced to accommodate."  *Rumsfeld v. Forum for*

6    *Academic and Institutional Rights, Inc.*, 547 U.S. 47, 63 (2006).  In *Rumsfeld,* law schools that

7    opposed the military's discrimination based on sexual orientation brought a compelled-speech

8    challenge against the Solomon Amendment, a statute that required law schools to allow military

9    recruiters access to their campuses.  *Id*. at 52-53.  The Supreme Court rejected the law schools'

10   compelled speech claim, holding that "[t]he Solomon Amendment neither limits what law schools

11   may say nor requires them to say anything," and that "[l]aw schools remain free under the statute

12   to express whatever views they may have on the military's congressionally mandated

13   employment policy…" *Id.* at 60.

14   Here, as in *Rumsfeld*, the challenged regulations do not force Plaintiffs to accommodate any

15   particular message in their own speech.  Rather, as explained above, the regulations express the

16   Board's own views regarding diversity, equity, inclusion, and accessibility.  The regulations do

17   not impose any requirement on Plaintiffs to incorporate the Board's views into their own speech,

18   and Plaintiffs "remain[] free" under the regulations to express their own opinions regarding

19   diversity, equity, inclusion, and accessibility.  Because the regulations "neither limit" what

20   Plaintiffs may say nor "require [them] to say anything," Plaintiffs' compelled speech claim

21   against the State Defendants lacks merit.

22   In an attempt to provide sufficient factual allegations to support their compelled speech

23   claim, Plaintiffs cite to the "DEI in Curriculum" pamphlet, claiming that this document mandates

24   that "their language must be consistent with 'an equity mindset' and a 'collectivism perspective.'"

25   (Verif. Compl. ¶ 213, ECF No. 1; Ex. D, ECF No. 1-4.)  But these "factual assertions" conflate

26   the challenged regulations with the non-binding, advisory implementation guidelines.  And these

27   guidelines are exactly what they purport to be: "a model and tool of transformative principles to

28   frame curriculum development and classroom practices at local levels;" they are not a "mandate."

17

1   *Id.* Ex. D, ECF No. 1-4.  Because the implementation guidelines are not enforceable against either

2   the districts or individual community college employees, Plaintiffs cannot credibly allege that the

3   statements contained in the implementation guidelines compel them to engage in any particular

4   speech.

5       **D.**    **Plaintiffs Do Not State a Cognizable Prior Restraint Claim Against the**

6                  **State Defendants**

7          Similarly, Plaintiffs have failed to allege sufficient facts to assert a prior restraint claim

8   against the State Defendants.  Prior restraints are "administrative and judicial orders *forbidding*

9   certain communications when issued in advance of the time that such communications are to

10  occur."  *Alexander v. United States*, 509 U.S. 544, 550.  Thus, in order for a law to constitute a

11  prior restraint of speech, the law "must have a close enough nexus to expression, or to conduct

12  commonly associated with expression, to pose a real and substantial threat of the identified

13  censorship risks."  *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 759.

14         Here, Plaintiffs cannot plead sufficient facts showing prior restraint for the same reason

15  they cannot establish standing: the challenged regulations do not pose any threat—much less a

16  "real or substantial threat"—to any of Plaintiffs' future speech.  As detailed above, the challenged

17  regulations do not apply directly to Plaintiffs, do not include any enforcement mechanisms by

18  which Plaintiffs could be punished by the State Defendants for engaging in any particular speech,

19  and do not preclude the types of speech in which Plaintiffs allege they intend to engage (for

20  example, discussing Martin Luther King Jr.'s writings or Marie Curie's accomplishments in the

21  classroom).  As with their viewpoint discrimination and compelled speech claims, Plaintiffs rely

22  upon conclusory and factually unsupported allegations of future harm (Verif. Compl. ¶ 245) and

23  quotations taken from the implementation guidelines, rather than the regulations themselves (*id.*

24  ¶¶ 242-244) in their attempt to provide factual support for their prior restraint claim.  But again,

25  neither Plaintiffs' "conclusory allegations of law and unwarranted inferences," *Cousins*, 568 F.3d

26  at 1068-69, nor their conflation of the challenged regulations with the non-binding, unenforceable

27  implementation guidelines, are sufficient to survive a motion to dismiss.

