1  Mark H. Meyerhoff, Bar No. 180414
   mmeyerhoff@lcwlegal.com
2  David A. Urban, Bar No. 159633
   durban@lcwlegal.com
3  Morgan Johnson, Bar No. 345620
   mjohnson@lcwlegal.com
4  LIEBERT CASSIDY WHITMORE
   A Professional Law Corporation
5  6033 West Century Boulevard, 5th Floor
   Los Angeles, California 90045
6  Telephone:    310.981.2000
   Facsimile:     310.337.0837
7
8  Attorneys for Defendants CAROLE GOLDSMITH, NASREEN
   JOHNSON, MAGDALENA GOMEZ, DANIELLE PARRA,
   RICHARD M. CAGLIA, ROBERT A. FUENTES, DEBORAH J.
9  IKEDA, and DESTINY RODRIGUEZ

10                    UNITED STATES DISTRICT COURT

11           EASTERN DISTRICT OF CALIFORNIA - FRESNO

12  LOREN PALSGAARD, et al.,          Case No.:  1:23-cv-01228-NODJ-CDB

13                     Plaintiffs,     Complaint Filed: August 17, 2023

14           v.                        **DEFENDANTS' NOTICE OF MOTION AND
                                       MOTION TO DISMISS PLAINTIFFS'**
15  SONYA CHRISTIAN, in her official   **VERIFIED COMPLAINT; MEMORANDUM**
    capacity as the State Chancellor of **OF POINTS AND AUTHORITIES IN**
16  California Community Colleges, et al., **SUPPORT THEREOF**

17                     Defendants.     Date:        January 24, 2024
                                       Time:        9:00 a.m.
18                                     Courtroom: 5, 7th Floor

19

20  TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:

21          PLEASE TAKE NOTICE THAT on January 24, 2024 at 9:00 a.m., or as soon thereafter

22  as the matter may be heard in the Robert E. Coyle United States Courthouse, located at 2500

23  Tulare Street, Courtroom 5, 7th Floor, Fresno, California 93721, Defendants CAROLE

24  GOLDSMITH, NASREEN JOHNSON, MAGDALENA GOMEZ, DANIELLE PARRA,

25  RICHARD M. CAGLIA, ROBERT A. FUENTES, DEBORAH J. IKEDA, and DESTINY

26  RODRIGUEZ sued in their official capacities (the "District Defendants") will and hereby do

27  move to dismiss the Verified Complaint of Plaintiffs LOREN PALSGAARD, NASREEN

28  JOHNSON, MAGDALENA GOMEZ, DANIELLE PARRA, RICHARD M. CAGLIA,

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

                                        1

ROBERT A. FUENTES, DEBORAH J. IKEDA, and DESTINY RODRIGUEZ, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This Motion is made following a telephonic **meet-and-confer** with Plaintiffs' counsel which took place December 14, 2023.  During the telephone conference, counsel addressed each of the bases for this Motion.

 The moving Defendants seek for this Court to dismiss the Verified Complaint without leave to amend for failure to state a claim upon which relief can be granted, on the following grounds:

1.     The second, fourth, sixth, eighth, and tenth counts against the District Defendants should be dismissed because Plaintiffs lack standing to assert a pre-enforcement challenge to the provisions at issue from the 2022 Faculty Collective Bargaining Agreement.  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

2.     The second, fourth, sixth, eighth, and tenth counts against the District Defendants should be dismissed because Plaintiffs contend the challenged provisions of the 2022 Faculty Collective Bargaining Agreement violate Plaintiffs' First Amendment rights, but the Collective Bargaining Agreement waives the rights at issue.  *Leonard v. Clark*, 12 F.3d 885, 888-891 (9th Cir. 1993); *Bolden v. Se. Pa. Transp. Auth.*, 953 F.2d 807, 827 (3d Cir. 1991).

3.      The second, fourth, sixth, eighth, and tenth counts against the District Defendants should be dismissed because the challenged provisions of the District's Faculty Collective Bargaining Agreement do not impermissibly restrict Plaintiffs' First Amendment rights.  *Demers v. Austin*, 746 F.3d 402, 412 (9th Cir. 2014).

4.     The second, fourth, sixth, eighth, and tenth counts against the District Defendants should be dismissed because the District Defendants cannot be liable under 42 U.S.C. section 1983 ("Section 1983") for complying with mandatory California state regulations.  *Aliser v. SEIU California*, 419 F. Supp. 3d 1161, 1165 (N.D. Cal. 2019),

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all of the pleadings and papers on file with the Court herein, on such

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

2

12267329.6 ST080-174

1    matters of which this Court may take judicial notice, and any further evidence and argument that

2    the Court may receive at or before the hearing on this Motion.[1]

3    Dated:  December 15, 2023                                    LIEBERT CASSIDY WHITMORE

4

5                                                          By:    */s/ David A. Urban*
                                                                  Mark H. Meyerhoff
6                                                                 David A. Urban
                                                                  Morgan Johnson
7                                                                 Attorneys for Defendants CAROLE
                                                                  GOLDSMITH, NASREEN
8                                                                 JOHNSON, MAGDALENA GOMEZ,
                                                                  DANIELLE PARRA, RICHARD M.
9                                                                 CAGLIA, ROBERT A. FUENTES,
                                                                  DEBORAH J. IKEDA, and DESTINY
10                                                                RODRIGUEZ

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[1] Defendants file this Motion pursuant to this Court's December 1, 2023 order on Judicial Assignment [Doc. No. 41].

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

Motion to Dismiss Complaint; Memorandum of Points and Authorities ISO

12267329.6 ST080-174

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................9

II.   ALLEGATIONS AND FACTUAL BACKGROUND .....................................11

III.  THE STANDARD FOR A FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) MOTION TO DISMISS ..............................................................12

IV.   THE VERIFIED COMPLAINT IS SUBJECT TO DISMISSAL FOR NUMEROUS SEPARATE AND DISTINCT REASONS ...............................12

    A.    PLAINTIFFS' CLAIMS FOR RELIEF LACK MERIT BECAUSE PLAINTIFFS LACK STANDING TO ASSERT A PRE-ENFORCEMENT CHALLENGE TO THE DISTRICT'S COLLECTIVE BARGAINING AGREEMENT ......................................12

    B.    PLAINTIFFS' CLAIMS FOR RELIEF LACK MERIT BECAUSE THE COLLECTIVE BARGAINING AGREEMENT TERMS WAIVE PLAINTIFFS' RIGHTS ............................................16

    C.    PLAINTIFFS' CLAIMS FOR RELIEF LACK MERIT BECAUSE, AS A MATTER OF LAW, THE THREE COLLECTIVE BARGAINING AGREEMENT TERMS AT ISSUE SURVIVE FIRST AMENDMENT FACIAL CHALLENGE ..........................................................................19

        1.    Count 2 – Facial Challenge Based on Alleged Viewpoint Discrimination ................................................................19

        2.    Count 4 – Facial Challenge Based on Alleged Compelled Speech ..........................................................................21

        3.    Count 6 – Facial Challenge Based on Alleged Prior Restraint .......................................................................22

        4.    Count 8 – Facial Challenge Based on Alleged Overbreadth ...................24

        5.    Count 10 – Vagueness Challenge .............................................24

    D.    THERE IS NO *MONELL* LIABILITY FOR REGULATIONS THE DISTRICT DEFENDANTS ARE REQUIRED TO FOLLOW ..........................................................................27

V.    CONCLUSION ...................................................................................28

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

Motion to Dismiss Complaint; Memorandum of Points and Authorities ISO

12267329.6 ST080-174

1

## <u>TABLE OF AUTHORITIES</u>

2
                                                                                                     <u>Page(s)</u>

3   <u>Federal Cases</u>

4   *Aliser v. SEIU California*,
        419 F. Supp. 3d 1161 (N.D. Cal. 2019) ........................................................ 2, 27
5
6   *Ashcroft v. Iqbal*,
        556 U.S. 662 (2009) ................................................................................................ 12

