DANIEL M. ORTNER (California State Bar No. 329866)
daniel.ortner@thefire.org
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Telephone: (215) 717-3473
*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
## FRESNO DIVISION

| | |
|---|---|
| LOREN PALSGAARD, ET AL., | Civil Action No.: |
| *Plaintiffs*, | 1:23-cv-01228-ADA-CDB |
| v. | |
| SONYA CHRISTIAN, ET AL., | **PLAINTIFFS' CONSOLIDATED BRIEF IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS** |
| *Defendants*. | |

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

STATEMENT OF FACTS .........................................................................................................2

    California Community Colleges Adopt the DEIA Rules and Implementation Guidelines..2

    State Center Incorporates and Enforces the DEIA Rules through the Faculty Contract. .....5

    The DEIA Rules and Faculty Contract Force Plaintiffs to Alter Their Protected Speech....6

    Plaintiffs Sue and Move for a Preliminary Injunction. ..........................................................9

    Judge Baker's Findings and Recommendation in the Related Case of *Johnson v. Watkin*. ....................................................................................................................................10

ARGUMENT..............................................................................................................................10

    I.     Plaintiffs Have Standing to Challenge the DEIA Rules and Faculty Contract.......................................................................................................................10

             A.    Plaintiffs Are Suffering a Constitutionally Cognizable Injury. ..................................................................................................11

             B.    Plaintiffs' Injury Is Caused by Both the State's and the District's Actions.................................................................14

             C.    Plaintiffs Are Reasonably Likely to Be Injured By the DEIA Rules and Faculty Contract.......................................17

    II.    The Faculty Contract is not a valid waiver of Plaintiffs' constitutional rights. ........................................................................................20

             A.    The Union May Not Waive Plaintiffs' Substantive Constitutional Rights...........................................................21

             B.    The Contract Provisions Were Not a "Clear and Unmistakable" Waiver of Constitutional Rights.............................22

             C.    The Contract Provisions Were Not a Voluntary and Knowing Waiver of Constitutional Rights.......................................23

    III.    Each of Plaintiffs' Claims Survives the Motion to Dismiss. ..................................25

             A.    Defendants Violate Plaintiffs' First Amendment Rights by Discriminating in Favor of the State's Approved DEIA Viewpoints.............................................26

     i.  The First Amendment protects Plaintiffs'
       classroom speech ....................................................26

     ii.  Defendants cannot punish Plaintiffs for
       expressing differing viewpoints in the
       classroom. ..............................................................27

     iii.  Whether strict scrutiny or *Pickering* applies,
       Plaintiffs' viewpoint discrimination claims
       survive the motion to dismiss ...............................29

   B.  Defendants May Not Compel Professors to Espouse
     the State's Preferred DEIA Message.................................30

   C.  The DEIA Rules and Faculty Contract Impose a Prior
     Restraint. ........................................................................33

   D.  The DEIA Rules and Faculty Contract Are
     Overbroad.......................................................................35

   E.  The DEIA Rules and Faculty Contract Are Vague. ..........35

CONCLUSION.......................................................................................38

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*303 Creative LLC v. Elenis,*
  600 U.S. 570 (2023) ................................................................................................. 33

*Abood v. Detroit Bd. of Educ,*
  431 U.S. 209 (1977) ................................................................................................. 22

*Aetna Ins. Co. v. Kennedy,*
  301 U.S. 389 (1937) ................................................................................................. 24

*Aliser v. SEIU California,*
  419 F.Supp.3d 1161 (N.D. Cal. 2019) ..................................................................... 17

*All. For Open Soc'y Int'l, Inc. v. USAID,*
  651 F.3d 218 (2d Cir. 2011) ..................................................................................... 31

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................................. 25

*Bair v. Shippensburg Univ.,,*
  280 F. Supp. 2d 357 (M.D. Pa. 2003) ...................................................................... 27

*Babbitt v. United Farm Workers Nat'l Union,*
  442 U.S. 289 (1979) ................................................................................................. 18

*Barke v. Banks,*
  25 F.4th 714 (9th Cir. 2022) ..................................................................................... 16

*Barnard v. Lackawanna County,*
  696 F. App'x 59 (3d Cir. 2017) ................................................................................ 23

*Barnum Timber Co. v. U.S. E.P.A.,*
  633 F.3d 894 (9th Cir. 2011) .................................................................................... 17

*Barone v. City of Springfield, Or.,*
  902 F.3d 1091 (9th Cir. 2018) .................................................................................. 34

*Bolden v. Se. Pa. Transp. Auth.,*
  953 F.2d 807 (3d Cir. 1991) ..................................................................................... 21

*Borough of Duryea, Pa., v. Guarnieri,*
  564 U.S. 379 (2011) ................................................................................................. 21

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

*Cal. Pro-Life Council, Inc. v. Getman*,
  328 F.3d 1088 (9th Cir. 2003) ...................................................................18

*Charles v. City of Los Angeles*,
  697 F.3d 1146 (9th Cir. 2012) ...................................................................26

*Ciambriello v. Cnty. of Nassau*,
  292 F.3d 307, 321-22 (2d Cir. 2002) .........................................................23

*Cole v. Richardson*,
  405 U.S. 676 (1972) ...................................................................................31

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
  527 U.S. 666 (1999) ...................................................................................23

*Comer v. Schiro*, 480 F.3d 960 (9th Cir. 2007) ....................................24, 25

*Cuyamaca Meats, Inc. v. San Diego & Imperial Cntys. Butchers' & Food Emps.'*
  *Pension Tr. Fund*,
  827 F.2d 491 (9th Cir. 1987) .....................................................................24

*D.H. Overmyer v. Frick Co.*,
  405 U.S. 174 (1972) ...................................................................................24

*Dalfio v. Orlansky-Wax, LLC*,
  No. 21-56339, 2022 WL 3083323 (9th Cir. 2022)..............................11, 14

*Davies v. Grossmont Union High Sch. Dist.*,
  930 F.2d 1390 (9th Cir. 1991 ....................................................................24

*Decotiis v. Whittemore*,
  635 F.3d 22 (1st Cir. 2011).........................................................................30

*DeFiore v. SOC LLC*,
  85 F.4th 546 (9th Cir. 2023).......................................................................14

*Demers v. Austin*,
  746 F.3d 402 (9th Cir. 2014) ...............................................................*passim*

*Downs v. Los Angeles Unified Sch. Dist.*,
  228 F.3d 1003 (9th Cir. 2000) ...................................................................27

*Edge v. City of Everett*,
  929 F.3d 657 (9th Cir. 2019) .....................................................................37

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

*Eng v. Cooley,*
    552 F.3d 1062 (9th Cir. 2009) ............................................................28, 30

*Erie Telecomms., Inc. v. City of Erie,*
    853 F.2d 1084 (3d Cir. 1988).....................................................................24

*Evergreen Ass'n, Inc. v. City of New York,*
    740 F.3d 233 (2nd Cir.2014) .....................................................................32

*First Interstate Bank v. State of California,*
    197 Cal. App. 3d 627 (1987) .....................................................................16

*Gete v. I.N.S.,*
    121 F.3d 1285 (9th Cir. 1997) ..............................................................24, 25

*Grayned v. City of Rockford,*
    408 U.S. 104 (1972) ...................................................................................36

*Guadalupe Police Officer's Ass'n v. City of Guadalupe,*
    Case No. CV 10–8061 GAF (FFMx), 2011 WL 13217672  (C.D. Cal. June 8, 2011)
    ....................................................................................................................30

*Hafer v. Melo,*
    502 U.S. 21 (1991) .....................................................................................17

*Hernandez v. City of Phoenix,*
    43 F.4th 966 (9th Cir. 2022).................................................................34, 35

*Hill v. Colorado,*
    530 U.S. 703 (2000) ...................................................................................38

*Human Life of Washington Inc. v. Brumsickle,*
    624 F.3d 990 (9th Cir. 2010) .....................................................................19

*Hunt Wesson Foods, Inc. v. Supreme Oil Co.,*
    817 F.2d 75 (9th Cir. 1987) .......................................................................15

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston,* 5
    15 U.S. 557, 573 (1995) .............................................................................31

*Hyland v. Wonder,*
    972 F.2d 1129 ( 9th Cir. 1992) ..................................................................30

*Iancu v. Brunetti,*
    139 S. Ct. 2294 (2019) ...............................................................................28

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council, 31,*
   138 S. Ct. 2448 (2018) .................................................................21, 22, 31, 32

*Johnson v. Watkin,*
   Case No. 1:23-CV-00848 ...................................................................... 10, 13

*Johnson v. Zerbst,*
   304 U.S. 458 (1938) ..................................................................................24

*Karetnikova v. Trs. of Emerson Coll.,*
   725 F. Supp. 73 (D. Mass. 1989) ...............................................................21

*Leite v. Crane Co.,*
   749 F.3d 1117 (9th Cir. 2014) ...................................................................10

*Leonard v. Clark,*
   12 F.3d 885 (9th Cir. 1993) .........................................................16, 21, 25

*Libertarian Party of L.A. Cnty. v. Bowen,*
   709 F.3d 867 (9th Cir. 2013) .....................................................................11

*Lopez v. Candaele,*
   630 F.3d 775, 788 (9th Cir. 2010) .............................................................19

*M.S. v. Brown,*
   902 F.3d 1076 (9th Cir. 2018) ...................................................................11

*Meriwether v. Hartop,*
   992 F.3d 492 (6th Cir. 2021) .........................................................26, 27, 29

*Merritt v. Mackey,*
   827 F.2d 1368 (9th Cir. 1987) ...................................................................15

*Metro. Edison v. NLRB,*
   460 U.S. 693 (1983) ..................................................................................21

*Mitchell v. Los Angeles Cmty. Coll. Dist.,*
   861 F.2d 198 (9th Cir. 1988) .....................................................................17

*Monell v. Dep't of Soc. Servs. of City of New York,*
   436 U.S. 658 (1978) ..................................................................................17

*Moonin v. Tice,*
   868 F.3d 853 (9th Cir. 2017) .....................................................................34

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

*NAACP v. Button,*
    371 U.S. 415, 433 (1963) ......................................................................36

*Nat'l Inst. of Family & Life Advocs. v. Becerra*
    138 S. Ct. 2361 (2018) ..................................................................31, 32

*Nayab v. Cap. One Bank (USA), N.A.,*
    942 F.3d 480 (9th Cir. 2019) ..............................................................26

*Nelson v. Cyprus Bagdad Copper Corp.,*
    119 F.3d 756 (9th Cir. 1997) ..............................................................22

*Ostlund v. Bobb,*
    825 F.2d 1271 (9th Cir. 1987) ............................................................24

*OSU Student All. v. Ray,*
    699 F.3d 1053 (9th Cir. 2012) ............................................................13

*Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.,*
    475 U.S. 1 (1986) ...............................................................................32

*Peninsula Props., Inc. v. City of Sturgeon Bay,*
    No. 04-C-692, 2005 WL 2234000 (E.D. Wis. Aug. 17, 2005) ..................25

*Pernell v. Fla. Bd. of Govs. of State Univ. Sys.,*
    No. 4:22CV304-MW/MAF, 2022 WL 16985720 (N.D. Fla. Nov. 17, 2022) ............27

*Pickering v. Bd. of Ed. of Tp. High Sch. Dist. 205,*
    391 U.S. 563 (1968) ..............................................................29, 33, 34

*Project Veritas v. Schmidt,*
    72 F.4th 1043 (9th Cir. 2023) ............................................................18

*Quezambra v. United Domestic Workers of Am. AFSCME Loc. 3930,*
    445 F. Supp. 3d 695 (C.D. Cal. 2020) ................................................17

*Reno v. ACLU,*
    521 U.S. 844 (1997) ...........................................................................36

*Rhodes v. Robinson,*
    408 F.3d 559 (9th Cir. 2005) ..............................................................35

*Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.,*
    605 F.3d 703 (9th Cir. 2010). ......................................................27, 28

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

*Rosenberger v. Rector & Visitors of the Univ. of Va.,*
   515 U.S. 819 (1995) ................................................................................... 32

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc,*
   547 U.S. 47 (2006) ..................................................................................... 33

