R OB B ONTA, State Bar No. 202668
Attorney General of California
A NYA M. B INSACCA, State Bar No. 189613
Supervising Deputy Attorney General
J AY C. R USSELL, State Bar No. 122626
J ANE R EILLEY, State Bar No. 314766
Deputy Attorney General
　455 Golden Gate Avenue, Suite 11000
　San Francisco, CA  94102-7004
　Telephone:  (415) 510-3879
　Fax:  (415) 703-5480
　E-mail:  Jane.Reilley@doj.ca.gov
*Attorneys for Defendants
Sonya Christian, in her official capacity as
Chancellor of the California Community Colleges;
Amy M. Costa, Hildegarde B. Aguinaldo, Darius W.
Anderson, Adrienne C. Brown, Tom Epstein, Felicia
Escobar Carrillo, Jolena M. Grande, Pamela
Haynes, Eleni Kounalakis, Harry Le Grande, Paul
Medina, Jennifer L. Perry, Bill Rawlings, Mary H.
Salas, Blas Villalobos, and Joseph R. Williams, in
their official capacities as members of the Board of
Governors of the California Community Colleges*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LOREN PALSGAARD, et al.,**<br><br>　　　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>**SONYA CHRISTIAN, et al.,**<br><br>　　　　　　　　　　　　Defendants. | 1:23-cv-01228-NODJ-CDB<br><br>**STATE DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:　　　　February 28, 2024<br>Time:　　　　9:00 A.M.<br>Dept:　　　　Courtroom 5<br>Judge:　　　No District Court Judge<br>Trial Date:　Not Scheduled<br>Action Filed: August 17, 2023 |

# TABLE OF CONTENTS

Page

Introduction ...................................................................................................................... 1

Argument .......................................................................................................................... 1

    I.    Plaintiffs' Claims Against the State Defendants Should Be Dismissed for Lack of Standing. ........................................................................................... 1

        A.    The Implementation Guidelines Do Not—and Cannot—Injure Plaintiffs Because They Are Not Binding Against Plaintiffs or State Center. ............................................................................................................ 2

            1.    The Challenged Regulations State Only That the Implementation Guidelines "Shall be Used as a Reference" by the Districts, Not That the Districts Must Adopt the Implementation Guidelines. ........................................................... 3

            2.    By Its Plain Language, the State Center Faculty Contract Does Not Incorporate the Implementation Guidelines, and Plaintiffs' Claim that State Center Will Enforce the Implementation Guidelines Against Them Is Speculative. ............ 3

        B.    The Regulations Do Not Contain Any Mechanism by Which Plaintiffs Can Be Punished for Their Speech And Do Not Proscribe Any Particular Classroom Speech or Curriculum. ....................................... 5

        C.    The Regulations Do Not Regulate Speech, but Rather Properly Require Professors to Demonstrate an Ability to Work with, and Effectively Educate, a Community College Campus Population. .............. 6

    II.   Plaintiffs Fail to State a Viable Claim Against the State Defendants Under Any Theory. .............................................................................................. 7

        A.    Plaintiffs' Viewpoint Discrimination, Compelled Speech, and Prior Restraint Claims Against the State Defendants Lack Merit Because the Regulations Neither Require Nor Proscribe Any Speech. .................... 7

        B.    Plaintiffs' Overbreadth and Vagueness Challenges to the Regulations Lack Merit. ...................................................................... 10

    III.  The State Defendants' Motion to Dismiss Should Be Granted Without Leave to Amend. ................................................................................................ 11

Conclusion ...................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ............................................................................................................ 4

*Bonin v. Calderon*
  59 F.3d 815 (9th Cir. 1995) ............................................................................................... 11

*Demers v. Austin*
  746 F.3d 402 (9th Cir. 2014) .......................................................................................... 9, 10

*Hurley v. Irish–Am. Gay, Lesbian & Bisexual Grp. of Boston*
  515 U.S. 557 (1995) ............................................................................................................ 8

