Mark H. Meyerhoff, Bar No. 180414
mmeyerhoff@lcwlegal.com
David A. Urban, Bar No. 159633
durban@lcwlegal.com
Morgan Johnson, Bar No. 345620
mjohnson@lcwlegal.com
LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045
Telephone:    310.981.2000
Facsimile:    310.337.0837

Attorneys for Defendants CAROLE GOLDSMITH, et al.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA - FRESNO

| | |
|---|---|
| LOREN PALSGAARD, et al., | Case No.: 1:23-cv-01228-NODJ-CDB |
| Plaintiffs, | Complaint Filed: August 17, 2023 |
| v. | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' VERIFIED COMPLAINT** |
| SONYA CHRISTIAN, in her official capacity as the State Chancellor of California Community Colleges, et al., | |
| Defendants. | Date:    TBD<br>Time:    TBD<br>Courtroom: TBD |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................................5

II. LEGAL ARGUMENT............................................................................................................5

    A. THE FOUR GUIDANCE DOCUMENTS ARE NOT BINDING ON THE DISTRICT OR THE PLAINTIFFS ..........................................................5

        1. The Terms, Phrases, and Concepts Plaintiffs Regularly Quote to Support Their Complaint Do Not Come From the Faculty Contract or the DEIA Regulations..................................................9

    B. PLAINTIFFS FAIL TO ESTABLISH ARTICLE III STANDING ......................10

    C. PLAINTIFFS' FIRST AMENDMENT RIGHTS WERE WAIVED BY THEIR UNION ..................................................................................................12

    D. PLAINTIFFS CANNOT PREVAIL ON THE MERITS.......................................13

        1. Count 2 – Viewpoint Discrimination............................................................13

        2. Count 4 – Compelled Speech........................................................................14

        3. Count 6 – Prior Restraint ..............................................................................15

        4. Count 8 – Overbreadth..................................................................................16

        5. Count 10 – Vagueness ..................................................................................17

    E. THE DISTRICT LACKS THE APPROPRIATE LEVEL OF DISCRETION TO TRIGGER SECTION 1983 LIABILITY .............................18

III. CONCLUSION....................................................................................................................19

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009) ...........................................................................12

*Aliser v. SEIU Cal.*, 419 F. Supp. 3d 1161 (N.D. Cal. 2019) .......................................................5, 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..............................................................................................7

*Barnard v. Lackawanna Cty,* 696 F. App'x 59 (3d Cir. 2017)..........................................................13

*Barone v. City of Springfield*, 902 F.3d 1091 (9th Cir. 2018) .........................................................15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..............................................................................7

*Cal. Teachers Ass'n v. Bd. of Educ.*, 271 F.3d 1141 (9th Cir. 2001) ...............................................17

*Demers v. Austin*, 746 F.3d 402 (2014) ..............................................................................13, 14, 18

*Grandi v. N.Y.C. Transit Auth.*, 977 F. Supp. 590 (E.D.N.Y. 1997) ................................................13

*Grayned v. City of Rockford*, 408 U.S. 104 (1972)..........................................................................17

*Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671 (6th Cir. 2001) .........................................................14

*Kaempe v. Myers*, 367 F.3d 958 (D.C. Cir. 2004) .............................................................................7

*Kentucky v. Graham*, 473 U.S. 159 (1985)......................................................................................19

*Leonard v. Clark*, 12 F.3d 885 (9th Cir. 1993) ..........................................................................12, 13

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ..............................................................................11

*Martinez v. Newsom*, 46 F.4th 965 (9th Cir. 2022).......................................................................8, 9

*Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789
    (1984).......................................................................................................................................16, 17

*Moonin v. Tice*, 868 F.3d 853 (9th Cir. 2017) ............................................................................15, 16

*Moser v. Las Vegas Metro. Police Dep't*, 984 F.3d 900 (9th Cir. 2021) .........................................14

*Murphy v. Capella Educ. Co.*, 589 F. App'x 646 (4th Cir. 2014) .....................................................7

*Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468 (9th Cir. 1984)...................................7, 8

*Perrin v. United States*, 444 U.S. 37 (1979) ....................................................................................18

*Rodriguez v. Maricopa Cty. Cmty. Coll. Dist.*, 605 F.3d 703 (9th Cir. 2009) ................................14

*Rosenberger v. Rector & Visitor of the Univ. of Va.*, 515 U.S. 819 (1995) ...................................14

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

*Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190 (10th Cir. 2013) ............................................ 7

*Smith v. Pac. Bell Tel. Co.*, 649 F. Supp. 2d 1073 (E.D. Cal. 2009) ............................................. 12

*Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293 (9th Cir. 1998) ........................................ 7, 8, 11

*Tucson v. City of Seattle*,
   2024 U.S. App. LEXIS 2362 (9th Cir. Feb. 2, 2024) ......................................................... 16, 17

*United Data Servs., LLC v. FTC*, 39 F.4th 1200 (9th Cir. 2022) ..................................................... 11

*United States v. Nat'l Treasury Emples. Union*, 513 U.S. 454 (1995) ............................................ 15

*United States v. Williams*, 553 U.S. 285 (2008) ....................................................................... 16, 18

*United States v. Wyatt*, 408 F.3d 1257 (9th Cir. 2005) .................................................................. 18

*Wright v. Universal Maritime Services Corp.*, 525 U.S. 70 (1998) ................................................. 13

