Mark H. Meyerhoff, Bar No. 180414
mmeyerhoff@lcwlegal.com
David A. Urban, Bar No. 159633
durban@lcwlegal.com
Morgan Johnson, Bar No. 345620
mjohnson@lcwlegal.com
LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, Suite 500
Los Angeles, California 90045
Telephone:   559.256.7800
Facsimile:    559.449.4535

ATTORNEYS FOR DEFENDANTS CAROLE GOLDSMITH, NASREEN JOHNSON, MAGDALENA GOMEZ, DANIELLE PARRA, RICHARD M. CAGLIA, ROBERT A. FUENTES, DEBORAH J. IKEDA, AND DESTINY RODRIGUEZ

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA - FRESNO

| | |
|---|---|
| LOREN PALSGAARD; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SONYA CHRISTIAN, in her official capacity as the State Chancellor of California Community Colleges; et al.,<br><br>Defendants. | Case No.: 1:23-cv-01228-KES-CDB<br><br>Complaint Filed: August 17, 2023<br><br>**DISTRICT DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING JOHNSON V. WATKIN** |

## I. INTRODUCTION

Plaintiffs contend this case is different from *Johnson v. Watkin*[1] in two major respects. First, unlike *Johnson*, Plaintiffs explicitly rely on the application of non-binding guidance documents, what they call "Implementation Guidelines," as the foundation of their claims. However, these "Implementation Guidelines" plainly state on their face that they are non-binding, meaning Plaintiffs substantial reliance on them is misplaced.  Second, Plaintiffs contend that whereas there was no local implementation of the regulations in *Johnson*, here by contrast, the State Center Community College District (the "District") has crafted some language in the Faculty Contract meant to facilitate the eventual implementation of the Diversity, Equity, Inclusion, and Accessibility ("DEIA") Regulations.  Ex. F to Verif. Compl., Doc. No. 1-6, p. 41-43, 46, Article 13, Sections 2.E.4 (self-evaluation of faculty), 3.A.c (evaluation criteria), and 4.A.1.a (training).  But the mere existence of these collective bargaining agreement provisions is not enough to materially distinguish Plaintiffs' case from *Johnson* in light of the overwhelming similarities.  Nor are the provisions in the Faculty Contract alone sufficient to allow this Court to properly evaluate the application of the DEIA Regulations because the Faculty Contract does not replace the required locally-developed DEIA Competencies and Criteria.  Cal. Code of Regs., tit. 5, §§ 53601(b), 53602.  The notable absence of the District's locally-developed DEIA Competencies and Criteria from Plaintiffs' Complaint and Motion for Preliminary Injunction leaves this Court in the same position as in *Johnson* – without the applicable policies *required by the DEIA Regulations*, it is impossible to evaluate or even reach the merits of Plaintiffs' claims and Plaintiffs' case must be dismissed.

## II. LEGAL ARGUMENT

### A. PLAINTIFFS LACK ARTICLE III STANDING, JUST AS PROFESSOR JOHNSON DOES

Before Plaintiffs can move to the merits of their claims, they must first establish they have Article III standing to sue.  "[I]n many cases the standing question can be answered chiefly by

---

[1] No. 1:23-cv-00848-KES-CDB, 2024 U.S. Dist. LEXIS 171415, Doc. No. 89 (E.D. Cal. Sept. 22, 2024), *appeal filed*, No. 24-608 (9th Cir. Oct. 2, 2024) ("*Johnson* Order").

2

Defendants' Response to Plaintiff's Supplemental Briefing on Motion for Leave; 1:23-cv-01228-KES-CDB
12611819.11 ST080-174

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, Suite 500
Los Angeles, California 90045

comparing the allegations of the particular complaint to those made in prior standing cases." *Allen v. Wright*, 468 U.S. 737, 751-52 (1984); *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 384 (2024).  *Johnson v. Watkin* is the closest prior standing case upon which to evaluate this case – both cases involve claims and allegations concerning faculty speech, both cases seek to enjoin the enforcement of the *same* DEIA Regulations by both state and local officials, and both cases involve faculty who have not been harmed by the DEIA Regulations they seek to enjoin.[2]

### 1.  Plaintiffs Cannot Bring a Pre-Enforcement Challenge Based on Non-Binding, Non-Enforceable Guidance

The core, fundamental flaw in Plaintiffs' allegations – and their vehicle for establishing standing and injury-in-fact – is their explicit and thorough reliance on non-binding guidance documents that they call "Implementation Guidelines."  *See* Verif. Compl., Doc. No. 1, ¶ 11, 83; Plaintiffs' Opp., Doc. No. 47, at 1:23-2:4.  But, as noted in the *Johnson* Order and District Defendants' moving papers, Plaintiffs "cannot bring a pre-enforcement challenge to non-binding and non-enforceable *guidance* that may never be applied to [them]."  *Johnson* Order at 42:20-21 (emphasis in original); District Defendants' Motion to Dismiss, Doc. No. 43, p. 16:3-11; District Defendants' Reply to Opposition, Doc. No. 50, pp. 5:24-10:21.