28

18

Mem. P. & A. Supp. State Defendants' Mot. to Dismiss Complaint (1:23-cv-01228-NODJ-CDB)

1
2

**E.    Plaintiffs' Overbreadth and Vagueness Challenges to the Regulations Are Subject to Dismissal**

3      Finally, Plaintiffs fail to plead cognizable claims that the challenged regulations are

4  overbroad or vague.  To establish that the regulations are overbroad, Plaintiffs must show that "a

5  substantial number of [the regulations'] applications are unconstitutional, judged in relation to the

6  provision's plainly legitimate sweep." *Hernandez v. City of Phoenix*, 43 F.4th 966, 980 (9th Cir.

7  2022).  To prevail on their vagueness challenge, Plaintiffs must demonstrate that the challenged

8  provisions fail to afford the districts "a reasonable opportunity to understand what conduct [the

9  regulations] prohibit []," or that the provisions permit "arbitrary and discriminatory enforcement."

10 *Hill v. Colorado,* 530 U.S. 703, 732 (2000).  If it is clear what a regulation proscribes "in the vast

11 majority of its intended applications," then the regulation is not unconstitutionally vague.  *Id.* at

12 733; *see also Waters v. Churchill,* 511 U.S. 661, 673 (1994) (plurality opinion) (acknowledging

13 that policies applicable to government employees may be framed in language that might be

14 deemed impermissibly vague to the public at large); *see also Hernandez,* 43 F.4th at 981-83

15 (rejecting vagueness challenge to police department social media policy prohibiting speech that

16 was "detrimental to the mission and functions of the Department," would "undermine the goals

17 and mission of the Department or City," or would "undermine respect or public confidence in the

18 Department").

19     Moreover, "the elementary rule is that every reasonable construction must be resorted to, in

20 order to save a statute from unconstitutionality." *Broadrick v. Oklahoma*, 413 U.S. 601, 617, n.16

21 (1973); *see also Screws v. United States*, 325 U.S. 91, 98 (1945).  Stated another way, "courts

22 will not use the overbreadth doctrine to completely remove a law from the legal landscape if they

23 can identify a construction of the law that would narrow its reach so that it would pass

24 constitutional muster." *College Republicans at San Francisco State Univ. v. Reed*, 523 F. Supp.

25 2d 1005, 1013 (N.D. Cal. 2007).

26     The challenged regulations are not overbroad because their only application is to direct

27 California's local community college districts to establish policies that promote proficiency in

28 diversity, equity, inclusion, and accessibility concepts.  As discussed above, this application is a

19

Mem. P. & A. Supp. State Defendants' Mot. to Dismiss Complaint (1:23-cv-01228-NODJ-CDB)

1   constitutional exercise of the Board's academic freedom to promote its ideals of diversity, equity,

2   inclusion, and accessibility throughout the California Community Colleges.  Similarly, Plaintiffs'

3   vagueness challenge fails, because the regulations make clear to the community college districts

4   (the only parties to whom these regulations directly apply) that they are required to implement

5   diversity, equity, inclusion, and accessibility policies in the community colleges that they

6   govern.[3]

7                                          **CONCLUSION**

8          For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint.  Because

9   amendment would not cure the Complaint's defects, the State Defendants respectfully request that

10  the Court deny leave to amend.

11

12

13  Dated:  December 15, 2023                        Respectfully submitted,

14                                                   ROB BONTA
                                                     Attorney General of California
15                                                   ANYA M. BINSACCA
                                                     Supervising Deputy Attorney General

16

17

18                                                    /s/ *Jane Reilley*
                                                     _____
19                                                   JAY C. RUSSELL
                                                     JANE REILLEY
                                                     Deputy Attorney General
20                                                   *Attorneys for Defendants*
                                                     *Sonya Christian, in her official capacity as*
21                                                   *Chancellor of the California Community*
                                                     *Colleges; Amy M. Costa, Hildegarde B.*
22                                                   *Aguinaldo, Darius W. Anderson, Adrienne*
                                                     *C. Brown, Tom Epstein, Felicia Escobar*
23                                                   *Carrillo, Jolena M. Grande, Pamela*
                                                     *Haynes, Eleni Kounalakis, Harry Le*
24                                                   *Grande, Paul Medina, Jennifer L. Perry,*
                                                     *Bill Rawlings, Mary H. Salas, Blas*
25                                                   *Villalobos, and Joseph R. Williams, in their*
                                                     *official capacities as members of the Board*
26                                                   *of Governors of the California Community*
                                                     *Colleges*

27  _____

28          [3] Because the regulations do not apply to Plaintiffs, they also lack standing to challenge
    any alleged overbreadth or vagueness.  Any such challenge would be within a district's purview.

                                              20