7   *Babbitt v. Farm Workers*,
        442 U.S. 289 (1979) ................................................................................................ 13
8
9   *Barnard v. Lackawanna Cnty.*,
        194 F. Supp. 3d 337 (M.D. Pa. 2016) .................................................................. 17

10  *Barnard v. Lackawanna Cnty.*,
        696 F. App'x 59 (3d Cir. 2017) ............................................................................ 17
11
12  *Bell Atl. Corp. v. Twombly*,
        550 U.S. 544 (2007) ................................................................................................ 12

13  *Bishop Paiute Tribe v. Inyo Cty.*,
        863 F.3d 1144 (9th Cir. 2017) .............................................................................. 13
14
15  *Bolden v. Se. Pa. Transp. Auth.*,
        953 F.2d 807 (3d Cir. 1991) ............................................................................. 2, 17

16  *Cal. Teachers Ass'n v. Bd. of Educ.*,
        271 F.3d 1141 (9th Cir. 2001) .............................................................................. 27
17
18  *Cal. Teachers Ass'n v. Bd. Of Educ.*,
        271 F.3d 1141 (9th Cir. 2001) .............................................................................. 25

19  *cf. Healy v. James*,
        408 U.S. 169 (1972) ................................................................................................ 23
20
21  *Cf. McMillian v. Monroe Cty.*,
        520 U.S. 781 (1997) ................................................................................................ 28

22  *Clapper v. Amnesty Int'l USA*,
        568 U.S. 398 (2013) ................................................................................................ 13
23
24  *Clark v. City of Seattle*,
        899 F.3d 802 (9th Cir. 2018) ................................................................................ 13

25  *Demers v. Austin*,
        746 F.3d 402 (9th Cir. 2014) ...................................................................... 2, 19, 22
26
27  *Democratic Nat'l Comm. v. Republican Nat'l Comm.*,
        673 F.3d 192 (3d Cir. 2012) ................................................................................. 17

28

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

5

*Downs v. Los Angeles Unified Sch. Dist.*,
 228 F.3d 1003 (9th Cir. 2000) ........................................................................... 21

*Driehaus*, 573 U.S. at 159; *Tingley v. Ferguson*,
 47 F.4th 1055 (9th Cir. 2022) ........................................................................... 13

*Edge v. City of Everett*,
 929 F.3d 657 (9th Cir. 2019) ............................................................................. 26

*Evers v. County of Custer*,
 745 F.2d 1196 (9th Cir. 1984) ........................................................................... 27

*Garcetti v. Ceballos*,
 547 U.S. 410 (2006) ........................................................................................... 22

*Gibson v. Office of Atty. Gen. State of California*,
 561 F.3d 920 (9th Cir. 2009) ............................................................................. 23

*Gomez v. Vernon*,
 255 F.3d 1118 (9th Cir. 2001) ........................................................................... 27

*Grayned v. City of Rockford*,
 408 U.S. 104 (1972) ........................................................................................... 25

*Hernandez v. City of Phoenix*,
 43 F.4th 966 (9th Cir. 2022) ............................................................................. 23

*Hershey v. Jasinski*,
 2023 U.S. App. LEXIS 30904 (8th Cir. Nov. 21, 2023) ................................... 23

*Hill v. Colorado*,
 530 U.S. 703 (2000) ........................................................................................... 25

*Kentucky v. Graham*,
 473 U.S. 159 (1985) ........................................................................................... 27

*Leonard v. Clark*,
 12 F.3d 885 (9th Cir. 1993) ........................................................................... 2, 17

*Long Beach Area Peace Network v. City of Long Beach*,
 574 F.3d 1011 (9th Cir. 2009) ........................................................................... 23

*Lopez v. Candaele*,
 622 F.3d 775 (9th Cir 2010) .............................................................................. 13

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ....................................................................................... 2, 13

*Matal v. Tam*,
 582 U.S. 218 (2017) ........................................................................................... 21

*Nat'l Endowment for the Arts v. Finley*,
 524 U.S. 569 (1998) ........................................................................................... 20

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

6

12267329.6 ST080-174

*Newman v. San Joaquin Delta Community College District*,
    814 F. Supp. 2d 967 (E.D. Cal. 2011) ..................................................................... 27

*Norsworthy v. Beard*,
    87 F. Supp. 3d 1104 (N.D. Cal. 2015) .................................................................... 27

*Pickering v. Board of Education*,
    391 U.S. 563 (1968) ............................................................................................... 20

*Quezambra v. United Domestic Workers of Am. AFSCME Loc. 3930*,
    445 F. Supp. 3d 695 (C.D. Cal. 2020) .................................................................... 27

*Regents of Univ. of Mich. v. Ewing*,
    474 U.S. 214 (1985) ............................................................................................... 20

*Rosenberger v. Rector & Visitors of the Univ. of Virginia*,
    515 U.S. 819 (1995) ............................................................................................... 21

*San Diego Teachers Assn. v. Superior Court*,
    24 Cal. 3d 1 (1979) ............................................................................................... 17

*Sandoval v. County of Sonoma*,
    912 F.3d 509 (9th Cir. 2018) ................................................................................. 27

*Seborowski v. Pittsburgh Press Co.*,
    188 F.3d 163 (3d Cir. 1999) .................................................................................. 17

*Smith v. Pac. Bell Tel. Co.*,
    649 F. Supp. 2d 1073 (E.D. Cal. 2009) ................................................................. 17

*Soc. Servs. Union v. Alameda Cty. Training & Emp't Bd.*,
    207 Cal. App. 3d 1458 (1989) .............................................................................. 18

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) .......................................................................................... 2, 13

*Taylor v. Roswell Independent School Dist.*,
    713 F.3d 25 (10th Cir. 2013) ................................................................................. 23

*Thomas v. Anchorage Equal Rights Comm'n*,
    220 F.3d 1134 (9th Cir. 2000) ............................................................................... 13

*United Data Servs., LLC v. FTC*,
    39 F.4th 1200 (9th Cir. 2022) ............................................................................... 13

*United States v. Quattrone*,
    402 F.3d 304 (2d Cir. 2005) .................................................................................. 23

*United States v. Stevens*,
    559 U.S. 460 (2010) ............................................................................................... 24

*United States v. Williams*,
    553 U.S. 285 (2008) ............................................................................................... 25

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

Motion to Dismiss Complaint; Memorandum of Points and Authorities ISO

*Vives v. City of New York*,
    524 F.3d 346 (2d Cir. 2008)........................................................................27

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989) ...................................................................................25

*Washington State Grange v. Washington State Republican Party*,
    552 U.S. 442 (2008)....................................................................................24

*Waters v. Churchill*,
    511 U.S. 661 (1994) ...................................................................................25

*Wilson v. Maricopa Cmty. Coll. Dist.*,
    699 F. App'x 771 (9th Cir. 2017) ..............................................................27

*Wolfson v. Brammer*,
    616 F.3d 1045 (9th Cir. 2010) ...................................................................16

**State Statutes**

California Education Code § 66010.2....................................................................20, 23

California Education Code § 66251........................................................................11

California Education Code § 70901(a) ...................................................................12

California Education Code § 70902(a)(1)...............................................................11

California Government Code § 3543.2....................................................................17

**Federal Rules**

Federal Rule of Civil Procedure 12(b)(6) ..............................................................12

**State Regulations**

California Code of Regulations title 5, § 51201 ......................................................9

California Code of Regulations title 5, § 52510 ....................................................26

California Code of Regulations title 5, § 53602(b).................................................10

California Code of Regulations title 5, § 52510(l) .................................................19

California Code of Regulations title 5, § 53000 ....................................................12

California Code of Regulations title 5, § 53602(a).................................................12

California Code of Regulations title 5, § 53602(c)(4) ............................................15

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

Motion to Dismiss Complaint; Memorandum of Points and Authorities ISO

12267329.6 ST080-174

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3        Plaintiffs Loren Palsgaard, James Druley, Michael Stannard, David Richardson, Bill

4    Blanken, and Linda de Morales (collectively "Plaintiffs") are faculty members at various

5    colleges of the State Center Community College District (the "District").  Plaintiffs seek