*Safe Air for Everyone v. Meyer,*
   373 F.3d 1035 (9th Cir. 2004) .................................................................. 10

*Schauf v. Am. Airlines,*
   No. 1:15-CV-01172-SKO, 2015 WL 5647343 (E.D. Cal. Sept. 24, 2015) ............... 14

*Seborowski v. Pittsburgh Press Co.,*
   188 F.3d 163 (3d Cir. 1999) ...................................................................... 21

*Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738 (9th
   Cir. 2020) .......................................................................................... 15, 16

*Speech First, Inc. v. Fenves,*
   979 F.3d 319 (5th Cir. 2020) ............................................................... 11, 18

*Susan B. Anthony List v. Driehaus,*
   573 U.S. 149 (2014) ................................................................................... 13

*Sw. Forest Indus., Inc. v. NLRB,*
   841 F.2d 270 (9th Cir. 1988) .................................................................... 24

*Sweezy v. New Hampshire,*
   354 U.S. 234 (1957) ............................................................................... 1, 21

*Tingley v. Ferguson,*
   47 F.4th 1055 (9th Cir. 2022) .......................................................... 11, 18, 20

*United States v. National Treasury Employees Union,*
   513 U.S. 454 (1995) ................................................................................... 34

*United States v. Stevens,*
   559 U.S. 460 (2010) ............................................................................. 35, 38

*West Virginia Bd. of Educ. v. Barnette*,
   319 U.S. 624 (1943) ............................................................................. 31, 33

*Wright v. Universal Maritime Service Corp.,*
   525 U.S. 70 (1998). ............................................................................. 22, 23

ix

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

**STATUTES**

Cal. Code of Regs. Tit. 5, § 53601 ............................................................................. 13, 16

Cal. Code Regs. Tit. 5 § 53605(a) ............................................................................. 12, 36

Cal. Educ. Code § 70901 ................................................................................................ 16

California Government Code § 3543.2 ............................................................................ 24

**OTHER AUTHORITIES**

Cal. Cmty. Colls., *Procedures and Standing Orders of the Board of Governors* (Dec. 2022) ............................................................................................................................. 13

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Under Judge Alba's Standing Order 1.c. and Magistrate Judge Baker's order, (ECF No. 46), Plaintiffs Loren Palsgaard, James Druley, Michael Stannard, David Richardson, Bill Blanken, and Linda de Morales respectfully submit this consolidated brief in opposition to the State Defendants' motion to dismiss (Dist. Mot. ) (ECF No. 42) and the District Defendants' motion to dismiss (State Mot.) (ECF No.43).[1]

## INTRODUCTION

Plaintiffs, six tenured community college professors in the State Center Community College District, strive to make their classrooms places where their students "remain free to inquire, to study and to evaluate, to gain new maturity and understanding." *Sweezy v. New Hampshire*, 354 U.S. 234, 250 (1957). But California Community Colleges' new diversity, equity, inclusion, and accessibility rules (DEIA Rules) and State Center Community College's Faculty Contract, which implements the DEIA Rules, shut down classroom discussion by forcing Plaintiffs to teach and preach the state's views on controversial DEIA topics. For instance, Plaintiffs are required to advocate for race-conscious remedies to overcome systemic racism and endorse the idea that "merit" "protect[s] White Privilege under the guise of standards." Verif. Compl. Exs. B, D.

Under the Faculty Contract, Plaintiffs are evaluated regularly for their devotion to these State mandated DEIA principles and how they have "put those principles into practice" in the classroom. That means if they want a promotion (or to keep their jobs), they must parrot the government's position on DEIA in the classroom.

Defendants assert the DEIA Rules and Faculty Contract are just "aspirational" statements and Plaintiffs are not forced into anything. State Mot. at 15. But the text of the DEIA Rules and Faculty Contract, along with the DEIA Rules' Implementation Guidelines, tell a different story. The DEIA Rules, as clarified by the Implementation Guidelines and enforced by the Faculty Contract, make crystal clear that community college professors must "acknowledge," "promote," "incorporate," "advocate for," and "advance" DEIA principles. Verif. Compl. Exs. B, D. These

---

[1] The State Defendants are officials in the California Community Colleges and the District Defendants are officials in the State Center Community College District.

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

DEIA principles must be "weav[ed] . . . into every course." *Id.*

The DEIA Rules also warn faculty against "weaponizing academic freedom" to "inflict curricular trauma" on students by teaching concepts or assigning readings inconsistent with the State's mandated DEIA viewpoints. The government uses this vague and threatening language to turn routine educational practices, like assigning arguably controversial readings, like Martin Luther King Jr.'s *Letter from Birmingham Jail*, into grounds for discipline. The DEIA Rules and Faculty Contract trample on the clearly established First Amendment rights of faculty concerning "speech related to scholarship or teaching." *Demers v. Austin*, 746 F.3d 402, 406 (9th Cir. 2014) (internal citations omitted).

The State and District Defendants try to avoid responsibility for the DEIA Rules and the Faculty Contract by advancing a hodgepodge of procedural and jurisdictional objections. These arguments lack merit and rest on a fundamental misreading of what the DEIA Rules and Faculty Contract require. In short, the State Defendants blame the District and the District Defendants blame the State. In fact, both sets of Defendants are violating Plaintiffs' First Amendment rights, and this Court has jurisdiction over all of Plaintiffs' claims.

Likewise, Plaintiffs did not waive their First Amendment rights through the adoption of the Faculty Contract. Their First Amendment rights are fundamental and cannot be waived through collective bargaining. And waiver was also not possible in this case because any concession of Plaintiffs' rights would have been neither clear and unmistakable nor voluntary and knowing.

Plaintiffs sufficiently allege that the DEIA Rules and Faculty Contract discriminate against Plaintiffs' speech based on its viewpoint, compel Plaintiffs to endorse the State's preferred DEIA message, impose a prior restraint on employee speech, and are unconstitutionally overbroad and vague. Therefore, each of the Plaintiffs' claims should proceed.

## STATEMENT OF FACTS

**California Community Colleges Adopt the DEIA Rules and Implementation Guidelines.**

In April 2023, the California Community Colleges Board of Governors approved new rules requiring the use of DEIA standards in evaluating performance and reviewing tenure of faculty.

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Verif. Compl. ¶¶ 39–57. The Rules required each community college district to conform its policies and procedures to the requirements in the rules by October 2023, *id.* ¶ 47, though some districts like State Center did so earlier than required. *Id.* ¶ 82.

The DEIA Rules "make DEIA-focused competencies and criteria a minimum standard and a system-wide requirement." Verif. Compl. Ex. A § 53601(a)–(b); Verif. Compl. Ex. C. All faculty must demonstrate proficiency in "DEIA competencies" and "employ teaching, learning, and professional practices that reflect DEIA and anti-racist principles" as conditions of employment. Verif. Compl. Ex. A §§ 53602(b), 53605(a). Districts must "significant[ly] emphasi[ze]" DEIA in employee evaluations and tenure reviews. *Id.* § 53602(c)(4).

The Chancellor's Office published four guidance documents local districts and colleges must use when implementing the DEIA Rules. These Implementation Guidelines include a list of DEIA *Competencies and Criteria*, a statement of *Model Principles* on the implementation of DEIA in the classroom, a *Glossary* defining key DEIA terms, and a memorandum transmitting the DEIA Rules and the *Competencies and Criteria* (and directing attention to the *Glossary*) to the districts. Verif. Compl. Exs. B–E. Districts must use these Implementation Guidelines in setting DEIA requirements for faculty. Verif. Compl. Ex. A § 53601(b).

The first guidance document lists the DEIA competencies and criteria expected of all employees. Verif. Compl. Ex. B. The *Competencies and Criteria* "define the skills, knowledge, and behaviors that all California Community College . . . employees must demonstrate." *Id.* According to the *Competencies and Criteria*, faculty must endorse the State's DEIA viewpoint. *Id.* They must "[a]cknowledge[]" the "diverse, fluid, and intersectional nature" of identity. *Id.* They must "[d]emonstrate" their "ongoing awareness and recognition" of "structures of oppression and marginalization." *Id.* They must "[s]eek[] DEI and anti-racist perspectives" and continually improve their "own commitment to DEI and internal biases." *Id.* Likewise they must "[p]romote[]" and "incorporate[]" a "DEI and anti-racist pedagogy" and a race-conscious and intersectional lens" into their teaching. *Id.* And the requirements of the *Competencies and Criteria* do not end when faculty leave the classroom. They are expected to "advocate[] for and advance[] DEI and anti-racist

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

goals and initiatives" by "participating in DEI groups, committees, or community activities that promote systemic and cultural change to close equity gaps and support minoritized groups." *Id.*

Second, a *Model Principles and Practices* document establishes curricular priorities and what implementation of the DEIA Rules looks like in practice. Verif. Compl. ¶ 65, Ex. D. The *Model Principles* affect many aspects of teaching, including the curricula professors select and the language used when teaching. Indeed, faculty are expected to supplement their course material with DEIA materials to ensure that "equity frameworks and principles in decision-making are prioritized and addressed." Verif. Compl. Ex. D. Professors must also "[r]eword language from a colonized mindset to an equity mindset"—for example, by using the term "enslaved" rather than "slaves." *Id.* Faculty are ordered to "[s]hift to a collectivism perspective" rather than an "individualist perspective," and to "[w]eave DEI and culturally responsive practice into every course." *Id.* Every discipline and subject must "[u]se culturally responsive practices and a social justice lens." *Id.* The *Model Principles* likewise tell faculty what they are *not* allowed to say, warning them not to "'weaponize' academic freedom and academic integrity as tools to impede equity" or "inflict curricular trauma on our students" by voicing opinions or assigning materials contradicting the perspectives mandated by the DEIA Rules. *Id.*

Third, California Community Colleges provides a *Glossary of Terms* defining DEIA terms and viewpoints Professors are expected to embrace. Verif. Compl. Ex. E. For instance, the *Glossary* defines "color blindness" as a "racial ideology" which "perpetuates existing racial inequalities and denies systematic racism." *Id.* Plaintiffs believe merit-based, color-blind policies are the best way to resolve racial inequalities ensure neutrality and overcome society's legacy of racism. Verif. Compl. ¶¶ 30, 103, 163. But the *Glossary* denounces the concept of "merit" as "protect[ing] White Privilege under the guise of standards." *Id.* Verif. Compl. Ex. E.

Finally, the Chancellor's Office sent out a May 2023 memorandum to the districts introducing the DEIA Rules. Verif. Compl. Ex. C. This memorandum specifically refers to the *Criteria and Competencies* as setting out the "competencies and criteria for employee evaluations and tenure review processes" and includes it as an attachment. The memorandum also urges the

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

districts to refer to the *Glossary* for help "understanding" the DEIA Rules. *Id.* The State Chancellor included a link to the *Glossary* in its May 2023 memorandum to districts, directing them to the *Glossary* to "understand[]" the DEIA Rules. Verif. Compl. Ex. C.

**State Center Incorporates and Enforces the DEIA Rules through the Faculty Contract.**

In January 2023, State Center adopted a new Full-Time Faculty Agreement (Faculty Contract) with the labor union representing State Center faculty. The Faculty Contract ratifies and imposes the DEIA Rules as clarified by the Implementation Guidelines. *Id.* ¶¶ 82–83.

The following graphic shows the relationship between the DEIA Rules, the Implementation Guidelines, and the Faculty Contract:



Under the Faculty Contract, faculty are evaluated on their "demonstration of, or progress toward, diversity, equity, inclusion, and accessibility (DEIA) related competencies and teaching and learning practices that reflect DEIA and anti-racist principles." Verif. Compl. Ex. F at 36–37. Faculty must also demonstrate "knowledge of the intersectionality of social identities" and "recognize the myriad of ways in which people differ, including the psychological, physical, cognitive, and social difference that occur among individuals." *Id.* at 37.

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Tenured faculty receive performance evaluations every three years. *Id.* at 29. As part of the evaluation process, faculty members must submit self-evaluations "demonstrat[ing] an understanding of diversity, equity, inclusion and accessibility (DEIA) competencies and anti-racist principles, and how they have put those principles into practice to improve equitable student outcomes and course completion." *Id.* at 35.