*Janus v. Am. Fed'n of State, Cnty., and Mun. Emps., Couns. 31*
  — U.S. —, 138 S. Ct. 2448 (2018) ..................................................................................... 9

*Lopez v. Candaele*
  630 F.3d 775 (9th Cir. 2010) ........................................................................................... 2, 7

*Maya v. Centex Corp.*
  658 F.3d 1060 (9th Cir. 2011) ............................................................................................ 4

*OSU Student Alliance v. Ray*
  699 F.3d 1053 (9th Cir. 2012) ............................................................................................ 4

*Pickering v. Board of Education*
  391 U.S. 563 (1968) ...................................................................................................... 9, 10

*Pub. Emp. Relations Bd. v. Modesto City Sch. Dist.*
  136 Cal. App. 3d 881 (1982) .............................................................................................. 3

*Roberts v. U.S. Jaycees*
  468 U.S. 609 (1984) ........................................................................................................ 8, 9

*TransUnion LLC v. Ramirez*
  — U.S. —, 141 S. Ct. 2190 (2021) ................................................................................. 2, 4

**STATUTES**

California Education Code
  § 70901 ............................................................................................................................... 6
  § 87356 ............................................................................................................................... 6
  § 87360 ............................................................................................................................... 6
  § 87626 ............................................................................................................................... 6

ii

State Defendants' Reply in Support of Motion to Dismiss (1:23-cv-01228-ADA-CDB)

**TABLE OF AUTHORITIES**
(continued)

**Page**

California Government Code
   § 3543.2(a)(1) .................................................................................................. 3
   § 3543.5 .......................................................................................................... 3

Minnesota's Human Rights Act .............................................................................. 8

**CONSTITUTIONAL PROVISIONS**

United States Constitution
   First Amendment .................................................................................... *passim*

**COURT RULES**

Federal Rule of Civil Procedure 12(b)(1) ............................................................... 2

Rule 12(b)(6) .......................................................................................................... 7

**OTHER AUTHORITIES**

Cal. Cmty. Colls., *Procedures and Standing Orders of the Board of Governors*
   (Dec. 2022) ch. 2, § 200, https://www.cccco.edu/-/media/CCCCO-
   Website/docs/procedures-standing-orders/december-2022-procedures-
   standing-ordersv2-
   a11y.pdf?la=en&hash=FF692A0AE8ACC8FE6BB2A4D75018302005A8A4D
   6 ....................................................................................................................... 2

California Code of Regulations, Title 5
   § 51201(c) ................................................................................................... 8, 9
   § 51201(d) ....................................................................................................... 9
   § 52510(l) ........................................................................................................ 5
   § 53425 ............................................................................................................ 6
   § 53601 ............................................................................................................ 3
   § 53602 ........................................................................................................ 6, 7
   § 53602(a-b) .................................................................................................... 6
   § 53602(b) ....................................................................................................... 9

Exec. Order No. 14035, 86 Fed. Reg. 34593, 2021 WL 2662351 (June 21, 2021) ....... 8

# INTRODUCTION

Plaintiffs' opposition insists that the regulations directed to the California Community College districts for promoting proficiency and competency in issues concerning diversity, equity, inclusion, and accessibility that benefit California's two million community college students somehow "require [them] to teach and preach the State's mandatory DEIA viewpoints." (Pl.'s Opp'n Mot. to Dismiss (Opp'n) 26.)  In an attempt to find support for this contention, Plaintiffs ignore the fact that the regulations apply only to the districts (not individual faculty members), repeatedly conflate the regulations with the non-binding implementation guidelines, and rely on conclusory speculation that their First Amendment rights may someday be infringed as a result of the regulations.