**State Statutes**

Cal. Gov. Code § 3543.2 .................................................................................................................. 19

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs' Opposition to the District Defendants'[1] Motion to Dismiss does not refute the numerous separate and distinct reasons the Motion should be granted without leave to amend. First, and most importantly, the Opposition continues to carefully employ an argument technique that creates the illusion that requirements in one set of documents – the Diversity Equity Inclusion and Accessibility ("DEIA") Regulations and Faculty Contract – are one and the same as supposed "requirements" from a completely different set of documents – the non-binding guidance documents Plaintiffs term "Implementation Guidelines."  But only the Faculty Contract and DEIA Regulations as incorporated by the Faculty Contract actually apply to Plaintiffs.  *See infra* Section II.A.  Second, the Opposition does not show the Verified Complaint properly alleges facts that establish Plaintiffs possess standing to assert their pre-enforcement challenges to the Faculty Contract.  *See infra* Section II.B.  Third, the Opposition fails to refute the waiver of rights contained within the Faculty Contract.  *See infra* Section II.C.  Fourth, Plaintiffs cannot succeed on the merits of their First Amendment claims because they are bound only by the express terms and the challenged requirements in the Faculty Contract – these do not place limits on what Plaintiffs can teach, what they can say, or what they can do to show they are competent and knowledgeable in DEIA-related teaching practices.  *See infra* Section II.D.  Finally, Plaintiffs fail to allege the District Defendants possess the necessary discretion while following mandatory state law to impose Section 1983 liability on them.  *See Aliser v. SEIU Cal.*, 419 F. Supp. 3d 1161, 1165 (N.D. Cal. 2019); *infra* Section II.E.

## II. LEGAL ARGUMENT
### A. THE FOUR GUIDANCE DOCUMENTS ARE NOT BINDING ON THE DISTRICT OR THE PLAINTIFFS

Plaintiffs' core argument revolves around creating the illusion that various guiding documents – what they term "Implementation Guidelines" – are binding on the Plaintiffs as the District interprets and applies the DEIA Regulations in the Faculty Contract.  Opp. at 13:6-23,

---

[1] The "District Defendants" are Carole Goldsmith, Nasreen Johnson, Magdalena Gomez, Danielle Parra, Richard M. Caglia, Robert A. Fuentes, Deborah J. Ikeda, and Destiny Rodriguez.

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

14:1-10. As phrased by Plaintiffs themselves, "the DEIA Rules *as interpreted by the Implementation Guidelines* and enforced through the Faculty Contract . . . infringe on Plaintiffs First Amendment Rights." Opp. at 14:15-17 (emphasis added). But the four guidance documents on which Plaintiffs rely – the model *Competencies and Criteria* (Ex. B to Verif. Compl., Doc. No. 1-2), the announcement memorandum from the Chancellor's Office (Ex. C to Verif. Compl., Doc. No. 1-3), *Model Principles and Practices* (Ex. D to Verif. Compl., Doc. No. 1-4), and *Glossary* (Ex. E to Verif. Compl., Doc. No. 1-5) – are on their face non-mandatory, advisory documents intended to *help* community college districts develop their locally-developed DEIA competencies. They do not *dictate* those locally-developed DEIA competencies.

Each guidance document plainly states, usually on the first or second page, that their suggestions are not mandatory on districts or faculty. The announcement memorandum states the DEIA competency and criteria framework is a "starting point" for districts "intentionally designed *as an example*" of how districts can develop their local DEIA competency frameworks, with a "*non-exhaustive* list of actions" employees may take to "demonstrate their understanding [and] skills" related to the DEIA evaluation component. Ex. C, Doc. No. 1-3, p. 3-4 (emphasis added). It also states that the memorandum's purpose is to "provide information regarding the Evaluation and tenure review" components of the adopted regulations and to identify "resources that are available to support districts and colleges with local implementation of these regulations." Ex. C, Doc. No. 1-3, p. 3, 6-7. Similarly, the Chancellor's *Competencies and Criteria Recommendations* also informs readers its contents provide "a set of *sample* DEI competencies and criteria" that is "not exhaustive" and "*a starting point* . . . meant to serve as a reference for districts/colleges as they engage in their own local process to develop and adopt a *personalized* set of DEI competencies and criteria" for the DEIA component of evaluations.[2] Ex. B, Doc. No. 1-2, p. 2 (emphasis added). The *Model Principles and Practices* plainly reads: "The chart is not exhaustive and *is not intended to be a mandate*, but rather a *model and tool* of transformative principles" readers can choose to utilize. Ex. D, Doc. No. 1-4, p. 3 (emphasis added). Finally,

---

[2] The full title of the document itself also serves to highlight the non-binding nature of the document: "Diversity, Equity and Inclusion Competencies and Criteria *Recommendations*" (emphasis added).

the *Glossary of Terms* informs readers "The purpose of [the Glossary] is to *serve as a reference guide* of DEI terms."  Ex. E, Doc. No. 1-5, p. 2 (emphasis added).