Each challenged guidance document Plaintiffs seek to portray as binding and enforceable explicitly states – on their face – that they are samples, recommendations, starting points, resources, models, and/or tools which the *Johnson* Court correctly interpreted as non-binding. *See Johnson* Order at 8:19-9:10, 42:10-24, 45:12-15; District Defendants' Reply, Doc. No. 50, at 6:10-7:2; *see generally* Exs. B, C, D, and E to Verif. Compl., Doc. Nos. 1-2, 1-3, 1-4, and 1-5. As these guidance documents are included within Plaintiffs' Verified Complaint as exhibits, and they contradict Plaintiffs' allegations, this Court is not bound to accept as true Plaintiffs' factual allegations that the guidance documents are somehow binding.  *Steckman v. Hart Brewing, Inc.*,

---

[2] In addition, Plaintiffs have already deeply woven into their standing arguments the Magistrate Judge's Findings and Recommendations rejected by the *Johnson* Court, implying that their case is substantially similar to *Johnson* – *not* materially distinguishable.  Plaintiffs' Opposition to Defendants' Motions to Dismiss, Doc. No. 47, pp. 10:3-11, 11:25-12:3, 12:6-9, 13:18-23, 15:9-10, 16:15-16, 18:26-27, 19:7-11, 20:13-14.  This sudden about-face belies Plaintiffs' claims that their case is now materially distinguishable from *Johnson* on the pertinent standing issue solely because of language in the Faculty Contract.

3

Defendants' Response to Plaintiff's Supplemental Briefing on Motion for Leave; 1:23-cv-01228-KES-CDB
12611819.11 ST080-174

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, Suite 500
Los Angeles, California 90045

1  143 F.3d 1293, 1295-96 (9th Cir. 1998) (holding courts are "not required to accept as true

2  conclusory allegations which are contradicted by documents referred to in the complaint");

3  *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) (same); *Martinez v.*

4  *Newsom*, 46 F.4th 965, 971-72 (9th Cir. 2022) (same).

5        Plaintiffs attempt to resist this conclusion with a cursory citation to *Bell Atl. Corp. v.*

6  *Twombly*, 550 U.S. 554, 570 (2007), but *Twombly* does support them on this point. Plaintiffs'

7  Supplemental Brief ("Supp."), Doc. No. 63, at 4:15-17. The revised federal pleading standards

8  developed in *Twombly* and refined in *Iqbal* require a complaint to contain sufficient factual

9  matter, accepted as true, to "state a claim that is *plausible* on its face." *Ashcroft v. Iqbal*, 556 U.S.

10  662, 678 (2009) (citing *Twombly*, 550 U.S. at 555 (2007) (quotation marks omitted) (emphasis

11  added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

12  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

13  *Iqbal*, 556 U.S. at 678. The Supreme Court described: "Although for the purposes of a motion to

14  dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to

15  accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 678 (quoting *Twombly,*

16  550 U.S. at 555).

17        The contradiction between the plain language of the guidance documents indicating that

18  they are not binding, and Plaintiffs' conclusory allegations that the guidance documents are

19  somehow binding, negates the facial plausibility of their claims, and reflects an unreasonable

20  inference. *See* District Defendants' Reply, Doc. No. 50 at 6:3-7:2 (noting in detail where the

21  guidance documents state they are non-binding recommendations).

22        Plaintiffs' citations to Julianna Mosier's declaration and an email the District sent to

23  faculty (attached to Plaintiff Bill Blanken's Supplemental Declaration) do not support Plaintiffs'

24  conclusory allegation that the non-binding guidance was made mandatory. Supp., Doc. No. 63, at

25  3:1-5. Mosier's declaration states the District has yet to finalize local implementation even after

26  adopting the Faculty Contract, including "plans to do additional work to comply with the

27  regulations" such as developing trainings and a new evaluation form that "*potentially*

28  [incorporates] some of the guidance documents." Mosier Decl., Doc. No. 24.1, ¶¶ 4-6, 11

Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, Suite 500
Los Angeles, California 90045

4

(emphasis added).  Until those implementation steps are completed, faculty may, but are not required to, use guidance documents like the *Glossary* "as a reference" (*id.* at ¶ 11) when "review[ing] *the language in the contract*" to comply in good faith with the DEIA evaluation component.  Ex. A to Blanken Decl., Doc. No. 29-4, p. 3 (emphasis added).