6    declaratory relief against the Board of Trustees and the Chancellor of the District[2] in the form of

7    a determination that the provisions of the State Center Faculty Collective Bargaining Agreement

8    ("Faculty Contract") incorporating  the portions of Title 5 added or amended by regulatory action

9    2023-0317-02P are facially unconstitutional under the First and Fourteenth Amendments.  *See*

10   Verif. Compl. filed August 17, 2023, Doc. No. 1, at 51.  Plaintiffs also seek injunctive relief to

11   prohibit the District Defendants from enforcing those provisions against Plaintiffs or other State

12   Center Faculty.  *See id.* at 52.  The District Defendants seek dismissal of Plaintiffs' Verified

13   Complaint because it fails to state any claim upon which relief may be granted.

14       The three provisions at issue are from a collective bargaining agreement recently

15   negotiated and approved by the Board of Trustees in early May 2023.  The term of the agreement

16   runs from July 1 2022 – June 30, 2025.  The provisions fall within the faculty evaluation

17   procedures and criteria portion of the Faculty Contract, requiring faculty to conduct a self-

18   evaluation; requiring the implementation of new evaluation criterion related to Diversity, Equity,

19   Inclusion, and Accessibility ("DEIA"); and requiring faculty training on the new DEIA criterion.

20   *See* Ex. F to Verif. Compl., Doc. No. 1-6, p. 41-43, Article 13, Section 2.E.4 (self-evaluation of

21   faculty), Section 3.A.c (evaluation criteria), and Section 4.A.1.a (training).  The challenged

22   provisions partially embody the District's efforts to implement recently promulgated State

23   regulations on "Diversity, Equity, and Inclusion in the California Community Colleges."  Cal.

24   Code of Regs., tit. 5, § 51201.  These regulations require local California community college

25   districts to revise their employee evaluation procedures to include "consideration of an

26   employee's demonstrated, or progress towards, proficiency in . . . DEIA-related competencies."

27   _____

28   [2] These Defendants include the following, each sued in their official capacity: Chancellor Carole
Goldsmith, and Trustees Nasreen Johnson, Magdalena Gomez, Danielle Parra, Richard M.
Caglia, Robert A. Fuentes, Deborah J. Ikeda, and Destiny Rodriguez (the "District Defendants").

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

Cal. Code of Regs., tit 5, § 53602(b).

Plaintiffs have not established the required elements of Article III standing for a pre-enforcement facial challenge to the provisions of the District's Faculty Contract. Plaintiffs' proposed future actions do not violate either the faculty evaluation provisions of the District's Faculty Contract or the DEIA regulations upon which those provisions were based. The District has made no indication that Plaintiffs are prohibited from presenting certain viewpoints or perspectives in their classrooms, nor communicated that Plaintiffs' will be disciplined, terminated, or otherwise punished for doing so. There is also no history of the District issuing poor faculty evaluations based on that faculty member's presentation of controversial ideas, viewpoints, or perspectives as a teaching tool. Most of Plaintiffs' claims are based on speculation about what might happen in the future if they decide to criticize the ideas behind the state DEIA regulations or the Faculty Contract. *See infra* Section IV.A.

Furthermore, the individual rights Plaintiffs seek to protect were waived by their union by virtue of the collective bargaining process. Plaintiffs, through their union, consented to the evaluation procedures adopted by the District during negotiations and are bound by the language of those provisions. *See infra* Section IV.B.

To the extent the Faculty Contract implicates protected constitutional rights, the provisions do not result in the harms Plaintiffs allege. The provisions say nothing of censorship, ideological conformity, infringement of academic freedom, or control of curriculum. Instead, they consist of short paragraphs that reference self-evaluations, peer evaluations, and training. The provisions require faculty be proficient and understand DEIA and anti-racist principles and employ teaching and learning practices to facilitate and improve equitable student outcomes. They say nothing about disciplining faculty for non-compliance nor contain any of the definitions contained in non-binding guidance materials to which Plaintiffs object. The provisions do not restrain, restrict, prohibit, or prevent Plaintiffs from teaching the course material Plaintiffs believe will benefit their students and therefore do not infringe on Plaintiffs' First Amendment rights. *See infra* Section IV.C.

Finally, there should be no liability under 42 U.S.C. section 1983 for local educational

10

12267329.6 ST080-174

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

1   agencies, such as the District and their officials, sued in the official capacity, for complying with

2   mandatory state laws.  District Defendants lack the necessary discretion as final policy makers to

3   refuse to include the mandatory DEIA evaluation component in their faculty evaluation process,

4   and the challenged provisions of the Faculty Contract are not the cause of Plaintiffs' alleged

5   constitutional violation.  *See infra* Section IV.D.

6   **II.   ALLEGATIONS AND FACTUAL BACKGROUND**

7         The District comprises of four community colleges and two educational centers (Fresno

8   City College, Reedley College, Clovis Community College, Madera Community College,

9   Madera Community College at Oakhurst, and the Career and Technology Center) and serves

10  approximately 1.7 million people throughout Fresno, Madera, Kings, and Tulare counties.

11  https://www.scccd.edu/ (last visited Sept. 12, 2023).  The District is committed to providing

12  "safe, inclusive, and supportive learning environments [that lead] to student success . . . ."  *Id.*

13  Dr. Carole Goldsmith is the Chancellor of the District, and the other District Defendants serve as

14  the District's locally elected Board of Trustees and "maintain, operate, and govern" the District.

15  Cal. Educ. Code § 70902(a)(1).

16        The Board of Governors of the California Community Colleges ("Board") is tasked with

17  setting policy and providing guidance pursuant to California's policy of affording all persons

18  equal rights and opportunities in postsecondary educational institutions (Cal. Educ. Code §§

19  66251, 66261.5) for the 73 districts that constitute the postsecondary education system of

20  community colleges.  *Id.* § 70900.  Plaintiffs challenge a recent set of regulations promulgated by

21  the Board in spring of 2023 that establish a DEIA competency and criteria framework that serve

22  "as a minimum standard for evaluating all California Community College employees" and

23  "enable colleges and districts to discuss and adopt the minimum skills, abilities, and knowledge,

24  employees must possess or would need to acquire to teach, work, and lead at California

25  Community Colleges."  Ex. B to Verif. Compl., Doc. No. 1-3, p. 2.

26        The challenged regulations "provide[] direction to community college districts related to

27  the incorporation of evidence-based and equity-minded practices into existing recruitment,

28  hiring, retention, and promotion activities to promote equal employment opportunities."  Cal.

Motion to Dismiss Complaint; Memorandum of Points and Authorities ISO

12267329.6 ST080-174

1  Code Regs. tit. 5, § 53000.  As part of providing that direction, and furthering its "goal of

2  ensuring the equal educational opportunity of all students, the California Community Colleges

3  embrace diversity among students, faculty, staff and the communities we serve as an integral part

4  of our history, a recognition of the complexity of our present state, and a call to action for a

5  better future." *Id.* § 51201(a).  This goal is intended to "guide the administration of all programs

6  in the California Community Colleges, consistent with all applicable state and federal laws and

7  regulations." *Id.* § 51200.

8        The District Defendants, however, retain "local authority and control in administration"

9  of the District and possess final authority on the administration and implementation of the

10  challenged regulations.  Cal. Educ. Code § 70901(a); *see also* Cal. Code Regs. tit. 5, § 53602(a)

11  (stating "[d]istrict governing boards" are responsible for adopting evaluation policies based on

12  "locally-developed DEIA competencies").

13  ### III.    THE STANDARD FOR A FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)
   MOTION TO DISMISS

14

15        Defendants in federal court can file motions to dismiss, pursuant to Federal Rule of Civil

16  Procedure 12(b)(6), on the basis that a complaint fails to state a claim on which relief can be

17  granted.  To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough

18  facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

19  (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A federal court

20  complaint cannot simply include conclusory allegations and no facts providing support.  *Iqbal*,

21  556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere

22  conclusory statements, do not suffice" to survive a motion to dismiss).