If a tenured professor's DEIA performance is inadequate, the professor can be placed on a "plan for improvement" with limited time to correct the deficiency, denied advancement to a new salary class, or even fired. Verif. Compl. ¶¶ 90–95.

**The DEIA Rules and Faculty Contract Force Plaintiffs to Alter Their Protected Speech.**

Plaintiffs Loren Palsgaard, James Druley, Michael Stannard, David Richardson, Bill Blanken, and Linda de Morales are tenured professors at colleges in State Center. Verif. Compl. ¶ 24. Plaintiffs are opposed to concepts like "anti-racism," (advocacy for race-conscious remedies to overcome systemic racism), "intersectionality," and other ideas and viewpoints the DEIA Rules and Faculty Contract require them to endorse. Each Plaintiff objects to endorsing the mandatory DEIA views and would not, but for these requirements, espouse them in the classroom. Each has either had to change their classroom approach as a result of the DEIA Rules and Faculty Contract or fears that they will be penalized for refusing to do so.

Loren Palsgaard is an English instructor at Madera Community College. *Id.* ¶ 115. He teaches students to discuss and debate controversial topics while observing mutual respect. Before the DEIA Rules took effect, he assigned challenging readings like Martin Luther King, Jr.'s *Letter from Birmingham Jail,* and Victor Davis Hanson's *Mexifornia*. *Id.* ¶ 118. But he no longer assigns these materials because of the DEIA Rules, including the prohibition against "weaponize[ing] academic freedom" and "inflict[ing] curricular trauma." *Id.* ¶¶ 118–19. Similarly, Palsgaard must now second-guess his long-running practice of showing videos of recorded debates highlighting opposing views on the death penalty and drug legalization. *Id.* ¶ 120. As a result of the DEIA Rules, he reasonably fears that assigning these videos will result in him being accused of failing to "promote[] a race-conscious and intersectional lens" and not being adequately "culturally

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

affirming." *Id.*

James Druley is a philosophy instructor at Madera Community College. *Id.* ¶ 98. Despite his disagreement with the State's DEIA views, the DEIA Rules require him to incorporate those views into his curriculum and the official syllabi of the courses that he teaches. *Id.* ¶ 100. Druley discusses race and racism in several of his classes and wants to teach his students to reason for themselves and critically consider contested DEIA views. *Id.* ¶ 109. Druley worries that if he were to do so now, he would fail to sufficiently demonstrate "culturally responsive practices and a social justice lens." *Id.* ¶ 102. Therefore, Druley is avoiding voicing his opinions on DEIA issues in class. *Id.* ¶ 108. Instead, he is using vague and indeterminate language and has stopped assigning course material which generates debate on race and DEIA questions because he is afraid of violating the DEIA Rules and the Faculty Contract.  *Id.* ¶¶ 25, 108.

Druley also wants to assign writings by Malcom X, Martin Luther King, Jr., Frederick Douglass, and W.E.B. DuBois. But Druley is chilled from doing so by the DEIA Rules out of a reasonable fear that these readings will make him insufficiently "anti-racist" and accused of "advanc[ing] academic freedom" and "inflict[ing] curricular trauma" on students. *Id.* ¶¶ 107–109. Druley also teaches that "merit" is indispensable. But because the DEIA Rules now codify merit as "protect[ing] White Privilege under the guise of standards," continuing to do so (as he intends to do) puts him at risk of discipline and termination. *Id.* ¶ 103. Before the DEIA Rules went into effect Druley also signed a "Pro-Human Pledge" by a civil-rights organization advocating against "DEI and anti-racist goals and initiatives," and in so doing, committed to "treat everyone equally without regard to skin color or immutable characteristic." *Id.* ¶ 105. But now he must either abandon his pledge or face punishment for violating the DEIA Rules' mandate that he adopt a "race-conscious" viewpoint. *Id.* ¶¶ 105–06.

Michael Stannard is a philosophy instructor at Clovis Community College. Stannard's classes involve discussion of controversial topics such as race, abortion, and LGBT rights. *Id.* ¶ 127. Stannard tells students they can speak freely in his classes as long as they are making an argument and do not resort to name-calling. *Id.* ¶ 128. He encourages his students to engage in vigorous

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

discussion. *Id.* Stannard refuses to speak to people differently based on their race or ethnicity because he believes it is patronizing, offensive, and isolates students based on race or ethnicity. *Id* ¶ 129. But now Stannard worries he will be accused of failing to use "culturally affirming language." *Id.* Like Palsgaard, Stannard assigns Martin Luther King, Jr.'s *Letter from Birmingham Jail*. *Id.* ¶ 132. He also assigns an article arguing against the elimination of standardized testing to eliminate racial disparities. *Id.* ¶ 131. The DEIA Rules chill his speech and pressure Stannard to not assign these readings. *Id.* ¶ 132. But Stannard is ultimately unwilling to change his teaching approach because of the DEIA Rules and Faculty Contract. *Id.* ¶ 130. His professional future is therefore in jeopardy because he continues to assign these materials even though they offer perspectives that cut against the "race-conscious," "anti-racist," and "intersectional" lens the DEIA Rules and Faculty Contract mandate. *Id.* ¶¶ 131–32. Stannard is up for review in the Spring 2024 semester. *Id.* ¶ 135.

David Richardson is a history instructor at Madera Community College. *Id.* ¶ 139. Richardson's classes include discussions about discrimination, the civil-rights movement, and slavery. *Id.* ¶ 141. Richardson encourages debates about controversial ideas but is now afraid to do so due to the DEIA Rules. *Id.* ¶ 142. For instance, he has asked students to contrast the views of Booker T. Washington and W.E.B. Dubois and of Martin Luther King and Malcom X. *Id.* ¶ 143. But Richardson fears that by assigning different views about the role of race, he will be accused of "weaponiz[ing] academic freedom" and "inflict[ing] curricular trauma" on his students. *Id.* Richardson is likewise afraid to teach controversial facts, like the existence of black plantation owners and slaveholders in the American Antebellum South. Richardson is concerned these facts are not "culturally-affirming" and run contrary to the "race-conscious and intersectional lens" required by the DEIA Rules. *Id.* ¶ 144.

Bill Blanken is a chemistry professor at Reedley College. *Id.* ¶ 150. Blanken emphasizes to his students he will treat them equally and will reward those who work hard regardless of their skin color. *Id.* ¶ 151. In Blanken's pedagogical and professional judgment, DEIA principles do not have a place in a chemistry course because they are irrelevant. *Id.* ¶ 152. Blanken refuses to include

DEIA material because it would necessarily take up time otherwise spent studying chemistry. *Id.* ¶¶ 152, 156. Blanken teaches about the history of chemistry and the great scientists who advanced the field, such as Marie Curie and Robert Boyle. *Id.* ¶ 153. Because he focuses on the scientists that have made the greatest impact on the study of chemistry, regardless of ethnicity or country of origin, he fears that if he continues to teach an accurate history, he will be accused of failing to adopt "culturally responsive practices and a social justice lens." *Id.* Blanken is up for review in the Spring 2024 semester. *Id.* ¶ 155.

Linda de Morales is a chemistry professor at Madera Community College. *Id.* ¶ 161. Like Blanken, de Morales believes teaching DEIA material in her chemistry courses is pedagogically inappropriate. *Id.* ¶ 162. And she does not plan to alter the teaching of the history of chemistry to focus on the race or ethnicity of scientists. *Id.* De Morales tells her students that if they want to receive a good grade, they need to earn it. *Id.* ¶ 163. But de Morales is now concerned that by emphasizing the importance of "merit," she will be accused of "protect[ing] White Privilege under the guise of standards." *Id.* De Morales has also shown the inspirational film *Hidden Figures* to her class but is now chilled from doing so because the film has been accused of "whitewashing" by including a "white savior" figure and therefore it may not be seen as sufficiently "anti-racist" in violation of the DEIA Rules. *Id.* ¶ 165.

**Plaintiffs Sue and Move for a Preliminary Injunction.**

On August 17, 2023, Plaintiffs filed a Verified Complaint seeking declaratory judgment and preliminary and permanent injunctive relief. (ECF No. 1). Plaintiffs brought five claims against the State Defendants concerning the DEIA Rules (including the Implementation Guidelines) and five parallel claims against the District Defendants for imposing the DEIA Rules (including the Implementation Guidelines) through the Faculty Contract. Plaintiffs argue the DEIA Rules: (1) mandate and prohibit speech based on viewpoint (Count I & II); (2) unconstitutionally compel speech (Counts III & IV); (3) impose an unlawful prior restraint (Counts V & VI); (4) are impermissibly overbroad (Counts VII & VIII); and (5) are unconstitutionally vague (Counts IX and X). On August 23, 2023, Plaintiffs moved for preliminary injunction. (ECF No. 13). Their motion

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

1

2
remains fully briefed and pending before the Court.  Both sets of Defendants moved to dismiss
Plaintiffs' Verified Complaint on December 15, 2023 (ECF No. 42, 43).

3
**Judge Baker's Findings and Recommendation in the Related Case of *Johnson v. Watkin*.**

4

5
Daymon Johnson, a professor in the Bakersfield Community College District, also brought

6
a challenge to the DEIA Rules. *Johnson v. Watkin*, Case No. 1:23-cv-00848 (E.D. Ca.). Johnson

7
moved for a preliminary injunction. *Id.* ECF No 26. The State Defendants moved to dismiss

8
Johnson's complaint making very similar arguments to the ones made here. *Id.* ECF No. 42. On

9
November 14, 2023, Magistrate Judge Baker issued his Findings and Recommendation to grant in

10
part the motion for preliminary injunction and deny the motions to dismiss. *Id.* ECF No. 70.
(*Johnson* Mag. Rec.).

11
## ARGUMENT

12

13
After refuting Defendants' jurisdictional arguments in Section I, Plaintiffs address the

14
issue of Waiver in Section II. Finally, Plaintiffs show that each of their claims is sufficiently pled

15
in Section III.

**I.    PLAINTIFFS HAVE STANDING TO CHALLENGE THE DEIA RULES AND FACULTY
CONTRACT.**

16

17
Plaintiffs have standing to challenge the DEIA Rules and their case should not be dismissed

18
under Rule 12(b)(1). A jurisdictional challenge can either be facial or factual. *Leite v. Crane Co*.,

19
749 F.3d 1117, 1121 (9th Cir. 2014) (explaining the differences between the two types of

20
jurisdictional challenges). State Defendants do not explain whether they are making a facial or

21
factual challenge while the District Defendants do not even mention Rule 12(b)(1) or explain the

22
proper standard of review. Defendants' jurisdictional arguments largely hinge on whether

23
Plaintiffs' Verified Complaint is legally sufficient on its face to establish jurisdiction. The Court

24
must therefore "[a]ccept[] the plaintiff's allegations as true and draw[] all reasonable inferences in

25
the plaintiff's favor." *Id.* (citation omitted). In addressing this facial challenge, the Court may not

26
go beyond the four corners of the complaint and must "presume that general allegations embrace

27
those specific facts that are necessary to support the claim." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S.

28
871, 889 (1990); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation

10

1
2
3

omitted). To the extent the Court determines Defendants do make factual allegations regarding jurisdiction, it may consider "extrinsic evidence," but it may not "decide genuinely disputed facts." *Dalfio v. Orlansky-Wax, LLC*, No. 21-56339, 2022 WL 3083323, at *1 (9th Cir. 2022).

4
5
6
7
8
9
10
11

Plaintiffs sufficiently allege each element of Article III standing. "[T]he 'irreducible constitutional minimum of standing' requires a plaintiff to have suffered an injury in fact, caused by the defendant's conduct, that can be redressed by a favorable result." *Tingley v. Ferguson*, 47 F.4th 1055, 1066 (9th Cir. 2022) (quoting *Lujan*, 504 U.S. at 560–61). When assessing First Amendment claims, there are "unique standing considerations such that the inquiry tilts dramatically toward a finding of standing" because "a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury." *Libertarian Party of L.A. Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013) (citations and quotation marks omitted).

12
13
14
15
16
17
18

Plaintiffs are suffering "concrete and particularized" First Amendment injuries "fairly traceable" to both sets of defendants. *Lujan*, 504 U.S. at 560. Both the State Defendants' enactment of the DEIA Rules and to the District Defendants' implementation of the DEIA Rules through the Faculty Contract are the cause of Plaintiffs' injuries. And Defendants do not contest the declaratory judgment and injunction Plaintiffs seek would satisfy the "relatively modest" requirement of "redressability" and remedy their alleged injuries. *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018).