Each of Plaintiffs' arguments fail.  By their plain language, the regulations in question do not require Plaintiffs to "teach or preach" any message, but rather guide local districts as they negotiate with their employee labor organizations to formulate their own policies promoting diversity, equity, inclusion, and accessibility.  And neither the regulations nor the non-binding implementation guidelines create any separate enforceable criteria under which Plaintiffs can be punished for engaging in any particular speech—even speech that is contrary to the Board's own message on these issues.  Accordingly, Plaintiffs have failed to meet their burden of pleading a sufficiently concrete injury to establish standing against the State Defendants, and have further failed to plead a valid cause of action against the State Defendants under any theory.  The motion to dismiss should therefore be granted.[1]

# ARGUMENT

**I.   PLAINTIFFS' CLAIMS AGAINST THE STATE DEFENDANTS SHOULD BE DISMISSED FOR LACK OF STANDING.**

Nothing in Plaintiffs' opposition remedies their fundamental failure to meet their burden of showing they have suffered a "concrete, particularized, and actual or imminent" injury in fact as a

---

[1] Plaintiffs' opposition cites extensively to the findings and recommendations issued by Magistrate Judge Baker in *Johnson v. Watkin*, Case No. 1:23-cv-00848 (E.D. Cal.).  To be clear, these findings and recommendations elicited objections from all parties to the *Johnson* matter, and it remains undecided whether they will be adopted as the District Court's final ruling or rejected.

result of the challenged regulations. *TransUnion LLC v. Ramirez*, — U.S. —, 141 S. Ct. 2190, 2203 (2021). Because Plaintiffs cannot satisfy this "rigid constitutional requirement" (*Lopez v. Candaele*, 630 F.3d 775, 786 (9th Cir. 2010), Plaintiffs' claims against the State Defendants should be dismissed under Federal Rule of Civil Procedure 12(b)(1).

    **A.    The Implementation Guidelines Do Not—and Cannot—Injure Plaintiffs Because They Are Not Binding Against Plaintiffs or State Center.**

As a threshold matter, Plaintiffs' contention that the implementation guidelines have somehow injured them and thus confer standing (Opp'n 12-14) is demonstrably untrue. As explained in the State Defendants' motion, the implementation guidelines are non-binding advisory documents directed to community college districts. (*See* Def.'s Mot. To Dismiss 5-6.) Because the implementation guidelines are not (and, by their plain language, do not purport to be) regulations adopted through the formal regulatory process, they do not bind the conduct or speech of either State Center or its employees, including Plaintiffs.[2] Accordingly, the implementation guidelines have no power to control Plaintiffs' speech and, as a matter of law, cannot serve as a basis for Plaintiffs' First Amendment claims. *Lopez v. Candaele*, 630 F.3d at 788 ("[C]laims of future harm lack credibility when the challenged speech restriction by its terms is not applicable to the plaintiff[]").

In an attempt to avoid the inevitable conclusion that they are not bound by—and thus are not injured by—the implementation guidelines, Plaintiffs raise two arguments. First, they assert that the implementation guidelines "'shall be used' by the districts in implementing and enforcing the requirements of the DEIA Rules." (Opp'n 14.) Second, they claim that "State Center incorporated the Implementation Guidelines into the Faculty Contract and intends to utilize them when enforcing the Faculty Contract." (Opp'n 12.) As shown below, both of these arguments fail.

---

[2] *See* Cal. Cmty. Colls., *Procedures and Standing Orders of the Board of Governors* (Dec. 2022) ch. 2, § 200, https://www.cccco.edu/-/media/CCCCO-Website/docs/procedures-standing-orders/december-2022-procedures-standing-ordersv2-a11y.pdf?la=en&hash=FF692A0AE8ACC8FE6BB2A4D75018302005A8A4D6 ("Neither the Board nor the Chancellor may administer or enforce any regulation, as defined by section 202, paragraph (d), unless that regulation is adopted in accordance with the provisions of this Chapter").