      Instead of addressing this issue head-on, Plaintiffs instead direct this Court that Plaintiffs' allegations "must be accepted as truthful, and the Implementation guidelines should be looked at as part of the DEIA Rules and Faculty Contract."  Opp. at 13:2-4.  Plaintiffs overlook a core aspect of pleadings: Courts are "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."  *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).[3]  Legal conclusions identified in pleadings "are not entitled to the assumption of truth . . . unless supported by factual allegations."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also* Defendants' Motion to Dismiss, Doc. 43 ("Motion"), at 12:19-22.[4]  Once conclusory allegations are correctly stripped away, then a court may properly evaluate a complaint's true factual allegations.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570-71 (2007).

      The four identified guidance documents, each attached to Plaintiffs' Verified Complaint as supporting exhibits, contradict Plaintiffs' allegations that those documents were specifically incorporated into the DEIA Regulations and Faculty Contract.  Verif. Compl. ¶¶ 58, 80, 83, 96. As described above, all plainly state the documents provide non-exhaustive recommendations, examples, and starting points for districts to consider.  Furthermore, an outside guidance document could only have a binding effect on Plaintiffs if it "were authorized and incorporated by reference in the collective bargaining agreement."  *Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1474 (9th Cir. 1984).  Neither the DEIA Regulations nor Faculty Contract incorporate

---

[3] Several other Circuits have adopted the same standard for evaluating complaints containing factual allegations contradicted or undermined by the supporting exhibits and documents.  *See, e.g., Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1196 (10th Cir. 2013) ("And if those documents [incorporated by reference into the complaint] conflict with allegations in the complaint, we need not accept those allegations as true."); *Kaempe v. Myers*, 367 F.3d 958, 963, (D.C. Cir. 2004) ("Nor must we accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice."); *Murphy v. Capella Educ. Co.*, 589 F. App'x 646, 655 (4th Cir. 2014) (dismissing a cause of action "because the supporting allegations are actually belied by the attached exhibits").

[4] The *Iqbal* case goes on to identify examples of these types of conclusory allegations, such as an allegation that defendants "ha[d] entered into a contract, combination or conspiracy to prevent competitive entry . . . and ha[d] agreed not to compete with one another."  *Iqbal*, 556 U.S. at 679. Plaintiffs make substantially similar allegations.  Verif. Compl. ¶¶ 58, 80, 83, 96.

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

the guidance documents into the DEIA evaluation requirements by reference. Plaintiffs do not provide any factual allegations or cite any text within the DEIA Regulations or Faculty Contract that inform readers these guidance documents have been incorporated into either document.[5] Instead, Plaintiffs' make the bald allegations that the "three guidance documents [must be used by] local districts and colleges . . . when implementing the DEIA Rules" (Verif. Compl. ¶ 58) and "[t]he Faculty Contract contains DEIA obligations implementing the State Chancellor's DEIA Rules, including the Implementation Guidelines." *Id.*, ¶¶ 83, 96. These types of legal conclusions are not entitled to an assumption of truth because they are contradicted by the very guidance documents Plaintiffs submitted. *Steckman*, 143 F.3d at 1295-96.

Indeed, this exact issue – whether guidance documents are binding on school districts – was recently decided by the Ninth Circuit in *Martinez v. Newsom*, 46 F.4th 965 (9th Cir. 2022). In that case, a group of students and parents alleged California public school districts failed to accommodate special needs students while transitioning to remote instruction during the COVID-19 pandemic. *Id.* at 968. At the core of their complaint, the plaintiffs alleged the California Department of Education "issued guidance that encouraged the school districts" to work with families to ensure students with disabilities were accommodated during remote instruction, but that the school districts did not act on that guidance. *Id.* at 968-69. The Ninth Circuit dismissed several of plaintiffs' claims because even though the plaintiffs attempted to construe the guidance as "a mandatory rule *prohibiting* school districts from accommodating special needs students during remote instruction," the "guidance contradicts Plaintiffs' claims" in that the Department of Education "offered suggestions about how to accommodate special needs students during remote instruction, but ultimately left each district with discretion to decide how to do so." *Id.* at 971

---

[5] Plaintiffs' allegation that the District adopted the Chancellor's guidance relies on an email introduced as an exhibit to Plaintiffs' Reply in Support of Plaintiffs' Motion for Preliminary Injunction, Doc. No. 29-4, Ex. A to Declaration of Bill Blanken. Opp. at 14:1-2. However, this email merely restates the language of the DEIA Regulations informing readers that the Chancellor published guidance and that guidance "shall be used *as a reference* for *locally developed* minimum standards." Ex. A to Declaration of Bill Blanken, Doc. No. 29-4, p. 2 (emphasis added). The email asked that faculty review "the language in the contract" to comply with the Faculty Contract DEIA evaluation component until the District completed its locally developed DEIA competencies and criteria. *Id.* at 3. This email on its face does not direct faculty to consult the guidance documents cited by Plaintiffs nor does it indicate those guidance documents are incorporated into the language of the contract that faculty were asked to review.

8

Defendants' Reply in Support of Motion to Dismiss

(emphasis in original).