Moreover, Plaintiffs cannot manufacture standing merely by inflicting self-censorship harm upon themselves based on perceived fears of discipline not substantiated by the DEIA Regulations or Faculty Contract provisions they challenge.  *Murthy v. Missouri*, 144 S. Ct. 1972, 1995 (2024) ("But the plaintiffs 'cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.'") (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013)); *see also Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th Cir. 2003) ("The self-censorship door to standing does not open for every plaintiff.").  For example, terms, phrases, and concepts such as "culturally responsive practices and social justice lens," "race-conscious and intersectional lens," and "weaponize academic freedom" do not appear in the text of either the DEIA Regulations or Faculty Contract, yet Plaintiffs allegedly self-censor *because of* those types of specific terms, phrases, and concepts.  *See* Verif. Compl. ¶¶ 102, 103, 109, 117, 119, 120, 143, 144, 153, 163, and 165; *see also* District Defendants' Reply, Doc. No. 50, at 9:15-10:21.  Just like Professor Johnson, Plaintiffs "cannot base [their] challenge on a definition or a provision within a document that may or may not be applied to [them]."  *Johnson* Order at 45:14-15.

### 2. The Faculty Contract's DEIA Evaluation Provisions Cannot Be Analyzed Without the Locally-Developed DEIA Competencies and Criteria Not Before This Court

The existence of the DEIA evaluation components of the Faculty Contract does not grant Plaintiffs standing because this Court cannot properly evaluate those provisions without the District's locally-developed DEIA Competencies and Criteria.  Plaintiffs' self-evaluation is based on their "understanding" of the District's "DEIA competencies" (Ex. F, Doc. No. 1-6, Section 2.E.4, p. 41); the evaluation criteria is based on "demonstration, or progress toward, . . . [the District's] DEIA competencies" (*id.* at Section 3.A.c, pp. 42-43); and the training component

5

involves the District, Faculty Union, and Academic Senates of all four colleges meeting and developing trainings to ensure "all [evaluators and evaluatees] have a uniform understanding of the DEIA competencies and criteria, the expectations regarding a unit member's performance related to the competencies and criteria, and the best practices on how to assess that during the evaluation process." *Id.* at Section 4.A.1.a, p. 46.  These sections inform Plaintiffs (and this Court) that the evaluation process outlined in the Faculty Contract is fundamentally based on the District's locally-developed DEIA Competencies and Criteria, which are not before this Court.[3]

### 3. There is No Alleged Threat of Enforcement In This Case

As in *Johnson*, Plaintiffs here do not allege any past instances where the District disciplined, terminated, or otherwise took any adverse action against a faculty member because of their viewpoint, or a specific threat *by the District* that non-compliance with the DEIA evaluation component of the Faculty Contract will result in adverse action against Plaintiffs.  Plaintiffs merely allege that the District will *eventually* evaluate them based on the DEIA Regulations and Faculty Contract, and that non-compliance *could* lead to termination at some point down the road. Verif. Compl. ¶¶ 15, 90-95, 180; *see also Johnson* Order at 27:4-20.  Plaintiffs do not show they face a "substantial threat of enforcement" that is "actual or imminent, not speculative." *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 489 (9th Cir. 2024); *Hippocratic Medicine*, 602 U.S. at 381.

### 4. Plaintiffs Fail to Sufficiently Identify the When, To Whom, Where, And Under What Circumstances of Their Proposed Speech

Each Plaintiff must allege "with some degree of concrete detail" their plan to engage in a course of conduct that is "arguably affected with a constitutional interest," as to each provision of the DEIA Regulations and Faculty Contract they seek to enjoin, including when, to whom, where, and under what circumstances. *Dreihaus*, 573 U.S. at 159; *Lopez v. Candaele*, 630 F.3d 775, 787 (9th Cir. 2010).  "Without these kinds of details, a court is left with mere 'some day' intentions which do not support a finding of the actual or imminent injury that our cases require." *Lopez*, 630 F.3d at 787-88 (internal quotations omitted).  Plaintiffs do not allege these details.  As just

---

[3] Nor do Plaintiffs include the training program discussed in Section 4.A.1.a, which would provide valuable insight into the District's application of the DEIA Regulations to the specific evaluation procedures that Plaintiffs must comply with.