23  ### IV.    THE VERIFIED COMPLAINT IS SUBJECT TO DISMISSAL FOR NUMEROUS
   SEPARATE AND DISTINCT REASONS

24

25      **A.    PLAINTIFFS' CLAIMS FOR RELIEF LACK MERIT BECAUSE
   PLAINTIFFS LACK STANDING TO ASSERT A PRE-ENFORCEMENT
   CHALLENGE TO THE DISTRICT'S COLLECTIVE BARGAINING
   AGREEMENT**

26

27        To establish Article III standing, a plaintiff must show "(1) an 'injury in fact,' (2) a

28  sufficient 'causal connection between the injury and conduct complained of,' and (3) a

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

12267329.6 ST080-174

'likel[ihood]' that the injury will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  A plaintiff may bring a pre-enforcement facial challenge to laws and still establish an injury in fact by showing the plaintiff possesses "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Babbitt v. Farm Workers*, 442 U.S. 289, 299 (1979); *Driehaus*, 573 U.S. at 159; *Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022). The threatened injury must be "certainly impending" or pose a "substantial risk" that the alleged harm will occur.  *Dreihaus*, 573 U.S. at 158; *Tingley* 47 F.4th at 1066.  Allegations of "*possible future injury*" are not sufficient to confer Article III standing.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original).

The Ninth Circuit applies a three-factor inquiry to determine whether plaintiffs have shown a "credible threat" of "imminent" enforcement genuine enough to establish an Article III injury: "[1] whether the plaintiffs have articulated a concrete plan to violate the law in question, [2] whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and [3] the history of past prosecution or enforcement under the challenged statute." *United Data Servs., LLC v. FTC*, 39 F.4th 1200, 1210 (9th Cir. 2022) (citing *Clark v. City of Seattle*, 899 F.3d 802, 813 (9th Cir. 2018)); *see also Lopez v. Candaele*, 622 F.3d 775, 785-86 (9th Cir 2010).  Plaintiffs must show there is a "reasonable likelihood that the government will enforce the challenged law against them," and must articulate a "concrete plan" to violate the law with sufficient details about their future speech, such as "when, to whom, where, or under what circumstances" it will occur.  *Lopez*, 622 F.3d at 786-87.  Furthermore, "'[n]either the mere existence of a proscriptive statute nor a generalized threat of prosecution' satisfies this test." *Tingley*, 47 F.4th at 1067 (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc)); *see also Bishop Paiute Tribe v. Inyo Cty.*, 863 F.3d 1144, 1154 (9th Cir. 2017).  A plaintiff merely stating they face "serious civil penalties" is insufficient to establish that the penalties resulting from enforcement of the challenged law are actually "imminent or realistic." *United Data Servs.*, 39 F.4th at 1211.

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

13

Motion to Dismiss Complaint; Memorandum of Points and Authorities ISO

1    Plaintiffs fail to satisfy any of these three elements.  First, Plaintiffs do not allege a

2    sufficient "concrete plan" to violate the Faculty Contract, or the DEIA regulations, in the future.

3    Each Plaintiff claims the DEIA regulations, to some degree, limit their ability to teach certain

4    concepts that relate to DEIA topics.  *See e.g.*, Verif. Compl. ¶¶ 107, 117-120, 128-131, 141-144,

5    152-153, 162-167.  Neither the DEIA regulations nor the Faculty Contract prohibit the alleged

6    conduct Plaintiffs wish to engage in – presenting what they characterize as controversial issues

7    and topics to students in their course materials.  Furthermore, Plaintiffs do not state they will

8    violate the DEIA regulations or Faculty Contract by refusing to write a self-evaluation.  Instead,

9    they speculate that the DEIA component of their faculty self-evaluations will not be reviewed as

10   satisfactory.  *See e.g.*, Verif. Compl. ¶¶ 137, 147.  Nor do Plaintiffs refuse to acquire knowledge

11   and proficiency in the locally-adopted DEIA competencies. Thus, Plaintiffs have failed to

12   articulate a sufficient concrete plan or intent to violate the DEIA regulations or the Faculty

13   Contract to establish Article III standing.

14        Second, Defendants have not communicated a specific warning or threat to somehow

15   discipline Plaintiffs for failure to comply with the DEIA regulations.  Plaintiffs rely on the

16   incorporation of a DEIA evaluation component into the Faculty Contract evaluation procedures –

17   one of ten different evaluation components – and the District's general discipline rules to allege

18   they are threatened with future adverse actions.  Verif. Compl. ¶¶ 84-88, 90-95, 180.  At best,

19   this amounts to a "generalized threat of prosecution" insufficient to confer Article III standing.

20   *Thomas*, 220 F.3d at 1139.  However, the DEIA regulations and the Faculty Contract address

21   only the evaluation of faculty, which are tools "to provide and receive constructive feedback to

22   promote professional growth and development."  Ex. A, Doc. No. 1-1, p. 4.  The DEIA

23   regulations and Faculty Contract do not assign a specific weight to the DEIA component, other

24   than "significant" emphasis, and faculty competence in DEIA teaching and learning practices

25   must be considered within the larger context of nine other evaluation criteria.  Ex. F to Verif.

26   Compl., Doc. No. 1-6, p. 42-43.  Plaintiffs do not show that how they plan to teach or what they

27   plan to do will lead to "imminent" poor ratings, and simply speculate that the District will

28   discipline them for presenting certain views.  *See, e.g.*, Verif. Compl. ¶ 119-120.  A poor rating

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

14

on the DEIA component does not necessarily lead to a poor evaluation rating overall. The causal connection between the DEIA evaluation component and Plaintiffs' alleged threat of discipline is too attenuated to establish Article III standing.

Finally, the DEIA regulations themselves and the Faculty Contract evaluation provisions have no prior history of enforcement and Plaintiffs cannot show the District has interpreted or applied the challenged regulations or provisions in ways that either censor or compel speech, or that the District has used them as bases for discipline. Plaintiffs' allegations amount to merely stating they speculate that they face "serious penalties" for failure to comply with the DEIA regulations and Faculty Contract, and this is insufficient. *United Data Servs.*, 39 F.4th at 1211.

Plaintiffs claim the Faculty Contract, by virtue of adopting language similar to the DEIA regulations, forces Plaintiffs to adopt speech with which they disagree on penalty of discipline or termination. Verif. Compl. ¶ 179. But Plaintiffs' interpretation of the Faculty Contract requires Plaintiffs to fill in the gaps within the Faculty Contract language with the three non-binding guidance documents – the Competencies and Criteria (Ex. B to Verif. Compl., Doc. No. 1-2), the Model Principles (Ex. D to Verif. Compl., Doc. No. 1-4), and the Glossary (Ex. E to Verif. Compl., Doc. No. 1-4)) – to speculate as to the application and impact of the Faculty Contract language on the evaluation process generally, and Plaintiffs' evaluations specifically.

The DEIA regulations provide the general framework for incorporating DEIA principles into the faculty evaluation process, but expressly leave the specific details up to "locally developed minimum standards in community college district performance evaluations of employees and faculty tenure reviews." Ex. A to Verif. Compl., Doc. No. 1-1, p. 8. Within the Faculty Contract, the DEIA component is one of ten individual evaluation criteria, and the Faculty Contract does not elaborate what special weight, if any, the DEIA component has on the evaluation process. The DEIA regulations themselves only require the District to give "significant emphasis," but does not define or limit the District's interpretation of what qualifies as "significant." Cal. Code Regs., tit. 5, § 53602(c)(4). Plaintiffs' concerns of discipline are premature, relying on their own gap-filling interpretations to create the spectre of substantial discipline and termination based on one component of a multi-layered evaluation process – a

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

15

Motion to Dismiss Complaint; Memorandum of Points and Authorities ISO

1    component that has not been fully implemented or interpreted after the DEIA regulations

2    formally went into effect in 2023.