19
20
21
22

Plaintiffs also bring a timely challenge against the DEIA Rules and Faculty Contract because they face a "credible threat" that the DEIA Rules and Faculty Contract will be enforced against them. *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020). *See Infra* Section I.C.

### A.     Plaintiffs Are Suffering a Constitutionally Cognizable Injury.

23
24
25
26
27
28

The State Defendants incorrectly claim the DEIA Rules merely set out "aspirational" government speech, State Mot. at 15, or that they only govern "*how* a faculty member teaches, not *what* they teach." Dist. Mot. at 24. As Magistrate Judge Baker explained, the "characterization of the regulations as merely aspirational guidelines for California's community colleges *is contrary to the mandatory language of the regulations*" and "disingenuous." *Johnson* Mag. Rec. at 34

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

(emphasis added). Likewise, Magistrate Judge Baker correctly concluded that the DEIA Rules dictate "what faculty must teach, how they should teach, and how they will be evaluated." *Johnson* Mag. Rec. at 22.

Specifically, faculty are evaluated on their job performance based on how well they embrace "DEIA and anti-racist principles" and incorporate "DEIA and anti-racist principles," like "anti-racism" and "intersectionality" into their curriculum. Verif. Compl. Exs. A, F. As Magistrate Judge Baker explained, the DEIA Rules require faculty to "'employ teaching, learning, and professional practices that reflect DEIA and anti-racist principles.'" *Johnson* Mag. Rec. at 34 (quoting Cal. Code Regs. Tit. 5 § 53605(a) According to the *Competencies and Criteria*, this includes at a minimum:

(1) "Acknowledge[ing]" the "diverse, fluid, intersectional nature" of identity;
(2) "Demonstrate[ing]" their "ongoing awareness and recognition" of "structures of oppression and marginalization,"
(3) "Seek[ing] DEI and anti-racist perspectives" and continually improving their "own commitment to DEI and acknowledgment of any internalized personal biases;"
(4) "Promot[ing]" and "incorporates" a "DEI and anti-racist pedagogy" into their teaching;
(5) "[P]romot[ing] a race-conscious and intersectional lens";
(6)  Being "culturally affirming;" and
(7) "Advocat[ing] for and advance[ing] … systemic and cultural change."

Verif. Compl. Ex. B. Under the *Model Principles*, DEIA principles and a "social justice lens" must be "[w]eav[ed] into every course." Verif. Compl. Ex. D. Professors are warned not to "'weaponize' academic freedom" or "inflict curricular trauma on our students." *Id.* And the *Glossary* warns that the viewpoints Plaintiffs embrace, such as "color blindness" and "merit," are perpetuating racism or white supremacy. Verif. Compl. Ex. E. These requirements leave no doubt the government seeks to materially alter the substance of professors' speech, not just its form, and that they are not merely advisory.

Defendants also claim the Implementation Guidelines are advisory and cannot be used to interpret the DEIA Rules and Faculty Contract. State Mot. at 5; Dist. Mot. at 15. But Plaintiffs' Complaint alleges that State Center incorporated the Implementation Guidelines into the Faculty Contract and intends to utilize them when enforcing the Faculty Contract. Verif. Compl ¶¶ 83, 96.

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

At the pleadings stage, this allegation, which is far from "imaginary or . . . speculative," *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160 (2014), must be accepted as truthful, and the Implementation Guidelines should be looked at as part of the DEIA Rules and Faculty Contract. *See OSU Student All. v. Ray*, 699 F.3d 1053, 1063 (9th Cir. 2012) ("Accepting as true the allegations in the complaint" concerning the enforcement of a university policy).

Regardless, the Implementation Guidelines are binding, not advisory. Under the DEIA Rules, the Chancellor "*shall* adopt and publish guidance describing DEIA competencies and criteria." Cal. Code of Regs. Tit. 5, § 53601(a)–(b) (emphasis added). And that is exactly what the Chancellor has done by adopting the Implementation Guidelines—including the *Competencies and Criteria*, the *Model Principles*, and the *Glossary*. The Chancellor's office published each "in collaboration with system stakeholder groups," precisely as § 53601 directs. *Id.*; Verif. Compl. Ex. B. These documents therefore qualify as guidance concerning "DEIA competencies and criteria" that "shall be used" by districts under § 53601.[2]

The *Competencies and Criteria* sets out "the skills, knowledge, and behaviors that all California Community College (CCC) employees *must* demonstrate[.]" Verif. Compl. Ex. B. The Chancellor's office sent this document out to all districts and referred to it as a "framework that can serve as a minimum standard for evaluating all California Community College employees." Verif. Compl. Ex. C. *See also Johnson* Mag. Rec. at 11 (noting the "the Academic Senate for California Community Colleges distributed these 'guidelines and their accompanying memorandum'" to community college districts). In fact, Counsel for the State Defendants conceded in a hearing in the *Johnson* case that the standards the District adopts *must* be consistent with the *Competencies and Criteria*. Reply Supp. Prelim. Inj, Ortner Decl. Ex. A, ECF No. 29 at 12:3-18.[3] The District

---

[2] The State Defendants argue that the Implementation Guidelines are not enforceable because they were not enacted pursuant to Board of Governors procedures. State Mot. at 5–6. But the DEIA Rules were adopted by the Board of Governors, and the process set out for the adoption of competencies and criteria in the DEIA Rules does not require further approval by the Board. Cal. Code of Regs. tit. 5, § 53601(a)–(b). The Board of Governors' rules also do not require a formal approval process for "explanatory advisories, guidelines, or statements issued by the Board or the Chancellor to the districts." *See* Cal. Cmty. Colls., *Procedures and Standing Orders of the Board of Governors* (Dec. 2022) ch. 2, § 200.

[3] The hearing transcript from the *Johnson* case is subject to judicial notice as a public record. *See, e.g.*, *Schauf v. Am. Airlines*, No. 1:15-CV-01172-SKO, 2015 WL 5647343, at *3 (E.D. Cal. Sept. 24, 2015)

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Defendants acknowledged the same in a September 19, 2023 email to all staff. *Id.*, Blanken Decl. ¶¶ 4, Ex A.[4]

Implementing the *Glossary* definitions is also mandatory. The implementation memo directs faculty to the *Glossary* to "assist with . . . understanding [the] DEIA efforts." Verif. Compl. Ex. C. The *Model Principles* document is likewise listed on the State Chancellor's DEIA website[5] as a "guidance memo" explaining how to integrate "DEIA principles" into the classroom and setting out "curricular priorities" districts should incorporate. Verif. Compl. Ex. D. Each of the Implementation Guidelines therefore "*shall be used*" by the districts in implementing and enforcing the requirements in the DEIA Rules.

Furthermore, even if the Implementation Guidelines are not binding, they still shed light on how the State expects the DEIA Rules will be implemented and what kinds of curricular changes the DEIA Rules are intended to achieve—something neither set of Defendants has denied. In light of the DEIA Rules' vague terminology and the lack of clear standards, no reasonable faculty member would risk ignoring these guidelines when determining how to comply with the DEIA Rules. *See Infra* Section III.D. The DEIA Rules as interpreted by the Implementation Guidelines and enforced through the Faculty Contract, therefore, infringe on Plaintiffs First Amendment Rights.

### B.    Plaintiffs' Injuries are Caused by Both the State's and the District's Actions.

Plaintiffs' injuries are "fairly traceable" to both the State Defendants' adoption of the DEIA Rules and the District Defendants' implementation of the DEIA Rules. The State Defendants argue they are not responsible for any injury to Plaintiffs from the DEIA Rules because the District

---

("Court documents and other matters of public record are the proper subject of judicial notice."); Under both Rules 12(b)(1) and 12(b)(6), "materials of which a district court may take judicial notice are not considered extrinsic evidence" and may properly be considered. *DeFiore v. SOC LLC*, 85 F.4th 546, 553 n.2 (9th Cir. 2023).

[4] Defendants dispute the allegations in Plaintiffs' complaint that the *Competencies and Criteria* are binding on the District and Plaintiffs. Verif. Compl ¶¶ 58–80, 83, 96. To the extent that this argument is deemed a factual challenge, the Court may consider relevant material outside the pleadings for purposes of evaluating it. *Dalfio*, 2022 WL 3083323, at *1.

[5] California Community Colleges, Diversity, Equity, Inclusion, and Accessibility (last accessed Sept. 25, 2023), https://www.cccco.edu/About-Us/Vision-for-Success/diversity-equity-inclusion.

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Defendants must ultimately implement the DEIA Rules. State Mot. at 9–13. But Article III does not require plaintiffs to be the object of the government's action—only a "causal connection between [plaintiffs'] injury and the conduct complained of" is needed. *Lujan,* 504 U.S. at 560. Enactment of the DEIA Rules by the State Defendants "set[] in motion a series of acts by others" they knew or should have known "would cause others to inflict the constitutional injury." *Merritt v. Mackey*, 827 F.2d 1368, 1371 (9th Cir. 1987). The DEIA Rules have a "determinative or coercive effect upon the action of" the District Defendants, and therefore Plaintiffs have standing to sue the State Defendants. *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 749 (9th Cir. 2020). *See Johnson* Mag. Rec. at 25 (finding that the DEIA Rules "arises from and is fairly traceable" to the State Defendants).

Contrary to what the State Defendants' claim, State Mot. at 1, 4, the DEIA Rules are not just inspirational "professional development" goals setting forth the State's "ideals." The DEIA Rules establish "Standards in the Evaluation and Tenure Review of District Employees" which now form the "minimum qualifications for employment." Verif. Compl. Ex. A. They are filled with mandates extending to both the districts and their employees. For instance, a district "*shall* adopt policies for the evaluation of employee performance." Evaluations "*must* include consideration of an employee's . . . proficiency in . . . DEIA-related competencies." Districts "*shall* . . . place significant emphasis on DEIA competencies." And "[d]istrict employees *must* have or establish proficiency in DEIA-related performance to teach, work, or lead within California community colleges." *Id. See Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987) ("'shall' is a mandatory term"). Indeed, the State Defendants concede that districts are bound to follow each of these "minimum standards adopted by the board of governors" of the California Community Colleges. State Mot. at 4, 11. Likewise the District Defendants acknowledge that these DEIA Rules "impose mandatory requirements." Dist. Mot. at 28.[6] These concessions are fatal to

---

[6] State Center cannot ignore binding requirements from the State Chancellor's office, especially given the oversight authority of the State Chancellor and Board of Governors. Cal. Educ. Code § 70901 ("[T]he board of governors shall provide general supervision over community college districts" including setting "[m]inimum standards for the employment of academic and administrative staff in community colleges");

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

the State Defendants' standing arguments because they show that the State Defendants actions had a "determinative or coercive effect upon the action of" the District Defendants. *Skyline Wesleyan Church*, 968 F.3d at 749.[7]

The primary standing case State Defendants rely on, *Barke v. Banks*, is inapposite. State Mot. at 9. In *Barke*, a law prohibited public *employers* from discouraging employees from joining employee organizations. 25 F.4th 714, 716 (9th Cir. 2022)*.* Unlike the DEIA Rules, the law in *Barke* did not regulate employee speech at all as Magistrate Judge Baker rightly pointed out. *See Johnson* Mag. Rec. at 22 ("Unlike *Barke*, the regulations at issue here injure Plaintiff's constitutionally protected individual interest[.]"). Similarly, in *Leonard v. Clark*, another case Defendants rely on, State Mot. at 9, individual employees lacked standing to challenge a collective bargaining agreement that restricted the union's own speech but did not even implicate employee speech. 12 F.3d 885, 888–89 (9th Cir. 1993). By contrast, the DEIA Rules order community college districts to implement DEIA requirements for their *employees* who can be sanctioned or fired if they do not comply. Verif. Compl. Ex. A § 53602.