1. **The Challenged Regulations State Only That the Implementation Guidelines "Shall be Used as a Reference" by the Districts, Not That the Districts Must Adopt the Implementation Guidelines.**

Plaintiffs' argument that the implementation guidelines "shall be used" by State Center when evaluating Plaintiffs is misleading because nothing in the regulations requires State Center to use or incorporate any portion of the implementation guidelines when creating their own policies. Rather, the regulations expressly state that the implementation guidelines "shall be used *as a reference*" by the districts. Cal. Code Regs. tit. 5, § 53601 (emphasis added). Because the implementation guidelines are a reference tool and not a mandate, districts are free to use all, some, or none of their language in drafting their own local policies, which must be done separately with each of the interested labor unions through the collective bargaining process. Cal. Gov. Code § 3543.2(a)(1). Thus, nothing in the regulations mandates that the districts "shall use" any—much less all—of the implementation guidelines when creating or enforcing their own DEIA criteria.

2. **By Its Plain Language, the State Center Faculty Contract Does Not Incorporate the Implementation Guidelines, and Plaintiffs' Claim that State Center Will Enforce the Implementation Guidelines Against Them Is Speculative.**

Plaintiffs' assertion that State Center "incorporated" the implementation guidelines into the Faculty Contract is also provably untrue. To the contrary, the Faculty Contract does not even mention—much less incorporate wholesale—the implementation guidelines. *See* Verif. Compl. Ex. F, ECF No. 1-6. The State Center's decision not to include the implementation guidelines in its Faculty Contract supports the conclusion that it has no intention to enforce the implementation guidelines against its employees, including Plaintiffs. Indeed, if State Center attempted to enforce the implementation guidelines against employees without having first bargained them into the collective bargaining agreement, it would likely result in an unfair labor practice charge brought by the labor union representing the affected employees. *See* Cal. Gov. Code § 3543.5; *Pub. Emp. Relations Bd. v. Modesto City Sch. Dist.* 136 Cal. App. 3d 881, 900 (1982) (a district "cannot change matters within the scope of representation without first providing the exclusive representative notice and opportunity to negotiate".)

Implicitly recognizing that they lack any factual support for their claim that State Center incorporated the implementation guidelines into its Faculty Contract, Plaintiffs claim that this Court has no choice but to accept their allegations as true at the pleadings stage. (Opp'n 12-13.) But "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Plaintiffs' unsupported allegations that they will be subject to the implementation guidelines lack any factual support and thus are precisely the sort of "bare legal conclusion[s]" that cannot be relied upon to "assert injury-in-fact." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011).

The authority cited by Plaintiffs, *OSU Student Alliance v. Ray*, 699 F.3d 1053 (9th Cir. 2012), lends no support to their position. There, the plaintiffs' claims were predicated upon a university policy regulating newsbins belonging to off-campus newspapers. *Id.* at 1059. Although the policy was unwritten, its existence was confirmed by both the university's Director of Facilities Services and Associate General Counsel, as described in detail in the complaint. *Id.* at 1059-1060. Unsurprisingly, the Ninth Circuit held that the *Alliance* plaintiffs had pled with sufficient specificity that the university policy at issue did, in fact, exist. Here, in contrast, Plaintiffs have not pled any such specific facts establishing that that State Center has or will implement any policy by which they will enforce the implementation guidelines against its faculty members—nor can they, because no such facts exist.

Plaintiffs' speculation that State Center may punish them under the implementation guidelines at some point in the future (even though the implementation guidelines are not part of the Faculty Contract) falls far short of Plaintiffs' obligation to sufficiently plead a "concrete, particularized, and actual or imminent" injury suffered as a result of the regulations. *TransUnion LLC v. Ramirez*, 141 S. Ct. at 2203. And Plaintiffs do not and cannot allege that State Defendants would have any role in such an alleged injury. Absent such a showing, their claims fail.