This summary should sound familiar – its tracks Plaintiffs' allegations in this case almost exactly. Both *Martinez* and this case involve school districts enforcing mandatory rules imposed by the State. *Martinez*, 46 F.4th at 971. Both cases involve allegations that guidance documents are binding and mandatory on the school district even though the guidance itself informs readers the contents are merely suggestions to help school districts meet their legal obligations. *Id.* at 971. And like the *Martinez* court, this Court should not treat Plaintiffs' conclusory allegations as true when those allegations are contradicted by the Verified Complaint's supporting exhibits. *Id.* at 971-72. Once Plaintiffs' conclusory allegations that rely on, cite, or quote the non-binding guidance documents are properly denied the assumption of truth, Plaintiffs must establish their various challenges on the language of the Faculty Contract and the DEIA Regulations as incorporated in the Faculty Contract alone. Ex. A to Verif. Compl., Doc. No. 1-1; Ex. F to Verif. Compl., Doc. No. 1-6. However, the text of those two documents fails to provide adequate factual support to allow Plaintiffs' Verified Complaint to survive a motion to dismiss.

### 1. The Terms, Phrases, and Concepts Plaintiffs Regularly Quote to Support Their Complaint Do Not Come From the Faculty Contract or the DEIA Regulations

Plaintiffs regularly quote particular terms, phrases, and concepts from these non-binding guidance documents to emphasize the ways in which Plaintiffs supposedly are bound to serve as mouthpieces for government viewpoints. Opp. at 33:14-15. A careful examination of these quotes, however, shows they come from the non-binding guidance documents, not the Faculty Contract or the DEIA Regulations. Below is a list of quoted terms and phrases Plaintiffs rely on heavily and the non-binding guidance documents in which they appear. None of these terms, phrases, or concepts appear in the DEIA Regulations or Faculty Contract.[6]

- "Incorporate" – *Competencies and Criteria Recommendations*, Ex. B, Doc. 1-2, p. 4, 5.
- "Advocates for" – *Competencies and Criteria Recommendations*, Ex. B, Doc. 1-2, p. 5.

---

[6] Some other terms do appear in both the non-binding guidance documents and the DEIA Regulations and Faculty Contract, such as "anti-racist" and "intersectionality." *See, e.g.*, Ex. A, Doc. No. 1-1, p. 3 (defining "anti-racist" in Cal. Code Regs. tit. 5, § 52510(d) as "refers to policies and actions that lead to racial equality"); Ex. F, Doc. 1-6, p. 43 (requiring faculty members to "reflect knowledge of the intersectionality of social identities").

9

Defendants' Reply in Support of Motion to Dismiss

12317489.9 ST080-174

- "Race-conscious and intersectional lens" – *Competencies and Criteria Recommendations*, Ex. B, Doc. 1-2, p. 5, 6.
- "Colonized mindset" –*Model Principles and Practices*, Ex. D, Doc. No. 1-4, p. 4.
- "Weaponize academic freedom" – *Model Principles and Practices*, Ex. D, Doc. 1-4, p. 5.
- "Inflict curricular trauma" –*Model Principles and Practices*, Ex. D, Doc. No. 1-4, p. 5.
- "Individualist perspective" –*Model Principles and Practices*, Ex. D, Doc. No. 1-4, p. 7.
- "Weave DEI and culturally responsive practice into every course" –*Model Principles and Practices*, Ex. D, Doc. No. 1-4, p. 7.
- "Culturally responsive practices and social justice lens" – *Model Principles and Practices*, Ex. D, Doc. No. 1-4, p. 7.
- "Color Blindness" –*Glossary*, Ex. E, Doc. 1-5, p. 3.
- "Merit" – *Glossary*, Ex. E, Doc. 1-5, p. 8.
- "White Privilege" – *Glossary*, Ex. E, Doc. 1-5, p. 12.

Any time these terms, phrases, or concepts are quoted in Plaintiffs' Verified Complaint or Plaintiffs' Opposition papers, they do not come from the Faculty Contract or the DEIA Regulations. They emerge solely from these non-binding guidance documents that neither the District nor Plaintiffs must follow. Plaintiffs do not consistently separate what they term "DEIA Rules" and the "Implementation Guidelines," often blurring the two together to create the illusion that they are one and the same. *See, e.g.*, Opp. at 8:18-24; 18:17-26; 31:7-10; 36:7-14; 36:23-27; 37:3-13. However, Plaintiffs' conclusory allegations based on the non-binding guidance documents and Plaintiffs' true factual allegations based on the Faculty Contract and the DEIA Regulations must be carefully distinguished to accurately determine if Plaintiffs have met their burden in establishing a plausible claim for relief in light of any "obvious alternative explanation[s]" for Defendants alleged constitutional violations. *Iqbal*, 556 U.S. at 681-82.

**B.  PLAINTIFFS FAIL TO ESTABLISH ARTICLE III STANDING**

As explained in District Defendants Motion to Dismiss, Plaintiffs fail to show an "injury in fact" necessary to establish Article III standing, as they alleged neither an actual injury nor an imminent injury in fact. *See* Motion at 14. Plaintiffs' standing arguments hinge on this Court accepting their conclusory allegations that the guidance documents are binding as true. Opp. at 12:4-23, 13:6-14. However, as noted above, the guidance documents on their face are not binding, not incorporated into the DEIA Regulations or Faculty Contract, and contradict

10

Defendants' Reply in Support of Motion to Dismiss

12317489.9 ST080-174

Plaintiffs' allegations.  *See supra* Section II.A.  Without the guidance documents, Plaintiffs must establish the constitutionally required injury in fact based on the text of the Faculty Contract alone, which they fail to do.  *Steckman*, 143 F.3d at 1295-96.