6

Defendants' Response to Plaintiff's Supplemental Briefing on Motion for Leave; 1:23-cv-01228-KES-CDB
12611819.11 ST080-174

one example, Plaintiff Palsgaard alleges he wishes to assign certain materials like "Letter from Birmingham Jail" and to discuss "controversial issues in DEIA matters or present[] competing views on those issues," but has decided not to because of the DEIA Regulations.  Verif. Compl. ¶¶ 117-118.  However, Plaintiff Palsgaard does not allege *when* he wishes to assign or discuss those materials, vaguely alleging he will "need to reconsider whether he can show" certain materials to students at some unknown point in the future.  *Id.* at ¶ 120.  As another example, Plaintiff Blanken, a chemistry professor, alleges that he "fears" that if he teaches the history of chemistry and of chemists with great impact on the study of chemistry, he will violate the DEIA Regulations and Faculty Contract.[4]  *Id.* at ¶ 152-153.  But this Court is left to guess when and under what circumstances he will teach this portion of his curriculum such that it allegedly violates the terms of the DEIA Regulations or Faculty Contract.

### 5. **Plaintiffs Speculate As To the Implementation and Application of the DEIA Regulations and Faculty Contract**

Even if Plaintiffs provided the locally-developed DEIA Competencies and Criteria or evaluation trainings, they still could not establish standing because they speculate that the District will interpret and apply the DEIA Regulations and Faculty Contract in an irrational and unconstitutional manner.  First, Plaintiffs speculate that independent decisions makers, such as the peer reviewer that the evaluated faculty member chooses (Ex. F to Verif. Compl, Doc. No. 1-6, Section 2.C.3.b, p. 36), will interpret and apply the DEIA Regulations and Faculty Contract to compel Plaintiffs to "endorse and advance Defendants' DEIA viewpoints" in violation of Plaintiffs' academic freedom.  Verif. Compl. ¶¶ 174-180, 207.  The U.S. Supreme Court has declined to endorse "standing theories that rest on speculation about the decisions of independent actors" such as those advanced by Plaintiffs.  *Clapper*, 568 U.S. at 414; *Hippocratic Medicine*, 602 U.S. at 383; *Murthy*, 144 S. Ct. at 1994-1996.  Plaintiffs' speculative fear that the DEIA Regulations and Faculty Contract *may* be "construed in a particular manner" falls short of a

---

[4] Plaintiff Blanken characterizes his alleged violation of the DEIA Regulations and Faculty Contract as "failing to adopt 'culturally responsive practices and a social justice lens.'"  Verif. Compl. ¶ 153.  That phrase does not appear in either the Faculty Contract or Regulations, but does appear as a non-binding "tool" faculty members can leverage in the *Model Principles and Practices* guidance.  *See* District Defendants' Reply, Doc. No. 50, pp. 6:24-26, 10:7-9.

7

Defendants' Response to Plaintiff's Supplemental Briefing on Motion for Leave; 1:23-cv-01228-KES-CDB
12611819.11 ST080-174

credible threat of enforcement to grant standing. *Wolfson v. Brammer*, 616 F.3d 1045, 1063 (9th Cir. 2010). Second, the DEIA Regulations and Faculty Contract evaluate Plaintiffs' teaching *practices*, not their substantive speech. *See* Cal. Code of Regs., tit. 5, § 53605(a); District Defendants' Motion to Dismiss, Doc. No. 43, at 14:5-13, 19:8-21; *Johnson* Order at 44:23-45:15. The DEIA Regulations and Faculty Contract do not limit Plaintiffs' speech at all, and the plain text does not require Plaintiffs to advance, or refrain from speaking, any particular viewpoint. Instead, Plaintiffs' conclusory allegations speculate that the District will purposefully intrude on Plaintiffs' substantive curriculum and teaching and academic speech to go beyond the text of the DEIA Regulations and Faculty Contract to penalize Plaintiffs in their evaluations. *Demers v. Austin*, 746 F.3d 402, 411-413 (9th Cir. 2014).

## III. <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant District and State Defendants' motions to dismiss, and deny Plaintiffs' motion for preliminary injunction.

Dated:  November 1, 2024                                           LIEBERT CASSIDY WHITMORE

By: Mark H. Meyerhoff
David A. Urban
Morgan Johnson
Attorneys for the Defendants
CAROLE GOLDSMITH, et al.