3         Further, Plaintiffs conflate language in the three guidance documents as the actual

4    requirements imposed upon them.  Plaintiffs jump from the DEIA regulations themselves,

5    containing broad, generalized requirements, to the language in the non-binding,

6    recommendation-only guidance documents to create the impression that the regulations

7    themselves impose specific requirements and restrictions on Plaintiffs.  Verif. Compl. ¶¶ 103,

8    106, 109, 117, 119, 131, 137, 143, 148, 158, 165, 167.  Furthermore, all three guidance

9    documents explicitly state they are recommendations and not mandates.  Ex. B to Verif. Compl.,

10   Doc. No. 1-2, p. 2; Ex. D to Verif. Compl., Doc. No. 1-4, p. 3; Glossary (Ex. E to Verif. Compl.,

11   Doc. No. 1-5, p. 2.

12        Plaintiffs' fear, in effect, is that the DEIA regulations and evaluation procedures "might

13   be construed in a particular manner" that harms them, but that "falls short of a 'credible threat'"

14   the DEIA regulations and evaluation procedures will be enforced against them.  *See Wolfson v.*

15   *Brammer*, 616 F.3d 1045, 1063 (9th Cir. 2010).  Plaintiffs do not come close to meeting the

16   standing requirements to make their challenges.  *United Data Servs.*, 39 F.4th at 1210.  Based on

17   the foregoing, Plaintiffs' Verified Complaint should be dismissed.

18        **B.    PLAINTIFFS' CLAIMS FOR RELIEF LACK MERIT BECAUSE THE**
              **COLLECTIVE BARGAINING AGREEMENT TERMS WAIVE**
19            **PLAINTIFFS' RIGHTS**

20        Plaintiffs' claims for relief against the District Defendants (Counts, 2, 4, 6, 8, and 10)

21   each challenge the three particular provisions of the Faculty Contract, a collective bargaining

22   agreement between the District and the faculty at its Colleges.  The claims for relief each lack

23   merit because the very appearance of the provisions in the collective bargaining agreement

24   means Plaintiffs, through their union, waived any First Amendment rights as to those provisions.

25        Although state labor relations law and the Educational Employment Relations Act

26   ("EERA") govern Plaintiffs' employment at the District, authority under the federal National

27   Labor Relations Act ("NLRA") is persuasive.  Under the NLRA, the union is not required to

28   obtain the personal endorsement of the employees it represents to bargain terms of a collective

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

16

bargaining agreement.  Instead, "[i]t is clearly established that all terms of a collective bargaining agreement . . . are binding on the individual employees represented by the union." *Seborowski v. Pittsburgh Press Co*., 188 F.3d 163, 168 (3d Cir. 1999); *see also Smith v. Pac. Bell Tel. Co.*, 649 F. Supp. 2d 1073, 1093-94 (E.D. Cal. 2009) (noting a valid CBA binds employees represented by the union and "must be honored").  In *Barnard v. Lackawanna Cnty.*, 696 F. App'x 59 (3d Cir. 2017), the Court of Appeals affirmed dismissal of a union member's First Amendment retaliation claim based on her suspension for participating in a sympathy strike when her collective bargaining agreement waived her First Amendment right to participate in such strikes. The district court noted that "[t]he Supreme Court has long recognized that a party may waive constitutional rights if there is 'clear' and 'compelling' evidence of waiver and that waiver is voluntary, knowing, and intelligent." *Barnard v. Lackawanna Cnty.*, 194 F. Supp. 3d 337, 343 (M.D. Pa. 2016) (quoting *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 673 F.3d 192, 205 (3d Cir. 2012)); *see also Leonard v. Clark*, 12 F.3d 885, 888-91 (9th Cir. 1993) (holding a union waived First Amendment rights in a collective bargaining agreement).  This principle rooted in private sector labor relations law must apply equally to the context of public sector labor relations under the EERA here.  *San Diego Teachers Assn. v. Superior Court*, 24 Cal. 3d 1, 12 (1979) (referring to NLRA to determine issue of preemption under the EERA).

Plaintiffs' contention that the Faculty Contract requires a more individualized waiver ignores the binding nature of collective bargaining agreements on employees.  In *Bolden v. Se. Pa. Transp. Auth.*, 953 F.2d 807, 827 (3d Cir. 1991), the Third Circuit addressed a similar question – whether a collective bargaining agreement requires a particular type of waiver of individual employees' Fourth Amendment or Fourteenth Amendment rights.  The Court held that a collective bargaining agreement is binding on represented employees absent a showing that in reaching the agreement, the union breached its duty of fair representation.  *Bolden*, 953 F.3d at 828.  When a CBA addresses a mandatory subject of bargaining, such as faculty evaluation criteria under Cal. Gov. Code, § 3543.2, the union's authority as exclusive bargaining agent "necessarily entails some restrictions on constitutional rights that individual employees would otherwise enjoy" and the union may consent to terms and conditions of employment that

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

17

12267329.6 ST080-174

implicate constitutional rights.  *Id.* at 827.  The Court reasoned that even if the CBA lacked any provision expressly waiving Fourth Amendment rights, the collective bargaining agreement could otherwise contain "implied authorization" through "practice, usage, and custom" that "must bind individual employees as surely as an express term."  *Id.* at 828.  If individual employees can litigate matters settled through a collective bargaining agreement solely because the CBA tangentially implicates constitutional rights, it would "greatly diminish[]" the "utility of collective bargaining . . . in the public sector."  *Id.*

The Faculty Contract contains implied authorization to negotiate and establish binding evaluation criteria and procedures on Plaintiffs.  Evaluation criteria is a mandatory subject of bargaining under the EERA.  Gov. Code, § 3543.2.  The District and the union, acting on behalf of Plaintiffs, negotiated the incorporation of the DEIA regulations into the Faculty Contract, including the particular language and requirements that apply to Plaintiffs.  Thus, the DEIA evaluation procedures are binding on Plaintiffs.  *Smith*, 649 F. Supp. 2d at 1093-94; *Soc. Servs. Union v. Alameda Cty. Training & Emp't Bd.*, 207 Cal. App. 3d 1458, 1465 (1989) (holding that under California law, a CBA becomes a "binding agreement" once approved by a public agency's governing body).  Plaintiffs have not claimed that the union, in negotiating the DEIA evaluation component of the Faculty Contract, breached the union's duty of fair representation in order to challenge the adoption of those provisions.  Furthermore, as discussed *infra* Section IV.C, the DEIA regulations and the Faculty Contract DEIA evaluation component largely do not implicate speech at all.  Plaintiffs remain free to teach the material they want in the classroom, and express their criticisms of DEIA views, ideals, and concepts outside the classroom.  The fact that the DEIA evaluation component may partially implicate Plaintiffs' protected teaching and academic writing does not enable Plaintiffs to litigate the binding contractual provisions agreed to on their behalf by their union.  *Bolden*, 953 F.3d at 828.

Each claim for relief against the District Defendants rests on provisions of the Faculty Contract.  Ex. F to Verif. Compl., Doc. No. 1-6, p. 41-43, 46.  Accordingly, each lacks merit as a matter of law under the authorities described above.  *See Seborowski*, 188 F.3d at 168; *Michota*, 755 F.2d at 335; *San Diego Teachers Assn.*, 24 Cal. 3d at 12.