Likewise, *First Interstate Bank v. State of California,* 197 Cal. App. 3d 627, 633 (1987), is distinguishable and "largely inapplicable to this case." *Johnson* Mag. Rec. at 25. In that case, the court that the Board of Governors could not be responsible for "a district's breach of contract" because the Board of Governors had not entered into the contract. *Id.* Here, by contrast, the State Defendants enacted the DEIA Rules that are binding on the districts and causing Plaintiffs' injury. It does not matter that the State Defendants are not the ones with the direct authority to fire or punish Plaintiffs. Neither the State Defendants nor the District Defendants need to be "the sole source of the [injury]" to be subject to suit. *Barnum Timber Co. v. U.S. E.P.A.*, 633 F.3d 894, 901

---

Cal. Code Regs. Tit. 5, §§ 51100–02 (authorizing the State Chancellor to review whether districts are complying with the minimum standards and to impose penalties for lack of compliance).

[7] In their preliminary-injunction briefing, the District Defendants similarly admitted they adopted the DEIA language in the Faculty Contract *in order to* comply with the DEIA Rules. Mosier Decl. ¶ 3, ECF No. 24-1 ("[T]he parties decided at that time to incorporate principles from the proposed versions of the DEIA regulations into the agreement in anticipation of their formal adoption.").

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

(9th Cir. 2011)." In short, "Plaintiff[s'] alleged injury arises from and is fairly traceable to" the actions of the State Defendants. *Johnson* Mag. Rec. at 25.

The District Defendants claim they are immune from suit because they are merely complying with state law and their policy did not "cause" the constitutional violations. *See* Dist. Mot. at 27 (citing *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658 (1978)). But the "District Defendants are state officials, rather than municipal officials" and therefore are not immune under *Monell*. *Johnson* Mag. Rec. at 27, 41–42; *see Mitchell v. Los Angeles Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988) ("California state colleges and universities are dependent instrumentalities of the state" (internal quotations and citations omitted)). And, even if *Monell* did apply to the District Defendants, the cases on which they rely are inapposite because those cases did not involve a "discretionary delegation of authority" from the state to the municipality. *Quezambra v. United Domestic Workers of Am. AFSCME Loc. 3930*, 445 F. Supp. 3d 695, 706 (C.D. Cal. 2020) (county required to "[r]ely on" union requests for employee deductions) . Indeed, municipal officials were given "no discretion" at all. *Aliser v. SEIU Cal.*, 419 F.Supp.3d 1161, 1165 (N.D. Cal. 2019) (public employer "*shall* rely" on information from union regarding cancellation of deductions). By contrast, the Faculty Contract is State Center's "policy," and it plays "a part in the violation of federal law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). State Center is obligated to implement the DEIA Rules, but it has the discretion to adopt additional requirements and it has done so here. For instance, the DEIA Rules do not require that professors write a personal statement about their embrace of DEIA principles; rather, that requirement comes directly from State Center. Indeed, the District Defendants concede as much, recognizing that "the District has significant discretion in interpreting and applying the new DEIA regulations." Dist. Mot. at 28. The violation of Plaintiffs' First Amendment rights is directly traceable to both sets of Defendants.

### C.   Plaintiffs Are Reasonably Likely to Be Injured By the DEIA Rules and Faculty Contract.

Plaintiffs face "a realistic danger of sustaining a direct injury as a result of" the DEIA Rules "operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298

(1979). In First Amendment cases, "[t]he Supreme Court has 'dispensed with rigid standing requirements." *Tingley*, 47 F.4th at 1067 (quoting *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 (9th Cir. 2003)). Because a "chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury" a Plaintiff is encouraged to "'challenge now'" rather than self-censor. *Id.* Accordingly, this Court should "assume a credible threat of prosecution in the absence of compelling contrary evidence." *Speech First*, 979 F.3d at 335 .

Here, the DEIA Rules and Faculty Contract are already in force and having a chilling effect on Plaintiffs. Furthermore, Plaintiffs have shown that "(1) they intend to violate the law" and that there is (2) "a reasonable likelihood that the government will enforce the statute against them." *Project Veritas v. Schmidt*, 72 F.4th 1043, 1053 (9th Cir. 2023). Plaintiffs face a "credible threat" that the DEIA Rules and Faculty Contract will be enforced against them during their evaluations because they refuse to comply with the State's "mandatory requirement," that they endorse and affirm the state's DEIA viewpoints and they continue to teach contrary viewpoints in the classroom. Dist. Mot. at 28.

Plaintiffs' Verified Complaint identifies how Plaintiffs will run into conflict with the DEIA Rules and Faculty Contract due to Defendants forcing them to endorse concepts they reject. Plaintiffs point to several topics, books, articles, and assignments that they have assigned for years without incident but have stopped or may stop assigning out of fear of violating the DEIA Rules and Faculty Contract. Verif. Compl. ¶¶ 100–09, 117–20, 127–33, 141–44, 151–60 162–70. They also refuse to endorse specific concepts and viewpoints that they must now endorse such as "anti-racism" and "intersectionality." *Id.* Furthermore, in their self-evaluations, Plaintiffs will express their opposition to concepts such as "anti-racism" and "intersectionality," and will instead advance contrary concepts like "color-blindness." Verif. Compl. ¶¶ 113, 123, 137, 148, 158, 172. Indeed, at least one of the Plaintiffs already did so during his last review cycle before the Faculty Contract was in effect. Verif. Compl. ¶ 123.

Because Plaintiffs "not only will ignore DEIA regulations but intend[] to criticize and challenge these regulations inside and outside the classroom," *Johnson* Mag. Rec. at 22, they face

the reasonable likelihood that the DEIA Rules and Faculty Contract will be enforced against them. *Id*. Indeed, it is certain that the DEIA Rules and Faculty Contract will be enforced against Plaintiffs because Plaintiffs are now subject to regular DEIA evaluations to monitor and assess their fealty to the government's ordained DEIA views. And if Plaintiffs have not sufficiently trumpeted California's DEIA viewpoints, they face discipline and termination. Verif. Compl. ¶¶ 15, 24. Plaintiffs Stannard and Blanken are already being evaluated under the DEIA Rules and Faculty Contract this current semester (Winter/Spring 2024). Verif. Compl. ¶¶ 135, 155. It is therefore "likely that at some point Plaintiff[s] will face consequences if [they do] not adhere to whatever competencies and criteria are imposed on [them] through the DEIA regulations." *Johnson* Mag. Rec. at 23. The State Defendants' argument that Plaintiffs have failed "to show that their expression of allegedly protected speech will be a substantial or motivating factor in an adverse employment action" fails for the same reason. State Mot. at 15.

Defendants attempt to moot Plaintiffs' claims by asserting the concepts, books, and articles that Plaintiffs want to assign are not prohibited by the DEIA Rules. State Mot.. at 12. But their assertion is made as a convenient litigation position and does not alleviate the DEIA Rules' chilling effect. At the pleading stage, Plaintiffs' allegations that they are chilled from making those assignments must be accepted as fact, especially since Defendants have "adopted an expansive reading" of the DEIA Rules (as shown by the Implementation Guidelines). *Lopez v. Candaele*, 630 F.3d 775, 788, 791 (9th Cir. 2010). Plaintiffs suffer a constitutional injury because their "speech arguably falls within the statute's reach," *Human Life of Washington Inc. v. Brumsickle*, 624 F.3d 990, 1001 (9th Cir. 2010), and that is all that is needed at the pleading stage.

The District Defendants also claim Plaintiffs will not be harmed because the DEIA requirements are only one of ten evaluation criteria. But the District Defendants concede that under the DEIA Rules, they must give these requirements "significant emphasis." District Mot. at 14. And in the Faculty Contract, DEIA is given equal weight to core teaching requirements like "[k]nowledge of subject matter," "[a]dherence to institutionally approved course outline," and "[e]vidence of course objectives being met." Verif. Compl. Ex. F at 43. Under Defendants' criteria,

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Plaintiffs can no more afford to neglect the DEIA Rules than they could "knowledge of [their] subject matter" or the "approved course outline."

Finally, the requirements of the DEIA Rules and Faculty Contract are in effect, and Plaintiffs are expected to implement these requirements in the classroom *now*. Therefore, the District Defendants' assurance that the Faculty Contract "has not been fully implemented or interpreted" offers Plaintiffs little comfort.  Dist. Mot. at 16. Given the significant potential consequences for failure to comply, up to and including termination, professors at State Center would be foolish to flaunt the DEIA Requirements until the semester when they are up for review. *See* Verif. Compl. ¶¶ 90–95. Similarly, the lack of enforcement history provides no comfort to Plaintiffs who are *now* unsure what they can say or teach in the classroom without jeopardizing their jobs. *See Tingley*, 47 F.4th at 1069 ("[T]he history of enforcement[] carries 'little weight' when the challenged law is 'relatively new' and the record contains little information as to enforcement." (internal quotation marks and citation omitted)). *Accord Johnson* Mag. Rec. at 23–24. Similarly, what future regulations or training State Center may adopt is speculative and outside of the corners of Plaintiffs' Complaint. The First Amendment does not require Plaintiffs to wait and see whether they or their colleagues will be punished for violating unconstitutional rules before challenging these unconstitutional abridgments of their First Amendment rights.

## II.    THE FACULTY CONTRACT IS NOT A VALID WAIVER OF PLAINTIFFS' CONSTITUTIONAL RIGHTS.

The DEIA provisions in the Faculty Contract are not a waiver of Plaintiffs' First and Fourteenth Amendment rights. Union representatives may not disclaim the First Amendment rights of all full-time faculty. But even if a collective bargaining agreement could waive Plaintiffs' rights, the Faculty Contract did not do so because the DEIA provisions lacked a clear and unmistakable statement to notify members that members were waiving their constitutional rights and the waiver of rights was not voluntarily bargained for.

20

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

### A.     The Union May Not Waive Plaintiffs' Substantive Constitutional Rights.

"There are some rights and freedoms so fundamental to liberty that they cannot be bargained away in a contract for public employment." *Borough of Duryea, Pa., v. Guarnieri*, 564 U.S. 379, 386 (2011); *cf. Metro. Edison v. NLRB*, 460 U.S. 693, 705–06 (1983) (holding "a union may bargain aways its members' economic rights, but it may not surrender rights that impair the employees' choice of their bargaining representative"). The First Amendment rights of university and college faculty is one such fundamental right. *Cf. Meriwether v. Hartop*, 992 F.3d 492, 505 (6th Cir. 2021) ("[A] professor's rights to academic freedom and freedom of expression are paramount in the academic setting." (internal quotation marks omitted)). Those rights are core to our conception of the university as "peculiarly the 'marketplace of ideas.'" *Healy v. James*, 408 U.S. at 180 (1972); *see also Sweezy v. New Hampshire*, 354 U.S. 234, 250 (1957) (plurality op.) ("The essentiality of freedom in the community of American universities is almost self-evident").

The cases the District Defendants cite are inapposite. Dist. Mot. 17–18. Indeed, several do not concern an individual employee's First Amendment rights at all. *See, e.g.*, *Bolden v. Se. Pa. Transp. Auth.*, 953 F.2d 807, 826 (3d Cir. 1991) (mandatory drug testing); *Seborowski v. Pittsburgh Press Co.*, 188 F.3d 163, 168 (3d Cir. 1999) (mandatory arbitration).[8] And *Bolden*'s discussion in dicta that unions could limit employee speech tied to collective bargaining was overturned by the Supreme Court in *Janus v. AFSCME* as an "anomaly in our First Amendment jurisprudence." 138 S. Ct. 2448, 2459 (2018). Another case cited by Defendants involved a union waiving its own speech rights, not those of its members. *See Leonard*, 12 F.3d at 888.  None of these cases support allowing a union to curb a university professor's First Amendment protections for classroom teaching and speech. *See Janus*, 138 S. Ct.at 2472 (refusing to apply the reasoning of *Pickering* as an alternative basis for upholding agency-fee agreements).

---

[8] The Fourth Amendment rights at issue in *Bolden* are distinguishable from First Amendment freedoms because they have always been subject to "a variety of circumstances in which a third party may validly consent to a search or seizure." 953 F.2d at 826; *see also Karetnikova v. Trs. of Emerson Coll.*, 725 F. Supp. 73, 81 (D. Mass. 1989) (distinguishing drug testing cases from waiver of free speech rights because "[f]ree speech is not simply a personal right which protects the individual who exercises it, . . . but also the public to whose broad marketplace of ideas the speaker contributes").