**B.   The Regulations Do Not Contain Any Mechanism by Which Plaintiffs Can Be Punished for Their Speech And Do Not Proscribe Any Particular Classroom Speech or Curriculum.**

Plaintiffs also ignore that the regulations do not contain any enforcement mechanism by which Chancellor Christian or the Board could punish Plaintiffs for engaging in any particular speech, or using any particular curriculum, in the classroom. Plaintiffs' standing argument is predicated on the unsubstantiated claim that they will be "placed on a 'plan for improvement' with limited time to correct the deficiency, denied advancement to a new salary class, or even fired" if they use certain instructional materials in their classrooms. (Opp'n 6.) This argument lacks merit, for two reasons.

First, the regulations do not authorize the State Defendants, the California Community Colleges, or anyone else to take any such disciplinary actions against Plaintiffs, even if they engage in speech that is contrary to the California Community College Board's ideals regarding diversity, equity, inclusion, and accessibility. Rather, the regulations relate to "evaluations" and "tenure reviews," both of which are non-disciplinary procedures aimed at promoting professional development. *See* Cal. Code Regs. tit. 5, § 52510(l) (defining "evaluation" as "a tool to provide and receive constructive feedback to promote professional growth and development" and "tenure reviews" as "evaluations [of] demonstrated, or progress toward, proficiency in the locally-developed DEIA competencies"). Because the regulations contain no punitive elements, they cannot injure Plaintiffs' First Amendment rights.

Second, there is no basis for Plaintiffs' claims that the regulations prohibit faculty members from using any particular instructional materials in their classrooms, much less the specific materials Plaintiffs have allegedly refrained from assigning to their students. Although Plaintiffs list several works—such as Martin Luther King Jr.'s *Letters from Birmingham Jail* and the film *Hidden Figures*—that they claim they would use in their curricula but for the regulations (Opp'n 6-9), they fail to explain how any of these works run afoul of the regulations. Nor can they, because the plain text of the regulations does not prevent Plaintiffs from assigning any of these works, and there is no evidence that Plaintiffs have been informed by any source (including the State Defendants) that using any of these materials would violate the regulations. Plaintiffs

cannot establish standing by relying on their conjectural "fears" and "worries" that the curricula they wish to teach might somehow contravene the regulations.

Accordingly, Plaintiffs' Complaint and opposition are both devoid of any factual allegations showing that any of them have been threatened with termination or disciplinary action under the regulations, or that State Center has or will find that any of their proposed instructional materials violate the Faculty Contract, or that they otherwise have any credible reason to believe that they will be disciplined in the future for teaching their proposed curricula. Because the regulations neither proscribe any particular type of protected speech nor contain any mechanism by which Plaintiffs could be punished for engaging in any such speech, Plaintiffs have not and will not suffer any cognizable First Amendment injury as a result of the regulations.

### C. The Regulations Do Not Regulate Speech, but Rather Properly Require Professors to Demonstrate an Ability to Work with, and Effectively Educate, a Community College Campus Population.

Finally, Plaintiffs claim that California Code of Regulations, title 5, section 53602 confers First Amendment standing because it "order[s] community college districts to implement DEIA requirements for their employees who can be sanctioned or fired if they do not comply." (Opp'n 16.) But nothing in this regulation mandates that any faculty member—including Plaintiffs— engage in or refrain from any particular speech. Rather, section 53602 requires districts to consider employees' "demonstrated, or progress toward, proficiency in [DEIA] competencies" that "enable work with diverse communities, as required by section 53425." Cal. Code Regs. tit. 5, § 53602(a-b). By its plain language, this regulation does not dictate what a faculty member can or cannot say or teach in the classroom, and thus does not violate any faculty members' First Amendment rights.