Plaintiffs' alleged concrete plan to violate the Faculty Contract and the DEIA Regulations by assigning particular topics, materials, and assignments to students does not reach the text of the Faculty Contract or the DEIA Regulations.  Plaintiffs' allegations mainly focus on the ways in which they feel chilled in their ability to teach certain topics and concepts in the classroom.  Verif. Compl. ¶¶ 107, 117-120, 128-131, 141-144, 152-153, 162-167.  They are consistently focused on allegations that what they teach will "inflict curricular trauma" (Verif. Compl. ¶ 109, 119) or that their classroom materials do not align with a "race-conscious or intersectional" lens.  Verif. Compl. ¶ 131, 144.  But these requirements do not appear in the Faculty Contract or the DEIA Regulations and Plaintiffs are simply not bound by them.  Thus, Plaintiffs' intent to teach classroom topics and assign materials that may somehow conflict with those terms is insufficient to establish the necessary concrete plan to violate the Faculty Contract or the DEIA Regulations.  *United Data Servs., LLC v. FTC*, 39 F.4th 1200, 1210 (9th Cir. 2022).

Plaintiffs also perpetuate Magistrate Judge Baker's erroneous conclusion that Plaintiffs face a credible threat of enforcement because "*at some point*" Plaintiffs will be evaluated – in part – on the locally developed DEIA competencies and criteria, "*at some point*" Plaintiffs will receive a negative evaluation, and "*at some point*" Plaintiffs will face adverse employment actions based on a negative evaluation.  Opp. at 19:7-10; *Johnson v. Watkin*, Case No. 1:23-cv-00848 (E.D. Cal.), ECF No. 70 ("*Johnson* Mag. Rec.") at 23 (emphasis added).  This is little more than mere "some day intentions" that "do not support a finding of the 'actual or imminent' injury" that Article III standing requires.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 654 (1992).[7]

---

[7] Plaintiffs also argue the DEIA evaluation component in the Faculty Contract is "given equal weight" as to the other nine criterion.  Opp. at 19:25-27.  In fact, the Faculty Contract grants evaluators the freedom to tailor evaluations to the unique situation of each faculty member and does not state the weight given to each Instructional Faculty evaluation criterion or how the overall Instructional Faculty criteria portion of the evaluation is weighed against other evaluation portions, such as Student interactions or Professional Responsibilities.  Ex. F, Doc. No. 1-6, p. 41-43.  The DEIA Regulations require only that a district "place significant emphasis" on the DEIA evaluation component, but do not dictate that districts weigh it equally with other evaluation criteria.  Cal. Code Regs. tit. 5, § 53602(c)(4).

11

Defendants' Reply in Support of Motion to Dismiss

12317489.9 ST080-174

### C. PLAINTIFFS' FIRST AMENDMENT RIGHTS WERE WAIVED BY THEIR UNION

Plaintiffs' analysis of waiver ignores the special contract interpretation principles that apply to Collective Bargaining Agreements. The cases Plaintiffs provide to support their arguments against waiver largely involve individual waivers of rights outside of the context of collective bargaining, where the individuals directly negotiate the terms of the agreement, including waivers. But in the collective bargaining context, that type of negotiation procedure is not viable, and instead unions serve as the designated "exclusive representative" that "enjoys broad authority . . . in the negotiation and administration of [a] collective bargaining contract." *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 257-58 (2009). Unions may agree to the inclusion of certain provisions in a CBA "in return for other concessions from the employer. Courts generally may not interfere with this bargained-for exchange." *Id.*

Here, the union representing Plaintiffs negotiated the Faculty Contract on behalf of Plaintiffs, including the DEIA Evaluation component. The DEIA Regulations permit the District and the union to negotiate the local DEIA competencies and criteria and the details of the evaluation and tenure review component, which the District and Plaintiffs' union did. Verif. Compl. ¶ 82; Ex. A, Doc. No. 1-1, p. 8. As this was part of the regular contract negotiation process (as opposed to a side Memorandum of Understanding to amend a CBA already in force), the union negotiating on behalf of Plaintiffs had the full range of options at its disposal to leverage concessions from the District if it determined the DEIA evaluation component placed its bargaining unit members at a disadvantage. Verif. Compl. ¶ 82-83. As a negotiated CBA term, the Faculty Contract evaluation provisions are binding on Plaintiffs. *Smith v. Pac. Bell Tel. Co.*, 649 F. Supp. 2d 1073, 1093-94 (E.D. Cal. 2009).

Furthermore, the Faculty Contract satisfies the requirements of a voluntary, knowing, and intelligent waiver. First, Plaintiffs' claim that Plaintiffs' union did not "voluntarily agree" to the Faculty Contract mandatory requirements at issue lacks merit. Plaintiffs' union still voluntarily signed the Faculty Contract. As stated in *Leonard v. Clark*, 12 F.3d 885 (9th Cir. 1993), the fact that the union "informed the City of its view that [a CBA provision] was 'unconstitutional, illegal,

and unenforceable' does not make the [u]nion's execution of the agreement any less voluntary." *Id.* at 890.  Plaintiffs' agreement to the Faculty Contract was both knowing and intelligent, as both the union and the District consciously adopted the challenged provisions to comply with the DEIA Regulations.  Verif. Compl. ¶ 83; *Leonard*, 12 F.3d at 890.