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

18

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

**C.     PLAINTIFFS' CLAIMS FOR RELIEF LACK MERIT BECAUSE, AS A MATTER OF LAW, THE THREE COLLECTIVE BARGAINING AGREEMENT TERMS AT ISSUE SURVIVE FIRST AMENDMENT FACIAL CHALLENGE**

**1.     Count 2 – Facial Challenge Based on Alleged Viewpoint Discrimination**

The Complaint's Second Cause of Action makes a facial challenge to the three Faculty Contract provisions on the basis that they allegedly constitute prohibited viewpoint discrimination under the First Amendment.  Verif. Compl. ¶¶ 197-208.  Plaintiffs' claim focuses solely on Plaintiffs' speech in the classroom and to students.  Verif. Compl. ¶¶ 174-177.  While "teaching and academic writing" is protected speech under the First Amendment, the DEIA regulations and Faculty Contract do not regulate Plaintiffs' speech.  *Demers v. Austin*, 746 F.3d 402, 411 (9th Cir. 2014).  Rather, they focus on the teaching and learning *practices* Plaintiffs' employ in their classrooms and Plaintiffs' demonstrated *proficiency* in the District's DEIA competencies.  Cal. Code Regs. tit. 5, § 52510(l); Ex. F to Verif. Compl., Doc. No. 1-6, p. 42-43. A "practice"[3]  is not speech, nor is "proficiency."[4]  In other words, the DEIA regulations and the Faculty Contract evaluate the *way* faculty members teach their students, not *what* faculty members teach their students.  For those Plaintiffs who believe "incorporating DEIA-related material is pedagogically [ir]relevant or [in]appropriate" to their particular curriculum, (Verif. Compl. ¶ 156, 171) they can still employ DEIA-proficient teaching practices such as grading anonymously, creating opportunities to discuss feedback, and incorporating student choice regarding the deliverables for assigned work – none of which depends on the content of the material taught.[5]

Even assuming the three Faculty Contract provisions at issue reach protected speech, the provisions are not unconstitutional viewpoint discrimination.  Courts recognize educational

---

[3] *See* Cambridge English Dictionary, "Practice" https://dictionary.cambridge.org/us/dictionary/english/practice?q=practice (last retrieved December 13, 2023) (defining "practice" as "action rather than thought or ideas").

[4] *See* Cambridge English Dictionary, "Proficiency," https://dictionary.cambridge.org/us/dictionary/english/proficiency?q=Proficiency (last retrieved December 13, 2023) (defining "proficiency" as "the fact of having the skill and experience for doing something").

[5] See https://www.cmu.edu/teaching/designteach/diversityequityinclusion/index.html.

Motion to Dismiss Complaint; Memorandum of Points and Authorities ISO

12267329.6 ST080-174

1   institutions' ability to engage in a form of content and viewpoint discrimination without running

2   afoul of the First Amendment.  *Demers*, 746 F.3d at 413 ("Ordinarily . . . content-based

3   judgment is anathema to the First Amendment.  But in the academic world, such a judgment is

4   both necessary and appropriate.").  This principle applies to evaluation of a faculty members'

5   performance, as faculty evaluators must necessarily engage in content discrimination, as it were,

6   in order effectively to assess teaching performance of faculty members.  Courts generally refrain

7   from passing judgment on professional academic decision making and are unsuited to evaluate

8   "the substance of the multitude of academic decisions that are made daily by faculty members of

9   public educational institutions" – including competitive selection and evaluation processes.

10  *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 226 (1985); *Nat'l Endowment for the Arts v.*

11  *Finley*, 524 U.S. 569, 585-86 (1998).

12          Contrary to Plaintiffs' suggestion (Verif. Compl. ¶ 201 ("The Faculty Contract cannot

13  satisfy strict scrutiny. . .")), the appropriate standard to evaluate faculty speech in this context is

14  the *Pickering* balancing test, not strict scrutiny.  *Pickering v. Board of Education*, 391 U.S. 563,

15  568 (1968); *Demers*, 746 F.3d at 412 ("We hold that academic employee speech not covered by

16  *Garcetti* is protected under the First Amendment, using the analysis established in *Pickering*").

17  As *Demers* recognized, *Pickering* balancing involving academic speech is usually "particularly

18  subtle and difficult" where the "nature and strength" of the public interest in academic speech

19  and the interest of an employing academic institution will be difficult to assess.  *Demers*, 746

20  F.3d at 413.  The District has a legitimate and substantial interest in efficiently carrying out its

21  educational mission, ensuring teaching excellence, and in securing equal education opportunities

22  for the District's students.  Cal. Educ. Code § 66010.2.  To do so, the District must necessarily

23  engage in content-based evaluation of faculty's academic and teaching excellence, consistent

24  with *Demers*.  *Demers*, 746 F.3d at 413 (faculty evaluations may involve a content-based

25  judgment by the employing university about the quality of what the faculty member has written).

26  But that does not amount to unconstitutional viewpoint discrimination against Plaintiffs'

27  protected teaching and academic speech.

28          Plaintiffs ask this Court to substitute its own judgment for that of the District, and force

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

20

12267329.6 ST080-174

the District to be supposedly viewpoint-neutral with respect to topics related to DEIA.  But that implicates the District's own protected speech.  *Matal v. Tam*, 582 U.S. 218, 234 (2017).  ("[I]mposing a requirement of viewpoint-neutrality on government speech would be paralyzing.  When a government entity embarks on a course of action, it necessarily takes a particular viewpoint and rejects others.")  Government entities like the District are entitled to express their ideals and commitment to DEIA, especially when that expression does not regulate another person's speech.  *Rosenberger v. Rector & Visitors of the Univ. of Virginia*, 515 U.S. 819, 828, 833 (1995) (although "the government may not regulate speech based on its substantive content . . . when the State is the speaker, it may make content-based choices"); *see also Downs v. Los Angeles Unified Sch. Dist.*, 228 F.3d 1003, 1013 (9th Cir. 2000).  The District's substantial interest in promoting and improving equitable student outcomes outweighs Plaintiffs' interest in being free from understanding and becoming proficient in learning and teaching practices that improve those student outcomes.

### 2.  Count 4 – Facial Challenge Based on Alleged Compelled Speech

The Verified Complaint's Fourth Cause of Action makes a facial challenge to the three Faculty Contract provisions on the basis that they violate the First Amendment by improperly compelling speech.  Verif. Compl. ¶¶ 223-235.  As stated above, the Faculty Contract provisions do not require Plaintiffs to speak at all.  To the extent the Faculty Contract DEIA evaluation component implicates protected teaching and academic writing, it is limited to the pedagogical practices, not speech.  Furthermore, nowhere in the Faculty Contract does the District prohibit faculty from criticizing, questioning, or discussing various positions related to diversity, equity, and inclusion principles.  Nor even do the DEIA regulations themselves.  Plaintiffs remain able to express their disagreement, criticisms, and concerns on this topic.  The Faculty Contract does not require Plaintiffs to adopt any particular approach to these DEIA principles.

Instead, Plaintiffs look to non-binding guidance documents to create the impression that the regulations prohibit such criticism and require ideological conformity.  Verif. Compl. ¶¶ 58-80.  As discussed above, there is no prohibition on faculty member expression in either the DEIA regulations or the Faculty Contract.  Only one of the challenged provisions, Article 13, Section

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

21

12267329.6 ST080-174

2.E.4, requires a self-evaluation that, in part, asks the faculty member to "demonstrate an understanding of diversity, equity, inclusion, and accessibility (DEIA) competencies and anti-racist principles, and how they have put those principals into practice to improve equitable student outcomes and course completion."  Ex. F to Verif.  Compl., Doc. No. 1-6, p. 41.  This requirement is not unconstitutional compelled speech, or even speech at all, as this type of self-evaluation is a standard report on actions, efforts, and successes pursuant to Plaintiffs' employment – no different from a report on research activity.  *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006); *Demers v. Austin*, 746 F.3d 402, 413 (9th Cir. 2014).  The plain language of the provision provides no indication, other than Plaintiffs' conclusory allegations, that Plaintiffs must "endorse the viewpoints" imposed by the State and the District by demonstrating "an understanding of . . . [DEIA] competencies and anti-racist principles" in their self-evaluation.  Plaintiffs' Consolidated Reply in Support of Plaintiffs' Motion for Preliminary Injunction, Doc. No. 29, at 26:14-26; Ex. F to Verif. Compl., Doc. No. 1-6, p. 41.

Plaintiffs then claim that even if the DEIA regulations or Faculty Contract do not prohibit the expression of their views, that the evaluation process itself "put[s] a heavy thumb on the scale" in favor of DEIA viewpoints.  Plaintiffs' Reply, Doc. 29, at 24:11-16.  But here again, Plaintiffs rely on speculation that their stated desire to teach certain ideas, concepts, viewpoints, and materials necessarily violates the Faculty Contract and will result in a negative evaluation.  Verif. Compl. ¶ 175, 179-180.  Plaintiffs can just as easily establish proficiency, understanding, and knowledge in the District's DEIA by demonstrating the very skills they wish to impart on their students through high quality and thoughtful criticisms and opposition to DEIA arguments, ideals, and concepts in the classroom.  Or Plaintiffs can utilize one of the many non-content based teaching practices to aid equitable student outcomes, such as anonymous grading.