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

A rule allowing public-sector unions to waive university faculty members' First Amendment right to speak on matters of public concern "would directly conflict with the important First Amendment values previously articulated by the Supreme Court," *Demers*, 746 F.3d at 411, and allow the State to realize indirectly, through a collective bargaining agreement, what the Constitution prohibits it from doing directly. *See Abood v. Detroit Bd. of Educ*, 431 U.S. 209, 252–53 (1977) (Powell, J., concurring in the judgment) (arguing that collective bargaining agreements are "fully subject to the constraints that the Constitution imposes on coercive governmental regulation"); *accord Janus,* 138 S. Ct. at 2483–84. Plaintiffs' First Amendment rights are too important to be traded away in exchange for other benefits at the negotiating table.

**B.     The Contract Provisions Were Not a "Clear and Unmistakable" Waiver of Constitutional Rights.**

The Faculty Contract failed to provide a "clear and unmistakable" waiver of members' First Amendment rights, a necessary condition for a collective bargaining agreement to waive members' constitutional rights. *See Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 80 (1998). Courts interpret "clear and unmistakable" to mean an express statement that the constitutional or statutory rights and protections at issue are waived and replaced with the procedures and protections agreed upon in the terms of the contract. *See Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756, 762 (9th Cir. 1997) ("[T]he employee must explicitly agree to waive the specific right in question.").

This requirement has been enforced strictly. In *Wright*, the Supreme Court held a collective bargaining agreement did not contain a "clear and unmistakable" waiver of members' statutory right to file a lawsuit where the arbitration clause merely provided for arbitration of "[m]atters under dispute," and the remainder of the contract did not include an explicit incorporation of statutory antidiscrimination requirements. 525 U.S. at 80–81. The Court held "matters under dispute" did not clearly incorporate statutory antidiscrimination rights because the phrase could also be understood to refer to matters in dispute under the contract. *Id*. Similarly, in *Ciambriello v. County of Nassau*, the Second Circuit held a collective bargaining agreement did not waive members' procedural due-process right to a pre-demotion hearing where it contained no express

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

statement that members were waiving their constitutional rights in favor of the grievance procedures detailed in the contract. 292 F.3d 307, 321–22 (2d Cir. 2002). While a clause provided that the disciplinary procedures in the contract were in lieu of "any and all other statutory or regulatory disciplinary procedures," it did not mention rights derived from the Constitution. *Id.* at 322. By contrast, in *Barnard v. Lackawanna County*, a case on which the Defendants rely, the express contractual language that "none of the employees collectively or individually . . . shall directly or indirectly . . . engage in . . . any strike or sympathy strike" was such a "clear and unmistakable" waiver of the plaintiff's right to strike that it would apply "whatever [her] choice of forum or formulation of her legal claims." 696 F. App'x 59, 61–62 (3d Cir. 2017). These cases show that although a waiver need not explicitly state the right being waived, *id.*, the intention to waive a specific right "must, at the very least, be clear." *Fuentes v. Shevin*, 407 U.S. 67, 95 (1972).

Like the contracts in *Wright* and *Ciambriello*, and unlike the contract in *Barnard*, the Faculty Contract does not include any provision or language alerting faculty members to the waiver of their First and Fourteenth Amendment rights. Rather, the Contract merely states that faculty will be evaluated based on their demonstrated DEIA-related competencies. Verif. Compl. Ex. F at 35, 37. Given the strong "presumption against waiver," that is not enough. *Fuentes*, 407 U.S. at 94 n.31.

## C.     The Contract Provisions Were Not a Voluntary and Knowing Waiver of Constitutional Rights.

Even if the union were permitted to waive faculty members' First Amendment rights (it is not) and the Faculty Contract provisions implementing the DEIA requirements indicate a clear and unmistakable waiver of these rights (they do not), any purported waiver would be invalid because Plaintiffs' union did not voluntarily agree to those terms of the Faculty Contract. Waiver is "the '*intentional* relinquishment or abandonment of a known right or privilege.'" *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999) (emphasis added) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). The Court must "indulge every reasonable presumption against waiver" of constitutional rights, *Fuentes*, 407 U.S. at 94 n.31 (quoting *Aetna*

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

*Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937)), and refrain from finding an implied waiver, *Gete v. INS*, 121 F.3d 1285, 1293 (9th Cir. 1997) ("[a] waiver of constitutional right is 'not to be implied and is not lightly to be found'" (quoting *Ostlund v. Bobb*, 825 F.2d 1271 (9th Cir. 1987))). Thus, it must be "'established by clear and convincing evidence that the waiver is voluntary, knowing, and intelligent.'" *Id.* (quoting *Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1394 (9th Cir. 1991)). "A waiver of constitutional rights is voluntary if, under the totality of the circumstances, it was the product of a free and deliberate choice rather than coercion or improper inducement." *Comer v. Schiro*, 480 F.3d 960, 965 (9th Cir. 2007) (citations omitted).

Here, Plaintiffs' union did not voluntarily agree to the Faculty Contract's DEIA provisions because those terms did not result from free and deliberate negotiations between parties of relatively equal bargaining power. *Erie Telecomms., Inc. v. City of Erie, Pa.*, 853 F.2d 1084, 1095–96 (3d Cir. 1988) (citing *D.H. Overmyer v. Frick Co.*, 405 U.S. 174 (1972) and *Fuentes,* 407 U.S. at 95). As the District Defendants note repeatedly, California Government Code § 3543.2 makes faculty evaluation criteria a mandatory subject of bargaining and the union had no ability to bargain regarding the substance of the Faculty Contract's DEIA provisions. *E.g.*, Dist. Defs. Mot. 17. Removing the DEIA provisions from the negotiating table, therefore, left Plaintiffs' union, negotiating on behalf of its members, with only Hobson's choice over the mechanism by which its members lose their First Amendment rights—either (1) the union accepts the publicly objected-to contractual terms restricting its members' First Amendment rights;[9] or (2) bargaining reaches an impasse, at which point the District Defendants may unilaterally implement those terms, *Sw. Forest Indus., Inc. v. NLRB*, 841 F.2d 270, 273 (9th Cir. 1988) (citing *Cuyamaca Meats, Inc. v. San Diego & Imperial Cntys. Butchers' & Food Emps.' Pension Tr. Fund*, 827 F.2d 491, 496 (9th Cir. 1987)). The "totality of the circumstances" here clearly shows that any purported waiver by the union of its members' First Amendment rights was not voluntary because it was not "the product of a free

---

[9] Proposed Evaluation and Tenure Review Regulatory Action - Chancellor's Office Responses to Public Comments [hereinafter Chancellor's Responses], https://go.boarddocs.com/ca/cccchan/Board.nsf/files/CERSPP73AB25/%24file/Chancellor%27s-Office-Response-to-Public-Comments-Amended-5.22.2022-a11y.pdf.

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

1
2
3
4
5

and deliberate choice." *Comer*, 480 F.3d at 965; *see Peninsula Props., Inc. v. City of Sturgeon Bay*, No. 04-C-692, 2005 WL 2234000, at *8 (E.D. Wis. Aug. 17, 2005) (holding "the City's use of its authority in order to impose [permitting] conditions" on developers "to which they did not want to agree and which harmed their financial and property interest," violated developers' due process rights).

6
7
8
9
10
11
12
13
14
15
16
17

This case lies in stark contrast to *Leonard v. Clark* a case that both sets of Defendants rely on in which the Ninth Circuit held a union waived its constitutional rights when it "originally proposed the language of the agreement" and the provision in question was "not a condition imposed by City ordinance." 12 F.3d at 890. The *Leonard* court noted that this waiver "resulted from the give-and-take of negotiations between parties of relatively equal bargaining strength." *Id.* Here, however, the exact opposite happened. There was no "give-and-take." The District and Plaintiffs' union did not have "relatively equal bargaining strength." And the union here not only did not "originally propose[] the language," but publicly protested them.[10] Rather, as discussed above, the inclusion and substance of the Faculty Contract's DEIA provisions are "condition[s] imposed by" government fiat against its negotiating partner. This is precisely the "case of unequal bargaining power or overreaching" that the *Leonard* court warned would prevent a waiver from being voluntary. 12 F.3d at 890 n.6 (citing *Fuentes*, 407 U.S. at 95).

18
19
20

Furthermore, Defendants bear the burden of proving "clear and convincing evidence that the waiver is voluntary, knowing, and intelligent." *Gete*, 121 F.3d at 1293. This makes dismissal at the pleadings stage, highly inappropriate.

21

### III.    EACH OF PLAINTIFFS' CLAIMS SURVIVES THE MOTION TO DISMISS.

22
23
24
25
26
27

Defendants' 12(b)(6) motions must be denied because Plaintiffs' Verified Complaint "contain[s] sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Charles v. City of Los Angeles*, 697 F.3d 1146, 1151 (9th Cir. 2012) (internal quotation marks omitted). It

28

---

[10] Chancellor's Responses, *supra* note 9.

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

must also draw all "reasonable inference[s] in favor of the Plaintiffs. *Iqbal*, 556 U.S. at 678; *accord Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 496 (9th Cir. 2019).

The DEIA Rules and Faculty Contract require Plaintiffs to teach and preach the State's mandatory DEIA viewpoints. They therefore discriminate based on viewpoint and prohibit Plaintiffs from sharing contrary viewpoints (Counts I & II) and compel Plaintiffs to endorse DEIA viewpoints in the classroom and in their respective personal essays (Counts III & IV) on pain of professional discipline. The DEIA Rules also impose an unconstitutional prior restraint (Counts V & VI). The DEIA Rules and Faculty Contract are also overbroad (Counts VII & VIII) and vague (Counts IX & X). None of these claims can be dismissed at the pleading stage.

### A.    Defendants Violate Plaintiffs' First Amendment Rights by Discriminating in Favor of the State's Approved DEIA Viewpoints

The DEIA Rules and Faculty Contract violate well-established protections for classroom speech employing highly disfavored viewpoint-based discrimination. Accordingly, strict scrutiny should apply. But even if less rigorous scrutiny applies, Plaintiffs' viewpoint discrimination claims still survives the motion to dismiss.

### i.  The First Amendment protects Plaintiffs' classroom speech

The "vigilant protection of constitutional freedoms is nowhere more vital than in the community of American" colleges and universities. *Keyishian v. Bd. of Regents of Univ. of N.Y.*, 385 U.S. 589, 603 (1967). Indeed, "safeguarding academic freedom . . . is of transcendent value." *Id.* As a result, the First Amendment "does not tolerate laws that cast a pall of orthodoxy over the classroom." *Id.* Public colleges and universities "do not have a license to act as classroom thought police." *Meriwether v. Hartop*, 992 F.3d 492, 507 (6th Cir. 2021).

The First Amendment protects "speech related to scholarship or teaching." *See Demers*, 746 F.3d at 406. This includes the right of faculty members to teach diverse viewpoints in the classroom and of students to be exposed to diverse opinions, "even (perhaps especially) when they concern sensitive topics like race, where the risk of conflict and insult is high." *Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.*, 605 F.3d 703, 708 (9th Cir. 2010). Accordingly, the government may not "force

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

professors to avoid controversial viewpoints," *Meriwether*, 992 F.3d at 507, nor "impose [their] own orthodoxy of viewpoint about the content . . . allowed within university classrooms." *Pernell v. Fla. Bd. of Govs. of State Univ. Sys.*, 641 F. Supp. 3d 1218, 1273 (N.D. Fla. Nov. 17, 2022); *accord Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 674 (6th Cir. 2001) (holding a community college instructor's use of profanity and racial slurs in a discussion on the use of language in a communications class was protected by the First Amendment).