The State Defendants are authorized to establish minimum standards and evaluation criteria for their faculty members, to ensure that all faculty members are qualified to teach within the California Community Colleges. Cal. Educ. Code §§ 70901, 87356, 87626. The ability to ensure that faculty members can "work with diverse communities" (Cal. Code Regs. tit. 5, § 53602) is undoubtedly a key component of a faculty member's qualifications to teach and is in fact required to be included in hiring criteria by the California legislature. Cal. Educ. Code § 87360. For

example, if students of a particular gender, race, socioeconomic, or disability status consistently perform poorly in, or fail to complete, a certain faculty member's course, that could suggest that the faculty member's pedagogical methods, or an inability to "work with diverse communities," are not enabling students from across diverse backgrounds to succeed.  It is wholly appropriate for community college districts to evaluate their faculty members' knowledge of issues concerning diversity, equity, and inclusion to ensure that the State's two million community college students all have equitable access to a high-quality education.  Regulations like section 53602 that are aimed at ensuring that faculty members employ teaching methodologies that allow them to effectively interact with, educate, and "work with" students from all backgrounds do not impinge faculty members' speech, and thus do not raise any First Amendment concerns.

In sum, Plaintiffs have failed to allege that any of the challenged regulations have caused them any injury in fact, and Plaintiffs' "fears" and "worries" that the regulations will injure them at some unknown future date (Verif. Compl. 98-173, ECF No. 1) are purely speculative. Accordingly, this Court should dismiss Plaintiffs' claims against the State Defendants for lack of standing.

## II. PLAINTIFFS FAIL TO STATE A VIABLE CLAIM AGAINST THE STATE DEFENDANTS UNDER ANY THEORY.

Even if Plaintiffs could meet their "rigid constitutional requirement" (*Lopez v. Candaele*, 630 F.3d at 786) of pleading a concrete injury in fact sufficient to confer standing—which they have not—they fail to state any viable claim against the State Defendants and their complaint should be dismissed under Rule 12(b)(6).

### A. Plaintiffs' Viewpoint Discrimination, Compelled Speech, and Prior Restraint Claims Against the State Defendants Lack Merit Because the Regulations Neither Require Nor Proscribe Any Speech.

The crux of each of Plaintiffs' First Amendment claims against the State Defendants is that that the regulations "require [them] to teach and preach the State's mandatory DEIA viewpoints." (Opp'n 26.)  But as explained above, nothing in the regulations mandates or prohibits any particular speech.  Rather, the regulations seek to have staff exhibit proficiency with and be knowledgeable in concepts of diversity, equity, inclusion, and accessibility, so that they can

effectively work with and educate the diverse student body of the California Community Colleges.

The State's "commitment to eliminating discrimination and assuring its citizens equal access to publicly available goods and services" is a goal "unrelated to the suppression of expression, plainly serves compelling state interests of the highest order" and does not run afoul of the First Amendment. *Roberts v. U.S. Jaycees,* 468 U.S. 609, 624 (1984); see also *Hurley v. Irish–Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 572 (1995) (public accommodations law forbidding discrimination based on sexual orientation and other grounds did not, "on its face, target speech or discriminate based on its content, the focal point of its prohibition being rather on the act of discriminating against individuals in the provision of publicly available goods, privileges, and services on the proscribed grounds."). Here, the regulations aim to "eliminate . . . barriers to equity" in community colleges (Cal. Code Regs. tit. 5, § 51201(c)). They do not suppress Plaintiffs'—or anyone's—speech.[3]

In *Roberts v. U.S. Jaycees*, the national office of the Jaycees (a charitable organization that pursues "educational and charitable purposes [that] promote and foster the growth and development of young men's civic organizations"), challenged an order issued under Minnesota's Human Rights Act requiring a local chapter to admit women. *Roberts,* 468 U.S. at 612-16. Holding that the Minnesota Act "does not aim at the suppression of speech, does not distinguish between prohibited and permitted activity on the basis of viewpoint, and does not license enforcement authorities to administer the statute on the basis of such constitutionally impermissible criteria," the Supreme Court found the enforcement order valid, despite the purported infringement on the organization's freedom of association protected under the First Amendment. *Id.* at 623. Despite that alleged interference, the Minnesota Act promoted equality that was "unrelated to the suppression of expression, [and] plainly serves compelling state interests of the highest order." *Id.* at 624.