Plaintiffs put forward many of the same arguments regarding explicit constitutional waivers the Third Circuit rejected in *Barnard v. Lackawanna Cty,* 696 F. App'x 59, 61-62 (3d Cir. 2017).  There, the plaintiffs argued the CBA failed the "clear and unmistakable" standard for a waiver of rights as articulated in *Wright v. Universal Maritime Services Corp.*, 525 U.S. 70, 80-81 (1998), by not explicitly referencing the First Amendment or Section 1983.  *Barnard*, 696 F. App'x at 61-62.  The Third Circuit rejected these arguments, noting a union may explicitly or implicitly waive an individual employee's constitutional rights in the context of the collective bargaining process, and this meets the "clear and unmistakable" *Wright* standard even without explicit references to the First Amendment.  *Id.* at 62.  Here, the evaluation provision within the Faculty Contract is "unequivocal" and a "core provision of the CBA" such that it constitutes a "clear and unmistakable" waiver in the collective bargaining context.  *Id.*[8]

### D.   PLAINTIFFS CANNOT PREVAIL ON THE MERITS

#### 1.   Count 2 – Viewpoint Discrimination

Plaintiffs incorrectly argue that strict scrutiny applies to challenges to regulations on public employee speech.  Opp. at 26:12-14.  But as the Ninth Circuit stated in *Demers*: "We hold that academic employee speech not covered by *Garcetti* is protected under the First Amendment, *using the analysis established in Pickering.*"  *Demers v. Austin*, 746 F.3d 402, 412 (2014)

---

[8] Nor must the union obtain its bargaining unit member's explicit agreement to the wavier as "[i]mposing a requirement that a union attain the personal endorsement of members for the terms of a CBA would be antithetical to the very essence of *collective* bargaining."  *Barnard*, 696 Fed. Appx. at 62, n.3 (emphasis in original).  Also, a determination of waiver here is not unfair or unduly harsh, as Plaintiffs can be expected to take the good with (in their view) the bad as part of the agreement.  One court has articulated these concerns as follows: "Plaintiff's dissatisfaction with the CBA is an issue for him to raise with the union, not with defendant"; the fact that Plaintiff "now claims dissatisfaction with one aspect of the agreement makes it no less binding upon him . . . .  Plaintiff, as employee, has the benefits of the contract; he must accept also what he may regard as the disadvantages, for in the bargaining process it may well be that the latter were assumed in exchange for the conferral of the former."  *Grandi v. N.Y.C. Transit Auth.*, 977 F. Supp. 590, 595 (E.D.N.Y. 1997).

(emphasis added).  Here, Plaintiffs rely on this carve-out in *Demers* for scholarship and teaching, and therefore, the appropriate standard is the *Pickering* balancing test.  *Id.*

The cases Plaintiffs cite to support their argument for strict scrutiny do not involve public employee speech, much less teaching and academic writing.  The cited cases involve student speech, *see, e.g., Rosenberger v. Rector* & *Visitor of the Univ. of Va.*, 515 U.S. 819, 822 (1995), or make no reference at all to strict scrutiny, *see, e.g., Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 679-82 (6th Cir. 2001) (making no reference to "strict scrutiny" and instead applying *Pickering*); *Rodriguez v. Maricopa Cty. Cmty. Coll. Dist.*, 605 F.3d 703 (9th Cir. 2009) (making no reference to strict scrutiny).  *Pickering* applies in the public employment context regardless of whether a Court is considering the viewpoint of the speech.  *E.g., Moser v. Las Vegas Metro. Police Dep't*, 984 F.3d 900, 902 (9th Cir. 2021) (remanding case and declining to evaluate *Pickering* balancing without a factual determination of what exact view officer was expressing in Facebook post at issue).  Plaintiffs have not cited any cases that apply strict scrutiny in the context of public employee speech instead of applying *Pickering*, and their claims run contrary to the great number of cases that explicitly apply *Pickering*.  *See Demers*, 746 F.3d at 412.

### 2. **<u>Count 4 – Compelled Speech</u>**

Plaintiffs' compelled speech challenge fails for two key reasons.  First, Plaintiffs rely heavily on non-binding guidance documents and the terms and phrases contained within to allege they must serve as "mouthpieces for the State's approved DEIA viewpoint."  Opp. at 33:13-15.  But as noted above, the contents of those documents are not requirements at all, but non-exhaustive suggestions of what a faculty member *could* utilize, in some form, to meet the locally developed DEIA competencies and criteria.  Plaintiffs are no more bound by law to follow the non-binding guidance recommendations than they are bound by law to follow teaching suggestions Plaintiffs may find from other sources that are publicly available.  Second, the self-evaluation requirement in the Faculty Contract does not "require[]" Plaintiffs to "endorse Defendants' DEIA viewpoints."  Opp. at 32:24-25.  The self-evaluation requires Plaintiffs to show they "understand[]" the locally developed DEIA competencies and criteria and report how their teaching practices "improve equitable student outcomes and course completion."  Ex. F,

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

Doc. No. 1-6, p. 41.