### 3.    Count 6 – Facial Challenge Based on Alleged Prior Restraint

Plaintiffs' Sixth Cause of Action challenges the three Faculty Contract provisions on the basis that they allegedly violate the First Amendment by improperly imposing a prior restraint on speech.  Verif. Compl. ¶¶ 256-267.  The Faculty Contract evaluation provisions are not unconstitutional prior restraints on faculty expression.  First, none of the provisions from the

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

22

12267329.6 ST080-174

Faculty Contract that this motion places at issue, i.e., those on self-evaluation, evaluation, and training, actually prohibits any particular speech.

Second, even if they somehow did, the provisions do not fit the definition of a "prior restraint," which generally prohibits speech not because it violates standards but because it is un-licensed. *See Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1023 (9th Cir. 2009) ("The relevant question [in determining whether something is a prior restraint] is whether the challenged regulation authorizes suppression of speech in advance of its expression[.]"); *cf. Healy v. James*, 408 U.S. 169, 172 (1972) (denial of student group recognition pursuant to licensing scheme). In general, courts and commentators have found "prior restraints" only in the limited contexts of judicial orders prohibiting speech or in government licensing systems that require advance authorization to speak. "A prior restraint on speech is a *law, regulation or judicial order* that suppresses speech . . . on the basis of the speech's content and in advance of its actual expression." *See Taylor v. Roswell Independent School Dist.*, 713 F.3d 25, 42 (10th Cir. 2013) (quoting *United States v. Quattrone*, 402 F.3d 304 (2d Cir. 2005)). "Prior restraints generally take one of two classic forms: judicial injunctions and administrative licensing schemes." *Id.* The key feature of a prior restraint is a requirement that the speaker obtain "advance *permission* from a government official." *Hershey v. Jasinski*, Nos. 22-1826, 22-1941, 22-2236, 2023 U.S. App. LEXIS 30904, at *18 (8th Cir. Nov. 21, 2023) (internal quotations omitted).

Third, in the context of employee speech, courts in the Ninth Circuit evaluate prior restraints under a test based on the *Pickering* balancing test, *Pickering*, 391 U.S. at 568, which supplies the balancing test applicable to public employee speech claims, rather than the traditional heightened standard employed for these types of free speech issues. *See Gibson v. Office of Atty. Gen. State of California*, 561 F.3d 920, 926–28 (9th Cir. 2009). As discussed above, the District has a substantial and legitimate interest in efficiently carrying out its educational mission, ensuring teaching excellence, and in securing equal education opportunities for the District's students that outweighs Plaintiffs' interest. Cal. Educ. Code § 66010.2; *Hernandez v. City of Phoenix*, 43 F.4th 966, 981 (9th Cir. 2022).

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

23

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

1   Plaintiffs allege the DEIA regulations, operating through the Faculty Contract, constitute

2   a prior restraint by chilling their speech.  But as discussed above, the regulations and Faculty

3   Contract do not prohibit Plaintiffs from discussing or criticizing DEIA principles or otherwise

4   suppress their protected speech.  *See Taylor*, 713 F.3d at 42.  They are not licensing systems or

5   judicial orders.  *Id.*  There is no advance permission requirement anywhere in the DEIA

6   regulations or the Faculty Contract for faculty to engage in speech in any form.  *Hershey*, 2023

7   U.S. App. LEXIS 30904 at *18.  Thus, they fail to qualify as a prior restraint at all and under the

8   applicable *Pickering* balancing test, the District's substantial and legitimate interest in advancing

9   its educational mission, and these considerations satisfy *Pickering*.  *See Hernandez*, 43 F.4th at

10  981; *Gibson*, 561 F.3d at 926-27.

11  **4.    Count 8 – Facial Challenge Based on Alleged Overbreadth**

12  The Verified Complaint's Eighth Cause of Action makes a facial overbreadth challenge

13  under the First Amendment to the three Faculty Contract provisions.  Verif. Compl. ¶¶ 282-293.

14  Plaintiffs allege the Faculty Contract is overbroad by restricting a substantial amount of

15  protected speech.  *Id.* at ¶¶ 268-293.  A restriction on speech is facially overbroad if "a

16  substantial number of its applications are unconstitutional, judged in relation to the [provision's]

17  plainly legitimate sweep."  *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting

18  *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008));

19  *see Hernandez*, 43 F.4th at 980-82 (applying overbreadth standard in public employment

20  context).  As explained above, however, the DEIA regulations and Faculty Contract do not

21  infringe on Plaintiffs' ability to advocate, teach, or assign classroom materials.  Their focus is on

22  properly evaluating the practices that show *how* a faculty member teaches, not *what* they teach.

23  To the extent Plaintiffs attempt to create such restrictions, they conflate the non-binding

24  guidance documents with the actual language of the regulations and Faculty Contract, such that

25  Plaintiffs inaccurately attribute the guidance documents as imposing legal binding restrictions on

26  what Plaintiffs "must and must not" teach.

27  **5.    Count 10 – Vagueness Challenge**

28  The Verified Complaint's Tenth Cause of Action makes a facial vagueness challenge,

24

12267329.6 ST080-174

1   presumably under the First and Fourteenth Amendments to the three Faculty Contract provisions.

2   Verif. Compl. ¶¶ 311-322.  As a matter of law, the Faculty Contract provisions are not

3   unconstitutionally vague.  Constitutional vagueness derives from the Due Process Clause of the

4   Fifth and Fourteenth Amendments, requiring statutes provide adequate notice of what behavior

5   the statute proscribes.  *United States v. Williams*, 553 U.S. 285, 304 (2008).  To prevail on a

6   facial vagueness challenge, plaintiffs must show either that the challenged provisions fail to

7   afford employees "a reasonable opportunity to understand what conduct [the provisions]

8   prohibit[]," or that the provisions permit "arbitrary and discriminatory enforcement."  *Hill v.*

9   *Colorado*, 530 U.S. 703, 732 (2000).  Courts do not require "mathematical certainty," *Grayned*

10   *v. City of Rockford*, 408 U.S. 104, 110 (1972), or "perfect clarity and precise guidance," *Ward v.*

11   *Rock Against Racism*, 491 U.S. 781, 794 (1989), to survive a facial vagueness challenge, even

12   when the regulations restrict First Amendment-protected activity.  *Williams*, 553 U.S. at 304.  In

13   the public employment context, courts grant public employers more leeway in regulating public

14   employee speech such that restrictions of speech in another context that may be impermissibly

15   vague could otherwise be a constitutional restriction on public employee speech.  *Waters v.*

16   *Churchill*, 511 U.S. 661, 673 (1994) (plurality opinion) (noting policies governing public

17   employee speech may be framed in language that might be deemed impermissibly vague if

18   applied to the public at large); *Hernandez*, 43 F.4th at 982-83 (same).

19        If it is clear what the challenged provisions proscribe "in the vast majority of [their]

20   intended applications," they cannot be deemed unconstitutionally vague on their face.  *Hill*, 530

21   U.S. at 733.  In situations where "legitimate uncertainty" exists, the statute's chilling effect on

22   legitimate speech must chill "a *substantial* amount of legitimate speech," not merely "*some*

23   amount of legitimate speech."  *Cal. Teachers Ass'n v. Bd. Of Educ.*, 271 F.3d 1141, 1152 (9th

24   Cir. 2001) (emphasis in original).  In evaluating whether the chilling effect is substantial, courts

25   will evaluate the plain language of the statute and the context in which the statute operations.  *Id.*

26   at 1151, 1154.  When a statute combines allegedly ambiguous terms, courts will evaluate

27   whether the meanings of the individual terms are "easily discerned through recourse to a

28   common dictionary" and whether the meaning is clear in the context of the surrounding terms.