Notably, the State Defendants ignore the Ninth Circuit's decision in *Demers* altogether. There, the Ninth Circuit rejected the argument that a professor's "speech related to scholarship or teaching" was unprotected by the First Amendment if undertaken pursuant to a professor's job duties. *Demers*, 746 F.3d at 406. Instead, the State Defendants rely on cases which pre-date *Demers* and have nothing to do with classroom teaching. State Mot. at 14–15. In *Downs v. Los Angeles Unified School District*, 228 F.3d 1003, 1013 (9th Cir. 2000), the court ruled that a school could prevent a high school teacher from posting his own non-curricular material on a school bulletin board. *Id.* But a high school teacher's posts on a bulletin board are a far cry from a college professor's in-class discussions. *See Meriwether*, 992 F.3d at 505 & n.1 (distinguishing between the rights of high school teachers and college professors and noting that a "professor's rights to academic freedom and freedom of expression are paramount in the academic setting"). Meanwhile, in *Bair v. Shippensburg University*, students sought to enjoin several university policies declaring the university's commitment to principles like "social justice and equality." 280 F. Supp. 2d 357, 362–63 (M.D. Pa. 2003). However, the language did not regulate student speech, but merely sought "to advise the student body of the University's ideals and [was] therefore aspirational rather than restrictive." *Id.* at 370–71. A university stating its own ideals is one thing. A university mandating that faculty teach and preach those ideals in their classrooms or risk professional repercussions is something else entirely.

### ii. Defendants cannot punish Plaintiffs for expressing differing viewpoints in the classroom.

Viewpoint discrimination is a "poison to a free society"—particularly in our public

institutions of higher learning. *Iancu v. Brunetti*, 139 S. Ct. 2294, 2302 (2019) (Alito, J., concurring). Viewpoint discrimination is an "egregious form of content discrimination" that is a particularly "blatant" First Amendment violation. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995). Without a compelling interest, colleges cannot exclude viewpoints that are "germane to the classroom subject matter." *Hardy,* 260 F.3d at 683. This is especially true for controversial topics "like race, where the risk of conflict and insult is high." *Rodriguez*, 605 F.3d at 708.

The DEIA Rules and Faculty Contract are viewpoint-based, requiring Plaintiffs to "acknowledge," "promote," "incorporate," "advocate for," "advance," and "weav[e] . . . into every course" DEIA principles such as "anti-racism" and "intersectionality." Verif. Compl. Exs. B, D. The District Defendants are candid that, under the Faculty Contract, the District will "engage in a form of content and viewpoint discrimination."[11] Dist. Mot. at 20.[12] But they are mistaken in arguing the First Amendment tolerates their content and viewpoint discrimination. True, a university must be able to set *content-based* curricular standards. *See Demers,* 746 F.3d at 413 ("Ordinarily . . . *content-based judgment* is anathema to the First Amendment. But in the academic world, such a judgment is both necessary and appropriate." (emphasis added)). For instance, it is unremarkable that a university could force a math professor to teach his students math rather than philosophy. But requirements for what pedagogically relevant *viewpoints* public university faculty discuss in their classrooms are another matter altogether.

Forcing professors to embrace concepts like "anti-racism" and "intersectionality"—ideas hotly debated in academia and among the general public, is no different than requiring professors to

---

[11] In their opposition to the injunction motion, the District Defendants were even more forthright, conceding that under the DEIA Rules and Faculty Contract, the District "must necessarily evaluate faculty's academic and teaching excellence on the basis of viewpoint." Dist. Opp'n Mtn. P. Inj., ECF No. 23, at 20.

[12] Counsel for the State Defendants similarly acknowledged during a hearing in the case that determining compliance with the DEIA Rules would depend on *how* a professor implements DEIA material in the classroom. Ortner Decl. Ex. A at 15:6–10. In light of this concession, the State Defendants' argument that Plaintiffs cannot prove that their speech will play "a substantial or motivating factor" in evaluations should be rejected. State Mot. at 15 (citing *Eng v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009)).

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

embrace a free-market or Marxist economic perspective, or champion an isolationist or interventionist stance in foreign policy. *Keyishian*, 385 U.S. at 603 (the First Amendment "does not tolerate laws that cast a pall of orthodoxy over the classroom"). The First Amendment does not allow the government to "act as classroom thought police" and pick and choose which opinions professors must air. *Meriwether*, 992 F.3d at 507.

Defendants also argue the DEIA Rules and Faculty Contract will not prohibit professors from sharing their own viewpoints outright. State Mot. at 17; Dist. Mot. at 18. But the DEIA Rules require Plaintiffs to actively "promot[e]" concepts like "anti-racism" or "race-conscious[ness]." Plaintiffs are being evaluated for how well they espouse the government's views—if they critique race-consciousness or promote color-blindness, they will be accused of not "promoting [] race-conscious[ness]" with sufficient vigor or even of "weaponiz[ing] academic freedom" to "inflict curricular trauma" on their students.

Furthermore, professors know that any teaching or advocacy they do in favor of "anti-racism" will count towards their DEIA competency requirement, while contrary teaching or advocacy will not. For instance, Professor Druley's signing of a "Pro-Human Pledge" will not be credited as participation in "community activities that promote systemic and cultural change," Verif. Compl. ¶¶ 105–06, while similar activities of professors in support of race-conscious and "anti-racist" policies will be credited. Professors will feel pressured to express the State's preferred DEIA viewpoints and to curtail speech to the contrary if they want to advance professionally or retain their jobs. The DEIA Rules and Faculty Contract therefore put a heavy thumb on the scale in favor of the State's preferred DEIA viewpoints.

### iii.   Whether strict scrutiny or *Pickering* applies, Plaintiffs' viewpoint discrimination claims survive the motion to dismiss

Defendants mistakenly argue the employee speech test set out in *Pickering v. Board of Education*, 391 U.S. 563 (1968) should apply to Plaintiffs' viewpoint discrimination claim since this case involves Plaintiffs' employment. Dist. Mot. at 20. It does not. Strict scrutiny applies to

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

policies that discriminate based on viewpoint. *See Rosenberger*, 515 U.S. at 829 (strict scrutiny applies to viewpoint discrimination) And *Pickering* did not involve viewpoint discrimination.

If, as Plaintiffs argue, strict scrutiny applies then Plaintiffs prevail and their claims plainly survive the Defendants' motion to dismiss. Defendants do not even attempt to argue the DEIA Rules and Faculty Contract can survive strict scrutiny. But even if the Defendants are right and *Pickering* is the proper standard, Plaintiffs claims survive the motions to dismiss. So the Court need not conclusively resolve which standard applies at this stage.

This is because under *Pickering,* Defendants will need to prove that their interest "in promoting the efficiency of the public services it performs through its employees" outweighs Plaintiffs' interest "in commenting upon matters of public concern." 391 U.S. at 568. More specifically, they would need to show that Plaintiffs' speech would "so severely damage[]," *Hyland v. Wonder*, 972 F.2d 1129, 1139 ( 9th Cir. 1992), the State's "goal of promoting diversity, equity, inclusion, and accessibility" that they should have "the authority to invalidate protected expressions of speech." *Johnson* Mag. Rec. at 24. Defendants cannot make such a showing at the pleadings stage. Indeed, resolution of *Pickering* claims often "entails underlying factual disputes," *Eng*, 552 F.3d at 1071, and for this reason courts "can rarely perform the *Pickering* balancing on a motion to dismiss." *Guadalupe Police Officer's Ass'n v. City of Guadalupe*, Case No. CV 10–8061 GAF (FFMx), 2011 WL 13217672, at *10 (C.D. Cal. June 8, 2011) (noting "the *Pickering* balancing test ... does not easily lend itself to dismissal on a Rule 12(b)(6) motion" (citing *Decotiis v. Whittemore*, 635 F.3d 22, 35 n.15 (1st Cir. 2011))). So even if Defendants are right about *Pickering* applying, they cannot prevail on their motion to dismiss.

**B.    Defendants May Not Compel Professors to Espouse the State's Preferred DEIA Message.**

The DEIA Rules and Faculty Contract violate the First Amendment because they compel Plaintiffs to speak the government's preferred message. Verif. Compl. ¶¶ 209–235. The government "may not compel affirmance of a belief with which the speaker disagrees." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston,* 515 U.S. 557, 573 (1995). Compelled speech

laws are particularly pernicious because they "[f]orc[e] free and independent individuals to endorse ideas they find objectionable" and "coerce[] [them] into betraying their convictions." *Janus*, 138 S. Ct. at 2464. Laws compelling speech are subject to strict scrutiny because they "plainly alte[r] the content of . . . speech." *Nat'l Inst. of Family & Life Advocs. v. Becerra (NIFLA),* 138 S. Ct. 2361, 2371 (2018). Indeed, "involuntary affirmation could be commanded only on even more immediate and urgent grounds than silence." *West Virginia Bd. of Educ. v. Barnette*, 319 U.S. 624, 633 (1943).

Plaintiffs are expected and required to "acknowledge," "promote," "incorporate," "advocate for," and "advance" DEIA principles which must be "weav[ed] . . . into every course." Verif. Compl. Exs. B, D. They must do so even though they fundamentally disagree with the State's preferred DEIA positions and believe that they are pedagogically unsound. In this respect, the DEIA Rules and Faculty Contract echo the unconstitutional loyalty oaths of the McCarthy era by requiring faculty to "demonstrate" their commitment to the government's views on DEIA. Loyalty oaths were unlawful then, *Keyishian*, 385 U.S. at 603, and remain unlawful now. *Cole v. Richardson*, 405 U.S. 676, 680 (1972) (listing cases declaring that governments may not "condition employment on taking oaths that impinge on rights guaranteed by the First and Fourteenth Amendments").

The District Defendants claim these provisions do "not require Plaintiffs to adopt any particular approach to these DEIA principles." Dist. Mot. at 21. But the requirements to "promote" or "advocate for" or "advance" plainly require that Plaintiffs advance a favorable position towards topics like "anti-racism" or "intersectionality." After all, a lecture explaining the flaws with "anti-racism" can hardly be said to "promote" or "advocate for" or "advance" anti-racism. The DEIA Rules and Faculty Contract therefore improperly force Plaintiffs "to take the government's side on a particular issue." *All. for Open Soc'y Int'l, Inc. v. USAID*, 651 F.3d 218, 235 (2d Cir. 2011). And "[f]orcing free and independent individuals to endorse ideas they find objectionable is always demeaning," and is therefore subject to strict constitutional scrutiny. *Janus*, 138 S. Ct. at 2464.

Defendants say Plaintiffs are not prohibited from also sharing their own viewpoints. State Mot. at 17; Dist. Mot. at 18. This simply is not true. As already discussed, the DEIA Rules prohibit Plaintiffs from disagreeing with the State's preferred viewpoint (or at least penalize them for doing

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

so). *See supra* Section III.A. But even if Plaintiffs can *also* offer their own critiques, they are still forced to use precious class time to "endorse ideas they find objectionable" and "betray[] their convictions," *Janus*, 138 S. Ct. at 2464. For instance, Professor Druley will be required to advance the concept that "merit" "protects[] White Privilege under the guise of standards" even though he believes that merit is a critical tool for overcoming racism and indispensable in the Philosophy classroom. Verif. Compl. ¶ 103.

These limitations deprive Plaintiffs of their constitutionally protected "choice of what not to say," *Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal*., 475 U.S. 1, 16 (1986), or to "refrain from speaking at all," *Janus*, 138 S. Ct. at 2463. This "necessarily alters the content of the[ir] speech," *Evergreen Ass'n, Inc. v. City of N.Y.k,* 740 F.3d 233, 244 (2d Cir.2014), and cannot be justified short of "immediate and urgent grounds," *Janus*, 138 S. Ct. at 2464.

The fact that the professors may offer their own views in addition to parroting the government's views does not cure the First Amendment violation as Defendants' claim. Dist. Mot. at 21. In *Pacific Gas and Electric*, the Supreme Court found that a utility company was not required to give space on its billing envelope to views that it disagreed with even though it could respond to those views, 475 U.S. at 13-15 (1986), and in *NIFLA*, pregnancy clinics could not be required to promote abortion even though they could also deliver a pro-life message, 138 S. Ct. at 2371-76. Plaintiffs likewise cannot be required "to take the government's side on" DEIA even if they are then free to share their own views. This is particularly true at our public colleges, where the "danger . . . to speech from the chilling of individual thought and expression . . . is especially real." *Rosenberger*, 515 U.S. at 835.