---

[3] The Federal government operates under similar DEIA principles. In 2021, President Biden issued an executive order urging the government to "be a model for diversity, equity, inclusion, and accessibility, where all employees are treated with dignity and respect," and establishing "procedures to advance these priorities across the Federal workforce." *See* Exec. Order No. 14035, 86 Fed. Reg. 34593, 2021 WL 2662351 (June 21, 2021).

Similar to the nondiscrimination policy in *Roberts v. U.S. Jaycees*, the regulations Plaintiffs challenge do not "target speech or discriminate on the basis of its content." *Roberts*, 468 U.S. at 624. Rather, the regulations promote the Board's "commitment to diversity," which "requires that we strive to eliminate those barriers to equity and that we act deliberately to create a safe, inclusive, and anti-racist environment" that "offers equal opportunity for all." Cal. Code Regs. tit. 5, § 51201(c) and (d). The Supreme Court has consistently held that such policies do not violate the First Amendment.

Plaintiffs' reliance upon *Janus v. Am. Fed'n of State, Cnty., and Mun. Emps., Couns. 31*, — U.S. —, 138 S. Ct. 2448 (2018) is misplaced. In *Janus*, a state employee declined to join his unit's union because he "oppose[d] many of the public policy positions that it advocate[d]," but was nevertheless required under his unit's collective-bargaining agreement to pay monthly nonmember dues to the union. *Id.* at 2461. The Supreme Court held that such compulsory payment of nonmember dues "violates the free speech rights of nonmembers by compelling them to subsidize private speech on matters of substantial public concern." *Id.* at 2460. Here, in contrast, the regulations at issue do not require Plaintiffs to "subsidize" any entity's private speech. Indeed, they do not require Plaintiffs to speak at all, but to "establish proficiency in" and have a working knowledge of DEIA concepts, so that they can effectively work with and educate California's diverse student population. *See* Cal. Code of Regs. tit. 5, § 53602(b).

Plaintiffs' reliance on *Demers v. Austin,* 746 F.3d 402 (9th Cir. 2014) similarly fails. In *Demers*, the plaintiff professor alleged that he had been retaliated against by school administrators for having distributed the school's accreditation plan for its communications department and drafts from an in-progress book critical of school administrators. *Demers,* 746 F.3d. at 406-408. The Ninth Circuit examined the protections applicable to the speech of teachers and professors and held that because "teaching and academic writing are at the core of the official duties of teachers and professors [and] are a special concern of the First Amendment," the balancing test articulated in *Pickering v. Board of Education*, 391 U.S. 563 (1968) applied, which requires that a government employee's interest "in commenting upon matters of public concern"

outweighs the State's interest "in promoting the efficiency of the public services it performs through its employees." *Demers,* 746 F.3d at 411-12, citing *Pickering*, 391 U.S. at 568.

Both *Pickering* and *Demers* require that speech concerning "matters of public concern" be restricted in some way to state a First Amendment claim. But as discussed above, Plaintiffs cannot establish that their speech has been restricted, compelled, or altered in any way because of the regulations. Again, the regulations and guidelines provide direction as to how districts should formulate their policies concerning diversity, equity, inclusion, and accessibility. While they obligate professors to be "proficient" in these concepts, they do not compel speech, nor do they restrict a professor's speech, even speech that might challenge these concepts. Plaintiffs' argument that having to learn about these concepts, and/or demonstrating their ability, to work with students from diverse backgrounds, somehow restricts their expression is unavailing.

In short, the regulations call for proficiency and increased learning concerning important issues that are evolving but are nevertheless important in assisting professors to recognize and respect the experiences of California's extremely diverse community college population. Plaintiffs' contention that any effort to increase their understanding and knowledge of these concepts somehow requires them to "teach and preach the State's mandatory DEIA viewpoints" is baseless and cannot serve as the foundation for any valid First Amendment claim.