### 3. Count 6 – Prior Restraint

A prior restraint, even in the context of public employee speech, retains key characteristics – none of which apply to Plaintiffs' allegations. As explained by the Ninth Circuit, prior restraint cases fall into three categories, even in the context of public employee speech: "(1) regimes requiring that an employer be notified of the content of the employees' speech; (2) regimes requiring that an employee seek supervisor pre-approval before speaking; and (3) regimes prohibiting any and all discussion of certain topics with the public." *Moonin v. Tice*, 868 F.3d 853, 869 (9th Cir. 2017). In assessing a prior restraint, the focus is on "the text of the policy to determine the extent to which it implicates public employees' speech." *Id.* at 861 n.5 ("[The] chilling effect is determined by the language of the policy–what an employee reading the policy would think the policy requires. . ."); *Barone v. City of Springfield*, 902 F.3d 1091, 1102 (9th Cir. 2018). Here, the policy at issue is the Faculty Contract (Ex. F, Doc. No. 1-6) and the DEIA Regulations as incorporated in the Faculty Contract. Ex. A, Doc. No. 1-1.

As explained in District Defendants Motion, the DEIA Regulations and Faculty Contract contain no advance permission requirement. Motion at 24. Plaintiffs do not need to provide notice to anyone of their planned speech, much less provide notice to the State or the District. Plaintiffs do not need to obtain pre-approval prior to assigning particular classroom materials or topics. Plaintiffs are not prohibited, by either the Faculty Contract or the DEIA Regulations, from "any and all discussion of certain topics," including topics related to DEIA, with their students. *Moonin*, 868 F.3d at 869.

Plaintiffs rely on characterizing the Faculty Contract and DEIA Regulations as "wholesale deterrent[s]" on speech as described in *United States v. Nat'l Treasury Emples. Union*, 513 U.S. 454 (1995) ("*NTEU*"). However, *NTEU* dealt with government workers expression in their personal capacity. *Id.* at 465 ("[Plaintiffs'] seek compensation for their expressive activities in their capacity as citizens, not as Government employees."). The content of the employees' expression in *NTEU* had "nothing to do with their jobs and [did] not even arguably have any adverse impact on the efficiency" of their employing agencies. *Id.* In this case, Plaintiffs' focus

15

solely on their teaching and academic speech pursuant to their positions as faculty members (Verif. Compl., ¶¶ 174-177) and their speech directly impacts the educational mission of the District to improve equitable student outcomes and course completion. Ex. F, Doc. No. 1-6, p. 43. Finally, *NTEU*'s "heavy burden" only applies if the Faculty Contract or DEIA Regulations actually imposed a prior restraint, which they do not because they lack the defining characteristics of prior restraints. *Moonin*, 868 F.3d at 869.

### 4. Count 8 – Overbreadth

Plaintiffs' overbreadth argument collapses once the non-binding guidance documents are separated from the binding language within the Faculty Contract and the DEIA Regulations. To mount a facial overbreadth challenge, Plaintiffs must allege the Faculty Contract provisions at issue "prohibit[] a substantial amount of protected speech relative to [their] plainly legitimate sweep." *United States v. Williams*, 553 U.S. 285, 292 (2008). The "mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Courts must consider the "numerous lawful applications" of the challenged law when analyzing overbreadth challenges. *Tucson v. City of Seattle*, 2024 U.S. App. LEXIS 2362, *18-19 (9th Cir. Feb. 2, 2024). "[T]he overbreadth doctrine does not license the federal courts to strike down laws in their entirety just because the legislature could have more carefully crafted the statutory language to avoid some unconstitutional applications." *Id.* at *20.

The Faculty Contract evaluation requirements, incorporating the DEIA Regulations requirements, focus on a faculty member's knowledge and skills in relation to teaching a diverse student body comprising a multitude of backgrounds, identities, and perspectives. These are lawful applications of the Faculty Contract and the DEIA Regulations to achieve the ultimate goal of improving equitable student outcomes and course completion. Furthermore, developing an evaluation criterion – one of several criteria – that requires faculty to learn skills that effectuate cross-cultural teaching does not restrict Plaintiffs' First Amendment rights. Plaintiffs' argument that "[a] wide range of protected classroom expression *could* run contrary to" the Faculty

Defendants' Reply in Support of Motion to Dismiss

12317489.9 ST080-174

1 Contract or the DEIA Regulations is insufficient to render either susceptible to an overbreadth

2 challenge. Opp. at 35:9-11 (emphasis added); *Members of City Council*, 466 U.S. at 800.

### 5. Count 10 – Vagueness

Plaintiffs' vagueness challenge once again depends on their conflation of the non-binding guidance documents and the binding text of the Faculty Contract or the DEIA Regulations. A vagueness challenge, even in the context of the First Amendment, does not require "perfect clarity," *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972), and "the constitution must tolerate a certain amount of vagueness." *Cal. Teachers Ass'n v. Bd. of Educ.*, 271 F.3d 1141, 1151 (9th Cir. 2001). Like with overbreadth, a court may not "speculate[] about possible vagueness in hypothetical and fanciful situations not before the Court." *Tucson*, 2024 U.S. App. LEXIS 2362, *23.

As noted above, the terms "race-conscious and intersectional lens," "colonized mindset," "individualist perspective," "curricular trauma," "equity minded," and other similar terms appear nowhere in the DEIA Regulations or Faculty Contract. Opp. at 36:9-14. Because these terms do not appear in anywhere the text of the challenged DEIA Regulations or Faculty Contract, any vagueness arguments based on these terms is necessarily inapposite. Furthermore, Plaintiffs' focus on allegedly "ideologically loaded terms" contained in the non-binding guidance documents and on fanciful hypotheticals like "[h]as a professor inflicted 'curricular trauma' if a student is upset by a movie?" are inappropriate for a vagueness challenge. Opp. at 36:25-26.