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

25

12267329.6 ST080-174

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

1   *Edge v. City of Everett*, 929 F.3d 657, 665 (9th Cir. 2019) (holding the use of "compound terms"

2   does not leave the public "to guess at the meaning of the [compound] term.").

3          Here, Plaintiffs allege the Faculty Contract provisions are vague because they allegedly

4   contain undefined or confusing terms and lack standards to guide the District's application of the

5   provisions.  Verif. Compl. ¶¶ 294-322.  The regulations provide a long list of relevant definitions

6   (Ex. A to Verif. Compl., Doc. No. 1-1, p. 3, § 52510) that inform Plaintiffs' reading of the

7   requirements within the DEIA regulations and Faculty Contract in the vast majority of its

8   applications.  These definitions are contained within the plain text of the DEIA regulations under

9   Cal. Code of Regs. tit. 5, § 52510 and do not require any additional consultation of non-binding

10  guidance documents.  Plaintiffs further allege that the lack of definition for "equity" in the DEIA

11  regulations or Faculty Contract renders them vague.  Plaintiffs' Reply, Doc. 29, at 31:2-4.  But

12  "equity" has an easily discerned dictionary definition Plaintiffs can readily search.[6]   Combining

13  the term "equity" with "racial" also does not create a vagueness issue, as a person of ordinary

14  intelligence reading the DEIA regulations and Faculty Contract in their entirety can combine the

15  two words to conclude "racial equity" deals with treating people fairly according to their needs

16  such that no one receives unfair or harmful treatment due to their race.[7]   *Edge*, 929 F.3d at 665.

17  To the extent Plaintiffs identify uncertainties in meaning or application of these terms, Plaintiffs

18  at most express concern about edge-cases,[8] but "uncertainty at a statute's margins" does not

19  warrant facial invalidation.  *Cal. Teachers Ass'n v. Bd. of Educ.*, 271 F.3d 1141, 1152 (9th Cir.

20  [6] *See* Cambridge English Dictionary, "Equity,"
21  https://dictionary.cambridge.org/us/dictionary/english/equity?q=Equity (last retrieved December 13, 2023) (defining "equity" as "the situation in which everyone is treated fairly according to
22  their needs and no group of people is given special treatment").

    [7] *See* Cambridge English Dictionary, "Racial,"
23  https://dictionary.cambridge.org/us/dictionary/english/racial?q=Racial (last retrieved December 13, 2023) (defining "racial" as "based on someone's perceived race, especially in a way that is
24  unfair or harmful; or based on policies, behaviors, rules, etc. that result in unfair or harmful treatment of people because of their perceived race").

25  [8] Plaintiffs also claim they do not know what will happen when "a professor and an
26  administrator" disagree on these definitions.  Plaintiffs' Reply, Doc. 29, at 31:6-7.  This concern is mitigated by the evaluation procedures themselves, which provide that faculty members being
27  reviewed can select their faculty peer reviewer (Ex. F to Verif. Compl., Doc. No. 1-6, p. 36, Art. 13 2.C.3.b) and can attach written comments that will go to the College President on any matters
28  contained in their written evaluation.  Ex. F to Verif. Compl., Doc. No. 1-6, p. 36, Art. 13 2.C.6.iv-vi.

Motion to Dismiss Complaint; Memorandum of Points and Authorities ISO

1   2001).  Again, the Faculty Contract provisions themselves relate to self-evaluation, evaluation,

2   and training, and are not the type of disciplinary rules or prohibitions to which constitutional

3   vagueness concerns apply.  Moreover, vagueness considerations apply less strenuously in the

4   public employment context.  *See Waters*, 511 U.S. at 673.

5
        **D.     THERE IS NO *MONELL* LIABILITY FOR REGULATIONS THE
6               DISTRICT DEFENDANTS ARE REQUIRED TO FOLLOW**

7           There should be no liability (and hence no injunctive relief) for local agencies and their

8   officials, sued in the official capacity, to be liable under 42 U.S.C. section 1983 for complying

9   with mandatory state law – in this case the mandatory components of the DEIA regulations at

10  issue.  As the Court in *Aliser v. SEIU California*, 419 F. Supp. 3d 1161, 1165 (N.D. Cal. 2019),

11  described, when an agency "exercises no discretion and merely complies with a mandatory state

12  law, the constitutional violation was not caused by an official policy of the municipality."  *Id.*

13  (citing *Vives v. City of New York*, 524 F.3d 346, 353 (2d Cir. 2008); *Evers v. County of Custer*,

14  745 F.2d 1196, 1203 (9th Cir. 1984); *Sandoval v. County of Sonoma*, 912 F.3d 509, 517 (9th Cir.

15  2018)); *Quezambra v. United Domestic Workers of Am. AFSCME Loc. 3930*, 445 F. Supp. 3d

16  695, 705-06 (C.D. Cal. 2020) (same).[9]

17          Courts in this Circuit have required community college districts to satisfy *Monell*

18  standards.  In *Wilson v. Maricopa Cmty. Coll. Dist.*, 699 F. App'x 771 (9th Cir. 2017), the Ninth

19  Circuit affirmed the district court's grant of summary judgment on the plaintiff's Section 1981

20  claim because there was no triable issue "as to whether her constitutional rights were violated as

21  a result of an official policy, practice, or custom of the Maricopa Community College District."

22  *Id.* at 772.  In *Newman v. San Joaquin Delta Community College District*, 814 F. Supp. 2d 967,

23  978 (E.D. Cal. 2011), the court denied summary judgment to the defendant college on a *Monell*

24  ─────────────────────
    [9] Although the foregoing are Section 1983 cases, they apply to entities that can be considered
25  "arms of the state" as well and their officials under the *Ex Parte Young* exception.  *See, e.g.*,
    *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1113 (N.D. Cal. 2015); *Gomez v. Vernon*, 255 F.3d
26  1118, 1127 (9th Cir. 2001) (holding without mentioning *Ex Parte Young* that Idaho Department
    of Corrections administrators sued for injunctive relief were "liable in their official capacities
27  only if policy or custom played a part in the violation of federal law"); *Kentucky v. Graham*, 473
    U.S. 159, 167 (1985) ("Thus, implementation of state policy or custom may be reached in federal
28  court only because official-capacity actions for prospective relief are not treated as actions
    against the State.").

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

Motion to Dismiss Complaint; Memorandum of Points and Authorities ISO

12267329.6 ST080-174

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

1   claim for failure to train officers, in part because there was no stated policy.  *Id.* at 978.

2       Although the District has significant discretion in interpreting and applying the new

3   DEIA regulations, the District lacks discretion to the extent the DEIA regulations impose

4   mandatory requirements.  Plaintiffs contend several portions of the regulations in fact impose

5   mandatory requirements, specifically the DEIA component of the evaluation process, and

6   Plaintiffs suggest those are included in the Faculty Contract terms at issue.  The District

7   Defendants cannot be liable for those, as District Defendants are local government officials that

8   are not final policy makers for the particular source of Plaintiffs' specific constitutional violation

9   – the DEIA evaluation component imposed by the DEIA regulations.  *Cf. McMillian v. Monroe*

10  *Cty.*, 520 U.S. 781, 785-86 (1997) (holding the question of whether a local governmental actor is

11  a state or local actor for the purposes of section 1983 liability depends on "whether government

12  officials are final policymakers for local government in a particular area, or on a particular issue"

13  and "the actual function of a government official" as defined "under relevant state law").

14  **V.    CONCLUSION**

15      For the foregoing reasons, the District Defendants respectfully request that Plaintiffs'

16  Verified Complaint be dismissed.  Because amendment would be futile, Defendants ask that this

17  Court dismiss the Verified Complaint without leave to amend.

18

19   Dated:  December 15, 2023                LIEBERT CASSIDY WHITMORE

20

21                                        */s/ David A. Urban*
                                    By:   Mark H. Meyerhoff
22                                        David A. Urban
                                          Morgan Johnson
23                                        Attorneys for Defendants CAROLE
                                          GOLDSMITH, et al.

24

25

26

27

28

12267329.6 ST080-174