The District Defendants concede faculty will be required to write a personal statement that "demonstrate[s] an understanding of . . . [DEIA] competencies and anti-racist principles." Dist. Mot. at 22. In other word, Plaintiffs are required to endorse Defendants' DEIA viewpoints in a personal statement each time they are evaluated. But the District Defendants claim that this "is a standard report of actions, efforts, and successes pursuant to Plaintiffs' employment—no different from a report on research activity." Dist. Mot. at 22. However, a report on research activity relies

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

on viewpoint-neutral and pedagogically objective criteria. A professor who publishes an article in a prestigious journal is given credit whether that article expresses a viewpoint for or against affirmative action (or any other topic). By contrast, the DEIA statement requires professors to endorse the viewpoints that the State and District have imposed or risk an adverse evaluation.

The State Defendants point to the Supreme Court's decision in *Rumsfeld v. Forum for Academic and Institutional Rights, Inc. (FAIR)*, 547 U.S. 47, 63 (2006), to argue that there is no compelled speech here. But the facts in *FAIR* are not analogous. In *FAIR*, law schools challenged a requirement that military recruiters were to be allowed access to campus as a condition to receive federal funding. The Supreme Court emphasized that the requirement "neither limits what law schools may say nor requires them to say anything." *Id.* at 60. A regulation akin to the one in *FAIR* would be a requirement that Plaintiffs allow State Center administrators to come into their classroom at the start of the semester to promote DEIA programs. The DEIA Rules and Faculty Contract go far beyond that, requiring Plaintiffs to actively "incorporate the Board's views into their own speech," State Mot. at 17, and to serve as the mouthpieces for the State's approved DEIA viewpoint. *See 303 Creative LLC v. Elenis*, 600 U.S. 570, 596 (2023) (rejecting the application of *FAIR* when a law would "force an individual to 'utter what is not in [her] mind' about a question of political and religious significance." (quoting *Barnette*, 319 U.S. at 634)). Defendants are entitled to express their commitment to DEIA principles in their own statements, but they may not compel college faculty to endorse the government's preferred DEIA viewpoints.

Finally, as they did with regard to viewpoint discrimination, Defendants wrongly argue that *Pickering* is the proper standard for evaluating Plaintiffs' compelled speech claims. But for all of the same reasons discussed above regarding viewpoint discrimination, Plaintiffs' claims survive regardless of which standard of review applies. *See Supra* Section III.A.iii.

### C.    The DEIA Rules and Faculty Contract Impose a Prior Restraint.

Plaintiffs' prior restraint claims should also proceed because the DEIA Rules and Faculty Contract preemptively restrict speech for all professors at State Center. In *United States v. National Treasury Employees Union* (*NTEU*), the Supreme Court distinguished between "a post hoc analysis

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

of one employee's speech and its impact on that employee's public responsibilities . . . [and an analysis of a] wholesale deterrent to a broad category of expression by a massive number of potential speakers." 513 U.S. 454, 467 (1995); *accord Janus*, 138 S. Ct. at 2472 (noting that the *NTEU* test applies to policies that broadly impact employee speech). The latter constitutes a "prior restraint." *Barone v. City of Springfield, Or.*, 902 F.3d 1091, 1105 (9th Cir. 2018). A prior restraint on employee speech "chills potential speech before it happens" and therefore the government "must shoulder a heavier burden" to justify its existence. *Moonin v. Tice*, 868 F.3d 853, 861 (9th Cir. 2017).

Because the DEIA Rules and Faculty Contract do not concern "an isolated disciplinary action," and instead impose "a wholesale deterrent to a broad category of expression by a massive number of potential speakers," they are a prior restraint on speech under *NTEU*. 513 U.S. at 467; *See also Progressive Democrats for Soc. Justice v. Bonta*, 73 F.4th 1118, 1123 (9th Cir. 2023) (applying *NTEU* to invalidate a ban on solicitation by employees in the workplace). And while the District Defendants try to muddy the water by citing irrelevant prior restraint cases not involving public employees, they ultimately recognize that *NTEU* applies. Dist. Mot. at 23–24.

Under *NTEU,* an employer must "show that the interests of both potential audiences and a vast group of present and future employees in a broad range of present and future expression are outweighed by that expression's 'necessary impact on the actual operation' of the Government." 513 U.S. at 455. To meet this "heavy" burden, the government "must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Id.* at 475 (internal quotation marks omitted). Given this higher factual burden, Plaintiffs' prior restraint claim cannot be resolved on the pleadings. *See Hernandez v. City of Phoenix*, 43 F.4th 966, 981 (9th Cir. 2022) (finding that the district court erred in dismissing two *NTEU* claims at the pleading stage because "in the absence of a developed factual record, we cannot conclude that plaintiffs' facial overbreadth challenge to those clauses fails as a matter of law"); *Moonin*, 868 F.3d at 868 (emphasizing that an employer had failed to "show[] any past disruption sufficient to justify the expansive policy"). The District Defendants' conclusory assertion that they

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

have a "substantial and legitimate interest in advancing its educational mission" cannot defeat Plaintiffs well-pled prior restraint claim. Dist. Mot. at 24.

### D.    The DEIA Rules and Faculty Contract Are Overbroad.

The DEIA Rules and the Faculty Contract are also substantially overbroad. Verif. Compl. ¶¶ 268–93. A policy is overbroad when "a substantial number of its applications are unconstitutional, judged in relation to the [rule's] plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010). The DEIA Rules and Faculty Contract reach a wide swath of constitutionally protected speech and lack any "legitimate sweep" with regard to limiting the viewpoints expressed in the classroom. *Id.* A wide range of protected classroom expression could run contrary to the DEIA Rules and Faculty Contract, such as speech advocating for a colorblind society, or discussing an article critiquing the concepts of "racial equity" or "intersectionality." As a result, Plaintiffs are refraining from assigning content like Martin Luther King, Jr.'s *Letter from Birmingham Jail* and the works of Faulkner and O'Connor or discussing topics like color-blind approaches to combat racism. Verif. Compl. ¶¶ 100–09, 117–20, 127–33, 141–44, 164–65.

Defendants do not directly address Plaintiffs' overbreadth argument. Instead, Defendants regurgitate their argument that the DEIA Rules are just an "exercise of the Board's academic freedom to promote its ideals of diversity, equity, inclusion, and accessibility throughout the California Community Colleges." Dist. Mot. at 20. But this argument is untenable, especially at the motion-to-dismiss stage, where Plaintiffs' allegations regarding the chilling effect must be accepted as true. *Hernandez*, 43 F.4th at 981 (refusing to dismiss a facial overbreadth challenge at the motion to dismiss stage "in the absence of a developed factual record"); *see also Rhodes v. Robinson*, 408 F.3d 559, 562 (9th Cir. 2005) (a plaintiff's "allegations that his First Amendment rights were chilled, though not necessarily silenced, is enough to perfect his claim").

### E.    The DEIA Rules and Faculty Contract Are Vague.

The DEIA Rules and Faculty Contract are also unconstitutionally vague because they mandate professors comply with indecipherable and unclear requirements. Government regulations violate the First and Fourteenth Amendments when they "fail[] to provide a person of ordinary

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

intelligence fair notice of what is prohibited," and "[are] so standardless that [they] authorize[] or encourage[] seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008); *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Vagueness is especially problematic in laws regulating speech due to the "obvious" potential for a "chilling effect on free speech." *Reno v. ACLU*, 521 U.S. 844, 871–72 (1997). Speech restrictive laws must be drafted with "narrow specificity." *NAACP v. Button*, 371 U.S. 415, 433 (1963).

The DEIA Rules and Faculty Contract fail both tests. They fail to provide sufficient notice to community college professors about what they are and are not allowed to teach. Ideologically loaded terms with abstract requirements, like using "a race-conscious and intersectional lens" and staying "anti-racist," do not give professors adequate guidance to know whether their instruction will satisfy the DEIA Rules' requirements. Indeed, many of the key terms like "colonized mindset," "individualist perspective," and "curricular trauma," are left to the imagination of the reader. That is well short of the specificity and precision the Constitution requires.

Plaintiffs must "employ teaching, learning, and professional practices that reflect DEIA and anti-racist principles." Cal. Code Regs. Tit. 5 § 53605(a). But these terms either lack definitions or fail to provide any helpful guidance. For instance, one of the key terms—"equity"—is not defined at all, while "anti-racism" and "antiracist" are defined unhelpfully as "policies and actions that lead to racial equity." *Id.* § 52510(d). How can a professor know which practices lead to "racial equity"? And what happens when a professor and an administrator at State Center disagree whether a policy leads to racial equity? The Faculty Contract requires faculty to "reflect knowledge of the intersectionality of social identities," but neither the Faculty Contract nor the DEIA Rules define "intersectionality." Verif. Compl. Ex. F.

The DEIA Rules also warn Plaintiffs not to "weaponize academic freedom and academic integrity" to "inflict curricular trauma on our students." Verif. Compl. Ex. D. The *Glossary* does not define "curricular trauma." Has a professor inflicted "curricular trauma" if a student is upset by a movie? Indeed, many books, articles or films that challenge a reader's ingrained perspective or worldview—such as the video about the war on drugs that Professor Palsgaard wishes to show, or

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

the *New York Times* op-ed that Professor Stannard has his students read and discuss—could be accused of inflicting "curricular trauma." Verif. Compl. ¶¶ 120, 131.

The "long list of relevant definitions" that the Defendants argue saves the DEIA Rules from a vagueness challenge does more harm than good. Dist. Mot. at 26. The "definitions" are opaque, circular, and provide little clarity to professors as to what they are expected to teach or avoid teaching. For instance, the *Glossary* defines "equity minded" as "being (1) race conscious, (2) institutionally focused, (3) evidence based, (4) systematically aware, and (5) action oriented." Defining a vague term with other vague terms like "systematically aware" or "evidence based" makes it more vague, not less. The *Model Principles* and *Glossary* are full of DEIA jargon that professors will find impenetrable, such as "an individualist perspective" or a "collectivism perspective." Verif. Compl. Ex. D. These vague terms provide administrators with even more leeway to penalize professors who go against the administrator's preferred DEIA position.

The District Defendants' reliance on *Edge v. City of Everett*, 929 F.3d 657, 667 (9th Cir. 2019) is misplaced. *Edge* concerned a lewdness ordinance banning clothing that did not fully cover the body. The Ninth Circuit found that established anatomical terms like "anal cleft" were "clear and ascertainable" to the ordinary person, and therefore would not lead to "unchecked law enforcement discretion." *Id.* at 666. But the terms used by the DEIA Rules are far from "clear and ascertainable." They are some of the most contested concepts and topics in America today, like "equity," "anti-racism," and "intersectionality." Verif. Compl. ¶ 6 (alleging that "[f]rom the board room to the Capitol, politicians, scholars, and everyday Americans are debating the best way to overcome racial inequity in a manner consistent with our nation's ideal of equality under the law."). These concepts are also highly subjective as shown by the fact that Plaintiffs hold a very different understanding of these concepts than the government. Verif. Compl. ¶¶ 24–30, 96–173.

The DEIA Rules and Faculty Contract deprive professors of "a reasonable opportunity to understand what conduct [the provisions] prohibit[]." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).[13]

---

[13] The District Defendants claim that the vagueness concerns are mitigated by some procedural protections in the Faculty Contract like being able to select their faculty peer reviewer or bring their

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

They are not "readily susceptible" to a narrowing construction that would allow the DEIA Rules and Faculty Contract to pass Constitutional muster, because doing so would require "rewriting, not just reinterpretation." *Stevens*, 559 U.S. at 481.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Defendants' motions to dismiss in full.

Respectfully submitted,

/s/ Daniel M. Ortner
DANIEL M. ORTNER (California State Bar
No. 329866)
daniel.ortner@thefire.org
FOUNDATION FOR INDIVIDUAL
RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Telephone: (215) 717-3473

*Counsel for Plaintiffs*

---

complaints to the college president. Dist. Mot. at 26 n.8. But these procedures do not help professors know what they can teach or not.

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

**CERTIFICATE OF SERVICE**

I, Daniel M. Ortner, hereby certify that on January 19, 2024, I submitted the foregoing to the Clerk of the Court via the District Court's CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to counsel for all Defendants.

/s/ Daniel M. Ortner
DANIEL M. ORTNER

1
CERTIFICATE OF SERVICE - PLAINTIFFS' CONSOLIDATED OPPOSITION TO
DEFENDNATS' MOTION TO DISMISS