### B. Plaintiffs' Overbreadth and Vagueness Challenges to the Regulations Lack Merit.

Plaintiffs further fail to state a cognizable claim that the regulations are unconstitutionally overbroad or vague. In their opposition, Plaintiffs assert that the regulations are overbroad because they preclude "[a] wide range of protected classroom expression." (Opp'n 35.) But as previously explained at length, the regulations do not proscribe any classroom expression whatsoever; rather, they direct the California Community College districts to establish policies that promote proficiency in diversity, equity, inclusion, and accessibility concepts. Plaintiffs' contention that the regulations are vague because they "fail to provide sufficient notice to community college professors about what they are and are not allowed to teach" (Opp'n 36) also fails, because again, nothing in the regulations dictates what faculty can and cannot teach.

Plaintiffs' vagueness argument also fails on the additional ground that it relies almost exclusively on language taken from the implementation guidelines (Opp'n 36-37, *citing* Verif. Compl. Exs. D and F), which—as discussed at length above—are not binding on Plaintiffs or State Center and were not incorporated into the faculty contract and therefore cannot serve as a factual basis for Plaintiffs' claims.

Simply put, the regulations clearly and properly require the California Community College districts to implement their own local diversity, equity, inclusion, and accessibility policies, without causing any harm to Plaintiffs' First Amendment rights. Accordingly, Plaintiffs' vagueness and overbreadth claims against the State Defendants should be dismissed.

### III. THE STATE DEFENDANTS' MOTION TO DISMISS SHOULD BE GRANTED WITHOUT LEAVE TO AMEND.

Finally, the Court should deny Plaintiffs leave to amend their Complaint, for at least two reasons. First, Plaintiffs have not requested leave to amend. And even if Plaintiffs' opposition had properly sought leave to amend, Plaintiffs have failed to demonstrate that any amendment would give rise to a viable claim against the State Defendants. *See Bonin v. Calderon,* 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend."). Thus, the Court should grant the State Defendants' motion to dismiss without leave to amend.

### CONCLUSION

The Complaint fails to establish that Plaintiffs have standing to bring their claims against the State Defendants and further fails to state a cognizable First Amendment claim against the State Defendants. Accordingly, the State Defendants respectfully request that the Court grant their motion to dismiss without leave to amend.

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: February 9, 2024 | Respectfully submitted, |
| 3 | | ROB BONTA<br>Attorney General of California<br>ANYA M. BINSACCA |
| 4 | | Supervising Deputy Attorney General |
| 5 | | |
| 6 | | /s/ *Jane Reilley*<br>JAY C. RUSSELL |
| 7 | | JANE REILLEY<br>Deputy Attorneys General |
| 8 | | *Attorneys for Defendants Sonya Christian, in her official capacity as Chancellor of the California Community Colleges; Amy M. Costa, Hildegarde B. Aguinaldo, Darius W. Anderson, Adrienne C. Brown, Tom Epstein, Felicia Escobar Carrillo, Jolena M. Grande, Pamela Haynes, Eleni Kounalakis, Harry Le Grande, Paul Medina, Jennifer L. Perry, Bill Rawlings, Mary H. Salas, Blas Villalobos, and Joseph R. Williams, in their official capacities as members of the Board of Governors of the California Community Colleges* |

## CERTIFICATE OF SERVICE

| | | | |
|---|---|---|---|
| Case Name: | **_Palsgaard, Loren, et al. v. Sonya Christian, et al._** | Case No. | **1:23-cv-01228-NODJ-CDB** |

I hereby certify that on <u>February 9, 2024</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **STATE DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>February 9, 2024</u>, at San Francisco, California.

| | |
|---|---|
| M. Mendiola | _/s/ M. Mendiola_ |
| Declarant | Signature |

SA2023304307
44058475.docx