Plaintiffs' allegations that the lack of definitions for "key terms" such as "equity" or "intersectionality" render the Faculty Contract or the DEIA Regulations unconstitutionally vague are also unpersuasive. Opp. at 36:7-18. Faculty members, including Plaintiffs, are not left to guess at the meaning of these terms because, because these terms have readily ascertainable common dictionary definitions that inform a person of ordinary intelligence of the meaning of

these terms.[9]  *Perrin v. United States*, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.").  A person of ordinary intelligence does not need to understand the minutia of academic debates on concepts and topics related to DEIA in order to understand what is required of them under the Faculty Contract or the DEIA Regulations.  Consulting a common dictionary for the meaning of the undefined terms is sufficient to survive a constitutional vagueness challenge.  *United States v. Wyatt*, 408 F.3d 1257, 1261 (9th Cir. 2005) (consulting a dictionary to discern the meaning of the undefined term "lines" in a statute).

If the Faculty Contract or the DEIA Regulations somehow create special ambiguity by virtue of applying to academics, that is precisely the type of evaluation and judgment that courts are unfit to apply and that is explicitly counseled against by cases like *Demers*.  *See, e.g., Demers* 746 F.3d at 413 ("Recognizing our limitations as judges, we should hesitate before concluding that academic disagreements about what may appear to be esoteric topics are mere squabbles over jobs, turf, or ego. . . .  Here too, recognizing our limitations, we should hesitate before concluding that we know better than the institution itself the nature and strengths of its legitimate interests.").

### E. THE DISTRICT LACKS THE APPROPRIATE LEVEL OF DISCRETION TO TRIGGER SECTION 1983 LIABILITY

Plaintiffs argue even if *Monell* applied to District Defendants, the DEIA evaluation components in the Faculty Contract demonstrate a level of discretion necessary to subject the

---

[9] *See* Cambridge English Dictionary, "Equity," https://dictionary.cambridge.org/dictionary/learner-english/equity (last retrieved February 9, 2024) (defining "equity" as "the situation when everyone is treated fairly and equally"); *id.*, "intersectionality," https://dictionary.cambridge.org/us/dictionary/english/intersectionality (last retrieved February 9, 2024) (defining "intersectionality" as "the way in which different types of discrimination (=unfair treatment because of a person's sex, race, etc.) are connected to and affect each other").  Indeed the term "intersectionality" is immediately followed by the phrase "of social identities" which grants readers further insight into the terms meaning in the context of the Faculty Contract.  Ex. F., Doc. No. 1-6, p. 43; *see also* Cambridge English Dictionary, "social," https://dictionary.cambridge.org/us/dictionary/english/social (last retrieved February 9, 2024) (defining "social" as "relating to society and living together in an organized way"); *id.*, "identity," https://dictionary.cambridge.org/us/dictionary/english/identity (last retrieved February 9, 2024) (defining "identity" as "a person's name and other facts about who they are").  Combining individual terms into compound terms does not render a statute unconstitutionally vague.  *Williams*, 553 U.S. at 294 ("[A] word is given more precise content by the neighboring words with which it is associated.").

Defendants' Reply in Support of Motion to Dismiss

12317489.9 ST080-174

District to *Monell* liability. Opp. at 17:3-23. But the applicable standard is whether the "entity itself" is the "moving force" behind the constitutional deprivation. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Here, the moving force behind Plaintiffs' alleged constitutional deprivation is the DEIA Regulations themselves – which Plaintiffs admit District Defendants must comply with. Opp. at 15:23-24. Not only is the DEIA evaluation component mandatory under the DEIA Regulations, but under state law, faculty evaluation procedures and criteria are also a mandatory subject of bargaining that must be negotiated between the employing community college district and faculty bargaining unit. Cal. Gov. Code § 3543.2. Thus, the District must not only introduce a DEIA evaluation component into faculty evaluations, but that mandatory component must also be negotiated and appear in the Faculty Contract. In other words, no matter how much leeway the State grants the District in formulating the specifics of the DEIA evaluation component in the Faculty Contract, the mere inclusion of *a* DEIA evaluation component in any form in the Faculty Contract would allegedly deprive Plaintiffs of their First Amendment rights, according to Plaintiffs' allegation. The "general decision" to articulate the DEIA evaluation component in the Faculty Contract did not "cause" the Plaintiffs' alleged First Amendment violation as District Defendants lack the discretion to either refuse to comply with the DEIA Regulations or refuse to state its faculty evaluation procedures in any other form. *See Aliser v. SEIU Cal.*, 419 F. Supp. 3d 1161, 1165 (N.D. Cal. 2019) (there is no Section 1983 liability where an agency "exercises no discretion and merely complies with a mandatory state law").

### III. CONCLUSION

For the foregoing reasons, this Court should grant the District Defendants' motion to dismiss without leave to amend.

Dated: February 9, 2024                              LIEBERT CASSIDY WHITMORE

By: */s/ Morgan Johnson*
    Mark H. Meyerhoff
    David A. Urban
    Morgan Johnson
    Attorneys for Defendants CAROLE GOLDSMITH, et al.

19

Defendants' Reply in Support of Motion to Dismiss

12317489.9 ST080-174